Alycia A. Degen (SBN 211350)
adegen@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Kara L. McCall (*Pro Hac Vice*)
kmccall@sidley.com
Elizabeth M. Chiarello (*Pro Hac Vice*)
echiarello@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN PRESCOTT and MIKE XAVIER, individually and on behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE PHARMACEUTICALS INC., a Delaware corporation; BAYER HEALTHCARE LLC, Delaware limited liability company; BEIERSDORF, INC., a Delaware corporation; and BEIERSDORF NORTH AMERICA, INC., a Delaware corporation,<br><br>Defendants. | Case No. 5:20-cv-00102<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 8(a), 9(b), AND 12(b)(6) OR TO STRIKE PURSUANT TO RULE 12(f); MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Nathanael M. Cousins<br><br>Date: Wednesday, June 24, 2020<br>Time: 1:00 pm<br>Place: Courtroom 5<br>*Oral Argument Requested |

## NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE

PLEASE TAKE NOTICE that on June 24, or as soon thereafter as counsel may be heard before the Honorable Judge Nathanael M. Cousins, in Courtroom 5 of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California 95113, Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare LLC, Beiersdorf, Inc., and Beiersdorf North America, Inc. will and hereby do move to dismiss in full Plaintiffs' Complaint (Dkt. No. 1) or to strike the nationwide class allegations contained therein.

This Motion is brought pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), 12(b)(6), and 12(f) on the following grounds: (1) Plaintiffs' claims are expressly preempted by federal law; (2) the doctrine of primary jurisdiction counsels this Court to leave the issue of first impression presented by the Complaint to the discretion of the U.S. Food and Drug Administration ("FDA"); (3) Plaintiffs' claims are implausible and fail as a matter of law, as a reasonable consumer would not be deceived by the "mineral based" representation; (4) Plaintiffs lack standing to assert claims regarding products they did not purchase and labels on which they did not rely; (5) Plaintiffs lack standing to seek injunctive relief because they are under no imminent threat of future harm; (6) the Court should dismiss or strike Plaintiffs' nationwide class allegations because Plaintiffs do not have standing to represent non-California putative class members and individualized analyses of home-state laws will predominate, making class certification impossible under Ninth Circuit law; (7) Plaintiffs failed to provide thirty days' notice for their damages claim as required by the CLRA; and (8) Plaintiffs failed to satisfy the notice-pleading standard of Rule 8(a) and the heightened pleading standard of Rule 9(b) by mass-pleading allegations against Defendants collectively.

This Motion is based on this Notice of Motion; the attached Memorandum of Points and Authorities; the concurrently filed Request for Judicial Notice; the pleadings and filings in this action; and such further evidence or argument properly before the Court.

DATED: May 1, 2020                         SIDLEY AUSTIN LLP

                                           By: /s/ Alycia A. Degen
                                           Alycia A. Degen (SBN 211350)
                                           adegen@sidley.com

i

SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Kara L. McCall (*Pro Hac Vice*)
kmccall@sidley.com
Elizabeth M. Chiarello (*Pro Hac Vice*)
echiarello@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES, CASE NO. 5:20-CV-00102

**TABLE OF CONTENTS**

I.     PLAINTIFFS' REQUESTS TO IMPOSE REQUIREMENTS ABOVE AND BEYOND FDA REGULATIONS ARE PREEMPTED. ........................ 6

       A.    Sunscreens Are Over-The-Counter Drugs, Subject to an Extensive, Comprehensive Regulatory Regime. ........................................................ 6

       B.    Plaintiffs Impermissibly Seek To Regulate FDCA Compliant Labels. ...................................................................................................... 8

       C.    The FDA Has Already Considered—and Continues to Consider—Sunscreen Labeling Requirements. ........................................................ 11

II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE FDA HAS PRIMARY JURISDICTION OVER LABELING OF SUNSCREENS .............................................................................................. 12

III.   THE CHALLENGED STATEMENT IS NOT FALSE OR DECEPTIVE TO A REASONABLE CONSUMER (COUNTS I, II, and III). ...................... 14

IV.    THE CHALLENGED STATEMENT IS NOT FALSE OR MISLEADING, THUS DEFENDANTS DID NOT BREACH ANY EXPRESS WARRANTY (COUNT IV). ......................................................... 16

V.     DEFENDANTS HAVE NOT BEEN UNJUSTLY ENRICHED WHERE THERE IS NO FRAUD, DECEPTION, OR BREACH OF WARRANTY (COUNT V). ................................................................................................ 17

VI.    PLAINTIFFS LACK STANDING TO PURSUE CLAIMS FOR PRODUCTS THEY DID NOT PURCHASE. .................................................. 17

VII.   PLAINTIFFS LACK STANDING TO PURSUE INJUNCTIVE RELIEF BECAUSE THEY FACE NO THREAT OF IMMINENT HARM. ................ 18

VIII.  THIS COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS. ...................................................... 19

       A.    Putative Class Members' Claims Are Governed by the Laws of Their Home States. ............................................................................... 19

       B.    Plaintiffs Lack Standing To Bring Claims on Behalf of Consumers Residing Outside of California. ............................................................. 20

       C.    Variances in State Law Will Predominate, Rendering Nationwide Class Treatment Inappropriate. ................................................................ 22

IX.    PLAINTIFFS' CLRA CLAIM MUST BE DISMISSED FOR FAILURE TO PROVIDE SUFFICIENT NOTICE. .............................................................. 23

X.     PLAINTIFFS HAVE NOT MET THE FAIR NOTICE PLEADING STANDARD OF RULE 8(A) OR THE HEIGHTENED PLEADING STANDARD OF RULE 9(B). ........................................................................ 24

CONCLUSION ..................................................................................................... 24

iii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Algarin v. Maybelline, LLC*,
   300 F.R.D. 444 (S.D. Cal. 2014) ...............................................................................................18

*Allee v. Medrano*,
   416 U.S. 802 (1974)...................................................................................................................20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).........................................................................................................4, 5, 24

*Astiana v. Hain Celestial Grp., Inc.*,
   905 F. Supp. 2d 1013 (N.D. Cal. Nov. 19, 2012), *rev'd in part*, 783 F.3d 753 (9th
   Cir. 2015), On Appeal...........................................................................................................13, 14

*Ballentine v. U.S.*,
   486 F.3d 806 (3d Cir. 2007)..........................................................................................................5

*Bates v. United Parcel Serv., Inc.*,
   511 F.3d 974 (9th Cir. 2007) ........................................................................................................5

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
   945 F.3d 1225 (9th Cir. 2019) ..............................................................................................15, 17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).............................................................................................................4, 24

*Bly-Magee v. Calif.*,
   236 F.3d 1014 (9th Cir. 2001) ......................................................................................................5

*Bohac v. Gen. Mills Inc.*,
   No. 12-cv-05280, 2014 WL 1266848 (N.D. Cal. Mar. 26, 2014) ................................................14

*Bronson v. Johnson & Johnson, Inc.*,
   No. 12-cv-4184, 2013 WL 1629191 (N.D. Cal. Apr. 16, 2013).....................................................18

*Cadena v. Am. Honda Motor Co., Inc.*,
   No. 18-cv-4007, 2018 WL 8130613 (C.D. Cal. Nov. 14, 2018) ...................................................16

*Carpenter v. PetSmart, Inc.*,
   No. 19-CV-1731-CAB-LL, 2020 WL 996947 (S.D. Cal. Mar. 2, 2020) ........................... *passim*

iv

*In re Carrier IQ, Inc.*,
 78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..............................................................................21

*Carter v. Novartis Consumer Health, Inc.*,
 582 F. Supp. 2d 1271 (C.D. Cal. 2008) .........................................................................9, 10

*Castagnola v. Hewlett-Packard Co.*,
 No. 11-cv-05772, 2012 WL 2159385 (N.D. Cal. June 13, 2012)....................................18

*Clemens v. Daimler Chrysler Corp.*,
 534 F.3d 1017 (9th Cir. 2008) .........................................................................................14

*Cordes v. Boulder Brands USA, Inc.*,
 No. 18-cv-6534, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) .......................................19

*Crozier v. J&J Consumer Cos.*,
 901 F. Supp. 2d 494 (D.N.J. 2012) ........................................................................... *passim*

*In re Ditropan XL Antitrust Litigation*,
 529 F. Supp. 2d 1098 (N.D. Cal. 2007) .......................................................................21, 22

*Ebner v. Fresh, Inc.*,
 838 F.3d 958 (9th Cir. 2016) ...........................................................................................15

*Far E. Conference v. U.S.*,
 342 U.S. 570 (1952)..........................................................................................................12

*Freeney v. Bank of Amer. Corp.*,
 No. 15-02376, 2015 WL 4366439 (July 16, 2015 C.D. Cal.)............................................1

