**CLARKSON LAW FIRM, P.C.**
Matthew T. Theriault (SBN 244037)
*mtheriault@clarksonlawfirm.com*
Shireen M. Clarkson (SBN 237882)
*sclarkson@clarksonlawfirm.com*
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
228 Hamilton Ave., 3rd Fl
Palo Alto, California 94301
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE XAVIER and STEVEN PRESCOTT, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BAYER HEALTHCARE LLC, a Delaware limited liability company; BEIERSDORF, INC., a Delaware corporation; <br><br> Defendants. | Case No.: 5:20-cv-00102 <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> Judge: Hon. Nathanael M. Cousins <br><br> **JURY TRIAL DEMANDED** |

Plaintiffs Mike Xavier and Steven Prescott ("Plaintiffs"), individually and on behalf of all others similarly situated, as more fully described herein (the "Class" and "Class Members"), bring this class action against Defendants Bayer Healthcare LLC and Beiersdorf, Inc. (collectively "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1. To obtain an unfair competitive advantage in the billion-dollar sunscreen market, Defendants are exposing babies and children to harmful chemical-based ingredients hidden in their sunscreens by fraudulently passing them off as safe mineral-based ingredients. Defendants have reaped many millions of dollars through

this fraudulent scheme based on a calculated business decision to put profits over people.



2.     The purported "Mineral-Based" products at issue are Coppertone Water Babies Mineral-Based Sunscreen Stick (pictured above); Coppertone Water Babies Mineral-Based Sunscreen Lotion (in various sizes); Coppertone Kids Mineral-Based Sunscreen Lotion; and Coppertone Sport Face Mineral-Based Sunscreen Lotion (collectively, the "Products").

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

3. Defendants manufacture, market, advertise, label, and sell the Products throughout California and the United States.

4. Contrary to their labeling, the purported mineral-based sunscreen Products contain chemical active ingredients. In fact, the Products often contain a *larger* percentage of chemical active ingredients than mineral active ingredients.

5. Through falsely, misleadingly, and deceptively labeling the Products, Defendants sought to take advantage of consumers' desire for mineral-based sunscreens, while reaping the financial benefits of using less desirable chemical active ingredients in the Products. Defendants have done so at the expense of unwitting consumers, as well as Defendants' lawfully acting competitors, over whom Defendants maintain an unfair competitive advantage.

6. As a result, Plaintiffs bring this action individually and on behalf of those similarly situated, and seek to represent a National Class and a California Subclass (defined *infra*). Plaintiffs seek damages, interest thereon, reasonable attorneys' fees and costs, restitution, other equitable relief, and disgorgement of all benefits Defendants have enjoyed from their conduct. In addition, Plaintiffs seek injunctive relief to stop Defendants' unlawful conduct in the false, deceptive, and misleading labeling and marketing of the Products. Plaintiffs make these allegations based on their personal knowledge and, otherwise, on information and belief based on investigation of their counsel.

7. Plaintiffs' primary litigation objective is to enjoin Defendants' unlawful false labeling practices and to obtain restitution for the National Class and California Subclass.

## **JURISDICTION**

8. This Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000,

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## **VENUE**

9. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District. In addition, Plaintiff Prescott purchased the unlawful Products in this District, and Defendants have marketed, advertised, and sold the Products within this District.

## **PARTIES**

### **A.   Plaintiffs**

10. Plaintiff Mike Xavier, who is currently a resident of Roseville, California, purchased the Coppertone Sports Face Mineral-Based Sunscreen Lotion and the Coppertone Kids Mineral-Based Sunscreen Lotion at a Target in Roseville, California for approximately $8 on more than one occasion since 2017. The labeling of the Product purchased by Plaintiff Xavier is typical of the labeling of the Products purchased by members of the Class. In making his purchase, Plaintiff Xavier relied upon the claims made on the Product's advertising and label. The claims were prepared and approved by Defendants and their agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Product. If Plaintiff had known that the Product contained chemical active ingredients, he would not have purchased the Product. Plaintiff would purchase the Product in the future if the advertising and label claims were accurate.

