Alycia A. Degen (SBN 211350)
adegen@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, CA 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Kara L. McCall (*Pro Hac Vice*)
kmccall@sidley.com
Elizabeth M. Chiarello (*Pro Hac Vice*)
echiarello@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| STEVEN PRESCOTT and MIKE XAVIER, individually and on behalf of all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BAYER HEALTHCARE LLC, a Delaware limited liability company; BEIERSDORF, INC., a Delaware corporation,<br><br>Defendants. | ) Case No. 5:20-cv-00102<br>)<br>) **DEFENDANTS' REPLY IN SUPPORT OF**<br>) **MOTION TO DISMISS PLAINTIFFS'**<br>) **FIRST AMENDED COMPLAINT**<br>)<br>) Judge: Hon. Nathanael M. Cousins<br>)<br>) Date: Wednesday, July 22, 2020<br>) Time: 1:00 pm<br>) Place: Courtroom 5<br>) *Oral Argument Requested<br>)<br>)<br>)<br>)<br>)<br>) |

**TABLE OF CONTENTS**
**CONTENTS**

I. PLAINTIFFS' CLAIMS ARE PREEMPTED BECAUSE THEY SEEK TO IMPOSE ADDITIONAL REQUIREMENTS ON TOP OF THE FEDERAL REGULATIONS. ......................................................1

II. FDA IS ACTIVELY REGULATING SUNSCREEN LABELING AND, THEREFORE, HAS PRIMARY JURISDICTION OVER PLAINTIFFS' CLAIMS. ...................................................3

III. PLAINTIFFS IGNORE MUCH OF THE LABEL IN ARGUING THAT "MINERAL-BASED" IS FALSE OR DECEPTIVE TO A REASONABLE CONSUMER (COUNTS I, II, AND III)....................5

IV. BECAUSE PLAINTIFFS CANNOT IDENTIFY ANY ACTUAL FALSITY, THEY HAVE NO CLAIM FOR BREACH OF WARRANTY OR UNJUST ENRICHMENT (COUNTS IV AND V). ……… ...................................................................7

V. PLAINTIFFS DO NOT HAVE STANDING TO SUE FOR PRODUCTS NOT PURCHASED. .........................................8

VI. PLAINTIFFS—WHO HAVE FULL KNOWLEDGE ABOUT THE INGREDIENTS— DO NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF. ............................................9

VII. THIS COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS. ..........................11

VIII. PLAINTIFFS DO NOT DISPUTE THAT THEY DID NOT PROVIDE THE PRE-SUIT NOTICE REQUIRED FOR A CLRA CLAIM. ..................................................................13

IX. PLAINTIFFS' OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IS WITHOUT MERIT......................15

X. PLAINTIFFS SHOULD NOT BE GRANTED BLANKET LEAVE TO AMEND. ..................................................15

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS, CASE NO. 5:20-CV-00102

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
    No. 15-md-02617, 2016 WL 3029783 (N.D. Cal. May 27, 2016) ...........................................12

*In re Apple & AT & TM Anittrust Litig.*,
    596 F. Supp 2d 1288 (N.D. Cal. 2008) ................................................................................12

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) .............................................................................................3, 4

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) ............................................................................................5, 7

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    No. 17-cv-05921, 2018 WL 3995832 (N.D. Cal. Aug. 21, 2018) .............................................7

*Cadena v. Am. Honda Motor Co.*,
    No. 18-cv-4007, 2018 WL 8130613 (C.D. Cal. Nov. 14, 2018) ................................................7

*Carpenter v. PetSmart, Inc.*,
    No. 19-CV-1731, 2020 WL 996947 (S.D. Cal. Mar. 2, 2020) .................................................12

*In re Carrier IQ, Inc.*,
    78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015) ........................................................................12

*In re Chrysler-Dodge-Jeep Ecodiesel Litig.*,
    295 F. Supp. 3d 927 (N.D. Cal. 2018) ..................................................................................12

*Corcoran v. CVS Health Corp.*,
    No. 15-cv--3504, 2016 WL 4080124 (N.D. Cal. July 29, 2016) ..............................................12

*Cordes v. Boulder Brands USA, Inc.*,
    No. 18-cv-6534, 2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ..............................................10

*Corra v. Energizer Holdings, Inc.*
    962 F. Supp. 2d 1207 (E.D. Cal. 2013)................................................................................3, 4

*Critcher v. L'Oreal USA, Inc.*,
    No. 19-cv-2427, 2020 WL 2311890 (2d Cir. May 11, 2020)......................................................2

*Crozier v. Johnson & Johnson Consumer Cos.*,
    901 F. Supp. 2d 494 (D.N.J. 2012) .......................................................................................2

*Curran v. Bayer HealthCare LLC*
    No. 17-cv-7930, 2019 WL 398685 (N.D. Ill. Jan. 31, 2019).....................................................5

*Dapeer v. Neutrogena Corp.*,
   95 F. Supp. 3d 1366 (S.D. Fla. 2015) ........................................................................5

*Davidson v. Kimberly-Clark Corp.*,
   873 F.3d 1103 (9th Cir. 2017) ...........................................................................9, 10

*Dysthe v. Basic Research LLC*,
   No. 09-cv-8013, 2011 WL 5868307 (C.D. Cal. June 13, 2011) .............................8, 9

*Fenerjian v. Nongshim Co., Ltd*,
   72 F. Supp. 3d 1058 (N.D. Cal. 2014) ....................................................................12

*In re Flash Memory Antitrust Litig.*,
   643 F. Supp. 2d 1133 (N.D. Cal. 2009) ..................................................................12

*Gisvold v. Merck & Co.*,
   62 F. Supp. 3d 1198 (S.D. Cal. 2014).......................................................................4

*Gordon v. City of Oakland*,
   627 F.3d 1092 (9th Cir. 2010) ...............................................................................15

*Granfield v. NVIDIA Corp.*,
   No. C 11-05403, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ................................8

*Hairston v. S. Beach Beverage Co., Inc.*,
   No. 12-cv-1429, 2012 WL 1893818 (C.D. Cal. May 18, 2012) ................................8

