UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>BAYER HEALTHCARE LLC, et al.,<br><br>    Defendants. | Case No. 5:20-cv-00102 NC<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TO TRANSFER VENUE**<br><br>Re: Dkt. No. 25 |

Plaintiffs Steven Prescott and Mike Xavier bring this putative class action against defendants Bayer HealthCare LLC and Beiersdorf, Inc. for (1) unfair and unlawful business practices, (2) deceptive advertising practices, (3) violation of the Consumers Legal Remedies Act, (4) breach of express warranty, and (5) unjust enrichment. *See* Dkt. No. 1; Dkt. No. 28. Before the Court are Defendants' motions to dismiss for lack of personal jurisdiction and to transfer venue. *See* Dkt. No. 25. The Court concludes that Defendants are subject to this Court's personal jurisdiction and that transferring this case to the District of New Jersey would not substantially increase convenience or fairness. Accordingly, the Court DENIES Defendants' motion.

**I.   Background**

    **A.   Factual Allegations**

Plaintiffs Steven Prescott and Mike Xavier are residents of California. Dkt. No. 28 ("FAC") ¶¶ 10–11. In 2017, both men bought various Coppertone sunscreen lotions because the products' label and advertising claimed the lotions were "mineral based." *Id.* The lotions, however, allegedly contain more chemical active ingredients than mineral

active ingredients. *See id.* ¶¶ 4, 31–32. If Prescott and Xavier knew that the lotions contained chemical active ingredients, they would not have purchased it. *Id.*

Bayer HealthCare LLC is a Delaware company that has its principal place of business in Whippany, New Jersey. *Id.* ¶ 12. Bayer owned, manufactured, or distributed Coppertone sunscreen products and had created or authorized the labeling for those products. *Id.* ¶ 12. Beiersdorf, Inc. is also a Delaware corporation and has its principal place of business in Wilton, Connecticut. *Id.* ¶ 13. Both Bayer and Beiersdorf conduct business in California. *Id.* ¶ 12–13.

In September 2019, Bayer's parent company sold the Coppertone brand, including the Coppertone sunscreen lotions, to Beiersdorf's parent company. *Id.* ¶ 14. Beiersdorf, in turn, now owns, manufactures, and distributes the Coppertone products, and also created or authorized the labeling for the products. *Id.* ¶ 13.

### B. Procedural History

Plaintiffs filed their initial complaint on January 3, 2020. *See* Dkt. No. 1. After Defendants filed the instant motion to dismiss for lack of personal jurisdiction and motion to transfer venue (*see* Dkt. No. 25), Plaintiffs filed their first amended complaint alleging (1) unfair and unlawful business practices, (2) deceptive advertising practices, (3) violation of the Consumers Legal Remedies Act, (4) breach of express warranty, and (5) unjust enrichment. *See* FAC. The amended complaint dropped Bayer HealthCare Pharmaceuticals, Inc., Bayer AG, Beiersdorf North America, Inc., and Beiersdorf AG as defendants. *Id.* All parties consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 8, 24.

## II. Legal Standard

### A. Personal Jurisdiction

When a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden to show that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir.1990). When no evidentiary hearing is held regarding personal jurisdiction, "the plaintiff need only make a prima facie showing of jurisdictional facts to

1   withstand the motion to dismiss.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606
2   F.3d 1124, 1127 (9th Cir. 2010) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154
3   (9th Cir. 2006)). "[W]e may not assume the truth of allegations in a pleading which are
4   contradicted by affidavit, but we resolve factual disputes in the plaintiff's favor." *Mavrix
5   Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Data
6   Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)). The plaintiff
7   cannot "simply rest on the bare allegations of its complaint," but uncontroverted
8   allegations in the complaint must be taken as true. *Schwarzenegger v. Fred Martin Motor
9   Co.,* 374 F.3d 797, 800 (9th Cir. 2004) (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,
10  551 F.2d 784, 787 (9th Cir. 1977)).

