UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN PRESCOTT et al.,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER HEALTHCARE LLC, et al.,<br><br>Defendants. | Case No. 20-cv-00102-NC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 36 |

Before the Court is defendants Bayer HealthCare LLC and Beiersdorf, Inc.'s motion to dismiss plaintiffs Steven Prescott and Mike Xavier's first amended complaint. In this putative class action lawsuit, Plaintiffs accuse Defendants of misleading consumers by labeling their sunscreens as "mineral-based" when the sunscreens contain active chemical ingredients. The Court finds that Plaintiffs claims are properly presented in this Court and that they have sufficiently stated their claims. Accordingly, the Court DENIES Defendants' motion to dismiss.

**I.   Background**

   **A.   Factual Allegations**

Defendants Bayer HealthCare LLC and Beiersdorf, Inc. manufacture, market, label, and sell sunscreen lotions, including the four products challenged in this lawsuit. *See* Dkt. No. 28 ("FAC") ¶ 27. Those products are the Coppertone Water Babies Mineral-Based

1   Sunscreen Lotion ("Water Babies Lotion"), Coppertone Water Babies Mineral-Based
2   Sunscreen Stick ("Stick"), Coppertone Kids Mineral-Based Sunscreen Lotion ("Kids
3   Lotion"), and the Coppertone Sport Face Mineral-Based Sunscreen Lotion ("Sport
4   Lotion"). *Id.*; *see also* Dkt. No. 37-4.[1]  The front face of each sunscreen's label claims that
5   it is "mineral-based." *Id.* ¶ 28.

6       "Mineral-based" sunscreens are distinguished from "chemical-based" sunscreens
7   through the compounds used to absorb or deflect ultraviolet ("UV") radiation. *Id.* ¶ 18.
8   Some compounds commonly used as active ingredients in sunscreens, such as zinc oxide
9   and titanium dioxide, are considered inorganic minerals. *Id.* ¶¶ 18, 23; *see also* 84 Fed.
10  Reg. 6204, 6216.  Other common compounds commonly used as active ingredients in
11  sunscreens, such as octisalate and octocrylene, are considered chemicals. *See* FAC ¶ 22;
12  *see also* 84 Fed. Reg. 6204, 6221–22.  Each of the four challenged products contain both
13  mineral active ingredients and chemical active ingredients. *See* FAC ¶ 32.; *see also* Dkt.
14  No. 37-4.

15      Concerned about potential adverse health effects of chemical active ingredients,
16  plaintiffs Steven Prescott and Mike Xavier sought out "mineral-based" sunscreens. *See*
17  FAC ¶¶ 24, 37, 39.  Prescott purchased the Sports Lotion after reading its "mineral-based"
18  label and believing that the sunscreen contained only mineral active ingredients. *Id.* ¶¶ 30,
19  37.  Xavier purchased both the Sports Lotion and the Kids Lotion for the same reasons. *Id.*
20  Both Prescott and Xavier allege that they would not have purchased either product if they
21  had known the products contained chemical ingredients. *Id.* ¶ 44.

---

[1] Defendants request judicial notice of several documents. *See* Dkt. No. 37.  The Court will address each individual request where it relies on the documents in question.

  Here, Defendants request judicial notice of the full labels of the products at issue. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions" are subject to judicial notice. *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013); *see also Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  Plaintiffs' amended complaint specifically references the labels in question.  Although Plaintiffs provide a blanket objection to Defendants' request for judicial notice, they fail to specifically challenge the labels' authenticity.  Accordingly, the Court GRANTS Defendants' request for judicial notice as to the full labels.

### B. Procedural History

On May 15, 2020, Plaintiffs filed their first amended class action complaint alleging claims for (1) unlawful and unfair business acts and practices, Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (2) deceptive advertising practices, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; (3) violation of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*; (4) breach of express warranty; and (5) unjust enrichment. *See* Dkt. No. 28. Defendants now move to dismiss and to strike the nationwide class allegations. *See* Dkt. No. 36. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 8, 24.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the most favorable light to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A complaint need not give detailed factual allegations but must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a court grants a motion to dismiss, the plaintiff should be given leave to amend unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. Discussion

### A. FDCA Preemption

Defendants first argue that the Food, Drugs, and Cosmetics Act ("FDCA") expressly preempts Plaintiffs' claims.

