**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
600 West Broadway, Suite 700
San Diego, CA 92101
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiffs, Settlement Class Representatives, and Settlement Class Members*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

MIKE XAVIER and STEVEN PRESCOTT, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

BAYER HEALTHCARE LLC, a Delaware limited liability company; BEIERSDORF, INC., a Delaware corporation,

Defendants.

Case No. 5:20-CV-00102-NC
Case Filed: 1/3/2020
FAC Filed: 5/15/2020
SAC Filed: 7/14/2021
*Assigned for all purposes to the Hon. Nathanael M. Cousins*

**DECLARATION OF MARK SCHEY FOR DIGITAL SETTLEMENT GROUP REGARDING CLASS NOTICE AND CLAIMS ADMINISTRATION IN SUPPORT OF MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# DECLARATION OF MARK SCHEY

I, MARK SCHEY, declare:

1. I am a founding partner of Digital Settlement Group, LLC ("**DSG**"), a company that provides class action notice and claims administration. The following statements are based on my personal knowledge and information provided by other DSG principals and employees working under my supervision, and if called upon to do so, I could and would testify competently about these matters.

2. **Purpose.** The key purpose of this declaration is to provide the Court with information regarding (a) DSG's implementation of the Notice Plan, including reach and efficiency, and (b) the reaction of the Settlement Class Members to the settlement embodied in the Settlement Agreement submitted as Exhibit 1 to the Declaration of Katherine A. Bruce, filed on July 14, 2021, in support of Plaintiffs' amended motion for preliminary approval of class action settlement (Dkt. 99-11), and hereinafter referred to as "**Settlement Agreement**" and/or "**Ag.**".[1]

3. **Exhibits.** DSG has submitted to Plaintiffs' counsel true and correct copies of the following documents filed as exhibits concurrently herewith:

a. **Exhibit 1**: DSG's most recent Weekly Administrator Summary, dated October 31, 2021, which reflects the performance of the Notice Plan and Settlement Class's reaction as of that date; and

b. **Exhibit 4**: Template cover letters and corresponding mailing lists for notices served on the Attorney Generals for each State and the United States, including the March 26, 2021 notice regarding the first settlement agreement, and the July 23, 2021 notice regarding the amended Settlement Agreement, pursuant to the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1715(b) ("**CAFA**").

/ / /

[1] All capitalized terms herein have the same meaning as set forth in the Settlement Agreement unless expressly stated otherwise.

## I. DSG'S MARKETING AND SETTLEMENT ADMINISTRATION EXPERIENCE

4. **Administration Experience.** DSG has served as a court-approved notice and claims administrator in numerous state and federal court class actions and has worked in the class action category for over a decade. DSG has provided expertise in internet notice to some of the largest class action administration companies in the industry.

5. **Sampling of Appointments.** A sample of class action settlements where DSG has provided class notice and administration services is listed below:

   a. *Eggnatz et al v. The Kellogg Company*, Case No. 1:12-cv-21678 (S.D. Fla. 2015) (nationwide class of purchasers of Kashi brand cereal products)

   b. *Garcia v. Iovate Health Sciences USA Inc.*, Case No. 1402915 (Santa Barbara County Superior Court, 2017) (national indirect purchaser class of a consumer product at retail)

   c. *Amy Rehak, et al. v. Telebrands Corporation & Walgreen Co.*, Case No. 1522-CC10756 (Circuit Court of the City of St. Louis, State of Missouri 2017)

   d. *Jan Harrison, et al. v. E. I. Du Pont De Nemours and Company, et al.*, Case No. 5:13-cv-01180-BLF (N.D. Cal. 2017)

   e. *Iglesias vs. Ferrara Candy Co.*, Case No. 3:17-cv-00849-VC (N.D. Cal. 2018) (nationwide class of purchasers of candy products)

   f. *Liptai v. Spectrum Brands Holdings, Inc.*, et al., Case No. 2018CV000321 (Wis. Cir. Ct. 2018) (nationwide class of purchasers of coffee maker and household products)

   g. *Hart v. BHH LLC, et al,* Case No. 1:15-cv-04804-WHP (S.D.N.Y. 2020) (nationwide class of purchasers of "pest repeller" products)

   h. *Mateski, et al. v. Just Born, Inc.*, Case No. CIVDS1926742 (San Bernardino County Superior Court, 2021) (nationwide class of purchasers of candy products)

6. **Example of Recognition by Courts.** In approving *In Re: Wellnx Marketing & Sales Practices*, MDL No. 1861 (Dist. Mass., 2011) (a national, 18 state multidistrict class action

litigation with a substantial indirect purchaser class), the Court noted: "the effort to provide notice to the class went well beyond what due process would require at its minimum. In fact, it was both an intelligent and effusive, if I can use that word, notification process, which has given me new some ideas for similar cases in the future for the proper way of giving notice in a case like this where it is hard to otherwise ascertain the identity of the class members."

