**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
600 West Broadway, Suite 700
San Diego, California 92101
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiffs and Settlement Class
Representatives Mike Xavier and Steven
Prescott and the Settlement Class*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MIKE XAVIER and STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>BAYER HEALTHCARE LLC, a Delaware limited liability company; BEIERSDORF, INC., a Delaware corporation,<br><br>         Defendants. | Case No. 5:20-CV-00102-NC<br>Case Filed: 1/3/2020<br>FAC Filed: 5/15/2020<br>SAC Filed: 7/14/2021<br>*Assigned to the Hon. Nathanael M. Cousins*<br><br>**DECLARATION OF KATHERINE A. BRUCE IN SUPPORT OF PLAINTIFFS' MOTIONS FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

## REDACTED AND PUBLICLY FILED

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

<u>**DECLARATION OF KATHERINE A. BRUCE**</u>

I, KATHERINE A. BRUCE, hereby declare under penalty of perjury as follows:

1.      I am a partner at Clarkson Law Firm, P.C. ("**Clarkson**"), co-counsel of record with Moon Law APC ("**Moon**") for Plaintiffs and Settlement Class Representatives Steven Prescott and Mike Xavier (collectively, "**Plaintiffs**" and/or "**Settlement Class Representatives**") and preliminarily appointed as Settlement Class Counsel.[1] I am a member in good standing with the California State Bar and admitted to all United States District Courts in the State of California. I make this declaration in support of Plaintiffs' motion for final approval of class action settlement ("**FAM**") and Plaintiffs' motion for attorneys' fees, costs, and service awards ("**Mot. Fees, Costs, Svc. Aw.**") (collectively "**Motions**"). I make the following statements based on my own personal knowledge, except where indicated as based upon information and belief. If called to testify to the following matters, I could and would do so competently.

2.      I have submitted concurrently herewith true and correct copies of the following documents as exhibits:

   a.   **Exhibit 1**: Court-Appointed Claim Administrator Digital Settlement Group's ("**DSG's**") most recent Weekly Administrator Summary, dated October 31, 2021;

   b.   **Exhibit 2**: Clarkson's firm resume that accurately sets forth its attorneys' qualifications to serve as class counsel for the Settlement Class[2] (hereinafter, the "**Clarkson Resume**");

   c.   **Exhibit 3**: The firm resume for Moon Law, APC ("**Moon**"), which accurately sets forth its attorneys' qualifications to serve as class counsel for the Settlement Class

---

[1] All capitalized terms have the same meaning as those terms set forth in the preliminarily approved Settlement Agreement, fully executed on July 12, 2021, and filed as Exhibit 1 to the Declaration of Katherine A. Bruce in support of Plaintiffs' amended motion for preliminary approval [Dkt. 99-11] ("**Settlement Agreement**" and/or "**Ag.**"). Order, 7/29/2021 [Dkt. 107].

[2] The term "**Settlement Class**" or "**Class**" is effectively defined under the terms of the Settlement Agreement as: all retail consumers who purchased in the United States one or more of the Products, for use and not for resale, prior to the date that the Class is first notified of the settlement pursuant to the Court's preliminary approval order ( on September 17, 2021, the "**Notice Date**"). *See* Ag. ¶¶ 2.13 (Excluded Persons), 2.23 (Notice Date), 2.26 (Online Notice), 2.32 (Preliminary Approval), 2.33 (Products), 2.39 (Settlement Class). The term "**Products**" means Coppertone sunscreen products that included "Mineral-Based" on the label, in various sizes and forms: Coppertone Water Babies Pure & Simple, Coppertone Kids Tear Free, and Coppertone Sport Face. *Id.* ¶ 2.33.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

(hereinafter, the "**Moon Resume**");

d.  **Exhibit 4**: Template cover letters and corresponding mailing lists for notices served on the Attorney Generals for each State and the United States, including the March 26, 2021 notice regarding the first settlement agreement, and the July 23, 2021 notice regarding the amended Settlement Agreement, pursuant to the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1715(b) ("**CAFA**");

e.  **Exhibit 5**: A chart that summarizes Clarkson's total hours expended, and corresponding hourly rates and total fees, disaggregated by each timekeeper and nature of work performed;

f.  **Exhibit 6**: A chart that summarizes Moon Law's total hours expended, and corresponding hourly rates and total fees, disaggregated by each timekeeper and nature of work performed;

g.  **Exhibit 7**: Excerpt from ALM Media Properties, LLC's National Law Journal's Billing Survey, dated 2014, regarding billing rate averages for partners as high as $1,055 per hour and for associates as high as $675 per hour in and around 2014;

h.  **Exhibit 8**: Jennifer Smith, The Wall Street Journal, *On Sale: The $1,150-per-Hour Lawyer --- Legal Fees Keep Rising, but Don't Believe Them; Clients Are Demanding, and Getting, Discounts* (Dow Jones & Company, Inc., 4/11/2013), regarding increasing billing rates as high as $1,000 per hour, including trial lawyers charging $1,500 per hour;

i.  **Exhibit 9**: Sara Randozzo, The AmLaw Daily, *When it Comes to Billing, Latest Rate Report Shows the Rich Keep Getting Richer* (ALM, 4/16/2012), summarizing findings of TyMetrix, a company that manages and audits legal bills, regarding billing rates over a 5-year period ending in December 2011, to compile the rising rates companies actually pay for legal work, noting Los Angeles amongst the highest rates, associate rates averaging about $600 per hour amongst the top quartile, and partner rates averaging $900 per hour amongst the top quartile;

j.  **Exhibit 10**: Printout from The Wall Street Journal Online, *Top Billers* (WSJ,

2/23/2011), regarding billing rates as high as $1,250 an hour in approximately 2011;

k. **Exhibit 11**: Printout from the ALM Daily Report, dated February 22, 2011, regarding progressively rising billing rates for San Francisco, California, between 2006 and 2009, as high as $775 per hour;

l. **Exhibit 12**: Excerpts from Westlaw CourtExpress, *Legal Billing Report*, of the California Rate Report by Billing Rate in Volume 11, specifically including: Quarterly Issue No. 1 (May 2009) at pp. 59-60, Quarterly Issue No. 2 (dated August 2009) at pp. 72-73, and Quarterly Issue No. 3 (dated December 2009) at pp. 72-73, which reflect a trend of rising hourly rates in the State of California as high as $960 per hour;

m. **Exhibit 13**: Excerpt from ALM Media Properties, LLC's National Law Journal's Billing Survey, dated 2010, regarding billing rate averages for partners as high as $769 per hour and for associates as high as $442 per hour in and around 2010; and

n. **Exhibit 14**: Amy Kolz, The AmLaw Daily, *Bamkruptcy Rates Top $1K Mark in 2008-09* (ALM, 12/15/2009), reviewing bankruptcy hourly billing rates reported in court filings in Delaware and the Southern District of New York, over a 12-month period ending in August 2009, have risen as high as $1,065 per hour, with many AmLaw 200 partners billing in excess of $1,000 per hour, and associates as high as $700 per hour.