*Gisvold v. Merck & Co., Inc.*,
 62 F. Supp. 3d 1198 (S.D. Cal. 2014)......................................................................10, 12, 13

*Granfield v. NVIDIA Corp.*,
 C 11-05403, 2012 WL 2847575 (N.D. Cal. July 11, 2012).............................................17

*Great Pac. Sec. v. Barclays Capital, Inc.*,
 743 F. App'x 780 (9th Cir. 2018) .......................................................................................5

*Gustavson v. Wrigley Sales Co.*,
 961 F. Supp. 2d 1100 (N.D. Cal. 2013) .............................................................................3

*Hairston v. S. Beach Beverage Co., Inc.*,
 No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012)......................................17

*Hodgers-Durgin v. de la Vina*,
 199 F.3d 1037 (9th Cir. 1999) .........................................................................................18

*Johns v. Bayer Corp.*,
 No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010)......................................17, 18

v

*Johnson v. Nissan N. Amer., Inc.*,
  272 F. Supp. 3d 1168 (N.D. Cal. 2017) ..............................................................21, 22, 23

*Kanter v. Warner-Lambert Co.*,
  99 Cal. App. 4th 780 (2002) ........................................................................................9, 10

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ......................................................................................5, 24

*Keilholtz v. Lennox Hearth Prods., Inc.*,
  No. C 08-00836 CW, 2009 WL 2905960 (N.D. Cal. Sept. 8, 2009)............................24

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941)........................................................................................................19

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003)  ......................................................................................14

*Lester v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005)..........................................................................18

*Lorillard Tobacco Co. v. Reilly*,
  533 U.S. 525 (2001)..........................................................................................................8

*Mason v. Ashbritt, Inc.*,
  No. 19-cv-01062, No. 18-cv-07181-DMR, 2020 WL 789570 (N.D. Cal. Feb. 17,
  2020) ...............................................................................................................................21

*Mazza v. Amer. Honda Motor Co., Inc.*,
  666 F.3d 581 (9th Cir. 2012) ..................................................................................... *passim*

*McGhee v. Tesoro Refining & Mktg. Co., LLC*,
  No. 18-cv-05999, 2020 WL 1310528 (N.D. Cal. Feb. 21, 2020) ....................................5

*Miller v. Ghirardelli Chocolate Co.*,
  912 F. Supp. 2d 861 (N.D. Cal. 2012) ...........................................................................17

*Miss. Power & Light Co. v. United Gas Pipe Line Co.*,
  532 F.2d 412 (5th Cir. 1976) .........................................................................................13

*Mlejnecky v. Olympus Imaging Am. Inc.*,
  No. 10-cv-2630, 2011 WL 1497096 (E.D. Cal. Apr. 9, 2011) ......................................18

*Morales v. Unilever U.S., Inc.*,
  Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) .............20

*Morrison v. Ross Stores, Inc.*,
  No. 18-cv-02671, 2018 WL 5982006 (N.D. Cal. Nov. 14, 2018) .................................23

*Pelayo v. Nestle USA, Inc.*,
　989 F. Supp. 2d 973 (C.D. Cal. 2013) ..............................................................................14, 15, 16

*Rahman v. Motts*
　LLP, No. 12-cv-03482, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018)........................................19

*Red v. Kraft Foods, Inc.*,
　No. cv-10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ....................................................15

*Reiter v. Cooper*,
　507 U.S. 258 (1993)......................................................................................................................12

*Robinson v. Wells Fargo Home Mortg.*,
　No. 16-cv-01619, 2016 WL 6524403 (N.D. Cal. Nov. 3, 2016) ..................................................17

*Rooney v. Cumberland Packing Corp.*,
　No. 12-cv-0033, 2012 WL 1512106 (N.D. Cal. Oct. 4, 2013) .....................................................16

*Sollberger v. Wachovia Sec., LLC*,
　SACV 09-0766AGANX, 2010 WL 2674456, at *1 (C.D. Cal. June 30, 2010) .........................24

*Swartz v. KPMG LLP*,
　476 F.3d 756 (9th Cir. 2007) .......................................................................................................24

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
　307 F.3d 775 (9th Cir. 2002) .......................................................................................................12

*Tasion Commn's, Inc. v. Ubiquiti Networks, Inc.*,
　308 F.R.D. 630 (N.D. Cal. 2015) .................................................................................................23

*Todd v. Tempur-Sealy Intl., Inc.*,
　No. 13-cv-04984, 2016 WL 344479 (N.D. Cal. Jan. 28, 2016)....................................................19

*Valentino v. Carter-Wallace, Inc.*,
　97 F.3d 1227 (9th Cir. 1996) .......................................................................................................22

*Vess v. Ciba-Geigy Corp.*,
　317 F.3d 1097 (9th Cir. 2003) ........................................................................................................5

*Videtto v. Kellogg USA*,
　No. 2:08-cv-01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009)...............................................14

*Viggiano v. Hansen Natural Corp.*,
　944 F. Supp. 2d 877 ......................................................................................................................16

*Walters v. Vitamin Shoppe Induss., Inc.*,
　No. 3:14-cv-1173-PK, 2018 WL 2418544 (D. Or. May 29, 2018) .............................................23

*Walters v. Vitamin Shoppe Induss., Inc.*,
　No. 3:14-cv-1173-PK, 2018 WL 2424132 (D. Or. May 8, 2018) ...............................................23

vii

*Wilson v. Frito-Lay N. Amer., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ..................................................................................17

*Zep Solar Inc. v. Westinghouse Solar Inc.*,
    No. 11-cv-06493, 2012 WL 1293873 (N.D. Cal. Apr. 16, 2012) ...........................................5

**Statutes and other Authorities**

21 C.F.R. § 201.66(c) ............................................................................................................6, 9, 19

21 C.F.R. § 201.327 ......................................................................................................................7

21 C.F.R. § 352 ........................................................................................................................6, 13

21 U.S.C. § 379r(a)(2) .......................................................................................................2, 9, 10

21 U.S.C. § 393 .............................................................................................................................6

72 Fed. Reg. 49,070 ......................................................................................................................7

84 Fed. Reg. 6204 .....................................................................................................................8, 13

84 Fed. Reg. 6216 .........................................................................................................................1

California Civil Code § 1750 .........................................................................................................3

California Civil Code § 1782(a) .................................................................................................3, 23

California Legal Remedies Act ("CLRA") ............................................................................. *passim*

FDA Modernization Act .................................................................................................................8

Fed. R. Civ. P. 8 ..................................................................................................................4, 3, 24

Fed. R. Civ. P. 9 ..................................................................................................................... *passim*

Fed. R. Civ. P. 12 ................................................................................................................... *passim*

Fed. R. Civ. P. 23 ................................................................................................................... *passim*

Fed. R. Civ. P. 82 .......................................................................................................................22

Federal Food, Drug, and Cosmetic Act ("FDCA") ................................................................ *passim*

Food and Drug Modernization Act of 1997 ..................................................................................9

H.R. Res. 748, 116th Cong. (2020) ..........................................................................................8, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Bayer HealthCare Pharmaceuticals Inc., Bayer HealthCare LLC, Beiersdorf, Inc., and Beiersdorf North America, Inc. (collectively, the "Defendants") respectfully submit this Memorandum of Points and Authorities in Support of their Motion to Dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b), 12(b)(1), 12(b)(6), or Dismiss or Strike the Nationwide Class Allegations pursuant to Federal Rule of Civil Procedure 12(f).[1]

## **INTRODUCTION**

Plaintiffs Steven Prescott and Mike Xavier bought two—but challenge the labeling of four—Coppertone sunscreens: (1) Coppertone Water Babies Mineral-Based Sunscreen Lotion ("Water Babies Lotion"); (2) Coppertone Water Babies Mineral-Based Sunscreen Stick ("Water Babies Stick"); (3) Coppertone Kids Mineral-Based Sunscreen Lotion ("Kids Lotion"); and (4) Coppertone Sport Face Mineral-Based Sunscreen Lotion ("Sport Lotion") (collectively, the "Products"). Plaintiffs do not dispute that zinc oxide is contained in all four Products, or that zinc oxide is a mineral. Complaint ("Compl.") (Dkt. No. 1) ¶ 22. Instead, Plaintiffs allege that the Products were impermissibly labeled as "mineral-based" when they contain both mineral (zinc oxide) and chemical ingredients. Compl. ¶ 4.