11. Plaintiff Steven Prescott, who is currently a resident of Santa Cruz, California, purchased Coppertone Sport Face Mineral-Based Sunscreen Lotion at a Rite Aid in Capitola, California for approximately $8 in 2017. The advertising and labeling of the Product purchased by Plaintiff Prescott is typical of the advertising and labeling of the Products purchased by members of the Class. In making his purchase, Plaintiff Prescott relied upon the claims made on the Product's advertising

FIRST AMENDED CLASS ACTION COMPLAINT

and label.  The claims were prepared and approved by Defendants and their agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Product.  If Plaintiff had known that the Product contained chemical active ingredients, he would not have purchased the Product.  Plaintiff would purchase the Product in the future if the advertising and label claims were accurate.

**B.    Defendants**

12.    Defendant Bayer HealthCare LLC is a Delaware company with its principal place of business in Whippany, New Jersey, and was doing business in the state of California during all relevant times.  Directly and through its agents, Bayer HealthCare LLC has substantial contacts with and receives substantial benefits and income from and through the State of California.  Bayer HealthCare LLC is one of the owners, manufacturers, or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Products.

13.    Defendant Beiersdorf, Inc. is a Delaware corporation with its principal place of business in Wilton, Connecticut, and was doing business in the state of California during all relevant times.  Directly and through its agents, Beiersdorf, Inc. has substantial contacts with and receives substantial benefits and income from and through the State of California. Beiersdorf, Inc. is one of the owners, manufacturers, or distributors of the Products, and is one of the companies that created and/or authorized the false, misleading, and deceptive labeling for the Products.

14.    In September 2019, Bayer AG sold the Coppertone brand, which includes the Products, for $550 million to Beiersdorf AG.[1]

15.    The term "Defendants," as used herein, relates to each individual Defendant during the time period it was responsible for manufacturing, distributing,

---

[1] *See* https://media.bayer.com/baynews/baynews.nsf/id/Bayer-completes-sale-of-iconic-Coppertone-brand-to-Beiersdorf (last visited May 15, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

advertising, labeling, and selling the unlawful Products.

16.     Defendants acted in concert under a common scheme and aided and abetted one another in the decision to label and sell the Products in a false, deceptive, and misleading manner.

17.     Defendants and their agents promoted, marketed and sold the Products at issue in this jurisdiction and in this judicial district.  The unfair, unlawful, deceptive, and misleading advertising and labeling of the Products were prepared and/or approved by Defendants and their agents, and was disseminated by Defendants and their agents through labeling and advertising containing the misrepresentations alleged herein.

## **FACTUAL ALLEGATIONS**

### **A.     Background**

18.     There are two types of sunscreen products: chemical-based and mineral-based.   Chemical-based sunscreens contain various synthetic, chemical active ingredients, such as Octisalate, Octocrylene, and Octinoxate, which protect the skin by absorbing ultraviolet ("UV") radiation and dissipating it as heat.[2]  Conversely, mineral-based sunscreens use mineral active ingredients—specifically, zinc oxide and/or titanium dioxide—which cover the skin and act as a physical barrier, deflecting and scattering UV radiation.

19.     In recent years, consumers have become increasingly concerned about using chemical-based sunscreens because chemical active ingredients have been shown to have adverse health effects, including endocrine disruption, skin irritation, allergic reactions, and causing the production of dangerous free radicals.  One reason for these deleterious consequences is that chemical active ingredients in sunscreen can penetrate a person's skin and enter the bloodstream.