*Johns v. Bayer Corp.*,
   No. 09-cv-1935, 2010 WL 476688 (S.D. Cal. Feb. 9, 2010) ....................................8

*Jones v. Micron Tech. Inc.*,
   400 F. Supp. 3d 897 (N.D. Cal. 2019) ...............................................................11, 12

*Kanter v. Warner-Lambert Co.*,
   99 Cal. App. 4th 780 (2002) ....................................................................................2

*Kennard v. Lamb Weston Holdings, Inc.*,
   No. 18-cv-04665, 2019 WL 1586022 (N.D. Cal. Apr. 12, 2019)..............................6

*Keskinen v. Edgewell Personal Care Co.*,
   No. 17-cv-07721, 2018 WL 6137607 (C.D. Cal. Apr. 17, 2018)..............................5

*Kwikset Corp. v. Superior Court*,
   246 P.3d 877 (Cal. 2011) .........................................................................................8

*Lavie v. Procter & Gamble Co.*,
   105 Cal. App. 4th 496 (2003) ...................................................................................5

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-2420, 2014 WL 4955377 (N.D. Cal. Oct. 2, 2014) ...............................12

*Mason v. Ashbritt, Inc.*,
   No. 19-cv-01062, No. 18-cv-07181, 2020 WL 789570 (N.D. Cal. Feb. 17,
   2020) ................................................................................................................11

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581(9th Cir.  2012) ..........................................................................12

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) .....................................................................11, 12

*Mlejnecky v. Olympus Imaging Am. Inc.*,
   No. 10-cv-2630, 2011 U.S. Dist. LEXIS 42333 (E.D. Cal. Apr. 9, 2011) ................................8

*O'Connor v. Henkel Corp.*,
   No. 14-cv-5547, 2015 WL 5922183 (E.D.N.Y. Sept. 22, 2015) ............................................2, 3

*Pardini v. Unilever U.S., Inc.*,
   961 F. Supp. 2d 1048 (N.D. Cal. 2013) ...........................................................12

*Pelayo v. Nestle USA, Inc.*,
   989 F. Supp. 2d 973 (C.D. Cal. 2013) .............................................................5, 6

*In re PepsiCo, Inc. Bottled Water Mktg. and Sales Practices Litig.*,
   588 F. Supp. 2d 527 (S.D.N.Y. 2008)...............................................................2, 3

*Rahman v. Motts, LLP.*,
   No. 13-cv-03482, 2018 WL 4585024 (N.D. Cal. 2018)..............................................10

*Red v. Kraft Foods, Inc.*,
   No. 10-cv-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ..................................6

*Rice-Sherman v. Big Heart Pet Brands, Inc.*
   No. 19-cv-03613, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020) ........................................7, 8

*Robinson v. Wells Fargo Home Mortg.*,
   No. 16-cv-01619, 2016 WL 6524403 (N.D. Cal. Nov. 3, 2016) ..................................8

*Rooney v. Cumberland Packing Corp.*,
   No. 12-cv-0033, 2012 WL 1512106 (N.D. Cal. Apr. 16, 2012)..................................5

*Smith v. Allmax Nutrition, Inc.*,
   No. 1:15-cv-00744, 2015 WL 9434768 (E.D. Cal. Dec. 24, 2015) ........................................13

*Smith v. Keurig Green Mountain., Inc.*,
   393 F. Supp. 3d 837 (N.D. Cal. 2019) ..............................................................7

*Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*,
   307 F.3d 775 (9th Cir. 2002) ..........................................................................4

*Tellabs, Inc. v. Mankor Issues & Rights, Ltd.*,
   551 U.S. 308, 322 (2007) ................................................................................................15

*Van Mourik v. Big Heart Pet Brands, Inc.*,
   No. 3:17-cv-03889, 2018 WL 1116715 (N.D. Cal. Mar. 1, 2018) ...........................................12

*Videtto v. Kellogg USA*,
   No. 2:08-cv-01324, 2009 WL 1439086 (E.D. Cal. May 21, 2009) ...........................................5

*Weeks v. Google LLC,*
   No. 18-cv-00801 NC, 2018 U.S. Dist. LEXIS 139265 (N.D. Cal. Aug. 16,
   2018) ........................................................................................................................14

*Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456
   No. 09-cv-04456, 2010 WL 2673860 (N.D. Cal. July 2, 2010) .................................................5

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ...........................................................................................6

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) .............................................................................6

**Statutes and Other Authorities**

21 U.S.C. § 379r(a)(2) .......................................................................................................1

FDCA ..........................................................................................................................1, 2, 4

21 C.F.R. § 201.66(c), (2) ...................................................................................................1

84 Fed. Reg. 6204 ............................................................................................................4

H.R. Res. 748, 116th...........................................................................................................3, 4, 5

Plaintiffs' Opposition to Defendants' Motion to Dismiss [Dkt. 43] ("Opp.") does not and cannot connect the dots between the use of the phrase "mineral-based" and Plaintiffs' unreasonable expectation that the Products[1] are 100% chemical-free. Opp. at 1. The Products are truthfully labeled as "mineral-based," have a "mineral-based formula," and provide "mineral-based protection"; they function by using a mineral—zinc oxide—to provide skin protection. Plaintiffs define mineral-based sunscreens in exactly this way: "[M]ineral-based sunscreens use mineral active ingredients—specifically, zinc oxide and/or titanium dioxide—which cover the skin and act as a physical barrier, deflecting and scattering UV radiation." Opp. at 1; First Am. Class Action Compl. [Dkt. 28] ("FAC") ¶ 18. Mineral-*based* does not mean "only minerals," "no chemicals," or any other hidden meaning alleged by Plaintiffs. Mineral-based means precisely what it states—the base of the sunscreen is a mineral. The FAC fails as a matter of law.