11  Due process requires that a defendant "have certain minimum contacts" with the
12  forum state "such that the maintenance of the suit does not offend 'traditional notions of
13  fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).
14  There are two forms of personal jurisdiction: specific jurisdiction or general jurisdiction.
15  *Daimler AG v Bauman*, 571 U.S. 117, 127. General jurisdiction exists when a defendant is
16  domiciled in the forum state or his activities in the forum are "substantial" or "continuous
17  and systematic." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998)
18  (internal quotation marks omitted). Typically, a forum has general jurisdiction over a
19  business only if it is incorporated in the forum state or has its principal place of business in
20  the forum state. *See Daimler AG*, 571 U.S. at 139. When the nonresident defendant's
21  contacts with the forum are insufficiently pervasive to subject it to general jurisdiction, the
22  court must ask whether the "nature and quality" of his contacts are sufficient to exercise
23  specific jurisdiction. *Data Disc*, 557 F.2d at 1287. Specific jurisdiction exists when the
24  case arises out of the defendant's conduct in the forum state. *Ranza v. Nike, Inc.*, 793 F.3d
25  1059, 1068 (9th Cir. 2015).

26  **B.    Transfer Venue**
27  28 U.S.C. § 1404(a) provides: "For the convenience of the parties and witnesses, in
28  the interest of justice, a district court may transfer any civil action to any other district or

3

division where it might have been brought." The purpose of the statute is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). In order to transfer venue pursuant to § 1404(a), the court "requires two findings—that the [transferee] district court is one where the action 'might have been brought' and that the convenience of parties and witnesses in the interest of justice favor transfer." *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985)

To determine whether an action "might have been brought" in a district, the court looks to whether the action initially could have been commenced in that district. *See Van Dusen*, 376 U.S. at 620. If the transferee district is appropriate, the court then considers whether the transfer would be convenient and fair. *Jones v. GNC Franchising*, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000). When conducting that analysis, the court must weight several factors including: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." *Id.*

**III. Discussion**

As previewed above, Defendants move to dismiss for lack of personal jurisdiction and to transfer venue. The Court discusses each ground for dismissal in turn.

**A. Personal Jurisdiction**

**1. Claims by Non-California Plaintiffs**

Plaintiffs concede that the Court does not have general jurisdiction over any Defendant. *See* Dkt. No. 29 at 23 n.6. Instead, they contend that the Court can exercise specific jurisdiction over all claims. While Defendants concede that the Court has specific jurisdiction over claims brought by Prescott, Xavier, and putative California class

4

members, they argue that the Court does not have specific jurisdiction over claims brought by absent non-California class members. *See* Dkt. No. 25 at 11.

Defendants rely on the Supreme Court's holding in *Bristol-Myers Squibb Co. v. Superior Court of California.*, 137 S. Ct. 1773, 1778 (2017), which involved a mass tort action brought by individuals that took a blood thinning drug, Plavix. In *Bristol-Meyers*, the Supreme Court applied "settled principles regarding specific jurisdiction" and held that California state courts cannot exercise specific personal jurisdiction using a "sliding scale approach" where "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Id.* at 1781. Applying those "settled principles," the Supreme Court noted that the "nonresidents [in that case] were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* The fact that "other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents" was not enough to warrant specific jurisdiction. *Id.* The Supreme Court, however, left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." *Id.* at 1784; *see also id.* at 1789 n.4 (Sotomayor, J., dissenting) (noting that the majority opinion "does not confront the question whether its opinion here would also apply to a class action").

In *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, No. 17-cv-00564-NC, 2017 WL 4224723, at *4 (N.D. Cal. Sept. 22, 2017), this Court concluded that *Bristol-Meyer* does not extend to federal class actions. *See also King v. Bumble Trading, Inc.*, No. 18-cv-06868-NC, 2020 WL 663741, at *4–5 (N.D. Cal. Feb. 11, 2020) (following *Fitzhenry-Russell*). In a mass tort action, such as the one in *Bristol-Meyers*, each plaintiff is a real party in interest to the complaint, meaning that they are named as plaintiffs in the complaints. But in class actions, only the plaintiffs selected to represent the class are named in the complaint. *Fitzhenry-Russel*, 2017 WL 4224723, at *4. Although "[the] label 'party' does not indicate an absolute characteristic," it does alter the "applicability of

5

various procedural rules." *Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002). For example, nonnamed members are considered parties for purposes of tolling statutes of limitation, but are not considered when determining diversity of citizenship. *Id.*

Courts in this district remain split over the application of *Bristol-Meyers* to federal class actions. *See Allen v. ConAgra Foods, Inc.*, No. 13-cv-01279-WHO, 2018 WL 6460451, at *7 (N.D. Cal. Dec. 10, 2018) (collecting cases). The Ninth Circuit, however, has yet to rule on this issue. But at least one other circuit court of appeal has declined to apply *Bristol-Meyers* to federal class actions. *See Mussat v. IQVIA, Inc.*, 953 F.3d 441, 448 (7th Cir. 2020) ("[A]bsentees [in a class action] are more like nonparties, and thus there is no need to locate each and every one of them and conduct a separate personal-jurisdiction analysis of their claims.").