There are three forms of preemption: conflict, express, and field. *See Murphy v.*

1  *NCAA*, 138 S. Ct. 1461, 1480 (2018). Preemption exists when "Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." *Id.* Relevant here, "express preemption exists when a statute explicitly addresses preemption." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015). The FDCA contains one such statute: 21 U.S.C. § 379r, which preempts state laws to the extent they impose requirements that are "different from or in addition to, or that is otherwise not identical with" requirements created by the FDA.

The FDA has promulgated various testing and labeling requirements for nonprescription, over-the-counter ("OTC") sunscreens such as the ones at issue in this lawsuit. *See, e.g.*, 12 C.F.R. § 201.327 (labeling and testing requirements for OTC sunscreens); *see also* Dkt. No. 37-6 (FDA guidance regarding its enforcement policy for OTC sunscreens).[2] Specifically, FDA regulations require OTC sunscreen products to label itself as "sunscreen" and accurately indicate the products' sun protection factor ("SPF") in the principal display panel. *See* 12 C.F.R. § 201.327(a). FDA regulations also mandate particular labels describing the sunscreen's uses, warnings, and directions. *See id.* § 201.327(c)–(f). Labels for OTC sunscreens are also prohibited from making "claims that would be false and/or misleading on sunscreen products." *Id.* § 201.327(g).

In *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753 (9th Cir. 2015), the Ninth Circuit addressed a virtually identical preemption statute in the FDCA—21 U.S.C. § 379s—concerning cosmetics. The plaintiffs in *Astiana* claimed that they were deceived when they purchased cosmetics labeled "All Natural," "Pure Natural," or "Pure, Natural & Organic." *Id.* at 756. Noting that FDA regulations do not require or prohibit "All Natural" or "Pure Natural" labels, the Ninth Circuit reasoned that the plaintiffs' claims do not ask

---

[2] Defendants' request judicial notice of this document. *See* Dkt. No. 37. This document is an FDA guidance document regarding its enforcement policy for over-the-counter sunscreen lotions. The Court may take judicial notice of matters of public record and other government documents. *See Lee*, 250 F.3d at 688–89; *see also Gustavson*, 961 F. Supp. 2d at 1113 n.1. Accordingly, the Court GRANTS Defendants' request for judicial notice as to the FDA guidance document.

4

the defendant to "modify or enhance any aspect of its cosmetics label that are required by federal law." *Id.* at 758. Put differently, "the FDCA does not preempt state laws that allow consumers to sue cosmetics manufacturers that label or package their products in violation of federal standards." *Id.* at 757.

So too here. As in *Astiana*, Plaintiffs' claims allege "deception as a result of advertising statements that contradicted the true ingredients listed on the FDA-mandated label." *Id.* at 758. In particular, Plaintiffs contend that Defendants' use of the phrase "mineral-based" is contradicted by the presence of allegedly significant chemical active ingredients. And if Plaintiffs' suit ultimately requires Defendants to remove the phrase "mineral-based" from their labels, such a result does not conflict with the FDCA because FDA regulations do not require or prohibit the use of phrase "mineral-based." *Id.*; *see also Tabler v. Panera, LLC*, Case No, 19-cv-01646-LHK, 2019 WL 5579529, at *5 (N.D. Cal. Oct. 29, 2019) (lawsuit challenging use of "clean" or "100% clean" in food packaging not preempted by the FDCA). Instead, FDA regulations generally prohibits "claims that would be false and/or misleading on sunscreen products." 21 C.F.R. § 201.327(g). Thus, Plaintiffs' claim that Defendants mislead by calling their sunscreen is "mineral-based" is in line with FDA regulations.

Accordingly, the Court concludes that Plaintiffs' claims are not preempted by the FDCA's express preemption provision, 21 U.S.C. § 379r, and DENIES Defendants' motion to dismiss on preemption grounds.

### B. Primary Jurisdiction

Defendants next argue that Plaintiffs' lawsuit should be dismissed or stayed under the primary jurisdiction doctrine pending the FDA's proposed administrative order for sunscreen regulation pursuant to the recently enacted Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), H.R. Res. 748, 116th Cong. (2020) (enacted) § 3854(c)(1)(B)(ii). *See also* Pub. L. No. 116-136. Defendants also suggest that primary jurisdiction is appropriate because the FDA is considering further regulations regarding ingredient disclosures. *See* 84 Fed. Reg. 6204.