7. **Examples of Industry Experience.** In addition to notice and claims administration, DSG has over twenty years of marketing experience with a specialty in television and internet advertising, including managing the official online sites for 20th Century Fox on behalf of News Corporation from 1993 to 1996. Our founders have served as marketing consultants to a variety of consumer product companies, where responsibilities included the creative directing of national marketing campaigns and producing and directing national television commercials (which have been featured in trade magazines, like *Advertising Age,* and generated hundreds of millions of dollars in retail revenue). DSG has also personally managed tens of millions of dollars in online advertising for consumer products. Due to DSG's extensive internet marketing experience, it has specialized in providing notice to unknown class members, including classes comprised of purchasers of consumer products. *See*, *e.g.*, *Arreguin v. Telebrands*, Case No. CIVRS1307798 (San Bernardino County Superior Court) (indirect purchaser class of nationwide Pocket Hose consumer product); *Eggnatz v. The Kellogg Company*, No. 1:12-cv-21678 (S.D. Fla. 2015) (indirect purchaser class of nationwide Kashi products with no direct mail component.)

## II. CASE THEORY AND SETTLEMENT CLASS

8. **Underlying Case Theory.** In this case, Plaintiffs allege that Bayer HealthCare LLC and Beiersdorf, Inc. ("**Defendants**") deceptively labeled Coppertone sunscreen Products as "Mineral-Based," despite the Products containing chemical active ingredients.

9. **Settlement Class.** The Settlement Class, in summary, includes: all retail consumers who purchased in the United States one or more Coppertone sunscreen products prior to September 17, 2021, for use and not for resale, that included "mineral-based" on the label in various sizes and forms: Coppertone Water Babies Pure & Simple, Coppertone Kids Tear Free, and Coppertone

Sport Face. Order, 7/29/2021 [Dkt. 107], at ¶ 7; Ag. at ¶¶ 2.13, 2.23, 2.33, 2.39. The Settlement Class does not include wholesale, resale, and distribution buyers, and the other Excluded Persons. *Id.*

## III. OVERVIEW OF THE NOTICE PLAN

10. **No Customer Lists.** This action involves consumer goods sold predominantly at retail, so the identity of purchasing class members was not known or readily available. DSG consulted with counsel for Defendants regarding the availability of contact information for consumers who bought the Products for reasons other than for resale—namely, the Settlement Class. Defendants did not sell the Products directly to consumers during the Class Period; instead, Defendants sold the Products to wholesalers or retailers, which then sold the Products to consumers or other resellers. Additionally, Defendants did not regularly or routinely collect or maintain identifying information for retail consumers who purchased the Products for purposes other than for resale. Accordingly, DSG did not design the Notice Plan to send postcards (which require mailing addresses) or mass emails (which require email addresses) directly to consumers who purchased the Products because the names and contact information for members of the Class are not known or reasonably ascertainable. In such cases, internet notice provides the best practicable way to inform consumers about the settlement. In so doing, DSG relies heavily on the recommendations in the Federal Judicial Center's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) ("**Claims Guide**")[2] to design notice plans.

11. **Overview of Notice Plan.** DSG developed a comprehensive notice program consisting of efficient media vehicles with the objective of reaching a substantial portion of the Settlement Class. An overview of the Notice Plan is outlined below. DSG believes this plan provided the best practicable methods to reach potential class members and has seen successful results in similar plans with similar class members.