## I.   LITIGATION & SETTLEMENT HISTORY

3.   **Investigation.** Plaintiffs have engaged in extensive formal and informal discovery, pursued written discovery and Defendants' documents, thoroughly investigated Plaintiffs' claims, and consulted with experts. Indeed, Plaintiffs and their Settlement Class Counsel have dedicated considerable, time, effort, and skill in the investigation and discovery for this litigation, including, but not limited to:

(1)   Researching and analyzing relevant scientific studies and published research regarding the benefits and costs of using mineral versus non-mineral or chemical active ingredients in sunscreens, including the attributes of both from an aesthetic

standpoint and the toxicity and adverse impact chemical active ingredients have on humans, animals, and reefs, including corals and inhabiting marine life, to understand the materiality of "Mineral-Based" and similar advertising claims and their importance to consumers;

(2) Researching and analyzing the regulations, including the Code of Federal Regulations and various state regulations, regarding labeling and advertising personal care consumer goods, cosmetics, over the counter drugs, and sunscreens, including any reports or studies considered by the legislature or executive agency in promulgating those regulations;

(3) Researching and analyzing publications from or made available by the United States Federal Trade Commission ("**FTC**") and Federal Drug Administration ("**FDA**") regarding labeling and advertising recommendations, requirements, and prohibitions for personal care consumer goods, cosmetics, over the counter drugs, and sunscreens to evaluate mineral and natural claims and materials that informed said guidance;

(4) Researching and analyzing information from or made available by the FDA regarding the Generally Recognized as Safe ("**GRAS**") rating or lack thereof for sunscreen active ingredients and its development over time;

(5) Researching and analyzing any FTC enforcement actions or investigations into "Mineral-Based" or similar claims for personal care consumer goods, cosmetics, over the counter drugs, and sunscreens;

(6) Researching and analyzing relevant or related investigations and decisions of the Better Business Bureau's National Advertising Division ("**NAD**") and National Advertising Review Board ("**NARB**") to evaluate any industry standards for advertising and substantiating claims regarding personal care consumer goods, cosmetics, over the counter drugs, and sunscreens;

(7) Researching and analyzing prior litigation related to the Products and Defendants' other personal care, consumer goods, cosmetics, over the counter drugs, and sunscreens;

(8) Researching and analyzing market research, including consultation with experts, regarding consumers' perception, materiality, and monetary value of the "Mineral-Based" and similar claims to evaluate the reasonable consumers understanding and importance placed on such claims;

(9) Researching and analyzing Defendants' and major third-party retailer websites and social media profiles, periodically and including archived web pages, to evaluate all publicly available labels for Products, including prominent front label claims, related "Mineral-Based" claims, and back label ingredient disclosures, as well as Defendant's marketing strategy and the net impression of online consumers;

(10) Conducting extensive legal research to analyze the prospective merits and weaknesses of the case through class certification and trial, including each element of class certification, common defenses thereto regarding issues of commonality, predominance, and typicality, and the various states laws regarding the statute of limitations, elements of each cause of action, common affirmative defenses, and available remedies;

(11) Researching the industry practices regarding the research and development, sourcing and manufacture of raw materials, production of finished household consumer goods, labeling development, compliance checks, and production, marketing through third parties, data analytics for digital marketing campaigns, and related financial considerations for budgeting, auditing, and protecting profit margins;

(12) Researching and analyzing Defendants' secretary of state filings and Defendant Bayer Healthcare LLC's financial reporting to investors and the Securities Exchange Commission to evaluate Defendants' market sects, financial strategy, operations, and corporate structure

(13) Analyzing Defendants' Products' sales and related documents, and researching retail sales pricing for the Products, in consultation with experts in consumer behavior, statistical analysis, and market research designed to isolate the premium consumers pay for falsely advertised common household goods, to determine the maximum value

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

recoverable for economic losses to the Settlement Class;

(14)  Researching and analyzing potential class-wide damages based on a review of price premiums attributed to similar false and deceptive advertising claims or similar products regarding household consumer goods;

(15)  Researching and analyzing comparable products to identify sunscreens with and without a "Mineral-Based" or similar claims, with and without all mineral active ingredients, and understand the salient product attributes and its impact on pricing;

(16)  Obtaining and evaluating Defendants' document production and responses to interrogatories and requests for documents, including key information and documents regarding Defendants' market research, market strategy, labels, sales, and formulation of the Products;

(17)  Reviewing consumer protection advocacy group publications, analyses, and research, including for example the Environmental Working Group, concerning sunscreens and their ingredients;

(18)  Interviewing and vetting potential class representatives and plaintiffs to not only analyze their adequacy and any potential conflicts of interests to evaluate their adequacy and fairness as a class representative, commitment to the putative class and ability to satisfy the duties of a class representative, but also to investigate consumer experiences with the Products, reasons for purchasing them, and understanding of the challenged marketing claims in this litigation; and

(19)  Investigating, drafting, and engaging in pre-litigation activities to comply with pre-lawsuit notice requirements, including those imposed under the California Consumers Legal Remedies Act, codified at Civil Code, sections 1750, *et seq.* and various state laws surrounding breaches of warranty, as well take steps to ensure the preservation of evidence, including fleeting digital advertising campaigns, the content of dynamic websites, data analytics for such digital marketing, and various other documents and information relevant to this litigation.

4.  **Pre-Suit Demand Activities.** Aside from initiating the investigation of this matter, Settlement Class Counsel engaged in several pre-litigation activities. On September 18, 2018, Plaintiffs' counsel served Defendant Bayer Healthcare LLC with a Pre-Litigation Demand Letter, advising of its alleged violations of the California Consumer Legal Remedies Act, codified at Cal. Civ. Code §§ 1750, *et seq.* ("**CLRA**") and other applicable laws, and further requesting it preserve relevant evidence ("**2018 Letter**"). Defendant failed to respond to the 2018 Letter and failed to take any known corrective action requested to remedy its alleged false and deceptive advertising of the Products as "Mineral Based." On January 3, 2020, Plaintiffs' counsel filed this putative class action (Dkt. 1) and simultaneously served both Defendants with a second Pre-Litigation Demand Letter, informing them of their alleged violations under the CLRA and other applicable laws, and further requesting they preserve relevant evidence ("**2020 Letter**"). Yet again, the 2020 Letter did not generate any known adequate remedial measures and so Plaintiffs subsequently amended the complaint to asset a claim for damages under the CLRA pursuant to section 1782, as set forth below.

5.  **The Pleadings.** Defendants challenged the pleadings, which required Plaintiffs'

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

counsel to conduct extensive legal research and prepare substantial briefing, including preparations for oral arguments, related reports to the Plaintiffs regarding the status of the litigation, and ongoing conferences between Plaintiffs' counsel to evaluate, strategize, and use their collective knowledge and experience to successfully defeat Defendants' challenges and optimize the position of Plaintiffs and the class of consumers they have sought to represent.

a. On January 3, 2020, Plaintiffs filed a nationwide class action complaint against Defendants, alleging Defendants falsely labeled the Products as "Mineral-Based" in violation of state consumer protections laws, breach of express warranty, and to Defendants' unjust enrichment. Dkt. 1.

b. On May 1, 2020, Defendants filed a motion to transfer venue under 28 U.S.C. § 1404(a); a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2); a motion to dismiss under Rule 12(b)(6); and a motion to strike under Rule 12(f). Dkt. 25, 26.

c. In response, on May 15, 2020, Plaintiffs filed a First Amended Complaint ("**FAC**") to add additional remedies available under California Consumers Legal Remedies Act, codified at Cal. Civ. Code 1750, *et seq.* ("**CLRA**"). Dkt. 28.

d. On that same date, Plaintiffs also filed an opposition to Defendants' motions to transfer venue and dismiss for lack of personal jurisdiction (Dkt. 29), to which Defendants replied on May 22, 2020. Dkt 34.

e. On May 29, 2020, Defendants again moved to dismiss or strike Plaintiffs' FAC under Federal Rules of Civil Procedure 12(b)(6) and 12(f). Dkt. 36. Plaintiffs opposed Defendants' motions on June 12, 2020 (Dkt. 43), and Defendants filed a reply on June 19, 2020 (Dkt. 44).

f. On June 29, 2020, the Court denied Defendants' motions to dismiss for lack of personal jurisdiction and to transfer venue. Dkt. 46.

g. After a hearing on July 22, 2020, the Court denied Defendants' motion to dismiss or strike on July 31, 2020. Dkt. 50.

h. On August 14, 2020, Defendants answered Plaintiffs' FAC. Dkt 51, 52.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

ND Cal Case No. 5:20-CV-00102-NC                    -7-

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

i.  Pursuant to the Parties' unopposed motion and stipulation filed on July 14, 2021 (Dkt. 98), and this Court's order entered the same day (Dkt. 102), Plaintiffs filed the Second Amended Complaint ("**SAC**") the very same day (Dkt. 103).