Plaintiffs' claims are frivolous. The Products have "mineral-based" formulas: the most significant active ingredient in each sunscreen is zinc oxide, a mineral. *Id.* ¶ 22.[2] The Products never claim that they do not contain *any* chemical ingredients, and the full ingredient list—including all active and inactive ingredients—is displayed clearly on the labels pursuant to U.S. Food & Drug Administration ("FDA") regulations. *Id.* ¶ 4. At its core, Plaintiffs' Complaint is premised on the flawed assumption that consumers interpret "mineral-based" to mean that the

---

[1] Defendants have also filed, concurrently herewith, a motion to transfer or dismiss for lack of personal jurisdiction. Defendants file this Motion to Dismiss or Strike without prejudice to or waiver of their challenges to forum and personal jurisdiction. *Freeney v. Bank of Amer. Corp.*, No. 15-02376, 2015 WL 4366439, at *19 (July 16, 2015 C.D. Cal.) (defendant only waives a personal jurisdiction defense if she does "not raise it in a responsive pleading or in a motion to dismiss that precedes the responsive pleading").

[2] *See also* 84 Fed. Reg. 6216 (February 26, 2019) ("Zinc oxide is an inorganic, mineral compound. Because of its ability to reflect UVA wavelengths, zinc oxide is frequently used in sunscreens to help establish broad spectrum protection.") (Request for Judicial Notice ("RJN") Ex. A).

1

Products do not contain *any* non-mineral ingredients. *Id.* ¶¶ 4, 38. Reasonable consumers, however, would understand that "mineral-***based***" means that the sunscreens contain something ***in addition to*** the primary mineral ingredient. No reasonable consumer believes a "water-based" paint contains only water; the same common sense interpretation applies to the Products. Each of Plaintiffs' claims fails, and dismissal is appropriate for several reasons.

*First*, Plaintiffs' claims are expressly preempted under the Federal Food, Drug, and Cosmetic Act ("FDCA"). Because Plaintiffs' state law claims attempt to impose requirements "different from or in addition to, or that [are] otherwise not identical with" the requirements of the FDCA, they cannot proceed. 21 U.S.C. § 379r(a)(2).

*Second*, Plaintiffs present this Court with an issue of first impression that Congress squarely placed within the jurisdiction of the FDA pursuant to the FDCA—a statute that subjects sunscreens to comprehensive regulatory authority and requires expertise and uniformity in its administration. Plaintiffs' request that the Court intrude on the regulatory terrain of the FDA should be rejected pursuant to the doctrine of primary jurisdiction.

*Third*, Plaintiffs' statutory consumer fraud claims (Counts I, II, III) fail as a matter of law. Plaintiffs allege that consumers are deceived because they interpret "mineral-based" to mean the Products contain *no* chemicals. Compl. ¶ 34. The ingredient list, however, explicitly identifies the composition, and reasonable consumers would understand that the "base" of an item is not the whole. Because Defendants did not warrant that the Products contain zero chemicals, no warranty has been breached (Count IV) and Defendants have not been unjustly enriched (Count V).

*Fourth*, Plaintiffs lack standing to pursue claims regarding products they did not purchase.

*Fifth*, Plaintiffs lack standing to seek injunctive relief because they have not plausibly pled that they face imminent threat of future injury. Plaintiffs now know that the "mineral-based" Products contain zinc oxide, along with other active and inactive ingredients, as clearly displayed on the Products' labels' ingredient lists. There can be no future harm, as the veracity of any allegedly ambiguous labeling claims can be confirmed by a cursory review of the label.

*Sixth,* Plaintiffs lack standing to represent absent class members who reside outside of California, as Plaintiffs have not alleged injuries traceable to the laws that govern those class

2

members' claims. Moreover, the material differences among 49 states' laws render Plaintiffs' nationwide class claims unmanageable, making certification under Rule 23 inappropriate under Ninth Circuit law. Plaintiffs' claims brought on behalf of a putative nationwide class must therefore be dismissed or stricken.

*Seventh*, Plaintiffs' damages claim under the California Legal Remedies Act ("CLRA"), California Civil Code § 1750, Compl. ¶¶ 86–103, must be dismissed for failure to comply with the mandatory thirty days' notice under California Civil Code § 1782(a).

*Eighth and finally*, the Complaint fails procedurally, as it does not satisfy the fair notice requirement of Rule 8(a) nor the heightened pleading requirement of Rule 9(b). Because Plaintiffs collectively plead against all Defendants, they fail to sufficiently allege the who, what, when, where, and why of the alleged "fraudulent scheme." Compl. ¶ 1.

## BACKGROUND

***Coppertone Sunscreens***. Coppertone has been in the sun protection industry for more than 73 years, Declaration of Graeme Fleckney ("Fleckney Decl.") (Ex. 1 hereto) ¶ 3, and has been committed to providing consumers with sun protection of the highest standard, *id*. ¶ 4. This commitment means that Coppertone uses only acceptable active ingredients—as defined by the FDA—in its sunscreens.[3] This is meaningful, as FDA exhaustively "regulates sunscreens to ensure they meet safety and effectiveness standards."[4] There is no dispute that the primary active ingredient in each Product is zinc oxide—a mineral ingredient that is "generally recognized as safe and effective" by the FDA.[5] Indeed, the percentage of zinc oxide is larger than that of any other active ingredient. *See* RJN Ex. D (images of the Products' labels and ingredient lists).[6]

[3] *See* FDA, August 29, 2019, *Sunscreen: How to Help Protect Your Skin from the Sun, available at* https://www.fda.gov/drugs/understanding-over-counter-medicines/sunscreen-how-help-protect-your-skin-sun (noting that Octinoxate, Octisalate, and zinc oxide—active the ingredients in the Products—are approved active ingredients that work to "protect[ ] your skin from the sun's harmful UV rays") (RJN Ex. B at 7).
[4] *Id.* at 1.
[5] *See* FDA, February 21, 2019, *FDA Advances New Proposed Regulation to Make Sure that Sunscreens Are Safe and Effective, available at* https://www.fda.gov/news-events/press-announcements/fda-advances-new-proposed-regulation-make-sure-sunscreens-are-safe-and-effective (RJN Ex. C at 1).
[6] Defendants include each Product's label in Ex. D in their Request for Judicial Notice because the images in the Complaint do not contain the full ingredient lists that are contained on the back of the label. *See Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal.

3

*Plaintiffs' Claims*. Prescott purchased the Sport Lotion, Comp. ¶ 10, and Xavier purchased the Sport Lotion and the Kids Lotion, *id.* ¶ 11. Neither Plaintiff purchased the Water Babies Lotion or the Water Babies Stick. Plaintiffs allege that the phrase "mineral-based" deceives consumers into believing the Products contain *no* chemical ingredients. *Id.* ¶¶ 4, 5. Specifically, Plaintiffs assert five causes of action: The first three, pleaded on behalf of a putative "California Subclass," are: (1) "Violation of California Unfair Competition Law" ("UCL"), (2) "Violation of California False Advertising Law" ("FAL"), and (3) "Violation of the California Consumers Legal Remedies Act" ("CLRA). *Id.* ¶¶ 60–103. Plaintiffs also bring two claims— "Breach of Express Warranty" and "Unjust Enrichment"—on behalf of both the putative "California Subclass," as well as a putative "Nationwide Class." *Id.* ¶¶ 104–117.

Plaintiffs define the putative California subclass as "[a]ll residents of California who, within four years prior to the filing of this Complaint, purchased the Products," and define the putative nationwide class as "[a]ll residents of the United States who, within the relevant statute of limitations periods, purchased the Products." *Id.* ¶ 48. On behalf of themselves and the purported classes, Plaintiffs seek injunctive relief "enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein," and damages, which include "compensatory and monetary damages, restitution or disgorgement," as well as attorneys' fees, costs, punitive damages, and pre and post-judgment interest. *Id.* ¶ 118.

## LEGAL STANDARD

*Rule 12(b)(6) Dismissal*. Rule 8 requires a Complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must be dismissed under Rule 12(b)(6) if it does not "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[L]abels and conclusions" or "formulaic recitation[s] of the elements of a cause of action" do not suffice; nor do "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Determining whether a complaint

---

2013) (taking judicial notice of defendants' packaging labels, which were "specifically reference[d] and quote[d]" in the plaintiff's complaint, on a Rule 12(b)(6) motion).

4

states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

*Rule 12(b)(1) Dismissal*. A party may contest subject matter jurisdiction based on lack of standing pursuant to Rule 12(b)(1). *See Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) ("Standing is a threshold matter central to our subject matter jurisdiction."); *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d Cir. 2007) ("A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

*Rule 12(f) Motion to Strike Standard*. Rule 12(f) "permits a court to strike 'any redundant, immaterial, impenitent, or scandalous matter' from a pleading." *McGhee v. Tesoro Refining & Mktg. Co., LLC*, No. 18-cv-05999, 2020 WL 1310528, at *3 (N.D. Cal. Feb. 21, 2020). A dismissal pursuant to Rule 12(f) serves the purpose of avoiding "the expenditure of time and money that will arise from litigating spurious issues by dispensing with those issues prior to trial." *Id.* The Court "may properly grant motions to strike when a defense or a claim is insufficient as a matter of law." *Zep Solar Inc. v. Westinghouse Solar Inc.*, No. 11-cv-06493, 2012 WL 1293873, at *1 (N.D. Cal. Apr. 16, 2012).