20.     The Environmental Working Group ("EWG") is a nonprofit organization

---

[2] "Active" ingredients are those that produce the desired or intended result.  In the case of sunscreens, they are the ingredients that protect the skin from harmful UV radiation.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

that specializes in research and advocacy in a number of areas including sunscreens and their ingredients.    Regarding certain chemical active ingredients used in sunscreens, EWG reports:

> Several common chemical filters appear to be endocrine disruptors. Many studies in animals and cells have shown that the chemicals affect reproduction and development by altering reproductive and thyroid hormones, although the evidence is mixed for some studies (Krause 2012). Animal studies report lower sperm counts and sperm abnormalities after oxybenzone and octinoxate exposure; delayed puberty after octinoxate exposure; and altered estrous cycling for female mice exposed to oxybenzone. Recently, Danish researchers reported that eight of 13 chemical sunscreen ingredients allowed in the U.S. affected calcium signaling of male sperm cells in laboratory tests, which the researchers suggest could reduce male fertility (Endocrine Society 2016).[3]

21.    In fact, state lawmakers in Hawaii recently banned two chemical sunscreen ingredients, Octinoxate and Oxybenzone.  In explaining its decision to ban those ingredients, the Hawaii legislature stated:

> Oxybenzone and octinoxate cause mortality in developing coral; increase coral bleaching that indicates extreme stress, even at temperatures below 87.8 degrees Fahrenheit; and cause genetic damage to coral and other marine organisms.  These chemicals have also been shown to degrade corals' resiliency and ability to adjust to climate change factors and inhibit recruitment of new corals.  Furthermore, oxybenzone and octinoxate appear to increase the probability of endocrine disruption.  Scientific studies show that both chemicals can induce feminization in adult male fish and increase reproductive diseases in marine invertebrate species (e.g., sea urchins), vertebrate species (e.g., fish such as wrasses, eels, and parrotfish), and mammals (in species similar to the Hawaiian monk seal). The chemicals also induce deformities in the embryonic development of fish, sea urchins, coral, and shrimp and induce neurological behavioral changes in fish that threaten the continuity of fish populations.  In addition, species that are listed on the federal Endangered Species Act and inhabit Hawaii's waters, including sea

___

[3] https://www.ewg.org/sunscreen/report/the-trouble-with-sunscreen-chemicals/

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

turtle species, marine mammals, and migratory birds, may be exposed to oxybenzone and octinoxate contamination.[4]

22.    In addition, in February 2019, the U.S. Food and Drug Administration issued a proposed rule that would update regulatory requirements for most sunscreen products in the United States.[5]    In fashioning the proposed rule, the FDA determined that for 12 of the 16 currently marketed active ingredients in sunscreens, including Octisalate, Octocrylene, and Octinoxate, there is insufficient safety data to make a positive GRASE [Generally Recognized As Safe and Effective] determination, which is a designation that the FDA gives a substance when qualified experts consider it generally safe for its intended use.[6]    And all 12 of these questionable ingredients are *chemical* active ingredients.[7]    The FDA further noted that "[a] number of these [chemical] active ingredients have also shown hormonal effects in mammalian assays (homosalate (Refs. 86 to 92)) and padimate O (64 FR 27666 at 27671) and in in vitro and in vivo assays (homosalate (Refs. 86 to 92), octinoxate (Refs. 93 and 94), and octocrylene (Ref. 95))."[8]

23.    On the other hand, according to the FDA, the only two active ingredients for which there exists sufficient information to make a positive GRASE determination were zinc oxide and titanium dioxide—the only two active ingredients used in sunscreens that are of mineral composition, rather than chemical composition.[9]

24.    Consequently, because of concerns about chemical-based sunscreens, consumers have increasingly sought out mineral-based sunscreens because they reasonably believe that mineral-based sunscreens do not contain any chemical active ingredients, such as Octisalate, Octocrylene, and Octinoxate. As a result, sales of

---

[4] https://legiscan.com/HI/text/SB2571/2018.
[5] *See* https://www.federalregister.gov/documents/2019/02/26/2019-03019/sunscreen-drug-products-for-over-the-counter-human-use.  *See also* https://www.fda.gov/news-events/press-announcements/fda-advances-new-proposed-regulation-make-sure-sunscreens-are-safe-and-effective.
[6] *Id.*
[7] *Id.*
[8] https://www.federalregister.gov/documents/2019/02/26/2019-03019/sunscreen-drug-products-for-over-the-counter-human-use.
[9] *Id.*

8

mineral-based sunscreens have surged in recent years. This is particularly true among consumers of sunscreens intended for use on babies and children.