Moreover, Plaintiffs' claims are preempted as an impermissible attempt to supplement the extensive FDA regulatory regime applicable to the Products and sunscreen labeling—a regime that speaks directly to ingredient disclosures and product formulation. Even if the claims were not preempted, this Court should dismiss Plaintiffs' claims under the doctrine of primary jurisdiction because FDA will be issuing a new administrative order for sunscreen labels next year. Finally, even if Plaintiffs' claims proceed—which they should not—they are plagued by numerous other issues warranting dismissal, including lack of standing and notice. For these reasons and as explained in Defendants' Opening Brief ("Mot."), the FAC should be dismissed in full.

## <u>ARGUMENT</u>

## I.  **PLAINTIFFS' CLAIMS ARE PREEMPTED BECAUSE THEY SEEK TO IMPOSE ADDITIONAL REQUIREMENTS ON TOP OF THE FEDERAL REGULATIONS.**

Plaintiffs seek to impose label requirements beyond the requirements that FDA comprehensively imposes on sunscreens. 21 U.S.C. § 379r(a)(2); Mot. at 8. Specifically, Plaintiffs' lawsuit seeks to prohibit manufacturers from highlighting the largest single active

---

[1] The sunscreens at issue are Coppertone (1) Water Babies Mineral-Based Sunscreen Lotion ("Water Babies Lotion"); (2) Water Babies Mineral-Based Sunscreen Stick ("Water Babies Stick"); (3) Kids Mineral-Based Sunscreen Lotion ("Kids Lotion"); and (4) Sport Face Mineral-Based Sunscreen Lotion ("Sport Lotion") (the "Products"). [Dkt. 36] ("Mot.") at 1.

ingredient on sunscreen product labels *unless* it is the only ingredient. FAC at 1. Such an effort is preempted. *See Critcher v. L'Oreal USA, Inc.*, No. 19-cv-2427, 2020 WL 2311890, at *4 (2d Cir. May 11, 2020) (plaintiffs may not use "state law to impose labeling requirements on top of those already mandated in the FDCA and the regulations promulgated thereunder").

Indeed, Plaintiffs' claims are preempted despite their unremarkable assertion that "federal law does not require Defendants to label the Products as 'mineral-based.'" Opp. at 4. Federal law *does* require, among other things, that (1) sunscreen labels list all active and inactive ingredients, 21 C.F.R. § 201.66(c), (2) manufacturers use certain active ingredients, RJN Ex. F at 3, and (3) manufacturers not use certain impermissible claims. RJN Ex. F [Dkt. 37-6] at 1; Mot. at 5-8. "The federal regulatory scheme addresses [sunscreen ingredient disclosure and formulation] head-on." *O'Connor v. Henkel Corp.*, No. 14-cv-5547, 2015 WL 5922183, at *5 (E.D.N.Y. Sept. 22, 2015). Because these "FDA regulations cover the entire label," Plaintiffs impermissibly attempt to create new requirements within a subject matter heavily regulated by the federal government. *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 504 (D.N.J. 2012); *Kanter v. Warner-Lambert Co.*, 99 Cal. App. 4th 780, 795 (2002) ("[W]hen a state law claim, however couched, would effectively require a manufacturer to include additional or different information on a federally approved label, it is preempted."). Plaintiffs' claims are therefore preempted.

To avoid preemption, Plaintiffs mischaracterize Defendants' argument as "suggesting that any claim concerning any sunscreen labeling statement is necessarily preempted." Opp. at 5. To the contrary, courts consistently hold that plaintiffs *may* sue where their proposed requirements are identical to those imposed by the FDCA or outside the scope of federal requirements. *See O'Connor*, 2015 WL 5922183, at *5. Here, however, there is no federal prohibition on the use of a truthful ingredient descriptor like "mineral-based," and this phrase falls directly within the scope of federal ingredient disclosure regulations. *See In re PepsiCo, Inc. Bottled Water Mktg. and Sales Practices Litig.*, 588 F. Supp. 2d 527, 538 (S.D.N.Y. 2008) (rejecting the argument that "state requirements are permitted as long as the federal standard does not specifically address the terms or images at issue," and holding that "[w]here federal requirements address the *subject*

2

*matter* that is being challenged through state law claims, such state law claims are preempted to the extent they do not impose identical requirements") (emphasis added). Put differently, preemption applies even if federal regulations do not address the precise term at issue. *Id.*

Nor does Plaintiffs' reliance on *Astiana*, Opp. at 3-5, support their position. *Astiana* involved use of the phrase "natural" on products alleged to contain synthetic ingredients. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 756 (9th Cir. 2015). *Astiana* involved claims that were directly contradictory to the true ingredient formulation and therefore were "in violation of federal standards." *Id.* at 757. Here, the Parties agree that the Products contain zinc oxide—a mineral—as the most significant active ingredient, so "mineral-based" is not in conflict with the FDA-mandated ingredient list, nor does it violate any federal standards. FAC ¶ 31. Plaintiffs also neglect to mention that, in *Astiana*, the Court ultimately held that "the district court properly invoked primary jurisdiction," as "defining what is 'natural' for cosmetics labeling is both an area within the FDA's expertise and a question not yet addressed by the agency." *Id.* at 760.[2] Here too, the doctrine of primary jurisdiction should be applied, as discussed below, *infra* at 4.

Plaintiffs seek to impose new regulations where "federal requirements address the subject matter that is being challenged," which is preempted. *O'Connor*, 2015 WL 5922183, at *5.

## II.    FDA IS ACTIVELY REGULATING SUNSCREEN LABELING AND, THEREFORE, HAS PRIMARY JURISDICTION OVER PLAINTIFFS' CLAIMS.