Because *Bristol-Meyers* is distinguishable from this case, the Court will follow its prior decisions and find that it has specific jurisdiction over the out-of-state class members' claims. Because Defendants offer no alternative arguments on why the Court lacks specific jurisdiction over the out-of-state residents' claims, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction.

### 2. Claims Against Bayer HealthCare Pharmaceuticals Inc. and Beiersdorf North America, Inc.

In their initial complaint, Plaintiffs also sued Bayer HealthCare Pharmaceuticals, Inc. ("BHP"), Bayer AG, Beiersdorf North America, Inc. ("BNA"), and Beiersdorf AG. *See* Compl. ¶¶ 12, 14, 16–17. Defendants argue that the Court lacks personal jurisdiction over BHP and BNA. *See* Dkt. No. 25 at 23. Since Defendants filed the instant motion to dismiss, however, Plaintiffs amended their complaint and dropped BHP, Bayer AG, BNA, and Beiersdorf AG as defendants. *See* FAC. Accordingly, Defendants' motion to dismiss to BHP and BNA is DENIED as moot.

### B. Transfer of Venue

To prevail on their motion to transfer this case to New Jersey, Defendants must show that the District of New Jersey has personal jurisdiction over the Defendants and that

6

it is a more convenient forum. The Court agrees that the suit could have been brought in the District of New Jersey, but finds that a transfer to New Jersey would not be more convenient or in the interests of justice.

### 1. Proper Venue

To determine whether an action "might have been brought" in a district, the court looks to whether the action initially could have been commenced in that district. *See Van Dusen*, 376 U.S. at 620. Here, Plaintiffs argue that this lawsuit could not have been brought in the District of New Jersey because Beiersdorf is not subject to personal jurisdiction in New Jersey. The Court disagrees.

The Ninth Circuit applies a three-factor test for specific jurisdiction: (1) the nonresident defendant purposefully directs his activities at the forum or performs some act by which he purposefully avails himself the benefits and protections of its laws; (2) the plaintiff's claim arises out of the forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Schwarzenegger*, 374 F.3d at 802 (9th Cir.2004).

The first prong of the specific jurisdiction test is satisfied by showing either "purposeful availment" or "purposeful direction" by the defendant. *Brayton Purcell*, 606 F.3d at 1128; *see also Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted).

Relevant here, the purposeful availment analysis requires "[a] showing that a defendant purposefully availed himself of the privilege of doing business in a forum state." *Id.* This "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Id.* The purposeful availment requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts . . . ." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted).

7

Here, Beiersdorf presents a declaration by Vice President Graeme Fleckney. Fleckney states that his company has two offices in New Jersey and, more importantly, some of the employees who labeled and formulated Coppertone worked in those offices. *See* Dkt. No. 25-4 ("Fleckney Decl."). Although Fleckney's statement is fairly vague, it crucially alleges conduct occurring in the District of New Jersey that led to the plaintiff's injuries. This is sufficient to establish that New Jersey can exercise specific jurisdiction over Beiersdorf in connection with this lawsuit.

### 2. Convenience and Fairness Factors

Even though this case could have been brought in the District of New Jersey, the Court must conduct an "individualized, case-by-case consideration of convenience and fairness" to decide whether to transfer. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Thus, the Court now applies the relevant *Jones* factors. *See* 211 F.3d at 498–99.

#### a. Plaintiff's Choice of Forum

Normally, the Court accords substantial weight to a plaintiff's choice of forum, but that consideration is lessened when the plaintiff brings a nationwide class action. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). This is because in class actions, there are numerous other plaintiffs who can represent the class. *See Koster v. (Am.) Lumbermens Mut. Cas., Co.,* 330 U.S. 518, 524 (1947). Therefore, "the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened." *Id.* Nonetheless, "plaintiff's choice of forum is entitled to at least some deference." *Doe v. Epic Games, Inc.*, __ F. Supp. 3d ___, 2020 WL 376573, at *8 (N.D. Cal. Jan. 23, 2020); *see also Alul v. Am. Honda Motor Co., Inc.*, No. 16-cv-04384-JST, 2016 WL 7116934, at *2 (N.D. Cal. Dec. 7, 2016).