5

The primary jurisdiction doctrine "is a prudential doctrine that permits courts to determine 'that an otherwise cognizable claim implicates technical and policy questions that should be addressed in the first instance by the agency with regulatory authority over the relevant industry rather than by the judicial branch.'" *Astiana*, 783 F.3d at 760 (quoting *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008)). If a district court determines that applying primary jurisdiction is appropriate, it may stay proceedings or dismiss the case without prejudice in order to allow the relevant agency to address the underlying issue first. *Id.*, 783 F.3d at 761. This doctrine, however, is reserved for a "limited set of circumstances" and is not intended to "secure expert advice from agencies every time a court is presented with an issue conceivably within the agency's ambit." *Clark*, 523 F.3d at 1114 (internal quotations omitted).

Courts consider several factors when considering primary jurisdiction, including whether the issue (1) is within the conventional experience of judges; (2) "involves technical or policy considerations within an agency's field of expertise"; (3) is "particularly within the agency's discretion"; or (4) "there exists a substantial danger of inconsistent rulings." *Maronyan v. Toyota Motor Sales, U.S.A., Inc.*, 658 F.3d 1038, 1049-50 (9th Cir. 2011) (internal quotations omitted). The Ninth Circuit has cautioned that primary jurisdiction is inappropriate "when a referral to the agency would significantly postpone a ruling that a court is otherwise competent to make." *Astiana*, 783 F.3d at 761. "The deciding factor should be efficiency." *Rhoades v. Avon Prods.*, 504 F.3d 1151, 1165 (9th Cir. 2007).

First, false advertising suits like this one are squarely within the conventional experiences of judges and courts. "[E]very day courts decide whether conduct is misleading and the reasonable-consumer determination and other issues involved in Plaintiff's lawsuit are within the expertise of the courts to resolve." *Tabler*, 2019 WL 5579529, at *7 (quotation marks and citations omitted).

Second, contrary to Defendants' suggestion, this lawsuit does not involve technical or policy considerations within the FDA's field of expertise. Although Plaintiffs'

6

1   complaint contains much rhetoric regarding chemical active ingredients used in sunscreen
2   lotions, the crux of their lawsuit concerns whether Defendants' description of their
3   products is misleading. Plaintiffs' claims do not require the Court to determine whether
4   chemical or mineral active ingredients are harmful or safe for use. Nor does Plaintiffs'
5   claims require the Court to determine whether the ingredients in question are "minerals" or
6   "chemicals." Indeed, the parties appear to agree which active ingredients are "minerals" or
7   "chemicals." *See, e.g.*, Dkt. No. 36 at 13. Thus, Plaintiffs' claims do not fall within the
8   ambit of the FDA's expertise. *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102,
9   115, 120 (2014) (noting that the FDA does not have the expertise to evaluate nor authority
10  to enforce false advertising claims).

11  The fact that the FDA is considering whether to introduce a labeling requirement
12  that all active ingredients be disclosed on a sunscreen product's principal display panel
13  does not change this conclusion. *See* 84 Fed. Reg. 6204. Plaintiffs' theory of their case is
14  that the phrase "mineral-based" suggests that a product contains only mineral active
15  ingredients or, at the very least, a substantial majority of the product's active ingredients
16  are minerals. Approximately half of the active ingredients in Defendants' products,
17  however, are allegedly chemicals not minerals. *See* FAC ¶ 32. If Plaintiffs' theory reflects
18  the average consumer's understanding of "mineral-based," Defendants' use of the phrase is
19  misleading or inaccurate regardless whether all active ingredients are disclosed on the
20  products' principal display panel.

21  It is also worth noting that 84 Fed. Reg. 6204 was proposed on February 26, 2019,
22  and the public comment period concluded on May 28, 2019. *See* 84 Fed. Reg. 6204, 6249.
23  And the proposed effective date of the rule was originally November 26, 2019. *Id.*
24  Heeding the Ninth Circuit's guidance that "[t]he deciding factor should be efficiency," it
25  makes little sense to halt this lawsuit because of a proposed rule that was under
26  consideration over a year ago. For the same reason, the FDA's pending requirement to
27  propose administrative order pursuant to the CARES Act does not suggest primary
28  jurisdiction is appropriate. Under that Act, the FDA is required to propose an order by

1   September 2021.  *See* Pub. L. No. 116-136 § 3854(c)(1)(B)(ii) (requiring the FDA to
2   propose an order within 18 months of the Act's passage on March 27, 2020).  Dismissing
3   or staying this case for over a year is not efficient.  This is particularly true here, when the
4   Act's mandate is fairly vague and does not require the FDA to regulate the specific issue in
5   this case.  *See id.* (requiring the FDA to "amend and revise the final administrative order
6   concerning nonprescription sunscreen").