---

[2] *See* https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0 (accessed 11/3/2021).

a. **Dedicated Settlement Website, Toll-Free Line, Email Address & Contact Information.** A Settlement Website (www.mineralbasedsunscreensettlement.com), e-mail address (info@mineralbasedsunscreensettlement.com), telephone number (877-452-8477), and mailing address (PO Box 166, Valparaiso, IN 46384) were set up on or before September 17, 2021. The contact information was also provided on the Settlement Website and in the press release.

b. **Settlement Website.** Since its implementation, the Settlement Website has set forth, in large text, the deadlines for claims, objections, and requests for exclusion from the Settlement as well as the date of the Final Fairness Hearing. It also contains easily accessible links to the complaint, Short Form and Long Form notices (in both English and Spanish), Claim Form, Preliminary Approval Order, Settlement Agreement, Preliminary Approval Motion (including all related paperwork), and the Notice of Change of Address for Clarkson Law Firm, P.C. Upon the filing of Plaintiffs' motions related to final approval, attorneys' fees, costs, and service awards, DSG will update the Settlement Website to provide easily accessible links to those documents and any order or judgment granting said motions.

c. **Press Release.** A national press release was distributed on September 20, 2021, through PR Newswire. PR Newswire is the industry's largest content distribution network reaching more than 4,000 United States websites, nearly 3,000 media outlets, and more than 550 news content systems. The network also includes PR Newswire for Journalists, an exclusive, media-only community with over 20,000 daily unique visitors.

/ / /

/ / /

/ / /

    d. **Online Ads & Impressions.** The online advertisements regarding this settlement began on September 17, 2021, and continued for a period of 30 days until October 17, 2021. This campaign achieved 71,240,482 digital impressions (i.e., views) on top-tier internet networks, including Google, Facebook, and Yahoo.

e. **Online Ads & Settlement Website.** All online advertisements directed potential Settlement Class Members to the Settlement Website, where they could download all important documents, review frequently asked questions, review the long form and short form notices (in both English and Spanish), and file a claim.

f. **Toll-Free Telephone Number.** A toll-free number with an Interactive Voice Response ("**IVR**") system has been available since initiation of the Notice Plan, and still remains available to answer questions regarding the settlement.

g. **Administrator Reports.** Weekly reports regarding submission of claims, objections, and requests for exclusion were, and still are, provided to counsel for all parties, including Class Counsel, throughout the notice campaign and claims process to date. Additional reporting will continue after Final Approval to ensure proper oversight of the claims processes.

12. **Use of Industry Experience.** One of the concerns noted in the Claims Guide is that settlement administrators are "often accountants by training and may lack personal knowledge or the training to conduct reach analyses." DSG, however, has extensive expertise in marketing and media-planning that is essential to conducting a reach analysis that satisfies due process concerns for a large indirect purchaser class.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

13. **Use of Marketing Research.** The Notice Plan is supported by "unbiased evidence supporting the plan's adequacy" as recommended by the Claims Guide. DSG analyzed ComScore, GfK MRI data and Media Partner data, which track and compile analytics on audiences, brands, consumer behavior, and demographics across a multitude of platforms.[3] Based on DSG's analysis from the data sources listed above, it appeared that the overwhelming majority of the Settlement Class was comprised of members who fell between the ages of 25-65+ (89%), with just over half of the class being female (54%). Further, according to Pew Research (2019), over 90% of adults in the United States use the internet. DSG tailored the Notice Plan to better fit the demographics and behavioral categories of the Settlement Class, including but not limited to those interested in outdoor activities and who live in warmer climates. DSG optimized Internet targeting to reach the necessary audiences throughout the notice period and placed additional emphasis on females ages 25-34, with and without children, and both males and females, ages 25-54, because a greater concentration of the Class fell within these age and demographic brackets according to our analysis from the above noted court-approved sources.

14. **Emulation of Defendants' Marketing Strategy.** The Notice Plan we developed emulated marketing campaigns that a company, such as the Defendant, use to sell the very same product. DSG consulted with counsel for Defendants regarding their marketing strategy for the Coppertone "Mineral-Based" sunscreen products at issue in this settlement. Defendants did not typically or heavily market the Products through print media during the Class Period. Rather, marketing efforts online overwhelmingly outweighed any marketing through print media (such as magazine or newspaper ads). Accordingly, DSG did not design the Notice Plan to take money out of the Settlement Fund and reallocate it to print publication since print advertisements are costly and typically less effective in these types of cases, whereas a similar amount of money spent on

[3] ComScore, GfK MRI, and Media Partner are industry-standard reporting tool. Indeed, ComScore is the leading cross-platform measurement company that provides independent data, metrics, products, and services to clients in the media, advertising, and marketing industries. It provides digital media analytics that help advertisers understand the composition, reach, and frequency of consumer media audiences. Courts have found comScore data reliably supported DSG's reach analyses for notice plans similar to that executed in this case.

digital advertising is more likely to reach more of the consumers who have purchased the Products. Further, in DSG's experience, digital notice programs have been approved in multiple cases with a substantial indirect purchaser class, similar to this case.