6.    **Case Management Strategy and Related Activities.** Plaintiffs' counsel invested significant hours engaged in case management, including the preparation, review, and implementation of a discovery and briefing schedule, status reports and case management statements, protective order regarding confidentiality and protocol regarding electronically stored information ("**ESI**"), and related activities. The design and implementation of such plans for managing this litigation, at times, required considerable analysis and conferences to protect the putative class's interests, weighing of likely outcomes and associated costs, and evaluation of the practical realities of litigation and coordination of numerous attorneys, staff, consultants and experts, and related vendors. This included, by way of example, the following activites:

a.  The Parties met and conferred to prepare, draft, and file, on June 3, 2020, the initial Joint Case Management Statement and Federal Rule of Civil Procedure 26(f) report. Dkt. 41.

b.  The Parties also met and conferred to prepare, draft, and file a protective order, on September 4, 2020 (Dkt. 55), governing the confidentiality of information and documents.

c.  The Parties also met and conferred to prepare and draft an ESI Protocol governing the preservation, review, and production of materials that would entail a significant amount work if done poorly or without consideration of the facts, circumstances, and issues in this litigation. Although the Parties prepared a draft ESI Protocol, they did not file it as they focused their efforts, instead, on the upcoming settlement conferences, which were productive, such that further attorney hours committed to finalize and file the protocol did not appear reasonably necessary at the time.

d.  Moreover, throughout the pre-trial stage, the Parties have met and conferred to prepare, draft, and file numerous case management statements and, where

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

required, schedules, and less substantial status reports, apprising the Court of the status of the case and any relevant or pertinent matters. *See*, *e.g.*, Amended Joint Case Management Statement, 8/19/2020 [Dkt. 53]; Amended Joint Case Management Statement, 12/2/2020 [Dkt. 70]; Amended Joint Case Management Statement, 3/3/2021 [Dkt. 79]; Joint Status Report, 5/19/2021 [Dkt. 88]; Joint Status Report, 6/8/2021 [Dkt. 90]; Joint Status Report, 6/23/2021 [Dkt. 94]; Joint Status Report, 7/7/2021 [Dkt. 97].

7. **Discovery.** Settlement Class Counsel engaged in discovery, compiling documents and information, reviewing and analyzing discovery and disclosures, propounding and responding to interrogatories and document requests, and engaging in related activities to not only buttress Plaintiffs and the putative class's claims and defend against Defendants' defenses, but also to identify deficiencies, evaluate the admissibility of evidence, identify witnesses and third-parties to subpoena for depositions and/or documents in connection with certification or the merits, conduct further investigations into information available from alternative sources, and ensure that critical evidence is prioritized according to a reasonable and thoughtful schedule that is both economically efficient and effective at advancing the putative class's position to maximize case value. Some of the discovery-related activities included the following:

a. On August 19, 2020, Plaintiffs served Bayer Healthcare LLC and Beiersdorf, Inc. ("**Defendants**") with substantial requests for documents and interrogatories that included issues of class certification and merits.

b. On August 21, 2020, Defendants similarly served Plaintiffs with requests for documents and interrogatories.

c. On September 4, 2020, the Parties exchanged initial disclosures.

d. On October 2, 2020, Defendants each served responses to Plaintiffs' discovery requests.

e. On October 2, 2020, Defendant Beiersdorf produced documents, which included comprehensive market research, trade strategy, and advertising designs, as well as formulation information, all of which informed Plaintiffs' case strategy and

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

settlement position. In addition, Defendants provided Plaintiffs with comprehensive Product sales data.

 f. On October 5, 2020, Plaintiffs served responses to Defendants' discovery requests.

 g. Plaintiffs' counsel evaluated Defendants' discovery, defenses, and the merits of Plaintiffs' claims, consulted with damages experts, conducted extensive research into comparison product labels, market pricing, and retail sales, and conducted a comprehensive analysis of Defendants' sales data to determine maximum case value assuming full liability, as well as reasonable settlement value in light of the risks of litigation and likely price premium attributable to the false mineral-based label of the sunscreen products at issue.

 8. **Discovery and Investigation Advanced the Prosecution of the Litigation and Facilitated Settlement Negotiations.** Armed with information from formal discovery and their investigation, Plaintiffs and their counsel vigorously prosecuted this litigation and negotiated the Settlement Agreement based on a well-informed analysis of the strengths and weaknesses of the case, the likelihood of success at certifying this litigation as a class action and prevailing on the merits at trial, and the maximum and reasonable monetary value of this litigation. Plaintiffs' research and investigation not only facilitated their success on several motions challenging the pleadings, jurisdiction, and venue (Order, 6/29/2020 [Dkt. 46]; Order 7/31/2020 [Dkt. 50]), prepared them for class certification and trial, demonstrating their adequacy, but it also served Plaintiffs well in negotiating a fair, adequate, and reasonable settlement. By order of this Court, the Parties participated in settlement conferences with the acting Magistrate Judge for the Northern District of California, the Honorable Virginia C. DeMarchi. *See* Order, 6/1/2020 [Dkt. 38]; Minute Entry, 9/25/2020 [Dkt. 65]; Minute Entry, 12/11/2020 [Dkt. 72]; Minute Entry, 12/14/2020 [Dkt. 73].

 9. **First Three Settlement Conferences.** Prior to the first settlement conference on September 25, 2020, the parties exchanged comprehensive mediation briefs and submitted confidential settlement letters to the Court that extensively detailed their legal and factual support. Thereafter, the Parties participated in settlement conferences with Judge DeMarchi on three separate

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

days over the course of three months before ultimately reaching the initial settlement The first two conferences entailed a full day of settlement negotiations and the third conference entailed a half-day of settlement negotiations, all of which Judge DeMarchi mediated. At the conclusion of the last settlement conference, Plaintiffs and Defendants reached a tentative settlement in principle on key terms. Thereafter, the Parties earnestly debated the details of the settlement over the course of several months, including the Notice Plan and claims process, among other terms, in consultation with respected administrators. Indeed, Plaintiffs spent approximately three months negotiating the finer details and language of the initial settlement agreement, including the Claim Form, Long Form and Short Form Notices, Online Advertisements, and Proposed Orders Granting Preliminary and Final Approval. These negotiations required extensive calls between counsel for the Parties, at times exceeding more than several hours throughout the week, numerous discussions amongst Plaintiffs' counsel that, again, would exceed more than several hours throughout the week, and several discussions between Plaintiffs and their counsel. In addition the hours of discussion, the drafting of the settlement agreement and related exhibits required a substantial number of hours to implement the ongoing debate about the details of the settlement.

10. **Next Two Settlement Conferences.** On March 17, 2021, Plaintiffs filed their motion for preliminary approval of the class action settlement (Dkt. 81), which this Court heard on April 21, 2021 (Minute Entry, 4/21/2021 [Dkt. 86]). On April 29, 2021, the Court denied Plaintiffs' motion for preliminary approval without prejudice, identifying specific concerns that the Parties subsequently remedied in the amended Settlement Agreement. Order, 4/29/2021 [Dkt. 87]; Order, 7/29/2021 [Dkt. 107]. To resolve those issues, the Parties returned to Judge DeMarchi for two additional settlement conferences to facilitate further arm's-length negotiations that took place over the course of two months. Thereafter, Plaintiffs' counsel, again, spent a significant number of hours in negotiations and discussions with Defendants' counsel, amongst themselves, and with their clients, as well as the drafting and review phase of the amended Settlement Agreement and related exhibits. Finally, on July 13, 2021, the Parties had a fully executed Settlement Agreement. And, on July 14, 2021, Plaintiffs filed an amended motion for preliminary approval of the amended Settlement Agreement and, after a hearing on July 28, 2021, the Court granted the motion on July

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

29, 2021. PAM, 7/14/2021 [Dkt. 99]; Minute Entry, 7/29/2021 [Dkt. 105]; Order, 7/29/2021 [Dkt. 107]. In granting the motion, the Court found the terms of the Settlement Agreement preliminarily reasonable and the Notice Plan preliminarily consistent with due process of law. Order, 7/29/2021 [Dkt. 107].