*Rule 9(b) Particularity Standard.* Claims brought under the UCL, FAL, and CLRA must comply with Rule 9(b)'s particularity requirements. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Great Pac. Sec. v. Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018). Rule 9(b) "demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done something wrong.'" *Kearns*, 567 F.3d at 1124 (quoting *Bly-Magee v. Calif.*, 236 F.3d 1014, 1019 (9th Cir. 2001)). The plaintiff must provide "the who, what, when, where, and how" of the alleged fraud. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted).

## <u>ARGUMENT</u>

**I.     PLAINTIFFS' REQUESTS TO IMPOSE REQUIREMENTS ABOVE AND BEYOND FDA REGULATIONS ARE PREEMPTED.**

**A.     Sunscreens Are Over-The-Counter Drugs, Subject to an Extensive, Comprehensive Regulatory Regime.**

The Products are considered over-the-counter ("OTC") drugs and, accordingly, are comprehensively regulated by the FDA pursuant to the authority granted by the FDCA. 21 U.S.C. § 393.[7] Specifically, FDA mandates that an OTC drug's (including a sunscreen's) "outside container or wrapper of the retail package" contain particular information, including "the established name of each active ingredient" and "the established name of each inactive ingredient." 21 C.F.R. § 201.66(c).

In addition to the general requirements applicable to all OTC drugs, the FDA has, over the last two decades, established comprehensive labeling and testing regulations specific to sunscreens.[8] In May 1999, the FDA established a sunscreen monograph[9] with an anticipated effective date of May 21, 2001. 21 C.F.R. 352. This sunscreen monograph included conditions for certain active ingredients (including the active ingredients contained in the Products) to be generally recognized as safe and effective.[10] The FDA "concluded that these ingredients . . . could [] be used in combination with each other as long as each active ingredient contribute[d] a minimum SPF of 2[.]"[11] The FDA stayed the effective date of the 1999 sunscreen monograph

---

[7] *See* FDA, updated June 23, 2019, *Questions and Answers: FDA Announces New Requirements for Over-the-Counter (OTC) Sunscreen Products Marketed in the U.S.*, *available at* https://www.fda.gov/drugs/understanding-over-counter-medicines/questions-and-answers-fda-announces-new-requirements-over-counter-otc-sunscreen-products-marketed-us#Q5 ("All products that claim to provide Broad Spectrum SPF protection are regulated as sunscreen drug products.") (RJN Ex. E at 5). Each of the Products' labels state that they provide "Broad Spectrum SPF 50." (RJN Ex. D).

[8] *See* FDA, May 22, 2018, *Enforcement Policy – OTC Sunscreen Drug Products Marketed Without an Approved Application Guidance for Industry*, *available at* https://www.fda.gov/media/80403/download (RJN Ex. F) (providing a history of FDA's enforcement approach with respect to OTC sunscreen products).

[9] A monograph "establish[es] conditions under which the FDA permits certain OTC drugs to be marketed without approved new drug applications because they are generally recognized as safe and effective (GRASE) and not misbranded." (RJN Ex. C at 1).

[10] *Supra,* n. 8 at 3.

[11] *Id.* at 3.

6

indefinitely in 2001, because it had not yet established broad spectrum testing and labeling requirements for OTC sunscreen products.[12]

In the meantime, FDA published another proposed rule regarding OTC sunscreens in the *Federal Register* on August 27, 2007. *See* 72 Fed. Reg. 49,070 (RJN Ex. G). After "reviewing information submitted in response to the proposed rule and other pertinent information," the FDA published the "2011 sunscreen final rule, which is codified in FDA regulations as 21 C.F.R. 201.327."[13] The 2011 final sunscreen rule "prescribes labeling required to be used on the drug products' principal display panel and Drug Facts labeling, and describes the methods for conducting two effectiveness test procedures required to be able to make certain claims[.]"[14] FDA confirmed that manufacturers who "fail to comply with the 2011 sunscreen final rule by the compliance dates . . . may be subject to regulatory action."[15] The 2011 final rule regulates the entirety of sunscreen product labels, with requirements applicable to products' principal display panels, uses, warnings, and directions.[16]

The FDA further published a thorough enforcement policy for the regulation of OTC sunscreen products in May 2018, which "describes FDA's enforcement approach with respect to [OTC] sunscreen products marketed without approved applications during the period before a final sunscreen monograph becomes effective."[17] The FDA explained that the "enforcement policy is premised on manufacturers following all applicable recommendations for such product."[18] Importantly, in the exercise of its enforcement discretion, FDA specifically stated it did "not intend to object to the marketing" of OTC sunscreens that complied with all applicable FDA requirements, including those sunscreens that "[c]ontain as sunscreen active ingredients only those active ingredients or combinations of active ingredients listed in section II," which

[12] *Id.* at 3, 4.
[13] *See* FDA, December 6, 2012, *Guidance for Industry Labeling and Effectiveness Testing: Sunscreen Drug Products for Over-the-Counter Human Use – Small Entity Compliance Guide*, *available at* https://www.fda.gov/files/drugs/published/Labeling-and-Effectiveness-Testing--Sunscreen-Drug-Products-for-Over-The-Counter-Human-Use-%E2%80%94-Small-Entity-Compliance-Guide_pdf.pdf (RJN Ex. I at 2).
[14] *Id.* at 2.
[15] *Id.* at 9.
[16] *Id.* at 3-4.
[17] *Supra*, n. 8, at 1.
[18] *Id.* at 6.

7

includes the active ingredients in the Products.[19] FDA's enforcement policy also provided a list of impermissible claims that would render a product misbranded, such as implying "that the use, alone, of any sunscreen reduces the risk of or prevents skin cancer or early skin aging," suggesting "instant protection or protection immediately upon application," or alleging "all-day protection, or extended wear claims citing a specific number of hours of protection."[20] Notably, this list of prohibited claims does not include any labeling claims regarding sunscreen products' active ingredients, nor does it include any claims about minerals.

Finally, on February 26, 2019, the FDA published another proposed rule regarding OTC sunscreens to "put into effect a final monograph for nonprescription, OTC sunscreen drug products." *See* 84 Fed. Reg. 6204 (RJN Ex. A). The proposed rule contemplates several major changes for sunscreen product regulation. *Id.* Specifically, the rule proposes, *inter alia*, alterations to the acceptable ingredient list from the stayed 1999 sunscreen final monograph and 2011 sunscreen final rule, as well as new labeling requirements that a sunscreen's statement of identity on the principal display panel list the product's active ingredients in alphabetical order followed by "Sunscreen" and the product's dosage form. *Id.* at 6207. The period for public comment on this rule ended May 28, 2019, *id.* at 6204, placing these relevant labeling issues directly before the FDA for decision. Indeed, further changes *must* be made to the sunscreen monograph, as the CARES Act requires publication of an updated monograph within 18 months of March 27, 2020. *See* H.R. Res. 748, 116th Cong. (2020) (enacted) § 3854(c)(1)(B)(ii).

**B.    Plaintiffs Impermissibly Seek To Regulate FDCA Compliant Labels.**

It is well-established that "[s]tate action may be foreclosed by express language in a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001); U.S. Const. Art. VI, cl. 2. In determining whether federal law preempts a state law claim, the "analysis begins with the language of the [federal] statute." *Lorillard*, 533 U.S. at 542. In passing the FDA Modernization Act in 1997, Congress prohibited states from establishing any requirement relating to the regulation of a nonprescription drug "different from or in addition to, or that is otherwise

---

[19] *Id.*; *see also supra*, n.7.
[20] *Supra*, n. 8, at 5.

8

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES, CASE NO. 5:20-CV-00102

not identical with" a requirement under the FDCA. 21 U.S.C. § 379r(a)(2).[21]

In challenging Defendants' use of the phrase "mineral-based," Plaintiffs do not allege any violation of any FDA regulation or guidance.  Rather, they seek to do precisely what the FDCA prohibits: use state law to impose additional or different label requirements beyond the comprehensive FDA regulations for sunscreen products. Attempting to modify an exhaustive federal scheme violates the express preemption provision of § 379r(a)(2). *See, e.g.*, *Carter v. Novartis*, 582 F. Supp. 2d 1271 (C.D. Cal. 2008); *Crozier v. J&J Consumer Cos.*, 901 F. Supp. 2d 494, 503 (D.N.J. 2012); *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002).