25. Reasonable consumers, including Plaintiffs, interpret "mineral-based" labels as a representation that a product is free of chemical active ingredients, much in the same way that reasonable consumers understand a product labeled "plant-based" does not contain meat.

26. Defendants have expressly recognized consumers' concerns about the chemical active ingredients used in the sunscreens. Defendants claim that they "listen to what our consumers, like you, want from them" and "[w]hat you want matters. That's why our scientists have been actively working to develop new formulations of Coppertone (SPF 50 and less) that don't include oxybenzone and octinoxate. . . . [S]ome of our consumers are asking for their removal and we are listening."[10]

## B. The Products' Misleading and Deceptive Labeling

27. As described *supra*, Defendants manufacture, market, advertise, label, and sell Coppertone Water Babies Mineral-Based Sunscreen Lotion (in various sizes); Coppertone Water Babies Mineral-Based Sunscreen Stick; Coppertone Kids Mineral-Based Sunscreen Lotion; and Coppertone Sport Face Mineral-Based Sunscreen Lotion.

28. Images of the Products are as follows:

///

///

///

///

///

///

///

///

---

[10] https://www.coppertone.com/sunfacts/scienceandtesting/index.html.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

**Coppertone Water Babies Mineral-Based Sunscreen Lotion (in various sizes)**



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

**Coppertone Water Babies Mineral-Based Sunscreen Stick**



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

**Coppertone Kids Mineral-Based Sunscreen Lotion**



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

12
FIRST AMENDED CLASS ACTION COMPLAINT

**Coppertone Sport Face Mineral-Based Sunscreen Lotion**



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

29.    Defendants prominently and uniformly label the front display panel of the Mineral-Based Products with the label "Mineral-Based." The labels are set against—and highlighted by—an eye-catching, polished-silver background or font color.

30.    Based on the "Mineral-Based" representations, reasonable consumers, including Plaintiffs, believe the Products contain only mineral active ingredients. Put differently, Plaintiffs and other reasonable consumers do not believe the Products contain any synthetic chemical active ingredients. This understanding is reasonable because nearly all sunscreens on the market (other than Defendants') that are advertised as mineral or mineral-based contain only mineral active ingredients.

31.    However, in spite of the labeling, and despite Defendants' claim that they are "committed to . . . truth in labeling[,]"[11] the Products actually contain, in varying combinations, the active chemical ingredients Octinoxate (banned in Hawaii), Octocrylene, and Octisalate, in addition to Zinc Oxide.[12]

32.    In the Coppertone Water Babies Mineral-Based Sunscreen Stick Products and the Coppertone Sport Face Mineral-Based Sunscreen Lotion Products, the chemical active ingredients comprise a *larger* percentage of the Products than the mineral active ingredients:

**Water Babies Mineral-Based Sunscreen Stick Products:**
- Chemical Active Ingredients: 17.5%
- Mineral Active Ingredients:  15%

**Sport Face Mineral-Based Sunscreen Lotion Products:**
- Chemical Active Ingredients: 12%
- Mineral Active Ingredients:  9.7%

33.    As for the remaining Products (Water Babies Mineral-Based Sunscreen Lotion and Kids Mineral-Based Sunscreen Lotion), the percentage of chemical active ingredients is nearly equal to the percentage of mineral active ingredients (12.5%

---

[11] https://www.coppertone.com/sunfacts/scienceandtesting/index.html.
[12] *See* Exhibit A, describing the Products' active ingredients and their respective percentages.

FIRST AMENDED CLASS ACTION COMPLAINT

chemical vs. 14.5% mineral), despite the Products being labeled as "Mineral-Based."

34. Labeling the Products as "Mineral-Based" when they contain **any** chemical active ingredients is wholly misleading and deceptive. Worse, however, is Defendants' practice of labeling the Products as "mineral-based" where the percentage of mineral active ingredients is actually *less than*, or *nearly equal to*, the percentage of chemical active ingredients.