The doctrine of primary jurisdiction is appropriately applied here as FDA will soon be issuing an administrative order on sunscreen. H.R. Res. 748, 116th Cong. (2020) (enacted) § 3854(c)(1)(B)(ii); Mot. at 12. Plaintiffs contend the doctrine should not apply here because (1) these claims do not require agency expertise, as they "involve[ ] a marketing term," and (2) there is "no issue for the Court to cede to the FDA." Opp. at 7–8. The appropriate question, however, is not whether this Court is equipped to decide—in the abstract—whether a reasonable

---

[2] *Corra v. Energizer Holdings, Inc.*, Opp. at 5 is also distinguishable. 962 F. Supp. 2d 1207 (E.D. Cal. 2013). The *Corra* plaintiffs did not contend that the label terms (SPF ratings) were "themselves per se false or misleading," but rather that the marketing of "sunscreen products *beyond* simply providing an SPF rating" misled consumers. *Id.* at 1214–15. Plaintiffs here do take issue with a specific label claim and seek to modify the "labeling duties" of sunscreen manufacturers by regulating the disclosure of active ingredients on the Products' labels. *Id.*

3

consumer would be misled by "mineral-based." Rather, the relevant question is whether the expert agency tasked with regulating the formulation, labeling, and ingredients of sunscreens (FDA) is better suited to issue a rule that will ensure uniformity across jurisdictions. *See, e.g., Astiana*, 783 F.3d at 761 (invoking the doctrine of primary jurisdiction: "[o]btaining expert advice from [the FDA] would help ensure uniformity in administration of the comprehensive regulatory regime established by the FDCA"); *Gisvold v. Merck & Co.*, 62 F. Supp. 3d 1198, 1204 (S.D. Cal. 2014) (invoking the doctrine of primary jurisdiction: "[e]xercising such jurisdiction over Plaintiff's claims presents substantial risk of inconsistent rulings on issues presently pending before the FDA").

FDA is uniquely poised to consider the questions presented in this case: First, as Plaintiffs concede in their Complaint, FDA extensively researched "the 16 currently marketed active ingredients in sunscreens" to determine GRASE status last year, providing a backbone of knowledge regarding formulation, ingredient combinations, and labeling. FAC ¶¶ 22–23. Second, FDA regulates the subject matter at issue here—ingredients and labeling of sunscreens— "pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority." *Syntek Semiconductor Co., Ltd. v. Microchip Tech. Inc.*, 307 F.3d 775, 781 (9th Cir. 2002). Third, and most importantly, FDA must propose an administrative order for sunscreen regulation next year that will "revise the final administrative order concerning nonprescription sunscreen." H.R. Res. 748, 116th Cong. (2020) (enacted) § 3854(c)(1)(A). FDA is explicitly considering whether to introduce a labeling requirement that all active ingredients be disclosed on a sunscreen product's principal display panel, 84 Fed. Reg. 6204, and this administrative order will provide guidance on sunscreen ingredients and labeling.

The cases Plaintiffs cite in attempting to argue otherwise are distinguishable. In *Corra*, Opp. at 8, the Court held that the doctrine of primary jurisdiction is to be used "only if a claim requires resolution of an issue of first impression, or a particularly complicated issue," and there was no evidence that "this could conceivably be the case with Plaintiff's claims," which involved

the heavily-litigated issue of SPF labeling. 962 F. Supp. 2d at 1216.[3] In contrast, use of the term "mineral-based" is an issue of first impression that has not yet been "regulated by the FDA" or resolved by a federal court. *Curran v. Bayer HealthCare LLC*, Opp. at 8, similarly involved SPF labeling, and noted that the defendant failed to identify any upcoming agency action to which the Court should defer. No. 17-cv-7930, 2019 WL 398685, at *3 (N.D. Ill. Jan. 31, 2019). Here, Defendants specifically ask this Court to dismiss Plaintiffs' claims (or stay the case in the alternative) pending the required agency guidance for sunscreen labeling to be issued next year. H.R. Res. 748, 116th Cong. (2020) (enacted) § 3854(c)(1)(B)(ii).

### III.    PLAINTIFFS IGNORE MUCH OF THE LABEL IN ARGUING THAT "MINERAL-BASED" IS FALSE OR DECEPTIVE TO A REASONABLE CONSUMER (COUNTS I, II, AND III).

As a matter of law, a reasonable consumer would not be deceived into believing that "mineral-based" means the Products contain only minerals. Mot. at 14. "[A] significant portion of the general consuming public . . . acting reasonably in the circumstances" would not be misled in this way. *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003). The fact that Plaintiffs allege their own personal deception is insufficient: "Just because some consumers may unreasonably interpret the term differently[,] does not render the use of [it] false or deceptive." *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019). Courts routinely dismiss the precise types of claims at issue here at the pleading stage. *See, e.g., id.* at 1231.[4]

Plaintiffs argue that the fact that zinc oxide is the predominant single active ingredient in the Products is "irrelevant and arbitrary." Opp. at 11. But the contested phrase is "mineral-based," making the Products' ingredient formulation acutely relevant to a reasonable consumer's

---

[3] Other cases cited by Plaintiffs, Opp. at 8, similarly involve SPF-specific labeling that has been the subject of frequent litigation and consideration by federal courts. *See Dapeer v. Neutrogena Corp.*, 95 F. Supp. 3d 1366 (S.D. Fla. 2015); *Keskinen v. Edgewell Personal Care Co.*, No. 17-cv-07721, 2018 WL 6137607 (C.D. Cal. Apr. 17, 2018).

[4] *See also Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 978, 980 (C.D. Cal. 2013); *Rooney v. Cumberland Packing Corp.*, No. 12-cv-0033, 2012 WL 1512106, at *4 (N.D. Cal. Apr. 16, 2012); *Werbel ex rel. v. Pepsico, Inc.*, No. 09-cv-04456, 2010 WL 2673860, at *5 (N.D. Cal. July 2, 2010); *Videtto v. Kellogg USA*, No. 2:08-cv-01324, 2009 WL 1439086, at *2 (E.D. Cal. May 21, 2009).