#### b. Convenience of Parties and Witnesses

"The convenience of the witnesses, particularly non-party witnesses, is often the most important factor" in ruling on a motion to transfer venue under section 1404(a)." *Epic Games*, 2020 WL 376573, at *8 (citing *Grossman v. Johnson & Johnson*, No. 14-cv-03557-VC, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015)). When deciding this

1  factor, "[c]ourts must consider not only the number of witnesses, but also the nature and
2  quality of their testimony." *Id.* (citing *United States ex rel. Tutanes-Luster v. Broker Sols.,*
3  *Inc.*, No. 17-cv-04384-JST, 2019 WL 1024962, at *5 (N.D. Cal. Mar. 4, 2019)).
4  Accordingly, courts generally give less to weight to the convenience of "party witnesses or
5  witnesses employed by a party because these witnesses can be compelled by the parties to
6  testify regardless of where the litigation will occur." *Epic Games*, 2020 WL 376573, at *8.
7  To establish inconvenience, "the moving party must name the witnesses, state their
8  location, and explain their testimony and its relevance." *Imran v. Vital Pharm., Inc.*, No.
9  18-cv-05758-JST, 2019 WL 1509180, at *4 (N.D. Cal. Apr. 5, 2019).

10        Defendants argue that the convenience factor favors New Jersey because their
11  operations, employees, and third-party consultants who have information about the
12  formulation and labeling of the Coppertone sunscreen products all reside on the East
13  Coast, while only the two named plaintiffs reside in California. Courts have observed,
14  however, that "the increased speed and ease of travel and communication . . . makes,
15  especially when a key issue is the location of witnesses, no forum 'as inconvenient [today]
16  as it was in 1947.'" *Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1336 (9th Cir. 1984)
17  (citing *Manu International, S.A. v. Avon Products, Inc.*, 641 F.2d 62, 65 (2d Cir. 1981)).

18        Nonetheless, this factor weighs in favor of transfer. Plaintiffs identify no third-
19  party witnesses that would be inconvenienced by a transfer to New Jersey. On the other
20  hand, Defendants point to third-party witnesses, *i.e.*, their labeling consultants, that may be
21  inconvenienced if called to testify in this district. *See* Fleckney Decl. ¶ 19. Those third-
22  party witnesses all reside on the East Coast, closer to the District of New Jersey. *Id.*
23  Defendants, however, fail to provide with specificity the identity of those witnesses or the
24  content of their testimony. Thus, it is unclear if the convenience of the third-party
25  consultants is particularly consequential for this case. *See Rafton v. Rydex Series Funds*,
26  No. 10-cv-01171-CRB, 2010 WL 2629579, at 4 (N.D. Cal. June 29, 2010). Accordingly,
27  this factor weighs in favor of transfer, but only slightly.
28  / / /

### c. Ease of Access to Evidence

"[I]n the age of electronically stored information, the ease of access to evidence is neutral because much of the evidence in this case will be electronic documents, which are relatively easy to obtain in any district." *Epic Games*, 2020 WL 376573, at *9 (citing *Simpson Strong-Tie Co., Inc. v. Oz-Post Int'l, LLC*, No. 18-cv-01188-WHO, 2018 WL 3956430, at *8 (N.D. Cal. Aug. 17, 2018)). Most of the evidence in this case will likely be documents and lab reports, which can easily be transmitted electronically. Defendants do not suggest that there is physical evidence that could not be transmitted electronically. Thus, this factor is neutral.

### d. Familiarity with the Governing Law

Here, three out of the five claims brought are based on California's consumer protection law, and this Court would likely be more familiar with the law governing those claims. But "it is routine for federal courts to analyze and apply the laws of diverse states." *Saunders v. USAA Life Ins. Co.*, 71 F. Supp. 3d 1058, 1061 (N.D. Cal. 2014) (finding the familiarity with governing law factor to be neutral despite requiring the application of California state law and potentially breach of contract laws of other states). And while a court is more familiar with the laws of the state in which it sits than an out-of-state court, this fact tends to matters little in a nationwide class action that requires the application of many states' laws. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012) ("[E]ach class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."). Thus, this factor weighs against transfer, but only slightly.