7   Accordingly, the Court concludes that the primary jurisdiction doctrine is
8   inappropriate here and DENIES Defendants' motion to dismiss on primary jurisdiction
9   grounds.

### C.  Standing

Defendants raise two standing-related arguments for dismissal.  First, Defendants contend that the two named Plaintiffs lack standing to sue over two of the four contested products because they did not purchase them.  Second, Defendants argue that Plaintiffs lack standing to pursue injunctive relief.  The Court addresses each argument in turn.

#### 1.  Standing to Sue for Unpurchased Products

A plaintiff must demonstrate standing to sue under Article III of the Constitution by alleging the "irreducible constitutional minimum" of: (1) an "injury in fact"; (2) that is "fairly traceable to the challenged conduct of the defendants"; and (3) "likely to be redressed by a favorable decision."  *Spokeo v. Robins*, 136 S. Ct. 1540, 1547 (2016). Under California's UCL and FAL, a private individual has standing only if he "has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011).  Similarly, the CLRA requires that a plaintiff "must not only be exposed to an unlawful practice but also have suffered some kind of damage."  *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1556 (2011) (quotation marks omitted).

Courts within the Ninth Circuit have split over whether plaintiffs have standing to sue for products they did not purchase.  *See Ang v. Bimbo Bakeries USA, Inc.*, Case No. 13-cv-01196-WHO, 2014 WL 1024182, at *4–8 (N.D. Cal. Mar. 13, 2014) (discussing

1    cases).  The prevailing view in this district, however, holds that a plaintiff may assert
2    claims based on misrepresentations appearing on products he did not purchase "so long as
3    the products and alleged misrepresentations are substantially similar.  *Miller v. Ghiradelli*
4    *Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) (citing cases); *see also Tabler*,
5    2019 WL 5579529, at *9; *but see Granfield v. NVIDIA Corp.*, Case No.11-cv-05403-JW,
6    2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012).

7          This Court will adopt the prevailing view.  In the class action context, the Ninth
8    Circuit has cautioned that in "determining what constitutes the same type of relief or the
9    same kind of injury, we must be careful not to employ too narrow or technical an
10   approach.  Rather, we must examine the questions realistically: we must reject the
11   temptation to parse too finely, and consider instead the context of the inquiry."  *Ang*, 2014
12   WL 1024182, at *4 (quoting *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2012)).  The
13   "substantially similar" approach to standing in consumer class actions more accurately
14   reflects the nature of class actions.

15         Here, Plaintiffs challenge Defendants' use of the "mineral-based" descriptor in four
16   products.  All four of those products are sunscreens and each of those products use the
17   "mineral-based" descriptor despite containing some amount of chemical active ingredients.
18   Two of the challenged products describe themselves as "mineral-based formulas," one
19   describes itself as "mineral-based protection," and one simply claims that it is "tear free
20   mineral-based."  *See* FAC ¶ 28.  While the challenged labels are not identical, the essence
21   of each label is the same: the product claims to be "mineral-based."  If Plaintiffs are
22   correct and reasonable consumers believe that the "mineral-based" descriptor implies that
23   all or substantially all of the active ingredients are minerals, the misleading effect of all
24   four labels are substantially the same.

25         Thus, for the purposes of the motion to dismiss, the Court concludes that Plaintiffs
26   have established standing.  Accordingly, the Court DENIES Defendants' motion to dismiss
27   Plaintiffs' claims relating to the Water Babies Lotion or Stick for lack of standing.
28

9

### 2. Standing to Sue for Injunctive Relief

To obtain injunctive relief, a plaintiff must demonstrate that "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quotation marks and citation omitted). Past wrongs are insufficient by themselves to grant standing for injunctive relief. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). Rather, if "standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'" *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)).