15. **Implementation of Notice Plan.** As the Court-appointed administrator for this settlement, DSG has performed the following duties: (1) arranging for the distribution of the Class Notice and Claim Forms to Settlement Class Members; (2) arranging for the publication of the short form notice in digital media; (3) answering inquiries from Settlement Class Members and/or forwarding such inquiries to Class Counsel or their designee; (4) receiving and maintaining on behalf of the Court and the Parties all Settlement Class Member correspondence regarding claims, objections, and requests for exclusion from the Settlement; (5) establishing the Settlement Website that posts notices, Claim Forms, and other related documents, as well as ensuring its functionality throughout the response period; (6) establishing a toll-free telephone number for informational inquiries; (7) receiving and processing claims to vet and eliminate potential fraudulent claims; (8) monitoring the efficacy of the online notice campaign to maximize views or "impressions," adjust any underperforming advertisements, and maximize conversion rates (i.e., click-through, download, and claim rates); (9) submitting a declaration attesting to the dissemination of the notice pursuant to the Court's preliminary approval order and the Settlement Agreement, as well as the Settlement Class's reaction, including the approximate number and amount of claims, objections, and exclusion requests received roughly to date; and (10) providing weekly reports to all counsel throughout the notice and claims process to allow for thorough oversight.

16. **CAFA Notice.** In compliance with CAFA, DSG mailed notices on behalf of Defendants to all appropriate State and Federal Attorney Generals regarding the first and amended Settlement Agreement, respectively filed on March 17, 2021 (Dkt. 81-4) and July 14, 2021 (Dkt. 99-11), within ten days of their filing, respectively on March 26, 2021 and July 23, 2021. *See* **Ex. 4**. The CAFA notices provided the information required for this settlement, which, in sum, included: (1) a copy of the complaint in this Litigation; (2) notice of date, time, and location of the judicial hearings for the first and amended preliminary approval motions (April 21, 2021, and July

28, 2021, respectively); (3) copies of the first and amended Settlement Agreement, included their respective exhibits (Claim Form, Notice Plan, Long Form Notice, Short Form Notice, and Online Advertisements), which were respectively filed on March 17, 2021 (Dkt. 99-11) and July 14, 2021 (Dkt. 99-11); (4) notice of the lack of any final judgments or dismissals at the time of mailing the CAFA notices; (5) an estimate of the total number of Settlement Class Members for each State, which is consistent with the estimates of the total number of Settlement Class Members nationwide provided in the amended motion for preliminary approval, filed under seal on July 14, 2021 (Dkt. 99), and the final approval motion, concurrently filed herewith under seal; and (6) any judicial opinions regarding the Settlement Agreement, which included the Court's denial of the first motion for preliminary approval on April 29, 2021 (Dkt. 87). *See* **Ex. 4**.

17. **Execution of Claim Administrator's Duties.** DSG has, and continues to, execute its duties in compliance with the Court-approved Notice Plan set forth in the Settlement Agreement and all notice and claims administration duties specified under the Settlement Agreement.

## IV. THE REACTION OF THE CLASS AND REACH OF THE CAMPAIGN

18. **Telephone Calls.** From the start of the Claims Period (September 17, 2021) to October 31, 2021, the telephone number established by DSG has received 51 calls and 4 messages. There was 1 call placed in response to messages. This represents approximately 79.5 minutes of IVR use and 2.3 minutes of human interaction. *See* **Ex. 1** [Admin. Rept.].

19. **Emails.** As of October 31, 2021, DSG exchanged approximately 453 e-mails (total incoming and outgoing emails) through the address info@mineralbasedsunscreensettlement.com. *See* **Ex. 1** [Admin. Rept.].

20. **Mailed Claim Forms.** DSG sent out 7 mailers, which contained Claim Forms requested via postal and email as of October 31, 2021. *See* **Ex. 1** [Admin. Rept.].

21. **Impressions.** The internet notice campaign delivered a total of 71,240,482 impressions (i.e., views). *See* **Ex. 1** [Admin. Rept.].

22. **Unique Settlement Website Visits.** The Settlement Website received 118, 542 unique visits (unique within 5 days) as of October 31, 2021. *See* **Ex. 1** [Admin. Rept.].