11. **Plaintiffs' Counsel's Further Settlement-Related Activities.** Plaintiffs' counsel spent a considerable amount of time to craft the proposed settlement, vet and work with administrators, develop and oversee the performance of the Notice Plan, and prepare multiple motions to obtain this Court's approval of the Settlement Agreement. Setting aside the investigation necessary to ensure a fully informed, reasonable, and fair settlement, Plaintiffs' counsel spent hours reviewing and revising the first and amended Settlement Agreements, including multiple conferences internally and with Defendants' counsel, Plaintiffs, the administrator, and with consultants. Plaintiffs' counsel spent several hours vetting various administrator budgets and proposed notice plans, including researching indirect digital campaigns to ensure it will satisfy due process and reach a substantial majority of the Settlement Class. Plaintiffs' counsel also prepared and filed a detailed preliminary approval motion on March 17, 2021 (Dkt. 81-82) and an amended motion on July 14, 2021 (Dkt. 99-100), as well as prepared for and appeared at oral arguments for each. Following preliminary approval, Plaintiffs' counsel has actively monitored and overseen the administration of the Notice Plan and Settlement Class's responses to ensure that notice reached Settlement Class Members and they have had a reasonable opportunity to correct deficiencies before the deadlines to submit claims, objections, and requests for exclusion. Plaintiffs' counsel has also spent significant time preparing the instant Motions.

12. **Extensive Arm's-Length and Informed Settlement Negotiations Mediated by an Acting Magistrate Judge Based on Robust Investigation and Discovery.** Throughout this process, neither counsel for Plaintiffs nor Plaintiffs colluded with Defendants or their counsel to undermine the interests of the Class. At all times, the parties negotiated at arm's length and Plaintiffs and Plaintiffs' counsel strenuously negotiated for the benefit of the Settlement Class. Consequently, the Settlement Agreement is the result of fully informed negotiations based on a vast amount of information obtained during discovery and mediation, in the course of Plaintiffs' extensive

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

investigation, as well as numerous rounds of review of the Settlement Agreement and related documents and vigorous negotiation.

13.    **Plaintiffs' Service.** Plaintiffs participated in the pre-suit investigation phase, including verifying their adequacy as class representatives, evaluating potential conflicts of interests, ensuring their claims are typical of the Class, and contributing to the drafting of the complaint. They also engaged in the discovery process, including conducting a reasonable and diligent investigation and search for documents and information, reviewing discovery responses, and certifying the accuracy and completeness of responses to interrogatories. Indeed, Plaintiffs' counsel spent hours speaking to each Plaintiff to discuss the discovery requests, search for documents and information independently, and then review responses prior to signing them. Additionally, they actively engaged in the settlement process, including preparing for settlement negotiations, attending a full-day settlement conference, conferring with counsel regarding settlement offers and demands, and evaluating the Settlement Agreement to ensure it constitutes a fair, reasonable, and adequate settlement for the Class. Plaintiffs were fully informed of the benefits and risks before entering into the Amended Settlement Agreement. At all times, Plaintiffs were responsive to the demands of this litigation, made all reasonable efforts to fulfill their obligations to the putative class, and acted in the best interests of the Settlement Class.

## II.    PLAINTIFFS' COUNSEL'S BACKGROUND

14.    **Plaintiffs' Counsel's Qualifications, Experience, Demonstrated Success, and Views.** Plaintiffs' counsel are experienced consumer advocates and are well qualified to serve as Class Counsel. *See* **Ex. 2** [Clarkson Law Firm Resume]; Exhibit **Ex. 3** [Moon Law Firm Resume]. They have vast experience successfully representing plaintiffs and classes in complex class-action litigation, specifically in consumer product mislabeling cases. **Ex. 2** [Clarkson Law Firm Resume]; Exhibit **Ex. 3** [Moon Law Firm Resume]. Plaintiffs' counsel have diligently prepared this matter for class certification and trial in accordance with the Court's schedule and presented this settlement to the Court in conformity with this District's guidelines. The proposed settlement was negotiated by Plaintiffs' counsel who have extensive experience in consumer class action litigation as set forth in their respective firm resumes. **Ex. 2** [Clarkson Law Firm Resume]; Exhibit **Ex. 3** [Moon Law

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

1    Firm Resume]. The settlement reflects the realities of each side's case and the information obtained

2    during the discovery and mediation process. The settlement is the result of extensive, informed,

3    arm's-length negotiations between counsel with substantial litigation experience, who are fully

4    familiar with the legal and factual issues in this case, and who have specific experience litigating

5    and settling complex and class action cases. Based on their collective experience, Plaintiffs' counsel

6    concluded that the proposed settlement provides exceptional results for the Class while sparing the

7    Class from the uncertainties and costs of continued and protracted litigation. Based on Plaintiffs'

8    counsel experience in cases, just like this litigation, and their well-rounded and extensive

9    investigation and valuation of this matter, they strongly recommend this Court grant final approval

10   of the Settlement Agreement. Indeed, the following provides a sampling of some representative

11   cases:

12    a.   ***Fluoroquinolone Antibiotic Cases***. Mr. Clarkson was the first attorney in the

13        country to take on clients in connection with claims for permanent and disabling

14        nerve damage caused by Levaquin, Cipro, and Avelox antibiotics manufactured

15        by Johnson & Johnson and Bayer Pharmaceuticals. Mr. Clarkson represents

16        dozens of clients across the country.

17    b.   ***Garcia v. Iovate et al.,* Santa Barbara Superior Court, Case No. 1402915**. Mr.

18        Clarkson successfully intervened in this case on behalf of a class of consumers of

19        the popular "Hydroxycut" weight loss supplement and, along with the efforts of

20        its co-counsel, increased the size of the settlement by more than ten-fold to a total

21        settlement value of over $10 million.

22    c.   ***Imburgia, et al vs. DirecTV Inc.*, Los Angeles County Superior Court, Case**

23        **No. BC398295**. Mrs. Clarkson was actively involved in obtaining class

24        certification of a matter involving unlawful termination fees against the satellite

25        television giant, DirecTV, and was among the attorneys appointed as co-lead class

26        counsel for the certified class. Most notably, she played an integral role in

27        defeating DirecTV's motion to compel arbitration following the United States

28        Supreme Court's 2011 decision in *AT&T Mobility v. Concepcion* – the only case

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

in the nation to overcome *Concepcion*'s broad impact on consumer contracts with arbitration provisions. Mrs. Clarkson participated in the further defeat of DirecTV's appeal in the Ninth Circuit. The decision was ultimately reversed by the United States Supreme Court, although Justices Thomas, Ginsburg, and Sotomayor filed dissents, consistent with plaintiffs' position, writing that the majority's decision "again expanded the scope of the FAA, further degrading the rights of consumers and further insulating already powerful economic entities from liability for unlawful acts."

d.  ***Grair vs. Johnson v. GlaxoSmithKline, Inc.*, 166 Cal. App. 4th 1497 (2009), Los Angeles County Superior Court, Case No. BC288536**. While at her former law firm, Mrs. Clarkson assisted in achieving a class settlement of over $3.5 million for a class of California consumers of the drug Paxil. This was a hard-fought lawsuit that spanned over the course of eight years. The settlement changed the general perception of sleeping pills which are no longer regarded as "non-habit forming" as falsely advertised by GlaxoSmithKline.

e.  ***Penos vs. Zell, et al.*, Los Angeles County Superior Court, Case No. BC398686**. Mrs. Clarkson assisted in uncovering Labor Code violations on behalf of employees in this certified class action lawsuit. She was an integral part of the discovery, briefing, and negotiations that ultimately led to a class action settlement of this matter, resulting in hundreds of thousands of dollars to the employee class.