*Carter v. Novartis* is instructive. There, the plaintiffs brought state consumer fraud claims against the manufacturers of OTC cough medicines, alleging that their use of the phrase "toddler" and pictures of toddlers on the labels was deceptive, as the products were allegedly not safe for use by young children. 582 F. Supp. 2d 1271, 1276–77. Like sunscreens, however, cold medicines—and their labels—are regulated by FDA. *Id.* at 1280. The Court found the plaintiffs' claims to be expressly preempted by § 379r. Specifically, the Court held that the "touchstone of preemption under § 379r is the *effect* that a finding of liability on a particular claim would have on the Defendants. . . . As long as th[e] claim imposes a 'requirement' that is at variance with FDA regulations, it is preempted." *Id.* at 1283. *See also id.* at 1286 ("[I]f the defendant is in full compliance with FDA regulations, any non-parallel state law liability . . . imposes a 'requirement' that is expressly preempted").

Plaintiffs here seek to impose requirements at variance with those promulgated by FDA. Each active and inactive ingredient is disclosed on the Products' labels in compliance with the extensive regulatory regime that unambiguously governs ingredient lists on OTC sunscreen drug products. *See* RJN Ex. D (labels); 21 C.F.R. § 201.66(c). Defendants, by labeling the Products as "mineral-based," are simply conveying factual information on the Products' principal display panel that they are required to list on the back of the label: that the products contain a mineral as

---

[21] The Food and Drug Modernization Act of 1997 was enacted "to improve the regulation of foods, drugs, devices, and biological products." *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1279 n. 13 (C.D. Cal. 2008) (quoting Pub. L. No. 105-115 (Nov. 21, 1997), 111 Stat. 2296).

9

the primary active ingredient. *Cf. Gisvold v. Merck & Co., Inc.*, 62 F. Supp. 3d 1198, 1202–03 (S.D. Cal. 2014) (FDCA preempted plaintiff's claim that labeling sunscreen as "SPF 100+" was misleading, where the regulations governing OTC sunscreens required that they state their SPF value on the label). Moreover, the FDA has expressly concluded that sunscreen products may contain "combinations of active ingredients" (including the active ingredients in the Products), and that it does "not intend to object to the marketing" of OTC sunscreens that comply with applicable FDA requirements.[22]

Plaintiffs claim, however, that Defendants' compliance is insufficient, and demand that Defendants take action *different from* or *in addition to* federal compliance. But "FDA regulations cover the entire label . . . and thus preempt challenges to a label, even if the challenge is not based on inaccuracy or incompleteness." *Crozier*, 901 F. Supp. 2d at 504. Ultimately, despite Defendants' compliance with FDA labeling requirements and FDA's express acknowledgement that sunscreens may contain active ingredient combinations, Plaintiffs assert that the Products' labels are not "accurate or adequate," and this assertion is preempted. *Kanter*, 99 Cal. App. 4th at 797 (claims that lice medication label statement was false and misleading was preempted because the "challenged statements [were] simply alternative explanations of the information that must be included under the monograph, not express warranties of benefits or results outside the scope of that federal requirement"); *Carter*, 582 F. Supp. 2d at 1284 (defendants' labels were "based entirely upon FDA-approved labeling and advertising" and liability would impermissibly punish defendants "for complying with FDA regulations"); *Crozier*, 901 F. Supp. 2d at 503 (plaintiff's claims that product name was misleading were preempted where defendant complied with FDA regulations, including ingredient list requirements for OTC medications).

The question is: "would a finding of liability impose requirements that are different from or in addition to FDA requirements?" *Carter*, 582 F. Supp. 2d. at 1271. The answer here is yes— Plaintiffs bring their claims *despite the fact* that Defendants have complied entirely with FDA regulatory requirements. Plaintiffs' claims fall squarely within the express preemption provision of § 379r and should be dismissed. *See Kanter*, 99 Cal. App. 4th at 795 ("But when a state law

___

[22] *See, supra*, n. 8, at 6.

10

claim, however couched, would effectively require a manufacturer to include additional or different information on a federal approved label, it is preempted").

### C. The FDA Has Already Considered—and Continues to Consider—Sunscreen Labeling Requirements.

Preemption is particularly appropriate where, as here, FDA already weighed in on Plaintiffs' concerns. Plaintiffs allege that the Products' labels do not appropriately notify consumers of their chemical ingredients (even though they contain a full ingredient list). Compl. ¶ 34. But the FDA already considered the consumer's attention to the ingredients on a label, and concluded that the required label and ingredient list (pursuant to FDA regulations) is sufficient to inform consumers about active ingredients. *See Over-The-Counter Human Drugs: Labeling Requirements*, 64 Fed. Reg. 13,260 (RJN Ex. H).

In *Crozier*, plaintiffs alleged that using Neosporin branding on a product that lacked the traditional antibiotics of other Neosporin products was misleading. 901 F. Supp. 2d at 497. The Court held that the FDCA expressly preempted plaintiffs' claims, noting that federal regulations were promulgated "specifically to address potential problems arising from brand confusion." *Id.* at 503. Because "the FDA specifically considered brand name confusion in drafting its regulations," the Court held that "claims pertaining to the [] label [were] preempted." *Id.* at 505.

Similarly, Plaintiffs' claims are rooted in a concern that the phrase "mineral-based" allegedly deceives consumers regarding the Products' active ingredients. Compl. ¶ 34. But FDA has expressed confidence in the consumer's ability to review a list of active ingredients:

> This final rule requires the listing of active ingredients as the very first information within a clearly defined panel, immediately below a prominent title. This location will enable consumers to quickly and systematically compare ingredients within products for similar uses. In addition, because the respective purposes will be listed next to each active ingredient, consumers will know why the ingredient is in the product. Regardless of placement on the PDP, such uniform and prominent placement will help ensure proper product selection.

*Over-The-Counter Human Drugs: Labeling Requirements*, 64 Fed. Reg. 13,260 (RJN Ex. H). Moreover, FDA explicitly permits "combinations of active ingredients," and the Products' active ingredient combination—including disclosure of the Products' *primary* active ingredient, zinc

11

oxide—is appropriately noted in the Products' FDCA-compliant ingredient lists on their labels for the consumer's review. *See* RJN Ex. D (labels); *supra,* n. 8, at 6. Plaintiffs should not be permitted to use state claims to modify federal law; their claims are expressly preempted.

II.     **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED BECAUSE FDA HAS PRIMARY JURISDICTION OVER LABELING OF SUNSCREENS.**

Plaintiffs ask this Court to regulate Defendants' sunscreen labels, but that regulatory authority belongs to the FDA. *See, supra*, n. 7 at 2 (FDA regulates sunscreens "to ensure that sunscreens meet modern-day standards for safety and effectiveness and to help consumers have the information they need so they can choose the right sun protection for themselves and their families"). This Court should decline to consider Plaintiffs' claims because the FDA has primary jurisdiction over these issues. *Gisvold*, 62 F. Supp. 3d at 1204 (dismissing claims that sunscreen's "SPF 100+" label misleadingly suggested the sunscreen provided twice the sun protection as an SPF 50 product, where the issue of whether SPF values of 50 and above conferred any additional clinical benefit had been pending before the FDA for three years).

The doctrine of primary jurisdiction protects the proper relationship between federal agencies and courts. *Far E. Conference v. U.S.*, 342 U.S. 570, 574 (1952). Primary jurisdiction "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decision[-]making responsibility should be performed by the relevant agency rather than the courts." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 780 (9th Cir. 2002). Because the doctrine "does not deprive the court of jurisdiction, it has discretion either to retain jurisdiction" and stay the case pending agency guidance, "or if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice." *Reiter v. Cooper*, 507 U.S. 258, 268–69 (1993).

The doctrine is appropriately employed where there is "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." *Syntek*, 307 F.3d at 781. Plaintiffs present (1) an issue of first impression—whether and when use

12

of the term "mineral-based" on OTC sunscreens is permissible—that (2) has been placed by Congress within the jurisdiction of the FDA (3) pursuant to the FDCA (which subjects OTC drugs, including sunscreens, to a comprehensive regulatory scheme) that (4) requires a peculiar expertise. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 905 F. Supp. 2d 1013, 1016 (N.D. Cal. Nov. 19, 2012) (declining "to make any independent determination of whether defendants' use of [the term] was false and misleading" as "[d]oing so would risk undercutting the FDA's expert judgments and authority") (citation omitted), *rev'd in part*, 783 F.3d 753 (9th Cir. 2015).[23]

Determination by a court of whether the term "mineral-based" is misleading risks "undercutting the FDA's expert judgments and authority" in the OTC drug space—a complex area that is regulated by the FDA. *Astiana*, 905 F. Supp. 2d at 1016. This conclusion is particularly true because the new CARES Act requires the FDA to propose an administrative order for sunscreen regulation within 18 months of the Act's passage on March 27, 2020. H.R. Res. 748, 116th Cong. (2020) (enacted) § 3854(c)(1)(B)(ii). This order must "revise the final administrative order concerning nonprescription sunscreen" in 21 C.F.R. 352 (*i.e.*, the 1999 sunscreen monograph). *Id.*; *Gisvold*, 62 F. Supp. 3d 1198, 1204 (S.D. Cal. 2014) (noting that, while "the FDA may be moving glacially" on sunscreen labeling, plaintiffs' invitation to exercise jurisdiction "presents substantial risk[s] of inconsistent rulings on issues presently pending before the FDA"). Moreover, FDA's February 26, 2019 proposed rule specifically contemplated a new labeling requirement that all active ingredients be disclosed on a sunscreen product's principal display panel. 84 Fed. Reg. 6204. Plaintiffs' concerns here regarding the Products' disclosure of only the primary active ingredient on the front label is therefore currently being considered by the FDA. *See Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 532 F.2d 412, 420 (5th Cir. 1976) ("The advisability of invoking primary jurisdiction is greatest when the issue is already before the agency").