35. By misleadingly and deceptively labeling the Products, as described herein, Defendants sought to take advantage of Plaintiffs' and other reasonable consumers' desire for true mineral-based sunscreens. And Defendants have done so at the expense of unwitting consumers—many of whom seek to protect their babies and children—and Defendants' lawfully acting competitors, over whom Defendants have an unfair competitive advantage.

36. True mineral-based sunscreens generally contain a significantly higher percentage of mineral active ingredients—often 20-24%—than the Products, and they do not contain **any** chemical active ingredients. Furthermore, the cost of chemical active ingredients is less than the cost of mineral active ingredients. Therefore, by using cheaper chemical active ingredients in lieu of mineral active ingredients, on information and belief, Defendants reduced their manufacturing costs and increased their profits.

**C.    The Products Are Substantially Similar**

37. Plaintiffs Xavier and Prescott each purchased Coppertone Sports Face Mineral-Based Sunscreen Lotion. Plaintiff Xavier also purchased Coppertone Kids Mineral-Based Sunscreen Lotion. The additional products, Coppertone Water Babies Mineral-Based Sunscreen Lotion and Coppertone Water Babies Mineral-Based Sunscreen Stick, are substantially similar to those purchased by Plaintiffs. All four products are sunscreens sold by Defendants. All four products are sold under the Coppertone brand. All four products are sold to consumers as "mineral-based" sunscreens. All four products are labeled with the same "Mineral Based" claim, which

FIRST AMENDED CLASS ACTION COMPLAINT

is presented in the same metallic silver banner. All four products are labeled as SPF 50. All four products contain a similar active ingredient formulation, including Zinc Oxide, Octinoxate, and either Octisalate or Octocrylene.

38. Coppertone Water Babies Mineral-Based Sunscreen Lotion and Coppertone Water Babies Mineral-Based Sunscreen Stick, like the Coppertone Kids Product purchased by Plaintiff Xavier, are marketed and sold for use on children. Furthermore, the two additional products share many label claims with the Coppertone Kids Product purchased by Plaintiff Xavier, including: "tear free," "water resistant," "broad spectrum SPF 50," and "#1 Pediatrician Recommended Brand."

**D.    Plaintiffs Purchased the Misleading and Deceptive Products**

39. As described *supra*, Plaintiffs purchased the Products in Northern California. Plaintiff Xavier purchased the Product in Roseville, California, and Plaintiff Prescott purchased the Product in Capitola, California.

40. The Mineral-Based representations were and are material to reasonable consumers, including Plaintiffs, in making purchasing decisions.

41. Plaintiffs relied on Defendants' misrepresentations, described herein, in making the decision to purchase the Products.

42. At the time Plaintiffs purchased the Products, Plaintiffs did not know, and had no reason to know, that the Products' labeling and advertising were false, misleading, deceptive, and unlawful as set forth herein.

43. Defendants materially misled and failed to adequately inform reasonable consumers, including Plaintiffs, that the Products contained chemical active ingredients.

44. Plaintiffs would not have purchased the Products if they had known the truth. Accordingly, based on Defendants' material misrepresentations and omissions, reasonable consumers, including Plaintiffs, purchased the Products to their detriment.

45. It is possible, however, that Plaintiffs would purchase the Products in the future if they were properly labeled, and/or the ingredients complied with the labeling

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

and advertising statements. Specifically, Plaintiffs would consider purchasing the Products again if the Products only contained mineral active ingredients, and no longer contained chemical active ingredients.

## CLASS ACTION ALLEGATIONS

46.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of themselves and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the relevant statute of limitations periods, purchased the Products ("Nationwide Class"); and

> All residents of California who, within four years prior to the filing of this Complaint, purchased the Products ("California Subclass").

("Nationwide Class" and "California Subclass," collectively, "Class").

47.    Excluded from the Class are: (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) all persons presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (v) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

48.    Plaintiffs reserve the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

49.    This action is properly maintainable as a class action pursuant to Federal Rule of Civil Procedure 23 for the reasons set forth below.