5

interpretation. Plaintiffs' attempts to distract from the facts of this case with a hypothetical and impossibly-formulated product with 98 % chemical active ingredients, *id.*, does not change the fact that zinc oxide is the largest active ingredient in each of the Products. RJN Ex. D [Dkt. 37-4]; Opp. at 11. That is why the Products are marketed as having a "mineral-based formula" or as providing "mineral-based protection." RJN Ex. D. Plaintiffs attempt to erase the word "based" from the Products' labels, as if the Products were labeled as "mineral-only" or "chemical-free" sunscreens, but the Products do not make those representations. Moreover, Plaintiffs' analogy to a "plant-based diet" actually undermines their argument because it is not universally understood to exclude *all* animal products. *See* RJN Ex. J (describing a plant-based diet as one where people consume meat "less often" without entirely excluding it from the diet). Putting Plaintiffs' analogies and hypotheticals aside, the facts are clear: the Products' labels are truthful and accurate.

Even if reasonable minds could differ over the meaning of "mineral-based," the consumer need not look further than the label to dispel any ambiguity. Mot. at 14; *see also, e.g.*, *Kennard v. Lamb Weston Holdings, Inc.*, No. 18-cv-04665, 2019 WL 1586022, at *5 (N.D. Cal. Apr. 12, 2019) (distinguishing *Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) as inapplicable where the "product packaging discloses the" relevant content information that is not otherwise contradicted by "other representations or inferences from defendant's packaging"); *Pelayo*, 989 F. Supp. 2d at 980 ("[T]o the extent there is any ambiguity regarding the definition of [the challenged label phrase] . . . it is clarified by the detailed information contained in the ingredient list."); *Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (no deception as a matter of law where "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA").

The simple rule is that where an "ingredient list contains more detailed information about the product that confirms other representations on the packaging," *Williams*, 552 F.3d at 939–40, consumers cannot ignore the information provided and "assume things about the products *other than* what the statement actually says." *Red v. Kraft Foods, Inc.*, No. 10-cv-1028, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012). The labels do *not* say that the Products are "chemical-

6

free" or that they are "mineral-only" sunscreens. Rather, the Products are what they say— sunscreens with a *mineral base* of zinc oxide. Plaintiffs' claims should be dismissed as a matter of law. *Becerra*, 945 F.3d at 1231.

## IV. BECAUSE PLAINTIFFS CANNOT IDENTIFY ANY ACTUAL FALSITY, THEY HAVE NO CLAIM FOR BREACH OF WARRANTY OR UNJUST ENRICHMENT (COUNTS IV AND V).

All the Products say is that they have a mineral base. RJN Ex. D. Because zinc oxide is a mineral that serves as the single largest active ingredient in each of the Products, any purported warranty was not breached and Plaintiffs failed to state a claim for breach of warranty. *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-cv-05921, 2018 WL 3995832, at \*9 (N.D. Cal. Aug. 21, 2018). Plaintiffs completely fail to distinguish *Becerra*, noting only that it involved different labeling claims. Opp. at 15. However, the fact that *Becerra* involved a soda labeled "diet" and this case involves a sunscreen labeled "mineral-based" does not change the underlying holding: a plaintiff cannot sue over a warranty never made. *Becerra*, 2018 WL 3995832, at \*9 (dismissing claims where product "conforms to the affirmation of fact made on the label"). The Products did not warrant to be chemical-free, and the warranty of a mineral base was not breached. RJN Ex. D. Plaintiffs therefore failed to allege the requisite elements of their claim. *Cadena v. Am. Honda Motor Co.*, No. 18-cv-4007, 2018 WL 8130613, at \*7 (C.D. Cal. Nov. 14, 2018). The unreasonable gap in *Becerra* between "diet" and "weight loss" is no different than the unreasonable gap between "mineral based" and "chemical free" here.

Plaintiffs' cited cases, Opp. at 15, are unhelpful here because they did not involve such an unreasonable interpretative leap. For example, in *Smith v. Keurig Green Mountain., Inc.*, the coffee pods were labeled as "recyclable," 393 F. Supp. 3d 837, 848 (N.D. Cal. 2019), and the complaint alleged "that the Pods are not recyclable at all." *Id.* In *Rice-Sherman v. Big Heart Pet Brands, Inc.*, the products were marketed as "Grain Free," and as containing "No Corn" and "No Soy Protein," while the complaint alleged that the products actually contained those ingredients. No. 19-cv-03613, 2020 WL 1245130, at \*11 (N.D. Cal. Mar. 16, 2020). In other words, these alleged warranties were clearly denoted on the relevant labels, requiring no inferences or illogical

conclusions. *Id.* Here, in contrast, the Products do not warrant the absence of anything. RJN Ex. D. Rather, the Products say only that the base of the Products is a mineral. *Id.* Plaintiffs ask this Court to take an extra illogical leap, imposing a warranty that was never made.

Because each of the above claims fail, Plaintiffs' claim for unjust enrichment cannot proceed. *See, e.g.*, *Robinson v. Wells Fargo Home Mortg.*, No. 16-cv-01619, 2016 WL 6524403, at *6 (N.D. Cal. Nov. 3, 2016). Ultimately, "mineral-based" is neither fraudulent nor misleading, and "mineral-based" simply conveys that the Products have a primary mineral active ingredient. That is precisely what Plaintiffs received; dismissal is appropriate.

## V.    PLAINTIFFS DO NOT HAVE STANDING TO SUE FOR PRODUCTS NOT PURCHASED.

Courts have frequently found a lack of standing when a plaintiff makes claims regarding products he or she did not purchase. Mot. at 18-19; *see, e.g., Granfield v. NVIDIA Corp.*, No. C 11-05403, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012); *Hairston v. S. Beach Beverage Co., Inc.*, No. 12-cv-1429, 2012 WL 1893818, at *5 n.5 (C.D. Cal. May 18, 2012). Plaintiffs purport, citing to *Mlejnecky v. Olympus Imaging Am. Inc.*, that some courts in the Ninth Circuit have applied the "substantially similar" test to standing for unpurchased products, Opp. at 18, but they do not address the fact that *Mlejnecky* itself found the better rule to be that plaintiffs have no standing for *any* unpurchased products. No. 10-cv-2630, 2011 U.S. Dist. LEXIS 42333, at *12 (E.D. Cal. Apr. 9, 2011) ("The Court finds [this approach] to be more persuasive . . . because [it] is more in line with the recent standard delineated by the California Supreme Court in" *Kwikset Corp. v. Superior Court*, 246 P.3d 877 (Cal. 2011)).