### e. Local Interest in the Controversy

New Jersey has an interest in regulating its corporation's business practices and ensuring the state's economic vitality, but California has as much of an interest in protecting its residents, especially when a majority of the claims are brought under California law. *See, e.g.*, *Epic Games*, 2020 WL 376573, at *9; *Imran*, 2019 WL 1509180, at *6. Thus, many courts in this district have found the local interest factor to be neutral in

10

class actions in which a California plaintiff sues an out–of–state corporation for conduct that impacted California consumers. *See, e.g, Epic Games*, 2020 WL 376573, at *9; *Imran*, 2019 WL 1509180, at *6; *Fleming v. Matco Tools Corp.*, 384 F. Supp. 3d 1124, 1136 (N.D. Cal. 2019); *Lax v. Toyota Motor Corp.*, 65 F. Supp. 3d 772, 781 (N.D. Cal. 2014) (assessing transferring districts within the same state). Defendants provide no persuasive argument for why New Jersey's interest here is substantially greater than California's. Accordingly, this factor is neutral.

### f. Contacts Related to the Action

Defendants contend that this factor weighs in favor of transfer because the crux of the alleged wrongful conduct, *i.e.* their decision to label the Coppertone sunscreen products as "mineral based" and the formulation of the products, occurred in New Jersey. *See* Dkt. No. 25 at 16. By contrast, Defendants argue, the only connection between this lawsuit and this forum is the sale of the Coppertone products to California consumers.

The Court is not persuaded for two reasons. First, contrary to their argument, Defendants have not in fact established that the District of New Jersey is the "locus of material events." Defendants rely solely on Fleckney's declaration for the proposition that "[t]he formulation information and responsibilities for the Products and decisions about their labeling are located and occur in New Jersey." *Id.* at 17. But Fleckney's declaration is not so clear—he stated that "[a]ll . . . employees who work on the formulation or labeling of the Sunscreen Products work in offices located in *either* New Jersey *or* Connecticut." Fleckney Decl. ¶ 18 (emphasis added). Fleckney also stated that the creative agencies used in Defendants' labeling decisions were located in Georgia, Kentucky, Virginia, and New York. *Id.* ¶ 19. Put simply, the record before the Court does not suggest that any single forum, much less New Jersey, was the supposed "locus of material events."

Second, even if the formulation and labeling decisions were primarily made in New Jersey, Plaintiffs' reliance on Defendants' alleged misrepresentations and the resulting harm occurred in California. While some courts have discounted similar connections in

11

their analysis (*see, e.g.*, *Hawkins v. Gerber Products Co.*, 924 F. Supp. 2d 1208, 1216–17 (S.D. Cal. 2013)), other courts nonetheless find them relevant to the analysis (*see, e.g.*, *Rafton*, 2010 WL 2629579, at *3). The Court is more persuaded by the latter line of cases especially where, as here, the record before the Court does not conclusively suggest that Defendants' actions took place in the transferee forum. In short, this factor weighs against transfer.

### g. Balancing of Factors

To succeed on this motion, Defendants must show that the District of New Jersey is a more convenient forum and not simply equally convenient or inconvenient. *Epic Games, Inc.*, 2020 WL 376573, at *8 (quoting *Van Dusen*, 376 U.S. at 646). Thus, transfer "should not be granted if the effect is simply to shift the inconvenience to the plaintiff." *Id.* (internal quotation marks omitted) (citing *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

Here, the plaintiffs' choice of forum, the forum's familiarity with governing law, and the contacts between the action and the forum all weigh against transfer. The convenience factor weighs in favor of transfer, but only slightly. The remaining factors are neutral. Thus, on balance, the Court concludes that Defendants have not established that the District of New Jersey is a more convenient forum than the Northern District of California. Accordingly, the Court DENIES Defendants' motion to transfer venue.

## IV.  Conclusion

The Court DENIES Defendants' motion to dismiss for lack of personal jurisdiction. The Court also DENIES Defendants' motion to transfer venue. Defendants do not need to file an answer to the original complaint because they have already moved to dismiss the First Amended Complaint at Dkt. No. 36.

**IT IS SO ORDERED.**

Dated: June 29, 2020         _____
                                                           NATHANAEL M. COUSINS
                                                           United States Magistrate Judge

12