Here, Plaintiffs allege that they intend to purchase Defendants' products in the future if the labels are accurate. FAC ¶¶ 10, 11. This allegation, though sparse, plausibly suggests that Plaintiffs are likely to again be wronged in a similar way absent injunctive relief. If, for example, Plaintiffs encounter Defendants' products in the future and those products still contain the "mineral-based" label, Plaintiffs may mistakenly rely on the label to believe that Defendants eliminated chemical active ingredients when they did not.

Defendants argue that Plaintiffs' allegations are insufficient to establish standing because they cannot plausibly claim that they will be misled again. *See* Dkt. No. 36 at 30. According to Defendants, because Plaintiffs now know the true formulation of the products, they need only to check the back label to determine whether a "mineral-based" descriptor is accurate. The Court is not convinced.

In *Davidson*, the Ninth Circuit observed that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." 889 F.3d at 969. That observation is particularly apt here. The fact that Defendants' challenged use of the "mineral-based" descriptor allegedly fails to accurately reflect the sunscreen products' formulation does not mean that future use of the phrase would also fail to accurately reflect the products' formula. After all, Plaintiffs have no way of knowing whether, for example, Defendants will change the formula for the Water

10

1    Babies Lotion or Sports Lotion to only contain zinc oxide or other mineral active
2    ingredients. *See id.* at 970 ("[T]he threat of future harm may be the consumer's plausible
3    allegations that she might purchase the product in the future, despite the fact it was once
4    marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the
5    product was improved.").

6    In a similar vein, Defendants contend that Plaintiffs now have all the information
7    they require to avoid future misunderstanding about the challenged products ingredients:
8    "they need only review the label." Dkt. No. 44 at 9. But it is not clear why the burden to
9    avoid future misunderstanding lies with Plaintiffs and not Defendants when it is
10   Defendants' actions that are allegedly unlawful. After all, if the ability to fully review a
11   product label automatically defeats standing for injunctive relief, it is difficult to imagine
12   any mislabeling and formulation case where injunctive relief would be appropriate. And
13   the Ninth Circuit was "not persuaded that injunctive relief is *never* available for a
14   consumer who learns after purchasing a product that the label is false." *Davidson*, 889
15   F.3d at 970 (emphasis added in original) (quoting *Duran v. Creek*, 2016 WL 1191685, at
16   *7 (N.D. Cal. Mar. 28, 2016)).

17   Moreover, as the Court explained above, courts "must be careful not to employ too
18   narrow or technical an approach" to standing in the class action context. *Armstrong*, 275
19   F.3d at 867. "Rather, we must examine the questions realistically: we must reject the
20   temptation to parse too finely, and consider instead the context of the inquiry." *Id.* Even
21   though the named Plaintiffs may now know that reviewing the label could reveal some
22   misunderstanding, it is plausible that they would forget to do so or instead choose to rely
23   on Defendants' principal representations. *Cf. Brady v. Bayer Corp.*, 26 Cal. App. 5th
24   1156, 1170 (2018) ("[T]he [California] Attorney General notes that in marketing literature
25   there is an awareness that [m]ost of the time when people encounter [a brand's] name, [the
26   brand] won't be there to explain it to them. *And they won't have the time or interest to*
27   *read about it on your website or the back of the box.*") (emphasis in original, quotation
28   marks omitted). And as the Ninth Circuit noted in *Davidson*, "the threat of future harm

11

may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future . . . ." *Davidson*, 889 F.3d at 969. Absent injunctive relief, Plaintiffs, as well as members of the proposed class, may be unable to rely on Defendants' advertising or labeling in the future. *See Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. Nov. 27, 2012).

It is also not clear that simply reviewing the label would indeed clear all misunderstanding. How are Plaintiffs to know which active ingredients are "minerals" and which are "chemicals"? In this context of this lawsuit, the distinction is clear—the parties agree which ingredients are minerals and the FDA agrees with the parties' assessment. *See, e g.*, 84 Fed. Reg. 6204, 6216 ("Zinc oxide is an inorganic, mineral compound."), 6221–22 ("Unlike zinc oxide and titanium dioxide . . . oxybenzone is an organic (or chemical) filter, which absorbs UV radiation."). But absent an encyclopedic knowledge of sunscreen active ingredients, Plaintiffs may not be able to truly know whether a sunscreen is truly "mineral-based."

Accordingly, the Court DENIES Defendants' motion to dismiss for lack of standing to pursue injunctive relief.