23. **Objections & Exclusions.** DSG received zero requests for exclusion and zero objections as of October 31, 2021.

24. **Reach.** As of October 31, 2021, the entire campaign reached at least 70 percent of the adult internet users who fell into the targeted group, and an additional potential audience of 134 million through the Press Release.[4]

25. **Claims.** As of October 31, 2021, DSG has received 63,825 claims seeking reimbursement for 312,469 Products. Of those, 744 claimed to include proof of purchase. These numbers do not account for all claims as the deadline to file has not yet expired. Currently, the deadline to postmark or submit online claims under the Settlement Agreement is set for November 17, 2021. Order, 7/29/2021 [Dkt. 107]. Once this deadline expires, DSG will continue to receive delayed mail-in claims for at least an additional week following the deadline. Consistent with the deadline to file a list of all opt-outs, on or before December 1, 2021, DSG will submit an updated report reflecting the Settlement Class's reaction to the Notice Plan and Settlement Agreement. *Id.* Based on DSG's prior experience and the performance of this Notice Plan outlined above, DSG believes that it will receive approximately 75,000 to 100,000 claims by that time.

## V. INTERNET ADVERTISEMENTS

26. **Digital Audience.** The internet is an extremely powerful tool for reaching potential class members and driving them to the Settlement Website. According to Pew Research (2021),[5] 93 percent of all adults in the United States use the internet, up from 76 percent in 2010. Over a decade of DSG's digital marketing experience was leveraged to design and implement the most effective and cost-efficient online notice plan.

---

[4] As set forth in the Supplemental Declaration of Mark Schey, filed on July 14, 2021 (Dkt. 99-10), the Notice Plan reaches a ***minimum*** of 70% of the Settlement Class using the best practicable and cost-efficient means. In short, studies show that reach, in comparison to media spend, plateaus at around 70% of a targeted audience. At that point, the cost of additional media spend exponentially increases, while the returns inversely decline.

[5] Available at http://www.pewinternet.org/fact-sheet/internet-broadband/ (accessed November 3, 2021).

27. **Impressions.** The internet notice program delivered 71,240,482 targeted impressions (i.e., views), of which 47,771 were delivered via targeted "search terms". The remaining display impressions were served on the most popular and highest reach sites and networks in the United States. These Tier-1 properties included Yahoo, Google, and Facebook. Relevant behaviors, interests, and/or topics were used to target consumers who were likely members of the Settlement Class.

28. **Targeted Search Term Campaign.** Targeted "search term" advertisements were delivered. Search ads allow advertisers to reach internet users when they are actively searching for information. By showing online advertisements regarding the settlement in search engine results for networks, such as Google, individuals who query the targeted terms in these search engines will return results that include online advertisements. In this way, the online advertisements target people who express interests in relevant matters and are, therefore, more likely to be members of the Settlement Class. Per the Claims Guide, this also provides "extra effort" to notify consumers where the class is "highly concentrated." In addition, contextual, in-market, topic and/or affinity targeting were used to ensure the most relevant audience.

29. **Online Notices.** All of the notice advertisements were designed to "command class members' attention" and "were written in a clear, concise and easily understood language."[6] Clicking on the links directed the Settlement Class Member to the Settlement Website where they had quick access to a printable and online version of the notices and Claim Form. True and correct examples of the online advertisements were filed on July 14, 2021, as Exhibit B3 to the Settlement Agreement.

/ / /

/ / /

6 *See* Claims Guide at pp. 1, 5.

## VI. CONCLUSION

30. **Best Practicable Notice.** Based on the foregoing, including DSG's extensive marketing and settlement administration experience and reliable data analytics, it is my professional opinion that the Notice Plan reached the target audience in the most cost-efficient, effective, and timely manner. The methods utilized in this Notice Plan are consistent with other approved class action settlement notice plans and in compliance with the preliminarily approved Settlement Agreement and Notice Plan. The Notice Plan reached ***at least*** 70 percent of the Settlement Class, which is consistent with the Claims Guide and similar court-approved notice plans for settlements DSG has administered to an indirect and unknown class of consumers of common and nationally sold household consumer goods. Accordingly, the Notice Plan provided the best-practicable notice and satisfied due process concerns.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct to the best of my knowledge and that this declaration was executed this 3rd day of November, 2021.

MARK SCHEY
Digital Settlement Group, LLC