## III.    SETTLEMENT FUND & ALLOCATION

15.  **Monetary Relief Per Amended Settlement Agreement.** Under the terms of the Settlement Agreement, Defendants must pay $2.25 million into the Settlement Fund that shall be exhausted by: (1) Class Members' valid claims, (2) notice and claims administration costs, (3) Plaintiffs' attorneys' fees and costs, and (4) incentive or service awards to Plaintiffs. *See* Ag. at ¶¶ 2.38 (Settlement Benefit), 2.40 (Settlement Fund). If the Settlement Fund is under- or over-subscribed, each valid claim will receive a *pro rata* upwards (for a maximum multiplier of nine (9)) or downwards adjustment per Product, respectively. *Id.* ¶ 3.13. Any remaining funds shall be

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

disbursed *cy pres* to a charitable organization. *Id.*[3] No money reverts to Defendants. *Id.* ¶ 2.40. Class Members who cannot produce proof of purchase may submit a claim to receive $2.50 per unit of Product, for up to four (4) units per household, which totals $10.00. *Id.* ¶ 3.4. Class Members who submit proof of purchase with their claim may receive $2.50 per unit of Product, without limitation to the number of units. *Id.*

16.    **Effective and Fair Distribution of Settlement Fund and Treatment of the Settlement Class.** Under the Settlement Agreement, Defendants must pay $2.25 million into the Settlement Fund and each purchaser who submits a valid claim may receive $2.50 per Product, without limitation for consumers who have proof they purchased more than four Products, which will be adjusted *pro rata* in the event of the Settlement Fund's over- or under-subscription. Ag. at ¶¶ 2.4, 3.4. The household cap of four Products without proof of purchase is based on customary purchasing behaviors for similar household consumer products and aligns with the average repeat purchaser rate for the Products (of approximately ███████ over the course of two or more years). The claims have been—and will continue to be—processed through the experienced and Court-approved Claim Administrator, DSG, to facilitate submission of valid claims, detect and eliminate fraudulent claims, and maintain a complete accounting of the distribution of moneys from the Settlement Fund with the oversight of all counsel and this Court. Ag. at § III; Order, 7/29/2021 [Dkt. 107], at ¶ 9 (appointing DSG).

## IV.    <u>VALUATION OF CONSIDERATION AND RELIEF TO SETTLEMENT CLASS</u>

17.    **Monetary Relief Valuation.** An evaluation of the monetary component of the

---

[3] **Cy Pres Award.** As set forth in the Declarations of Katherine A. Bruce, Kevin O. Moon, Steven Prescott, Mike Xavier, Theodore Scarborough, Alvaro Alonso, and Teresa Gonzalez-Ruiz submitted in support of Plaintiffs' amended motion for preliminary approval of class action settlement, filed July 13, 2021 (Dkt. 99-2 to 99-8), none of the Parties or their counsel colluded to steer the *cy pres* award to Look Good Feel Better to serve their personal interests to the detriment of the class. They are not owners, executive officers, or employees and, therefore, they do not have an ownership or financial interest in the charitable organization, and they cannot control how the charity administers or allocates the award. Plaintiffs and their counsel agreed to designate this charity solely based on the belief that the charity works to combat cancer, would use the award in a manner that serves the interests of the class of consumers who purchase sunscreen (and the Products at issue in this case), which are primarily designed to provide sun protection and, therefore, prevent cancer. *Id.* As such, this Court preliminarily approved the *cy pres* recipient after careful consideration of its nexus to this litigation and confirmation of the lack of any collusion or self-serving interests. Order, 7/29/2021 [Dkt. 107].

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

proposed settlement demonstrates its adequacy and reasonableness in two ways:

a. **Price Premium.** First, the Settlement Class's best-case recovery of all economic losses would be the price "premium" consumers paid for the alleged falsely advertised product attribute—its mineral-based quality. Based on Settlement Class Counsel's independent research, conducted in late-2020, regarding the advertised retail prices for major brick and mortar and ecommerce retailers (such as CVS, RiteAid, Target, Walmart, Amazon, Instacart, and Google Shopping), the average retail price for each Product falls within a range of approximately $7.44 and $9.89, which averages across all Products to approximately $8.88. The $2.50 refund for Products that cost approximately $8.88 is equal to a 28.2% price premium, which is within the range of a reasonable estimated price premium based on my firm and my co-counsel's collective experience in litigating false advertising cases and having conjoint analyses conducted to determine the price premium for an every-day household good where the challenged advertising claim is not the primary purpose of the product (which, here, is sun protection and not mineral active ingredients).

b. **Settlement Fund Percentage of Total Sales.** Second, based on the sales data provided by Defendant, the $2.25 million Settlement Fund represents nearly ██% of Defendants' sales of approximately ██████████, for approximately ██ products, over the course of approximately 5 years. If one were to assume that a full refund of the purchase price is the Settlement Class's best-case scenario (which far exceeds actual damages or restitution absent proof that the Products do not provide any sun protection—i.e., Settlement Class Members received absolutely no benefit in exchange for their money), then one would conclude Defendants' total sales represent the maximum monetary value of the case. Although Plaintiffs' counsel does not suggest that Defendants' total sales is equivalent to Defendants' maximum exposure for the actual economic losses suffered by the Settlement Class (i.e., actual damages being the portion of the sales

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

price that consumers paid solely for the falsely advertised "Mineral-Based" attribute), it represents the absolute outer-limits to the Settlement Class's economic losses recoverable in this action assuming the price premium was 100% of the sales price and the Class were entitled to a complete refund for Products that failed to provide any benefit at all.

18.     **Injunctive Relief & Valuation.** In addition to the monetary relief, the changed practices will benefit the Settlement Class by ensuring transparency with the challenged "Mineral-Based" labeling claim. Defendants have removed "Mineral-Based" from the Products' labels and, under the terms of the Settlement Agreement, Defendants have agreed that if the term "Mineral-Based" is used on Coppertone sunscreen product labels that contain chemical active ingredients over the next approximately 2 years and two months (up to and including December 31, 2023), then the product packaging will state the product contains other sunscreen active ingredients. Ag. at ¶¶ 1.4, 4.1. The cessation of the mineral-based claim, and agreement to add labeling statements that ensure transparency, provide a significant benefit to consumers, regardless of whether they submit a claim or seek exclusion from the Settlement Class. The proposed injunctive relief not only benefits the Settlement Class, but it provides a significant benefit to all consumers, a fairly functioning marketplace, and the public that is extraordinarily valuable. Transparency and honesty in advertising facilitates a highly visible and competitive marketplace by promoting credibility and fair competition. It raises the floor of truth telling in advertising by major competitors elevating the customary standard of practice across the industry. It serves fidelity to consumer protection laws designed to prevent consumer fraud. It avoids future deception that causes substantial economic losses to consumers who purchase the Products and pay a premium for their falsely advertised all-mineral active ingredients.[4]

19.     **Continued Costs and Risks in Strongly Contested Litigation.** Proceeding in this litigation in the absence of a settlement poses significant risks, such as failing to certify this action as a class, having summary judgment granted against Plaintiffs, or losing at trial.

a.     **Battle of Experts.** Even assuming that Plaintiffs were to achieve certification, and

---

[4] *See also*, *infra*, fn. 5 (monetary value approximation for injunctive relief).

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

overcome the inevitable motion for summary judgment, they would face the risk of failing to establish liability at trial in light of conflicting expert testimony. Not only would the Parties' experts battle over consumer perceptions of the challenged "Mineral-Based" labeling claims, but they would battle over whether consumers paid a premium for the "Mineral-Based" attributes, including what, if any, dollar amount should be assigned to that premium. Because Defendants strongly dispute consumers' perceptions, that any price premium exists, and the amount of the price premium, any testimony from the Parties' experts necessary to establish or refute these issues would diverge wildly. In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and, ultimately, which expert's version would be accepted by the jury. The experience of Plaintiffs' counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain.

b. **Appellate Risks and Delays.** Moreover, even if Plaintiffs were to prevail at trial, they would face additional risks if Defendants appeal or move for a new trial. *See*, *e.g.*, *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298, 1991 U.S. Dist. LEXIS 15608, at *2-3 (N.D. Cal. Sept. 6, 1991) (the jury rendered a verdict for plaintiffs exceeding $100 million, however, the court overturned the verdict and ordered a new trial with respect to the corporate defendant). By settling, Plaintiffs and the Settlement Class avoid these risks and the delays of the appellate process.

c. **Risks of Decertification.** Plaintiffs also face risks in certifying a class and maintaining that class status through trial. Defendants have also vigorously argued against class certification, including issues of typicality, jurisdiction, and Plaintiffs' standing to represent consumers across the nation with respect to their purchase of various Products; and issues concerning commonality and predominance related to reliable class-wide proof of a damages model consistent with Plaintiffs' liability theory under *Comcast v. Behrend*, 569 U.S. 27 (2013).