---

[23] On Appeal, the Ninth Circuit affirmed that "the district court did not err in invoking primary jurisdiction." 783 F.3d 753, 761 (9th Cir. 2015). Indeed, "[d]etermining what chemical compounds may be advertised as natural on cosmetic product labels is a particularly complicated issue that Congress has committed to the FDA," and "[o]btaining expert advice from that agency would help ensure uniformity in administration of the comprehensive regulatory regime established by the FDCA." *Id.*

13

Plaintiffs' claims trespass on the FDA's ability to decide these questions, and their claims should be dismissed. Alternatively, the case should be stayed pending the new FDA administrative order. *See Astiana*, 783 F.3d at 761 ("Once a district court determines that primary jurisdiction is appropriate, it may either stay proceedings or dismiss the case without prejudice.").

## III. THE CHALLENGED STATEMENT IS NOT FALSE OR DECEPTIVE TO A REASONABLE CONSUMER (COUNTS I, II, and III).

For each of their claims, Plaintiffs must demonstrate that Defendants' use of the phrase "mineral-based" is false or deceptive to the reasonable consumer. *See Videtto v. Kellogg USA*, No. 2:08-cv-01324, 2009 WL 1439086, at *2 (E.D. Cal. May 21, 2009) (claims under the UCL, FAL, and CLRA "are governed by the 'reasonable consumer test'"); *Bohac v. Gen. Mills Inc.*, No. 12-cv-05280, 2014 WL 1266848, at *9 (N.D. Cal. Mar. 26, 2014) (express warranty claims can succeed only where "a reasonable consumer could plausibly read the terms . . . to be specific factual representations"). The Products' primary active ingredient is the mineral zinc oxide. *See* RJN Ex. D. Thus, "mineral-based" truthfully and accurately describes the Products' composition.

In pleading deception, Plaintiffs must plead "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers." *Lavie*, 105 Cal. App. 4th at 508. Rather, it must be "probable that a significant portion of the general consuming public . . . acting reasonably in the circumstances, could be misled." *Id.*; *see also Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008). "[W]here a Court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging," dismissal is proper. *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978 (C.D. Cal. 2013) (granting motion to dismiss: "to the extent there is any ambiguity . . . it is clarified by the detailed information contained in the ingredient list"); *Videtto*, 2009 WL 1439086, at *3 (granting motion to dismiss with prejudice after finding no reasonable consumer would be deceived).

Review of the Products' respective packaging here (RJN Ex. D) warrants dismissal. *Pelayo*, 989 F. Supp. 2d at 978. The labels use three different phrases to describe the Products: (i) "mineral-based," (ii) "mineral-based formula," and (iii) "mineral-based protection." RJN Ex. D. These statements indicate that the base of the Products—or the main ingredient that functions

14

as the sun protectant—is a mineral, zinc oxide. *Id.* As disclosed in the ingredient lists on the labels, zinc oxide is the predominant active ingredient in each of the Products. *See* RJN Ex. D. Plaintiffs nevertheless allege that consumers will interpret "mineral-based" to mean that the Products do not contain *any* chemical ingredients, or that there is a larger percentage of mineral active ingredients than combined chemical active ingredients. *See* Compl. ¶ 38.

This interpretation, however, contradicts the common sense understanding of a "base" of a product. Merriam-Webster defines "base" in a number of ways, all of which support the conclusion that a "base" of a product is not the whole: "the bottom of something considered as its support," "a supporting or carrying ingredient," "a first or bottom layer of something on which other elements are added," or "the fundamental part of something." *Base*, Merriam-Webster (last visited April 23, 2020), *available at* https://www.merriam-webster.com/help/citing-the-dictionary. Consumers do not expect "water-based" paints to be pure water, and reasonable consumers expect that "mineral-based" sunscreens will contain other ingredients as well.

Even if some consumers interpreted "mineral-based" in the way Plaintiffs propose, "[j]ust because some consumers may unreasonably interpret the term" does not render it false or deceptive. *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019) (claims dismissed under reasonable consumer standard); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 966 (9th Cir. 2016) (product claim would not deceive a reasonable consumer just because "some consumers might hazard such an assumption"). Nowhere do the Products' labels provide any indication that minerals are the *only* active ingredients. The critical—and factually true— statement "mineral-based" provides only that the Products have a mineral backbone. The claim "mineral-based formula" indicates that the formula is not 100% mineral, as further made clear by the ingredient list on the label (RJN Ex. D). Plaintiffs cannot pretend that a reasonable consumer "will read [the] true statement on [the] package," and then subsequently disregard common sense and "assume things about the products *other than* what the statement actually says." *Red v. Kraft Foods, Inc.*, No. cv-10-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012).

Moreover, any consumer who wonders whether the Products have a larger percentage of minerals than chemicals can review the FDA-mandated ingredient list on the label. *See Pelayo*,

15

989 F. Supp. 2d at 980 ("[T]o the extent there is any ambiguity regarding the definition of [the label term] . . . it is clarified by the detailed information contained in the ingredient list"); *Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033, 2012 WL 1512106 (N.D. Cal. Oct. 4, 2013) (no reasonable consumer could be deceived by the label into thinking that the sugar was raw because the package stated that the sugar was turbinado-sugar); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 892 n.38 ("In cases where a product's front label is accurate and consistent with the statement of ingredients, courts routinely hold that no reasonable consumer could be misled by the label, because a review of the statement of ingredients" clarifies any ambiguity).

## IV. THE CHALLENGED STATEMENT IS NOT FALSE OR MISLEADING, THUS DEFENDANTS DID NOT BREACH ANY EXPRESS WARRANTY (COUNT IV).

While Plaintiffs' breach of warranty claim fails because a reasonable consumer would not be deceived by the phrase "mineral-based," the claim also fails because Defendants have neither made an express warranty of no chemical ingredients nor breached it. Breach of express warranty requires Plaintiffs to prove that: "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Cadena v. Am. Honda Motor Co., Inc*., No. 18-cv-4007, 2018 WL 8130613, at *7 (C.D. Cal. Nov. 14, 2018) (citation omitted).[24] The Products are labeled as "mineral-based," and the most significant active ingredient is the mineral zinc oxide. RJN Ex. D. Plaintiffs received what they bargained for: a sunscreen with a primary mineral ingredient.

To avoid this outcome, Plaintiffs allege that Defendants breached a warranty that was never made –that the Products contain *no* active chemical ingredients. Courts regularly dismiss breach of warranty claims where the challenged phrase does not actually create the warranty alleged. *See*

---

[24] The analysis here applies California law. Plaintiffs bring both this claim and their claim for unjust enrichment on behalf of a putative nationwide class, invoking the laws of all fifty states. Compl. ¶¶ 104–110. If this Court strikes Plaintiffs' nationwide class allegations (*see, infra*, at Section VIII), it should also dismiss the breach of express warranty and unjust enrichment claims as to California residents. Alternatively, even if this Court permits Plaintiffs' nationwide class allegations, it should still dismiss Plaintiffs' breach of express warranty and unjust enrichment claims under all states' laws. Defendants have made no false promises or affirmations about the Products, as Plaintiffs allege for their breach of express warranty claim, *id.* ¶ 106, nor have Defendants engaged in any "fraudulent and misleading representations and omissions," as Plaintiffs allege for their unjust enrichment claim, *id.* ¶ 116.

16

*Becerra v. Dr. Pepper/Seven Up, Inc.*, No. 17-cv-05921, 2018 WL 3995832, at *2 (N.D. Cal. Aug. 21, 2018), *aff'd*, 945 F.3d 1225 (9th Cir. 2019) (the term diet on label "does not create an express or implied warranty to consumers that the product will lead to weight loss or healthy weight management" and the product "conform[s] to . . . the affirmation of fact made on the . . . label").