50.    **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable.  Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

17

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

51. **Common Questions Predominate**: There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues. Included within the common questions of law or fact are:

a. Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

A. Whether Defendants' conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, et seq.;

B. Whether Defendants used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

C. Whether Defendants represented the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

D. Whether Defendants advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

E. Whether Defendants' labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

F. Whether Defendants knew or by the exercise of reasonable care should have known their labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

FIRST AMENDED CLASS ACTION COMPLAINT

G. Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

H. Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

I. Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

J. Whether Plaintiffs and the Class paid more money for the Products than they actually received;

K. How much more money Plaintiffs and the Class paid for the Products than they actually received;

b. Whether Defendants' conduct constitutes breach of express warranty;

c. Whether Plaintiffs and the Class are entitled to equitable and/or injunctive relief;

d. Whether Plaintiffs and the Class have sustained damages as a result of Defendants' unlawful conduct;

e. The proper measure of damages sustained by Plaintiffs and Class Members; and

f. Whether Defendants were unjustly enriched by their unlawful conduct.

52. **Typicality**: Plaintiffs' claims are typical of the claims of the Class Members they seek to represent because Plaintiffs, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiffs and the Class sustained similar injuries arising out of Defendants' conduct. Plaintiffs' and Class Members' claims arise from the same practices and course of conduct and are based on the same legal

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

theories.

53.    **Adequacy:** Plaintiffs are adequate representatives of the Class they seek to represent because their interests do not conflict with the interests of the Class Members Plaintiffs seek to represent.  Plaintiffs will fairly and adequately protect Class Members' interests and have retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

54.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy their ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiffs and Class Members can seek redress for the harm caused to them by Defendants.

///
///

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

55.    Because Plaintiffs seek relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

56.    The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

57.    Plaintiffs and Plaintiffs' counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## COUNT I

### Unfair and Unlawful Business Acts and Practices
### (Business and Professions Code § 17200, *et seq.*)
### (*On Behalf of the California Subclass*)

58.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

59.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

60.    Defendants' conduct constitutes an unfair business act and practice pursuant to California Business & Professions Code § 17200, *et seq*. (the "UCL"). The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising[.]"

61.    Plaintiffs bring this claim seeking equitable and injunctive relief to stop Defendants' misconduct, as complained of herein, and to seek restitution of the amounts Defendants acquired through the unfair, unlawful, and fraudulent business practices described herein.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

62. Defendants' knowing conduct, as alleged herein, constitutes an "unfair" and/or "fraudulent" business practice, as set forth in California Business & Professions Code §§ 17200-17208.

63. Defendants' conduct was and continues to be unfair and fraudulent because, directly or through their agents and employees, Defendants made uniform materially false representations and omissions, as described more fully supra. Defendants were and are aware that the representations and omissions they have made about the Products were and continue to be false and misleading.

64. Defendants had an improper motive—to derive financial gain at the expense of accuracy or truthfulness—in their practices related to the labeling and advertising of the Products.

65. There were reasonable alternatives available to Defendants to further Defendants' legitimate business interests, other than the conduct described herein.

66. Defendants' misrepresentations of material facts, as set forth herein, also constitute an "unlawful" practice because they violate California Civil Code §§ 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

67. Defendants' conduct in making the representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby constituting an unfair business practice under California Business & Professions Code §§ 17200-17208.

68. In addition, Defendants' conduct was, and continues to be, unfair, in that its injury to countless purchasers of the Products is substantial, and is not outweighed by any countervailing benefits to consumers or to competitors.

69. Moreover, Plaintiffs and members of the California Subclass could not have reasonably avoided such injury. Defendants' uniform, material representations and omissions regarding the Products were likely to deceive, and Defendants knew

or should have known that their representations and omissions were untrue and misleading. Plaintiffs purchased the Products in reliance on the representations made by Defendants, as alleged herein.