Even under a "substantially similar" analysis, Plaintiffs still lack standing. The unpurchased Water Babies Mineral-Based stick contains an ingredient list, including the active ingredient Octocrylene, which none of the other products shares. RJN Ex. D; *see also Johns v. Bayer Corp.*, No. 09-cv-1935, 2010 WL 476688, at *1–2 (S.D. Cal. Feb. 9, 2010) (finding products not to be substantially similar where one was for men over 50 and the other was for all men, even though there was no indication that the products' formulas were different, and both products made the same challenged claim about selenium); *Dysthe v. Basic Research LLC*, No.

8

09-cv-8013, 2011 WL 5868307, at *4–*5 (C.D. Cal. June 13, 2011) (purchaser of Relacore Extra had no standing to bring a claim based on Relacore where the products contained some different ingredients).[5] And the unpurchased Water Babies Mineral-Based Lotion is labeled "Tear Free Mineral-Based," while the purchased Products are labeled "Mineral-Based Formula" and "Mineral-Based Protection." RJN Ex. D. Even the cases Plaintiffs cite, Opp. at 16, required more similarity. *See, e.g.*, *Werdebaugh v. Blue Diamond Growers*, No. 12-cv-02724, 2013 U.S. Dist. LEXIS 144178, at *47–48 (N.D. Cal. Oct. 2, 2013) (substantially similar products all bore same "All Natural" label); *Colucci v. ZonePerfect Nutrition Co*., 2012 U.S. Dist. LEXIS 183050 (N.D. Cal. Dec. 28, 2012) (substantially similar products all bore label "All-Natural Nutrition Bars"). The purchased and unpurchased Products here are materially different.

## VI.    PLAINTIFFS—WHO HAVE FULL KNOWLEDGE ABOUT THE INGREDIENTS— DO NOT HAVE STANDING TO SEEK INJUNCTIVE RELIEF.

Plaintiffs face no risk of imminent harm from the alleged mislabeling of the Products and, therefore, lack standing to pursue injunctive relief. Mot. at 19–20. Although Plaintiffs allege they would buy the Products again if the alleged mislabeling were corrected, Plaintiffs now have all the information they need to avoid any future misunderstanding about the Products' ingredients: they need only review the label. Plaintiffs direct the Court to *Davidson v. Kimberly-Clark Corp*., 873 F.3d 1103 (9th Cir. 2017), which permitted injunctive relief claims to proceed, and claim it is analogous to their situation. But even the language Plaintiffs quote from *Davidson* proves this is a false comparison. Opp. at 19 ("The court . . . ruled 'that Davidson's allegation that *she has no way of determining* whether the representation flushable is in fact true' constitutes a 'threatened injury [that is] certainly impending.'") (quoting *Davidson*, 873 F.3d at 1116) (alteration in original) (emphasis added). At least three courts within the Ninth Circuit have distinguished

---

[5] Plaintiffs attack Defendants' reliance on *Johns*, yet they provide no explanation beyond baldly stating that the "plaintiff had not purchased [the] sole product at issue." Opp. at 18. This statement actually underscores *John's* applicability, because here, Plaintiffs have not purchased *two* of the Products at issue. Likewise, Plaintiffs attempt to distinguish *Dysthe* because the alleged false advertising pertained to the unpurchased Relacore rather than the purchased Relacore Extra. Opp. at 18. But this fact never entered into the court's analysis of whether the two products were the same. 2011 WL 5868307 at **4–5.

9

*Davidson* when the Plaintiff had the ability to determine the meaning of the alleged mislabeling based on the information he or she had since learned. *See Rahman v. Mott's LLP*, No. 13-cv-03482, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) ("even if plaintiff were misled by the "No Sugar Added" statement to believe that Mott's 100% Apple Juice 'contained less sugar than, and was healthier than, other 100% apple juices,' he is now aware that such a belief was unfounded.") (internal citation omitted); *Cordes v. Boulder Brands USA, Inc.*, No. 18-cv-6534, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) ("now that Plaintiff is on notice about potential underfilling, he could easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel")[6]; *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-cv-01628, 2018 WL 280028, at *15 (S.D. Cal. Jan. 3, 2018) ("Fernandez now knows how Atkins goes about calculating its net carbs claims, and she will not be misled next time she goes to Wal-Mart or Target and looks at Atkins's labels.") Plaintiffs here need only look at the label of the Products to determine what ingredients they contain. Plaintiffs also fail to note that a court in this district just rejected this same argument brought by Plaintiff Prescott and the same counsel. *See Prescott v. Nestle USA, Inc.*, No. 19-cv-07471, 2020 WL 3035798, at *6 (N.D. Cal. June 4, 2020) ("Now that Plaintiffs know the Product does not contain white chocolate, it is difficult to see how Plaintiffs could be misled into purchasing it in the future.").

Plaintiffs claim that a holding that they lack standing to seek injunctive relief would "thwart the objective of California consumer protection laws." Opp. at 19. But every case they cite for this policy concern precedes *Davidson*, which set out a rule that is not policy-based but rather focuses on whether Plaintiff now has sufficient information. *See, e.g., Rahman*, 2018 WL at *2 (*Davidson* recognized the district court split regarding when injunctive relief was permissible under California consumer laws against product labelers and had resolved it); *Cordes*, 2018 WL 6714323, at *3 (noting that *Davidson* already "determined when consumers have standing to seek injunctions requiring product manufacturers to correct deceptive product

---

[6] Despite Plaintiffs' attempt to distinguish *Rahman* and *Cordes* by pointing out that the plaintiffs had alleged no real threat of harm, Opp. at 18, both cases nonetheless make clear that a plaintiff who now has sufficient information to avoid harm lacks standing to pursue injunctive relief. *Rahman*, 2018 WL 4585024, at *1; *Cordes*, 2018 WL 6714323, at *1.