### D. Whether the Challenged Statement is False or Misleading

Turning to the merits, Defendants next argue that Plaintiffs have not adequately alleged that the reasonable consumer would find the phrase "mineral-based" to be false or misleading. Because Plaintiffs' claims all rely on the premise that Defendants' use of "mineral-based" is false or misleading, Defendants contend that each of Plaintiffs' claims must be dismissed.

"To state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, 'it is necessary only to show that members of the public are likely to be deceived.'" *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Plaintiffs, however, must also show "more than a mere possibility that [Defendants] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable

12

manner." *Moore v. Mars Petcare US, Inc.*, __ F.3d ___, 2020 WL 4331765, at *5 (9th Cir. July 28, 2020) (alteration in original) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)). "Rather, the reasonable consumer standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* (quotation marks omitted).

Here, the challenged statements are variations on the phrase "mineral-based." The parties provide competing understandings of that phrase. Citing to the Merriam-Webster dictionary's definition of "base," Defendants argue that "mineral-based" simply means that mineral active ingredients play the "supporting or carrying" role or is "the fundamental part of something." *See* Dkt. No. 36 at 24. By contrast, Plaintiffs argue that "mineral-based" implies something more. Plaintiffs contend that reasonable consumers would interpret the phrase to mean that the product contains no chemical active ingredients. *See* FAC ¶ 34. This is so, Plaintiffs reason, because "nearly all other sunscreens on the market (other than Defendants') that are advertised as mineral or mineral-based contain only mineral active ingredients." *Id.* ¶ 30.

On a motion to dismiss, the Court must accept Plaintiffs' factual allegations as true. *Cahill*, 80 F.3d at 337–38. And "whether a practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" or motions to dismiss. *Williams*, 552 F.3d at 938. Thus, the Court must accept Plaintiffs' view of the reasonable consumer's understanding of the phrase "mineral-based."

Defendants' arguments to the contrary do not persuade. First, the dictionary definition of "base" does not resolve the parties' dispute. Merriam-Webster also defines "base" as "a main ingredient." *Base*, Merriam-Webster (last visited on July 31, 2020), *available at* https://www.merriam-webster.com/dictionary/base. In some of the challenged products, however, chemical active ingredients actually make up a larger percentage of the ingredients than mineral active ingredients. *See* FAC ¶ 32; *see also* Dkt. No. 37-4. An ingredient that constitutes less than half of all active ingredients can hardly be considered the "main ingredient." Indeed, in some contexts, the generic "[item]-based" descriptor

13

1 implies that the item comprises most if not all of the whole.  For example, a "plant-based
2 meal" is generally understood to contain only plants and no meet.  *See, e.g.*, Cal. Health &
3 Safety Code § 1265.10 (defining "plant-based meal" as entire meals that contain no animal
4 products or byproducts, including meat, poultry, fish, dairy, or eggs").  Of course,
5 reasonable consumers may favor Defendants' preferred definitions in the context of
6 sunscreen lotions.  But on a motion to dismiss and without any evidence in support of their
7 linguistic position, the Court may not adopt Defendants' preferred construction.

8 Next, Defendants pivot and argue that their use of "mineral-based" is nevertheless
9 not misleading because in each of their products, the largest single active ingredient by
10 percentage is a mineral active ingredient.  But the challenged statement is "mineral-based"
11 not, for example, "zinc oxide-based."  A reasonable consumer could construe the general
12 "mineral-based" statement to mean that mineral active ingredients in the aggregate are the
13 "main ingredients."  And for the challenged products, mineral active ingredients make up a
14 roughly equal proportion of the active ingredients as chemical active ingredients.  *See, e.g.*,
15 Dkt. No. 37-4 at 4 (mineral active ingredients form 9.7% of all ingredients and chemical
16 active ingredients form 12% of all ingredients in the Sports Lotion).  Moreover, as
17 Plaintiffs point out, the fact that a single mineral active ingredient is the largest active
18 ingredient by percentage is not dispositive.  *See* Dkt. No. 43 at 22.