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Even assuming that the Court were to certify a class, the class could still be decertified at any time. *See, e.g.*, *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 U.S. Dist. LEXIS 37286, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (citations omitted). From their prior experience, Plaintiffs' counsel anticipate that Defendants would likely move for reconsideration, attempt to appeal the Court's decision pursuant to Rule 23(f), and/or move for decertification at a later date. Here, the Settlement Agreement eliminates these risks by ensuring Settlement Class Members a recovery that is certain, immediate, and eliminates the risk that they would be left without any recovery at all.

d.  **Expert Costs.** In addition, the expense to prosecute this case is substantial in light of the need for expert testimony from multiple disciplines, including economics, conjoint analysis, and marketing. The costs associated with these experts, including expert investigation, analysis, surveys, reports and rebuttal reports, depositions, oppositions to any *Daubert* challenges, testimony, and any associated costs such as travel expenses, would quickly accumulate. The accumulation of such costs could quickly lead to a scenario in which settlement might not be economically feasible for either party.

e.  **Trial Delays to Relief & Ongoing/Continued Harm.** Finally, because trial would likely not occur until June 22, 2022 (*see* Case Management Scheduling Order, 8/20/2020, Dkt. 54) or later, any monetary and injunctive relief achieved as a result of trial, would not occur for another one to two years, or more. In the meantime, Defendants could continue to deceptively label the Products with impunity to the financial detriment of Settlement Class Members and consumers.

f.  **Plaintiffs Faced a Formidable Opponent and Demonstrated Success on Novel and Complex Issues.** This case was novel and without the benefit of well-established precedent informing the litigation and providing a roadmap to success.

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Plaintiffs' counsel are aware of only one other case concerning misleading "Mineral-Based" sunscreen products (*Mayhew v. KAS Direct, LLC*, 2018 WL 3122059, at *1 (S.D.N.Y. June 26, 2018)), but that out-of-circuit case involved numerous additional misrepresentations concerning a variety of different products. Plaintiffs litigated this action without having the predictability provided by well-established precedent. Additionally, Defendants are well-resourced, with many billions of dollars in revenue annually, and represented by an experienced and reputable defense firm, which strongly and deftly contested liability. Defendants hotly contested whether Plaintiffs' claims were preempted by the Federal Food, Drug, and Cosmetic Act. *See* MTD, 5/1/2020 [Dkt. 26], at p. 2. Further, in what Defendants described as "an issue of first impression," Defendants claimed the FDA had primary jurisdiction over Plaintiffs' specific claims. *Id.* Defendants also attacked Plaintiffs' allegations based on a host of additional grounds. *Id.* However, Plaintiffs were able to overcome every one of Defendants' attacks to the significant benefit of the Settlement Class. Order, 6/29/2020 [Dkt. 46]; Order 7/31/2020 [Dkt. 50]. Plaintiffs' counsel took on and overcame these risks and their ability to prevail on motions to dismiss and obtain a lucrative settlement against formidable opposition not only confirms the quality of their representation, but also evidences their expertise.

## V.    THE SUCCESS OF THE LITIGATION AND SETTLEMENT CLASS'S INITIAL REACTION

20.    **Achieved Primary Litigation Objectives.** In sum, Plaintiffs' dual primary objectives in litigation have been achieved: (1) fair and adequate monetary compensation to consumers misled into purchasing the Products based on the false "Mineral-Based" labels; and (2) a change in Defendants' marketing practices that will ensure honesty and transparency to all consumers. Setting aside the extraordinary value achieved through the injunctive relief component, the dollar value of the direct monetary relief totals approximately ██% of Defendants' past and prospective sales.

21.    **Settlement Class's Initial Reaction.** On September 17, 2021, the Court-appointed

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Claims Administrator, DSG, initiated the Notice Plan. The deadline to respond to the proposed settlement, be it the submission of a claim, objection, or request for exclusion expires sixty days later on November 17, 2021. Ag. at ¶ 2.4 [Claims]; Order, 7/29/2021 [Dkt. 107], at ¶¶ 13 [Exclusions], 16 [Objections]. Although the Claim Period is almost three-quarters complete, DSG has already received more than 63,000 claims as of October 31, 2021, and is on track to achieve the approximately 75,000 to 100,000 estimated claims. *See* **Ex. 1** [Admin. Rept.]; Schey Supp. Decl ISO Am. PAM, 7/14/2021 [Dkt. 99-10], at ¶ 9. Additionally, ***neither Plaintiffs nor DSG have received any requests for exclusion and not a single Settlement Class Member has filed an objection as of October 31, 2021***. *See* **Ex. 1** [Admin. Rept.]. Thus, the Settlement Class has unanimously shown a positive reaction to the Settlement Agreement. In addition, no later than December 1, 2021, Plaintiffs will file a list of any and all valid opt-outs DSG receives postmarked by November 17, 2021, as well as update this Court regarding the Settlement Class's reaction to the Settlement Agreement. Order, 7/29/2021 [Dkt. 107], at ¶ 14.

## VI.   SETTLEMENT CLASS CERTIFICATION

22.   **Class Certification Elements.**

a.   **Numerosity.** there were tens or hundreds of thousands, if not millions, of Settlement Class Members throughout the United States, as more than ███ ████ products have been sold in the past five years and market research shows a repeat purchaser rate of approximately ████████████████. The estimated units of Products sold is based on Defendants' sales data designated as confidential.

b.   **Plaintiffs'/Counsel's Fair & Adequate Representation.** Plaintiffs and their counsel do not have any conflicts with Settlement Class Members and have vigorously prosecuted this case through their pre-litigation investigation, complex motion practice, fact discovery, settlement negotiations, and structuring of the proposed settlement. *See*, *supra*. Plaintiffs agreed to serve in a representative capacity, communicated frequently with their attorneys, responded to discovery requests, contributed to the preparation of the complaint, and actively participated

1    in settlement negotiations. *See also*, *supra*. Plaintiffs' counsel are qualified to

2    serve as Settlement Class Counsel. *See also*, *supra*.

3    c.    **Superiority.** Settlement Class Members lack the incentive to bring their own

4    cases against Defendants, given their minimal potential individual recovery in

5    comparison to the exorbitant costs of establishing liability, when the estimated

6    average retail price, per Product, ranges between $7 and $10, which represents the

7    absolute maximum conceivable actual damages (actual consumer economic

8    losses) that may be recovered in this action. Additionally, Plaintiffs' Counsel have

9    monitored federal filings throughout this proceeding to identify any similar cases

10    and have found none. Defendants have not reported any related cases to Plaintiffs

11    pursuant to N.D. Cal. Civ. L.R. 3-12.

12    **VII.    ATTORNEYS' FEES AND COSTS**

13    23.    **Total Requested Fees and Costs Award for All Settlement Class Counsel.**

14    Pursuant to the terms of the Settlement Agreement, Settlement Class Counsel may apply to the

15    Court for an award of attorneys' fees up to 30% of the $2.25 million common fund ($675,000), plus

16    costs and expenses. Here, Plaintiffs seek $675,000 in attorneys' fees and $6,242.55 in costs.

17    Settlement Class Counsel have dedicated themselves to the prosecution of Plaintiffs and similarly

18    situated consumers for approximately 2 years, incurring to date a lodestar of $755,857.50 in billable

19    professional time, based on their current billing rates, receiving no compensation at all for their time

20    and efforts to date, and having no guarantee that they would ever receive such compensation. The

21    hours expended, hourly rates, and related fees, along with the out-of-pocket expenses incurred are

22    reasonable in amount and were reasonably necessary to prosecute the Settlement Class's claims in

23    this litigation, as well as achieve the exemplary result afforded under the Settlement Agreement.