## V.     DEFENDANTS HAVE NOT BEEN UNJUSTLY ENRICHED WHERE THERE IS NO FRAUD, DECEPTION, OR BREACH OF WARRANTY (COUNT V).

Plaintiffs' claim for unjust enrichment fails because Defendants' actions were neither fraudulent nor misleading, and Defendants' conduct therefore did not lead to the conferment of any inappropriate benefit. California law is clear that an unjust enrichment claim cannot stand when a complaint's other causes of action fail. *See, e.g.*, *Robinson v. Wells Fargo Home Mortg.*, No. 16-cv-01619, 2016 WL 6524403, at *6 (N.D. Cal. Nov. 3, 2016). Because Plaintiffs' claims should be dismissed due to the lack of a fraudulent or misleading representation on the Products' labels, Plaintiffs' claim for unjust enrichment also fails.

## VI.     PLAINTIFFS LACK STANDING TO PURSUE CLAIMS FOR PRODUCTS THEY DID NOT PURCHASE.

Plaintiffs collectively purchased only two of the four contested Products in this case. Compl. ¶¶ 10-11. No named plaintiff in this case *ever* purchased the Water Babies Stick or the Water Babies Lotion. Plaintiffs do not have standing to challenge products that they never purchased. *See, e.g.*, *Granfield v. NVIDIA Corp.*, C 11-05403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) ("When a plaintiff asserts claims based both on products that she purchased and products that she did not purchase, claims relating to products not purchased must be dismissed for lack of standing."); *Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688, *5 (S.D. Cal. Feb. 9, 2010) (same); *see also Wilson v. Frito-Lay N. Amer., Inc.*, 961 F. Supp. 2d 1134, 1141–42 (N.D. Cal. 2013) (refusing to "assume that each of these subtly different Products is like all the others" and dismissing with prejudice claims relating to products the plaintiffs had not purchased for lack of standing); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 870–72 (N.D. Cal. 2012) (dismissing claims arising from products that plaintiff did not purchase); *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-cv-1429, 2012 WL 1893818, *5 n.5 (C.D. Cal.

17

May 18, 2012) (plaintiff in putative class action did not have standing to assert claims regarding beverage flavor he did not purchase); *Mlejnecky v. Olympus Imaging Am. Inc.*, No. 10-cv-2630, 2011 WL 1497096, *4–5 (E.D. Cal. Apr. 9, 2011) (dismissing UCL and CLRA claims because plaintiff lacked standing as to the related camera model that she did not purchase).

In *Johns*, a plaintiff sought to represent a class of consumers who purchased either "One-A-Day™ Men's Health Formula" (which he purchased), or "One-A-Day™ Men's 50+ Advantage" products. 2010 WL 476688, at *1–2. Although the plaintiff alleged identical misrepresentations in advertising and a "uniform advertising campaign designed to promote the health benefits" of both products, plaintiff did not have standing to sue over products he did not purchase. *Id.* at *5. As in *Johns*, Plaintiffs cannot assert claims as to products they did not purchase or as to packaging they did not rely on. *See also Bronson v. Johnson & Johnson, Inc.*, No. 12-cv-4184, 2013 WL 1629191, *2-3 (N.D. Cal. Apr. 16, 2013) (plaintiffs lacked standing to pursue claims based on claims upon which they did not rely); *Lester v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1194 (S.D. Cal. 2005) (same). Plaintiffs' claims as to products they did not purchase should be dismissed.

## VII.   PLAINTIFFS LACK STANDING TO PURSUE INJUNCTIVE RELIEF BECAUSE THEY FACE NO THREAT OF IMMINENT HARM.

Plaintiffs "must demonstrate standing separately for each form of relief sought." *Castagnola v. Hewlett-Packard Co.*, No. 11-cv-05772, 2012 WL 2159385, *5 (N.D. Cal. June 13, 2012) (dismissing claim for injunctive relief where Plaintiffs "now have knowledge" resolving their issue). To establish standing for prospective injunctive relief, a plaintiff must establish a "real or immediate threat" of repeated injury. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999). Plaintiffs "cannot rely on the prospect of future injury to unnamed class members if [they] cannot establish [they have] standing to seek injunctive relief." *Castagnola*, 2012 WL 2159385, at *5.

Plaintiffs lack standing to pursue injunctive relief because they cannot plausibly claim that they will be misled again. When consumers "know the truth," they "cannot be further deceived" and "will not benefit from the injunctive relief." *Algarin v. Maybelline, LLC*, 300 F.R.D. 444, 458

18

(S.D. Cal. 2014). To the extent Plaintiffs interpreted "mineral-based" to mean the Products contained no active chemical ingredients, Plaintiffs now know the complete product formulation of each sunscreen. Moreover, Plaintiffs now know that the labels clearly disclose all active and inactive ingredients (and their amounts) pursuant to FDA regulations. 21 C.F.R. § 201.66(c).

To be sure, Plaintiffs do allege that they would "purchase the Product in the future if the advertising and label claims were accurate." Compl. ¶ 10–11. But Plaintiffs who have access to the information required to resolve their alleged confusion do not have standing to pursue injunctive relief. *See, e.g.*, *Rahman v. Motts* LLP, No. 12-cv-03482, 2018 WL 4585024, at *3–4 (N.D. Cal. Sept. 25, 2018); *Cordes v. Boulder Brands USA, Inc.*, No. 18-cv-6534, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (plaintiff lacked standing as he could "determine the number of pretzels in each package before making a future purchase by simply reading the back panel"). Plaintiffs can make any future purchasing decisions of Defendants' sunscreens by simply reading the Products' labels, and they cannot allege future deception about a label this both accurate and that tells them—by law—everything they need to know.

## VIII.  THIS COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS.

This Court should dismiss Plaintiffs' nationwide claims for breach of express warranty and unjust enrichment. First, Plaintiffs lack standing to bring claims on behalf of consumers residing outside of California—claims that are necessarily based on other states' laws. *See, e.g., Carpenter v. PetSmart, Inc.*, No. 19-CV-1731-CAB-LL, 2020 WL 996947, at *8 (S.D. Cal. Mar. 2, 2020). Second, individual issues associated with the application of 50 state laws will predominate, rendering class treatment unmanageable and inappropriate for class certification under Fed. R. Civ. P. 23—a concern appropriately considered at this time. *See, e.g., Mazza v. Amer. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012).

### A.  Putative Class Members' Claims Are Governed by the Laws of Their Home States.

Federal courts apply the choice-of-law rules of the states in which they sit. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Todd v. Tempur-Sealy Intl., Inc.*, No.

19

13-cv-04984, 2016 WL 344479, at *6 (N.D. Cal. Jan. 28, 2016). California's choice-of-law rules direct this Court to apply the substantive law of "the state where the last event necessary to make the actor liable occurred." *Mazza*, 666 F.3d at 593. For each putative class member, this place is where she or he received the alleged misrepresentation related to the Products: the place of purchase. *See id.* (choice-of-law was where "communication of the advertisements to the claimants" occurred). For the named Plaintiffs, this location is California. Compl. at ¶¶ 10–11. For the non-California members of the putative nationwide class, however, the substantive laws of the 49 states where they allegedly purchased their Products applies to their claims.

### B.    Plaintiffs Lack Standing To Bring Claims on Behalf of Consumers Residing Outside of California.

"The three well-known irreducible constitutional minima of standing are injury-in-fact, causation, and redressability. A plaintiff bears the burden of demonstrating that her injury-in-fact is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Carpenter*, 2020 WL 996947, at *8 (citations omitted). These requirements apply to putative class actions. *See, e.g.*, *Morales v. Unilever U.S., Inc.,* Civ. No. 2:13-2213 WBS EFB, 2014 WL 1389613, at *4 (E.D. Cal. Apr. 9, 2014). Neither Prescott nor Xavier allege that he suffered injuries traceable to violations of the express warranty or unjust enrichment laws of any state except California. Plaintiffs therefore do not have standing to bring claims based on any other state law, and their standing cannot be acquired through the back door of a class action. *Id.* (when product purchased in only home state, named plaintiffs did "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint"); *Allee v. Medrano*, 416 U.S. 802, 829 (1974) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs' [because] it bears repeating that a person cannot predicate standing on injury which he does not share").

In *Carpenter v. PetSmart, Inc.*, the Court held that the plaintiff lacked Article III standing to pursue three common law claims on behalf of a putative nationwide class, even though the complaint ostensibly listed "one generic 'fraud by omission' claim, one generic breach of implied

20

warranty claim, and one generic unjust enrichment claim." 2020 WL 996947, at *8. The Court reasoned that Plaintiff improperly attempted to "assert fifty fraud by omission claims, fifty breach of implied warranty claims, and fifty unjust enrichment claims – one of each claim for each state – on behalf of fifty separate state-specific classes." *Id.* Because the *Carpenter* plaintiff was a California resident who purchased the relevant product in California, the Court held that he lacked "standing to assert a claim against [Defendant] under any state's law but California's because [he] did not suffer any injuries in fact traceable to any alleged violations of any other states' laws. Labeling the putative class as a 'nationwide class' [did] not overcome this fatal deficiency." *Id.* This same result is required here.