70.    Plaintiffs and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiffs and Subclass members

71.    As a result of the business acts and practices described above, Plaintiffs and members of the California Subclass, pursuant to § 17203, are entitled to an order enjoining such future wrongful conduct on the part of Defendants and such other orders and judgments that may be necessary to disgorge Defendants' ill-gotten gains and to restore to any person in interest any money paid for the Products as a result of the wrongful conduct of Defendants.

72.    Pursuant to Civil Code § 3287(a), Plaintiffs and the California Subclass are further entitled to pre-judgment interest as a direct and proximate result of Defendants' unfair and fraudulent business conduct. The amount on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiffs and the California Subclass are entitled to interest in an amount according to proof.

## COUNT II

**Deceptive Advertising Practices**

**(California Business & Professions Code §§ 17500, *et seq.*)**

(*On Behalf of the California Subclass*)

73.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

74.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

23

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

75. California Business & Professions Code § 17500 prohibits "unfair, deceptive, untrue or misleading advertising[.]"

76. Defendants violated § 17500 when they represented, through their false and misleading advertising and other express representations, that Defendants' Products possessed characteristics and value that they did not actually have.

77. Defendants' deceptive practices were specifically designed to induce reasonable consumers like Plaintiffs to purchase the Products. Defendants' uniform, material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their uniform representations and omissions were untrue and misleading. Plaintiffs purchased the Products in reliance on the representations made by Defendants, as alleged herein.

78. Plaintiffs and members of the California Subclass have been directly and proximately injured by Defendants' conduct in ways including, but not limited to, the monies paid to Defendants for the Products that lacked the characteristics advertised, interest lost on those monies, and consumers' unwitting support of a business enterprise that promotes deception and undue greed to the detriment of consumers, such as Plaintiffs and Subclass members.

79. The above acts of Defendants, in disseminating materially misleading and deceptive representations and statements throughout California to consumers, including Plaintiffs and members of the California Subclass, were and are likely to deceive reasonable consumers in violation of § 17500.

80. In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of § 17500.

81. Defendants continue to engage in unlawful, unfair and deceptive practices in violation of §17500.

82. As a direct and proximate result of Defendants' unlawful conduct in violation of § 17500, Plaintiffs and members of the California Subclass, pursuant to

24

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

§ 17535, are entitled to an order of this Court enjoining such future wrongful conduct on the part of Defendants, and requiring Defendants to disclose the true nature of their misrepresentations.

83.    Plaintiffs and members of the California Subclass also request an order requiring Defendants to disgorge their ill-gotten gains and/or award full restitution of all monies wrongfully acquired by Defendants by means of such acts of false advertising, plus interests and attorneys' fees.

## COUNT III

### Consumers Legal Remedies Act

### (Cal. Civ. Code § 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

84.    Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

85.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

86.    Plaintiffs bring this action pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

87.    The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

88.    The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

89.    Defendants are "persons," as defined by the CLRA in California Civil Code §1761(c).

90.    Plaintiffs and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

91.    Purchase of the Products by Plaintiffs and members of the California

FIRST AMENDED CLASS ACTION COMPLAINT

Subclass are "transactions," as defined by the CLRA in California Civil Code §1761(e).

92.    Defendants violated Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have" in that the Products are falsely labeled and advertised as being, among other things, mineral-based.  Defendants knew that consumers will often pay more for products with this attribute and have unfairly profited from their false and misleading claims.

93.    Similarly, Defendants violated Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . if they are of another" by falsely and deceptively labeling and advertising the Products as, among other things, being mineral-based.

94.    In addition, Defendants violated Section 1770(a)(9) by advertising the Products "with intent not to sell them as advertised" in that the Products are falsely labeled and advertised as, among other things, being mineral-based.

95.    Defendants' uniform and material representations and omissions regarding the Products were likely to deceive, and Defendants knew or should have known that their representations and omissions were untrue and misleading.

96.    Plaintiffs and members of the California Subclass could not have reasonably avoided such injury.  Plaintiffs and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and failed to disclose; and, Plaintiffs and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

97.    Plaintiffs and members of the California Subclass have been directly and proximately injured by Defendants' conduct.  Such injury includes, but is not limited to, the purchase price of the Products and/or the price of the Products at the prices at which they were offered.