10

labeling"). Moreover, standing for injunctive relief is a matter of federal constitutional law, and the policy objectives of California consumer protection laws, however well-intentioned, cannot overcome it. *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1042 (9th Cir. 1999).

## VII.   THIS COURT SHOULD DISMISS OR STRIKE PLAINTIFFS' NATIONWIDE CLASS ALLEGATIONS.

Plaintiffs lack standing to represent unnamed class members on claims under the laws of states other than California. *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908-9 (N.D. Cal. 2019); Mot. at 21-23. None of the authority Plaintiffs cite alters this required result. While Plaintiffs rely on *Melendres v. Arpaio*, 784 F.3d 1254, 1261–62 (9th Cir. 2015) for the proposition that a named plaintiff need only demonstrate her own standing to represent a putative class, Opp. 20–21, the Southern District of California recently held that *Melendres*, in which the only claims were under federal law, is inapplicable when the named plaintiff seeks to represent unnamed class members asserting claims under *the laws of other states*. *Goldstein v. Gen. Motors, LLC*, No. 3:19-cv-01778, 2020 WL 1849659, at *12 (S.D. Cal. Apr. 13, 2020) ("The question here is whether the named Plaintiffs have standing to bring certain claims, not standing 'to obtain relief for unnamed class members' for the same injury as was the case in <u>Melendres</u>. *Plaintiffs must show they have standing for each claim they raise*, and Plaintiffs do not have standing to bring claims under the laws of states where they have alleged no injury, residence, or other pertinent connection.") (internal citation omitted) (emphasis added); *see also Jones*, 400 F. Supp. 3d at 909 ("Unlike the instant case, *Melendres* did not confront a situation where named plaintiffs brought claims under the laws of multiple states where they did not reside and where they were not injured . . . . Here, because Plaintiffs bring claims under the laws of multiple states . . . , Plaintiffs technically invoke different legally protected interests.").[7] While

---

[7] Plaintiffs' attack on *Mason v. Ashbritt, Inc.*, No. 19-cv-01062, No. 18-cv-07181, 2020 WL 789570 (N.D. Cal. Feb. 17, 2020), claiming it held that only the named plaintiff need establish Article III standing, illustrates that they misunderstand Defendants' position. Opp. at 22. Plaintiffs also misunderstand *Mason* itself. *Mason* had no occasion to analyze whether anyone other than named plaintiffs needed to have standing because the named plaintiffs themselves lacked standing, and that was sufficient for dismissal. 2020 WL 789570 at *7.

11

citing to cases that simply do not deal with this issue, Plaintiffs also completely ignore *Carpenter v. PetSmart, Inc.*, which is directly on point and held that the plaintiff had no "standing to assert a claim against PetSmart under any state's law but California's because Carpenter did not suffer any injuries in fact traceable to any alleged violations of any other states' laws." No. 19-CV-1731, 2020 WL 996947, at *8 (S.D. Cal. Mar. 2, 2020).[8]

In the alternative to dismissing the nationwide class claims for lack of standing, the claims should be struck pursuant to Federal Rule of Civil Procedure 12(f). Plaintiffs do not dispute that, because there are material differences among the laws of the states on both breach of express warranty and unjust enrichment, individual issues would predominate in any class action. *See, e.g.*, *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590–91 (9th Cir. 2012). Plaintiffs also do not dispute that pursuant to well-settled principles of law, that the law of the 49 other states would apply to the claims of non-California class members. Mot. at 21. Plaintiffs instead argue that a "legion" of cases have refused to conduct a detailed choice-of-law analysis at the pleadings stage. Opp. at 22 n.6. But most of the cases that Plaintiffs cite for this proposition involved an attempt by the plaintiffs to bring claims against *California-based defendants* on behalf of a nationwide class. In the present case, the relevant choice-of-law analysis is much simpler because the *only* California connection is the residence of the named Plaintiffs, so California has very little interest in applying its law to out-of-state purchasers that would outweigh their own states' interest.

---

[8] A litany of cases from this District agree with *Carpenter*. *See, e.g.*, *Jones*, 400 F. Supp. 3d at 909 (noting that *In re Chrysler-Dodge-Jeep Ecodiesel Litig.*, 295 F. Supp. 3d 927, 953-56 (N.D. Cal. 2018), which Plaintiffs cite, Opp. at 21 n.5, "appears to the Court to be something of an outlier. In *Melendres*'s wake, multiple opinions issuing from district courts in the Ninth Circuit, at the pleading stage of a putative class action, have dismissed sister state claims based on the named plaintiff's standing." (citing *Van Mourik v. Big Heart Pet Brands, Inc.*, No. 3:17-cv-03889, 2018 WL 1116715, at **1-2 (N.D. Cal. Mar. 1, 2018); *Corcoran v. CVS Health Corp.*, No. 15-cv--3504, 2016 WL 4080124, at **2–3 (N.D. Cal. July 29, 2016); *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617, 2016 WL 3029783, at *5 (N.D. Cal. May 27, 2016); *see also Fenerjian v. Nongshim Co., Ltd*, 72 F. Supp. 3d 1058, 1082–83 (N.D. Cal. 2014); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1075 (N.D. Cal. 2015); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-2420, 2014 WL 4955377, at **16–18 (N.D. Cal. Oct. 2, 2014); *Pardini v. Unilever U.S., Inc.*, 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1163–64 (N.D. Cal. 2009); *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008).

*Mazza*, 666 F.3d at 590 ("California law may only be used on a classwide basis if the interests of other states are not found to outweigh California's interest in having its law applied.") (internal quotation marks omitted).