19 Defendants also argue that any ambiguity or misunderstanding created by their
20 "mineral-based" label is clarified by the detailed ingredients list on the back of the product.
21 The Ninth Circuit recently reconfirmed, however, that if "'a back label ingredients list . . .
22 conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not
23 defeated."  *Moore*, 2020 WL 4331754, at *6 (alterations in original) (quoting *Brady*, 26
24 Cal. App. 5th at 1168).  Applied here, the Court is not convinced that the ingredients list
25 confirms Defendants' use of the "mineral-based" descriptor.  As explained above, the
26 ingredients list suggests that chemical active ingredients roughly equal, and in some cases
27 exceed, the amount of mineral active ingredients.

28 In short, the Court finds that Plaintiffs have plausibly alleged that the reasonable

14

1  consumer may be misled by Defendants' use of the phrase "mineral-based."  Because

2  Defendants' motion to dismiss Plaintiffs' first, second, third, fourth, and fifth claims all

3  turn on whether Plaintiffs have adequately alleged deception (*see* Dkt. No. 36 at 23–28),

4  the Court DENIES Defendants' motion to dismiss Plaintiffs' first, second, third, fourth,

5  and fifth claims for failure to allege deception.

### E.  CLRA Notice

In the alternative, Defendants contend that Plaintiffs' CLRA claim must be dismissed for failure to provide sufficient notice.  *See* Dkt. No. 36 at 34.

The CLRA requires plaintiffs to provide notice of a damages claim to the defendant "thirty days or more prior to the commencement of an action for damages."  Cal. Civ. Code § 1782(a).  Here, Plaintiffs argue that they provided the required notice on three separate occasions.

First, Plaintiffs point to their September 18, 2018, letter to Defendants serve as the required CLRA notice.  But that letter was sent on behalf of Kevin Terry, who is not named in this lawsuit.  *See* Dkt. No. 37-13.[3]  The letter was also only addressed to Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc., neither of whom remain as defendants in this case.  Defendants—Bayer HealthCare, LLC and Beiersdorf, Inc.—simply were not recipients of that letter.  *See id.* at 1.  Plaintiffs' January 3, 2020, letter suffers from a similar deficiency; it was not addressed to Bayer HealthCare, LLC.  These oversights render the letters insufficient to satisfy the CLRA notice requirement.  *See* Cal. Civ. Code § 1782(a)(1) (Plaintiff required to "[n]otify the *person alleged* to have employed or committed methods, acts, or practices declared unlawful . . . ") (emphasis added).

However, Plaintiffs' amendment of their complaint cures any defects with their

---

[3] Defendants request judicial notice of a letter from Plaintiffs' counsel to Bayer Corporation and Bayer Healthcare Pharmaceuticals, Inc.  *See* Dkt. No. 37.  Materials properly submitted as part of the complaint are considered incorporated by reference are subject to judicial notice.  *See Lee*, 250 F.3d at 688.  The parties agree that this letter is incorporated into Plaintiffs' complaint by reference.  *See* Dkt. No. 37 at 4–5; Dkt. No. 43 at 35 n.7.  Accordingly, the Court GRANTS Defendants' request for judicial notice as to this letter.

15

CLRA notice. Although some courts dismiss CLRA claims with prejudice when the notice requirement is not met, most courts in this district grant leave to amend with liberality. *See Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1017 (N.D. Cal. 2014) (collecting cases); *Werdebaugh v. Blue Diamond Growers*, Case no. 12-cv-02724-LHK, 2013 WL 5487236, at *17 (N.D. Cal. Oct. 2, 2013). Indeed, § 1782 explicitly provides for the possibility of amendment. *See* Cal. Civ. Code § 1782(d). Here, Plaintiffs' original complaint clearly notifies both Defendants of the alleged violations and the first amended complaint was filed more than 30 days after the original complaint. Both requirements in § 1782(a) are therefore satisfied.

Accordingly, the Court DENIES Defendants' motion to dismiss Plaintiffs' CLRA claim for lack of notice.

### F. Motion to Strike Class Allegations

Finally, Defendants argue that Plaintiffs' class allegations must be stricken because class members' claims are governed by the laws of their home states and variances in state law predominate. Defendants also contend that Plaintiffs lack standing to bring claims on behalf of out-of-California class members. *See* Dkt. No. 36 at 31–34. These arguments, however, are more appropriate at the class certification stage. The Court therefore defers decision on Defendants' motion to strike until class certification.

## IV. Conclusion

The Court DENIES Defendants' motion to dismiss.

**IT IS SO ORDERED.**

Dated: July 31, 2020

_____
NATHANAEL M. COUSINS
United States Magistrate Judge