24    24.    **Percentage of Recovery & Loadstar Cross-Check.**

25    a.    The $675,000 million fee sought represents 30%, in compliance with the

26    Settlement Agreement, of the $2.25 million cash component of the settlement,

27    after an ***inverse or negative*** 1.119 multiplier is applied to Settlement Class

28    Counsel's lodestar, without consideration of the injunctive relief component.

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

1  A 30% fee is less than one-third of the Settlement Fund.

2  b. When the value of the injunctive relief component is considered, which avoids

3  future economic losses in the range of roughly ███████████ ,[5] then the total

4  settlement value is approximately ████████████████ . With this added

5  monetary benefit to the Settlement Class, the $675,000 requested fee

6  represents approximately ████████████ of the total settlement value, which

7  is a negative or inverse multiplier of ████████████████████

8  ████████████████████████████████████

9  c. Both calculations, including a negative multiplier to reach 30% of the

10  Settlement Fund and 30% of the percentage of the total settlement value

11  (which takes into consideration the value of injunctive relief), fall well within

12  the range approved by courts in other similar cases.

13  25. **Lodestar by Members of Clarkson.**

14  a. **Materials Reviewed re Billing Records.** Members of Clarkson, as a matter

15  of firm policy, maintain time records that identify the timekeeper, time spent,

16  and activities performed, which are regularly and contemporaneously

17  recorded by the listed timekeepers in the ordinary course of business. I have

18  reviewed Clarkson's time entries, cross-referenced file materials and

19  communications, and consulted with various timekeepers to: ensure the

---

[5] The monetary value of injunctive relief may be *roughly* estimated by: (1) calculating average annual prospective sales based on Defendants' sales data for the past approximately 5 years and determining the historical average annual revenues (approximately ████████████████ ████████); and (2) multiplying it by an estimated "price premium" that is based on either: (a) the total settlement amount of $2.25 million in comparison to the total revenues (nearly ████████ ████████████████████████████), or (b) individual Settlement Class Member recovery in comparison to the purchase price (28.2% or the average retail purchase price of $8.88 divided by the $2.50 per product recovery). Based on this calculation, and assuming that all market conditions remained relatively constant, and that the injunctive relief eliminated all economic losses, then the Settlement Agreement avoids approximately ████████ to $1,274,640, on average annually, in future economic losses. As the injunctive relief component commenced as of the preliminary approval of the Settlement Agreement on July 29, 2021, and concludes approximately 2.42 years later on December 31, 2023, then the total future losses avoided roughly equals ████████ to $3,084,628.80. These estimated values are *general* estimates that are only intended to give the Court a method to understand the monetary value of injunctive; they are not intended to be precise or definitive valuations.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

1  accuracy and reliability of time records; eliminate any duplicate, unnecessary,

2  excessive, or erroneous time entries; and confirm all billable hours set forth in

3  this declaration regard this action and are reasonable, accurate, and complete

4  as of the signing of this declaration.

5    b.  **Lodestar by Members of Clarkson.** The following chart sets forth each

6  member of Clarkson according to their name, position, and/or year of

7  graduation from law school (where applicable). It also provides the number of

8  hours, in six-minute increments (0.1), that each member worked on this case

9  and their corresponding hourly billing rate. It calculates the total fees incurred

10  by multiplying the number of hours and billing rate, including a grand total for

11  the firm and for each member. Lastly, it calculates the weighted average

12  billing rate for this case by dividing the total fees by the total hours. I have

13  also attached a chart as **Exhibit 5** that similarly identifies timekeepers and

14  summarizes their hours, rate, and total fees according to the type of activity.

| CLARKSON LODESTAR | | | |
|---|---|---|---|
| **Member, Position (Year of Graduation)** | **Hours** | **Rate ($/Hour)** | **Total Fees ($)** |
| Ryan J. Clarkson, Managing Partner (2005) | 133.6 | 875 | $116,900.00 |
| Katherine A. Bruce, Partner (2012) | 241.6 | 775 | 187,240.00 |
| Lauren A. Anderson, Associate (2019) | 247.8 | 450 | 111,510.00 |
| Kelsey J. Elling, Associate (2019) | 82.1 | 450 | 36,945.00 |
| Paralegal | | 225 | |
| **TOTAL HOURS/FEES** | **787** | **-** | **$471,022.50** |
| **WEIGHTED AVERAGE BILLING RATE** | **-** | **598.50** | **-** |

24    26.  **Lodestar by Members of Moon.** The following chart sets forth each member of

25  Moon according to their name, position, and/or year of graduation from law school (where

26  applicable). It also provides the number of hours, in six-minute increments (0.1), that each member

27  worked on this case and their corresponding hourly billing rate. It calculates the total fees incurred

28  by multiplying the number of hours and billing rate, including a grand total for the firm and for each

member. Lastly, it calculates the weighted average billing rate for this case by dividing the total fees by the total hours. I have also attached a chart as **Exhibit 6** that similarly identifies timekeepers and summarizes their hours, rate, and total fees according to the type of activity.

| MOON LODESTAR | | | |
|---|---|---|---|
| **Member, Position (Year of Graduation)** | **Hours** | **Rate ($/Hour)** | **Total Fees ($)** |
| Christopher D. Moon, Managing Partner (2006) | 179 | 850 | $152,150.00 |
| Kevin O. Moon, Managing Partner (2006) | 156.1 | 850 | 132,685.00 |
| **TOTAL HOURS/FEES** | **335.1** | - | **$284,835.00** |
| **WEIGHTED AVERAGE BILLING RATE** | - | **850** | - |

27.    **Future Hours/Work.** In addition to the above, I estimate that Settlement Class Counsel will incur dozens of additional hours for future work in connection with this case through final approval and to ensure the Court-appointed settlement administrator satisfies all duties with respect to the settlement at issue in the instant motions. Settlement Class Counsel will continue to devote additional time and resources to this litigation. This includes, among other things: preparing and appearing for the hearing on the instant motions, including responding to any oppositions or objections; assisting Settlement Class Members in the settlement claims process and responding to Settlement Class Member inquiries; ensuring all valid claims are paid and no invalid or fraudulent claims are paid from this settlement; and monitoring the distribution of settlement monies to Settlement Class Members who submit valid claims

28.    **Costs Incurred.** Clarkson routinely maintains records of each cost incurred in a particular case as a matter of firm policy, as well as an itemized listing of the primary out-of-pocket expenses disaggregated by date, description, and amount. Expenses are only allocated to a particular case if they are not standard overhead costs incurred in general operations, but instead were only incurred and intended to serve the particular case. Plaintiffs' total litigation expenses of $6, 242.55 were reasonably incurred in this case. These expenses are reflected in the records of Settlement Class Counsel and were necessary to prosecute this litigation. All expenses were carefully and reasonably expended, and they reflect market rates for various categories of expenses incurred. Most

of these expenses were incurred for expert opinions, mediation fees, and court fees. Expense items were billed separately, and such charges were not duplicated in Settlement Class Counsel's billing rates. Below is a summary chart of the litigation expenses by category:

| SETTLEMENT CLASS COUNSEL'S EXPENSES | |
|---|---|
| **Category of Expenses** | **Cost Incurred** |
| Filing Fee | $400 |
| Service/Postage Fees | $739 |
| Transcript Fees | $103.55 |
| Expert/Consultants | $5,000 |
| **TOTAL COSTS INCURRED** | **$6,242.55** |

29.    **Future Costs.** The current costs set forth above do not include any costs and expenses Settlement Class Counsel expects to incur after the filing of these Motions—be it an additional for traveling to and appearing for the hearings on these motions, or any costs incurred in connection with any objections and/or appeals of a ruling on these Motions. The requested award for reimbursement of costs should be granted because all of the costs and expenses are reasonably incurred and necessary given the complex nature and nationwide scope of this case.