Moreover, the appropriate time for dismissal is now, on the pleadings: The *Carpenter* Court reasoned that it "should address standing prior to class certification . . . [because,] when a plaintiff's lack of standing is plain enough from the pleadings, it can form appropriate grounds for dismissal even if it overlaps with issues regarding whether the named plaintiffs are adequate representatives under Rule 23." *Id.* at 7 (citations omitted); *see also Johnson v. Nissan N. Amer., Inc.*, 272 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) (plaintiffs lacked standing to bring nationwide claims, determined at the pleading stage, and noting that the Court was joining "several other judges in this circuit who have addressed the question" and opted "to require that plaintiffs present named class representatives who possess individual standing to assert each state law's claims"); *In re Ditropan XL Antitrust Litigation*, 529 F. Supp. 2d 1098, 1106–07 (N.D. Cal. 2007) (dismissing claims brought under the laws of 24 states and requiring that "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class"); *Mason v. Ashbritt, Inc.*, No. 19-cv-01062, No. 18-cv-07181-DMR, 2020 WL 789570, at *7–8 (N.D. Cal. Feb. 17, 2020) (plaintiffs did not have standing as "it is circular to suggest that the named plaintiffs must have standing because of the class members' injuries").

Plaintiffs do not allege any injury traceable to a violation of any law except California's. Plaintiffs therefore cannot represent this putative nationwide class, and they instead need at least one class representative with standing under each state's law. *In re Carrier IQ, Inc.*, 78 F. Supp.

21

3d 1051, 1074-75 (N.D. Cal. 2015) (dismissing claims brought under the laws of 35 states where no named plaintiff resided). It is axiomatic that Plaintiffs may not use Fed. R. Civ. P. 23 as a means of asserting claims they could not pursue in their own right. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-13 (1997); Fed. R. Civ. P. 82. The fact "that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent" is not enough to give Plaintiffs standing to pursue those class claims. *Ditropan*, 529 F. Supp. 2d at 1107. Plaintiffs' claims on behalf of the "nationwide class" should therefore be dismissed. *Carpenter*, 2020 WL 996947, at *8.

### C. Variances in State Law Will Predominate, Rendering Nationwide Class Treatment Inappropriate.

As a separate and alternative ground, pursuant to Fed. R. Civ. P. 12(f), this Court should strike Plaintiffs' claims brought on behalf of a nationwide putative class because individual issues will predominate in any class action adjudication of these claims. Rule 23(b)(3) requires "the questions of law or fact common to class members [to] predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Because there are material differences among the laws of the states on both breach of express warranty and unjust enrichment, individual issues would predominate in any class action on these claims. *See, e.g., Mazza*, 666 F.3d 581 at 590.

In *Mazza*, the Ninth Circuit reversed the district court's decision to certify a nationwide class alleging unjust enrichment. 666 F.3d at 594. First, the Court held that "[t]he elements necessary to establish a claim for unjust enrichment [] vary materially from state to state." *Id.* at 591. Then the Court concluded that "[b]ecause the law of multiple jurisdictions applies here to any nationwide class . . . , variances in state law overwhelm common issues and preclude predominance for a single nationwide class." *Id.* at 596. Although *Mazza* dealt with a decision to certify a class, courts have held that the *Mazza* holding and reasoning "is not only relevant but controlling, even at the pleading stage." *Johnson*, 272 F. Supp. 3d at 1175 (citations omitted);

22

*Walters v. Vitamin Shoppe Induss., Inc.*, No. 3:14-cv-1173-PK, 2018 WL 2424132, \*8 (D. Or. May 8, 2018), *report and recommendation adopted*, 2018 WL 2418544 (D. Or. May 29, 2018) (striking allegations of unjust enrichment and fraud on behalf of a nationwide class because material differences existed among the laws of the various states on those claims). Similarly, in *Tasion Commn's, Inc. v. Ubiquiti Networks, Inc.*, the Court found "material differences amongst the jurisdictions with respect to a claim for breach of express warranty." 308 F.R.D. 630, 638 (N.D. Cal. 2015). The Court ultimately determined that these material differences posed a predominance problem, which precluded class certification under Rule 23(b)(3). *Id.*

The two claims brought by Plaintiffs on behalf of a putative nationwide class are based on laws that vary materially among the states. *Mazza*, 666 F.3d at 591 (unjust enrichment); *Tasion*, 308 F.R.D. at 638 (breach of express warranty). These material differences "preclude predominance for a single nationwide class." *Mazza*, 666 F.3d at 596. Because *Mazza* controls "even at the pleading stage," *Johnson*, 272 F. Supp. 3d at 1175, and because this legal analysis will not be affected by fact discovery, this Court should save time and expense and strike the nationwide class allegations now.

## IX.  PLAINTIFFS' CLRA CLAIM MUST BE DISMISSED FOR FAILURE TO PROVIDE SUFFICIENT NOTICE.

Under the CLRA, a plaintiff must allege provision of notice of a damages claim to the alleged violator of the Act "[t]hirty days or more prior to the commencement of an action for damages." Cal. Civ. Code. § 1782(a); *Morrison v. Ross Stores, Inc.*, No. 18-cv-02671, 2018 WL 5982006, at \*5 (N.D. Cal. Nov. 14, 2018) ("Plaintiff's allegation that defendants were put on notice of a breach by prior customer complaints and a letter from plaintiffs' counsel sent three days prior to the filing of this action is insufficient"). Plaintiffs allege that "[p]ursuant to California Civil Code § 1782(a), Defendants have been notified of the alleged violations of the Consumer Legal Remedies Act." Compl. ¶ 102. However, the notice letters sent to Defendants by Plaintiffs' counsel are dated January 3, 2020—the same day this lawsuit was filed (RJN Ex. J).[25]

---

[25] These letters are appropriately considered along with this Motion, as they are referenced in the Complaint—materials that are "integral to or referenced in the pleadings" may be considered on a motion to dismiss. *Crozier*, 901 F. Supp. 2d 494 (D.N.J. 2012).

23

Such letter does not provide Defendants with *prior* notice of this lawsuit and is clearly insufficient under the CLRA. *Keilholtz v. Lennox Hearth Prods., Inc.,* No. C 08-00836 CW, 2009 WL 2905960, at \*2–3 (N.D. Cal. Sept. 8, 2009) (Section 1782(a)'s notice requirements "must be literally applied and strictly construed"). Plaintiffs' damages claim under the CLRA claim should be dismissed accordingly.

## X.    PLAINTIFFS HAVE NOT MET THE FAIR NOTICE PLEADING STANDARD OF RULE 8(A) OR THE HEIGHTENED PLEADING STANDARD OF RULE 9(B).

The Complaint does not meet the pleading requirements of Rule 8(a) or Rule 9(b) because Plaintiffs improperly group all Defendants together, alleging that each "is one of the owners, manufacturers, or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Products." Compl. ¶ 12–16. Neither this Court nor any individual defendant will be able—from the face of the Complaint—to match the alleged wrongdoing of any particular Defendant to a plausible claim for relief under *Twombly* and *Iqbal*. *See, e.g.*, *Sollberger*, 2010 WL 2674456, at \*4 (under Rule 8, improper to use "the omnibus term 'Defendants' throughout a complaint by grouping defendants together without identifying what the particular defendants specifically did wrong.")

Even more, Rule 9(b) "demands that the circumstances constituting [] alleged fraud be specific enough to give defendants notice of the particular misconduct… so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns*, 567 F.3d at 1124. This heightened standard of Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007). Plaintiffs have completely failed to "at a minimum, identify the role of each defendant in the alleged fraudulent scheme." *Id.* at 765 (citations omitted). The Complaint should be dismissed.

## CONCLUSION

Plaintiffs' claims are fundamentally defective. For the foregoing reasons, Defendant's Motion to Dismiss should be granted and Plaintiffs' claims should be dismissed with prejudice.

24

DATED: May 1, 2020

SIDLEY AUSTIN LLP

By: */s/ Alycia A. Degen*
Alycia A. Degen (SBN 211350)
adegen@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Kara L. McCall (*Pro Hac Vice*)
kmccall@sidley.com
Elizabeth M. Chiarello (*Pro Hac Vice*)
echiarello@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS OR STRIKE; MEMORANDUM OF
POINTS AND AUTHORITIES, CASE NO. 5:20-CV-00102