98.    Given that Defendants' conduct violated § 1770(a), Plaintiffs and

FIRST AMENDED CLASS ACTION COMPLAINT

members of the California Subclass are entitled to seek and seek injunctive relief to put an end to Defendants' violations of the CLRA.

99.  Moreover, Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers to increase the sale of the Products.

100. Pursuant to California Civil Code § 1782(a), Plaintiffs on their own behalf, and on behalf of members of the California Subclass, notified Defendants of the alleged violations of the Consumers Legal Remedies Act. Plaintiffs first effected notice on September 18, 2018. Plaintiffs served supplemental notice on January 3, 2020. Despite giving Defendants well over 30 days to provide appropriate relief for violations of the CLRA, Defendants have failed to provide any such relief. As such, Plaintiffs also seek compensatory, monetary and punitive damages, in addition to equitable and injunctive relief, and request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any money that may have been acquired by means of such unfair business practices, and for such other relief as is provided in California Civil Code § 1780 and in the Prayer for Relief.

101. Plaintiffs further request that the Court enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to § 1780(a)(2).

## COUNT IV

### Breach of Express Warranty

*(On Behalf of the Nationwide Class and California Subclass)*

102. Plaintiffs re-allege and incorporate by reference the allegations contained in the preceding paragraphs of this complaint, as though fully set forth herein.

103. Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass.

104. By advertising and selling the Products at issue, Defendants made promises and affirmations of fact on the Products' packaging and labeling, and

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

through their marketing and advertising, as described herein. This labeling and advertising constitutes express warranties and became part of the basis of the bargain between Plaintiffs and members of the Class, and Defendants.

105. Defendants purport, through the Products' labeling and advertising, to create express warranties that the Products are, among other things, mineral-based.

106. Despite Defendants' express warranties about the nature of the Products, the Products are not mineral-based, and the Products are, therefore, not what Defendants represented them to be.

107. Accordingly, Defendants breached express warranties about the Products and their qualities because the Products do not conform to Defendants' affirmations and promises.

108. As a direct and proximate result of Defendants' breach of express warranty, Plaintiffs and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial.

## COUNT V

### Unjust Enrichment

#### (*On Behalf of the Nationwide Class and California Subclass*)

109. Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

110. Plaintiffs bring this claim individually and on behalf of the Nationwide Class and California Subclass.

111. By purchasing the Products, Plaintiffs and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

112. Defendants had knowledge of such benefit.

113. Defendants appreciated the benefit because, were consumers not to

FIRST AMENDED CLASS ACTION COMPLAINT

purchase the Products, Defendants would not generate revenue from the sales of the Products.

114. Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations and omissions.

115. Equity cannot in good conscience permit Defendants to be economically enriched for such actions at the expense of Plaintiffs and members of the Class, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER FOR RELIEF**

116. WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Defendants as follows:

a. For an order certifying the Nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiffs as representatives of the Nationwide Class and California Subclass; and naming Plaintiffs' attorneys as Class Counsel to represent the Nationwide Class and California Subclass;

b. For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

c. For an order awarding, as appropriate, compensatory and monetary damages, restitution or disgorgement to Plaintiffs and the Class for all causes of action;

d. For an order requiring Defendants to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; and ordering Defendants to engage in corrective action;

e. For an order awarding attorneys' fees and costs;

f. For an order awarding punitive damages;

g. For an order awarding pre-and post-judgment interest; and

h. For such other and further relief as the Court deems just and proper.

FIRST AMENDED CLASS ACTION COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury on all causes of action.

Dated: May 15, 2020

Respectfully submitted,

**CLARKSON LAW FIRM**
By:

MATTHEW T. THERIAULT
SHIREEN M. CLARKSON
RYAN J. CLARKSON

Attorneys for Plaintiffs

**MOON LAW APC**
By:

CHRISTOPHER D. MOON
KEVIN O. MOON

Attorneys for Plaintiffs

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

30