When the facts more closely mirror those of the present case, courts in the Ninth Circuit have noted, at the pleadings stage, that California law cannot be applied to absent class members who reside or who purchased the product at issue outside California. *See, e.g., Smith v. Allmax Nutrition, Inc.*, No. 1:15-cv-00744, 2015 WL 9434768, at \*10 (E.D. Cal. Dec. 24, 2015) (dismissing nationwide class claims for unjust enrichment: "Plaintiff is a California resident and purchased the product in California. However, Plaintiff's complaint is devoid of any factual allegations from which the Court could plausibly find that California contract law would apply to any individual who purchased the Product outside of California.") (internal citations omitted); *Route v. Mead Johnson Nutrition Co.*, No. 12-cv-7350, 2013 WL 658251, at \*9 (C.D. Cal. Feb. 21, 2013) ("Defendant persuasively argues that 'the State of California has no connection to this case at all, other than its interest in product sales to California residents,' and farther notes that the transactions forming the subject of the express warranty claims took place in all fifty states. . . . [T]he Court cannot see how Plaintiff could ever demonstrate that, according to California's choice of law rules as set forth in *Mazza*, certification of a nationwide class could be certified here.") The law of their own states will apply to absent class members' claims for breach of warranty and unjust enrichment. The Court should strike the allegations seeking nationwide class action treatment of these claims because material differences in these laws will cause individual issues to predominate.

## VIII.    PLAINTIFFS DO NOT DISPUTE THAT THEY DID NOT PROVIDE THE PRE-SUIT NOTICE REQUIRED FOR A CLRA CLAIM.

Defendants established in their opening brief that Plaintiffs failed to provide adequate notice under the notice requirement of the California Legal Remedies Act ("CLRA"). Mot. at 24-25; Cal. Civ. Code. § 1782(a). In response, Plaintiffs do not argue that their January 3, 2020 letter satisfied this requirement, only that it was a "courtesy" to Defendants. Opp. at 24. Plaintiffs apparently, therefore, rely solely on their September 18, 2018 letter from Kevin Terry. Yet

13

Plaintiffs do not address the fact that this letter did not come from *any* of the named plaintiffs in this case. RJN Ex. M. This fact alone is fatal to their claim for damages under the CLRA. *Stearns v. Select Comfort Retail Corp.*, No. 08-cv-2746, 2009 WL 1635931, at *15 (N.D. Cal. June 5, 2009) (dismissing CLRA damages claim without leave to amend because "[t]he FAC does not allege that Stearns *or any of the other named Plaintiffs* provided written notice of their CLRA claim . . . . [T]he CLRA does not provide that notice may be provided on behalf of the aggrieved consumer by third parties . . . .") (emphasis added). Plaintiffs similarly failed to address their lack of "notice" to any of the Defendants that remain in this case. *See* RJN Ex. M [Dkt. 37-13] (letter sent only to Bayer HealthCare Pharmaceuticals Inc.); *see also* Cal. Civ. Code. § 1782(a)(1) (requiring that the required notice "[n]otify the person alleged to have employed or committed methods, acts, or practices declared unlawful by Section 1770").[9]

Finally, as a last-ditch effort to salvage their CLRA damages claim, Plaintiffs argue that their amendment of their Complaint should satisfy the notice requirement. But this is inconsistent with the purpose of the notice requirement and violates the need for strict enforcement. *See Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 950 (S.D. Cal. 2007) ("failure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends. . . . Permitting Plaintiff to seek damages first and then later, in the midst of a lawsuit, give notice and amend would destroy the notice requirement's utility, and undermine the possibility of early settlement.").

_____

[9] Plaintiffs cite this Court's decision in *Weeks v. Google LLC* for the proposition that their September 2018 letter *did* provide sufficient notice under the CLRA. Opp. at 24; No. 18-cv-00801 NC, 2018 U.S. Dist. LEXIS 139265, at *33 (N.D. Cal. Aug. 16, 2018). But in *Weeks*, the Court found the notice sufficient because it came more than two months *before* the plaintiffs made their claim for damages, which they had not made in their initial complaint. *Id.* at 32–33. The *Weeks* court did not address a notice sent by someone other than one of the named plaintiffs, a notice not sent to all defendants, or a notice sent after a complaint for damages was already filed.

14

## IX.    PLAINTIFFS' OBJECTION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IS WITHOUT MERIT.

Plaintiffs object to Defendants' request for judicial notice on the ground that "it incorporates evidence outside of the pleadings." Opp. at 25. However, Plaintiffs do not dispute the accuracy of any of these documents or their sources, and as explained thoroughly in the Request, Dkt. 36, the documents are all material to the allegations in the Complaint. *See* Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact "not subject to reasonable dispute" in that it is  capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned). These documents are appropriately subject to judicial notice at this stage without transforming the proceeding into a motion for summary judgment. *Tellabs, Inc. v. Mankor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts ruling on 12(b)(6) motions to dismiss may take into consideration "matters of which a court may take judicial notice").

## X.    PLAINTIFFS SHOULD NOT BE GRANTED BLANKET LEAVE TO AMEND.

Plaintiffs request leave to amend "to cure any pleading defects." Opp. at 25. Plaintiffs have already amended once, after Defendants filed their original motion to dismiss. They have had more than ample opportunity to fix the fatal flaws in their Complaint and are apparently unable to do so. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) ("[L]eave to amend is not to be granted automatically. A trial court may deny such a motion if permitting an amendment would prejudice the opposing party, produce an undue delay in the litigation, or result in futility for lack of merit. "); *Gordon v. City of Oakland*, 627 F.3d 1092, 1094 (9th Cir. 2010) ("leave may be denied if amendment of the complaint would be futile."). Moreover, the flaws here cannot be cured. Dismissal should be with prejudice.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss should be granted, and Plaintiffs' claims should be dismissed with prejudice.

DATED: June 19, 2020                                          SIDLEY AUSTIN LLP

15

By: */s/ Alycia A. Degen*
Alycia A. Degen (SBN 211350)
adegen@sidley.com
SIDLEY AUSTIN LLP
555 West 5th Street, Suite 4000
Los Angeles, California 90013
Telephone: (213) 896-6000
Facsimile: (213) 896-6600

Kara L. McCall (*Pro Hac Vice*)
kmccall@sidley.com
Elizabeth M. Chiarello (*Pro Hac Vice*)
echiarello@sidley.com
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603
Telephone: (312) 853-7000
Facsimile: (312) 853-7036

*Attorneys for Defendants*

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS, CASE NO. 5:20-CV-00102