30.    **Market Hourly Billing Rates.** Based on my knowledge and experience, the hourly rates reflected above are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise. Clarkson charges the same hourly rates to clients who retain Clarkson on a non-contingent basis—i.e., clients who regularly pay for billed services on a periodic basis. I have personal knowledge of the range of hourly rates typically charged by counsel in California and the United States, both on current and past matters, for class actions involving consumer protection matters, similar to the subject matter of this case. My understanding of said rates comes from: (1) litigating and reviewing attorneys' fee applications, declarations, supporting materials, and orders awarding or denying requested fees; (2) discussing fees with other attorneys; (3) reviewing declarations regarding prevailing market rates filed by other attorneys seeking fees; (4) reviewing surveys, articles, and empirical research regarding attorneys' fees; (5) spending five years in my practice as a lawyer solely working on a non-contingent hourly basis, negotiating and reviewing agreements concerning fees for attorneys of varying expertise, specialties, years in

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

practice, and firms; and (6) auditing time records. In determining Clarkson's hourly rates from year to year, Clarkson has consciously taken market rates into account and has aligned its rates with the market. Clarkson's rates are consistent with, and in fact less than, the non-contingent market rates charged by attorneys of reasonably comparable experience, skill, and reputation for reasonably comparable class action work.

31.    **Recent Example of Fee Award to Settlement Class Counsel.** In fact, recently, in granting final approval of a nationwide class-action settlement concerning mislabeled products, the San Bernardino Superior Court considered the same hourly rates for Clarkson as here as part of a lodestar cross-check and thereafter approved an attorneys' fee award of 33% of the common fund. *See O'Brien v. Sunshine Makers, Inc.*, Superior Court for the County of San Bernardino, Case No. CIV-SB-2027994 (Order, Sept. 21, 2021).

32.    **Previously Approved Hourly Rates.** In fact, comparable hourly rates have been found reasonable by various courts—some ***more than a decade ago***—for reasonably comparable services, including:

a.    *In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. M 07 1827 SI, MDL, No. 1827 (N.D. Cal. 2013), an antitrust class action, in which the court found blended hourly rates of $1000, $950, $861, $825, $820, and $750 per hour reasonable.

b.    *Williams v. H&R Block Enterprises, Inc.*, Alameda County Superior Ct. No. RG08366506, Order of Final Approval and Judgment filed November 8, 2012, a wage and hour class action, in which the court found the hourly rates of $785, $775, and $750 reasonable for the more senior counsel.

c.    *Luquetta v. The Regents of the Univ. of California*, San Francisco Superior Ct. No.CGC-05-443007, Order Granting Plaintiff's Motion for Common Fund Attorneys' Fees and Expenses, filed October 31, 2012, a class action to recover tuition overcharges, in which the court found the hourly rates of $850, $785, $750, and $700 reasonable for plaintiffs' more experienced counsel.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

d.    *Pierce v. County of Orange*, 905 F. Supp. 2d 1017 (C.D. Cal. 2012), a civil rights class action brought by pre-trial detainees, in which the court approved a lodestar- based on, *inter alia*, rates of $850 and $825 per hour in 2011.

e.    *Holloway et. al. v. Best Buy Co., Inc.*, No. 05-5056 PJH (N.D. Cal. 2011) (Order dated November 9, 2011), a class action alleging that Best Buy discriminated against female, African American and Latino employees by denying them promotions and lucrative sales positions, in which the court approved lodestar-based rates of up to $825 per hour.

f.    *Californians for Disability Rights, Inc., et al. v. California Department of Transportation, et al.*, 2010 U.S. Dist. LEXIS 141030 (N.D. Cal. 2010), adopted by Order Accepting Report and Recommendation filed February 2, 2011, a class action in which the court found reasonable 2010 hourly rates of up to $835 per hour.

g.    *Credit/Debit Card Tying Cases*, San Francisco County Superior Court, JCCP No. 4335, Order Granting Plaintiffs' Motion for Attorneys' Fees, Expenses, and Incentive Awards, filed August 23, 2010, an antitrust class action, in which the court, before applying a 2.0 lodestar multiplier, found reasonable 2010 hourly rates of $975 for a 43-year attorney, $950 for a 46-year attorney, $850 for 32 and 38 year attorneys, $825 for a 35-year attorney, $740 for a 26-year attorney, $610 for a 13-year attorney, and $600 for a 9-year attorney, and $485 for a 5-year attorney.

33.    **Publications re: Market Hourly Rates.** Settlement Class Counsel's hourly rates are reasonable and well in line with the standard and accepted hourly rates in this jurisdiction by attorneys of similar experience, reputation, and skill. The reasonableness of Settlement Class Counsel's hourly rates is also supported by a number of surveys and articles concerning legal billing rates, which are attached as **Exhibits 7-14**. As discussed in paragraph 2, *supra*, these publications evidence reported rates that have progressively increased over the years. Indeed, these publications show rates from several years to more than a decade ago that are either the same as, or greater than, Settlement Class Counsel's current rates. In this way, the publications further evidence the reasonableness of Settlement Class Counsel's current rates, as several years of constant increases have elapsed, but Settlement Class Counsel continues to bill at the lower rates charged by firms

1  practicing in complex litigation about a decade ago.

2      34.  **Quality of Representation.** Settlement Class Counsel has consistently displayed a

3  high level of skill regarding the complex legal and factual issues presented in this action. Settlement

4  Class Counsel worked diligently for approximately two years to prosecute this action and spent

5  several months crafting a settlement that would ensure real and substantial benefits for all Settlement

6  Class Members. In doing so, Settlement Class Counsel avoided years of delay associated with

7  litigating this case, as well as the risks and uncertainty inherent in taking the case to trial and

8  ultimately collecting any monetary judgment if Plaintiffs prevailed.

9      35.  **Forego Employment.** From the beginning, this action has demanded a great deal of

10  Settlement Class Counsel's attention. This action required considerable work due to its novel theory

11  and application to a significant number of products sold over the course of decades, including, for

12  example, significant: pre- and post-filing investigation; research and analysis of legal and factual

13  issues concerning certification as applied to the factual matter and case theory; research and analysis

14  regarding the laws of different states on liability, remedies, and defenses; research and analysis of

15  complex scientific matters concerning the toxicity of the products at issue; research and analysis of

16  decades of marketing efforts, advertisements and labels on a multitude of products; consultation

17  with experts from a variety of disciplines; and mediation and settlement. Due to the considerable

18  expenditure of time, effort, and resources to prosecute this action, Clarkson was required, on some

19  occasions, to forego employment in other matters, and to reallocate resources away from other

20  competing matters, in order to allow Clarkson to commit the necessary resources to prosecute this

21  case.

22      36.  **Contingency Fee Retention & Assumption of Risks.** Adding to the other risks

23  discussed herein is the fact that Plaintiffs' counsel undertook this litigation on a contingency-fee

24  basis, requiring them to shoulder not only the cost of attorney time, but all the costs of nearly two

25  years of litigation, and several months of pre-litigation investigation. Indeed, Plaintiff's counsel

26  performed all of the described work on a pure contingency-fee basis, with no guarantee that they

27  would ever be paid for any of their work or be reimbursed for any of their out-of-pocket costs. They

28  turned down other potentially profitable matters in order to take on this large-scale case, and devoted

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

ND Cal Case No. 5:20-CV-00102-NC        -30-

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS

resources to it that could have been devoted to other potentially income-generating matters. In this way, Plaintiffs' counsel undertook this complicated litigation, based on a relatively novel theory, despite all of the risks entailed with certification, exorbitant expert costs, trial, and the inevitable appeal to a successful verdict, and saw it through to completion even though they might never be paid at all and instead lose hundreds of thousands in sunken costs and millions in attorney hours.

I declare the foregoing is true and correct under the penalty of perjury of the laws of the United States of America.

Executed this 3rd day of November, 2021.

*/s/ Katherine A. Bruce*
Katherine A. Bruce, Esq.

*Attorney for Plaintiffs and Settlement Class Representatives Mike Xavier and Steven Prescott, and the Settlement Class*

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

DECLARATION OF KATHERINE A. BRUCE ISO PLAINTIFFS' MOTIONS FOR
FINAL APPROVAL OF SETTLEMENT, AND FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS