**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
600 West Broadway, Suite 700
San Diego, California 92101
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiffs and Settlement Class
Representatives Mike Xavier and Steven
Prescott and the Settlement Class*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKE XAVIER and STEVEN PRESCOTT, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BAYER HEALTHCARE LLC, a Delaware limited liability company; BEIERSDORF, INC., a Delaware corporation,<br><br>Defendants. | Case No. 5:20-CV-00102-NC<br>Case Filed: 1/3/2020<br>FAC Filed: 5/15/2020<br>SAC Filed: 7/14/2021<br>*Assigned to the Hon. Nathanael M. Cousins*<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Hearing Information**<br>Hearing Date: Dec 15, 2021<br>Time: 1:00 p.m. (PST)<br>Courtroom: 5<br><br>**Video/Telephone Access**[1]<br>Webinar:  https://cand-uscourts.zoomgov.com/j/1601632758?pwd=VmthNENlOWFSN GRFdEFJSzlVcVZ1QT09<br>Webinar ID: 160 163 2758<br>Password: 277082<br>Local telephone dial-in: 1-669-254-5252 or 1-646-828-7666 |

<div style="text-align:center; color:red">

**REDACTED AND PUBLICLY FILED**

</div>

[1] Please check Magistrate Judge Nathanael Cousins' webpage for up-to-date video and telephone access information at https://www.cand.uscourts.gov/judges/cousins-nathanael-nc/.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

# NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, on **December 15, 2021, at 1:00 p.m. (PST)**, in Courtroom 5, before the Honorable Magistrate Judge Nathanael M. Cousins, of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiffs Mike Xavier and Steven Prescott ("**Plaintiffs**" and/or "**Settlement Class Representatives**"), on behalf of themselves and all others similarly situated, by and through their counsel of record, shall and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order granting final approval of the terms of the proposed Settlement Agreement (Exhibit 1 to the Declaration of Katherine A. Bruce in Support of Plaintiffs' Amended Motion for Preliminary Approval of Class Action Settlement, 7/14/2021 [Dkt. 99-11] (hereinafter "**Settlement Agreement**" and/or "**Ag.**")), that was preliminary approved by the Court on July 29, 2021 [Dkt. 107].[2]

## Statement of Relief Requested

More specifically, Plaintiffs seek the entry of the concurrently filed proposed order and judgment granting final approval of the class action settlement, entered into with Defendants Bayer Healthcare LLC and Beiersdorf, Inc. ("**Defendants**"), concurrently filed herewith, which includes, but is not necessarily limited to:

a.   Finally approving the settlement of this class action set forth in the Settlement Agreement, and entering final judgment based thereon;

b.   Finally approving that the settlement as fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e);

c.   Finally approving, for settlement purposes only, the Settlement Class defined as:

Retail consumers who purchased in the United States one or more Coppertone Sunscreen products, for use and not for resale, prior to [September 17, 2021,] that included "mineral-based" on the label in various sizes and forms: Coppertone Water Babies Pure & Simple, Coppertone Kids Tear Free, and Coppertone Sport Face ("**Products**" or "**Qualifying Products**").

The settlement class does not include wholesale, resale, and distribution buyers. Also excluded from the Settlement Class are (i) Defendants, their assigns, successors, and legal representatives; (ii) any entities in which

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

---

[2] Capitalized terms used in this Notice shall have the same meaning as defined in the Settlement Agreement except as may otherwise be expressly defined herein.

Defendants have controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer; and (v) any persons who timely exclude themselves from the Settlement Class (collectively, the "**Excluded Persons**").

d.    Finally approving Plaintiffs Mike Xavier and Steven Prescott as the class representatives, and appointing Clarkson Law Firm, P.C. and Moon Law APC as class counsel for the Settlement Class;

e.    Finding the Claim Administrator substantially complied with the Court-approved Notice Plan [Dkt. 107] and therefore satisfied due process, Federal Rule of Civil Procedure 23, and all applicable law;

f.    Ordering the parties to effectuate the remaining terms of the Settlement Agreement; and

g.    Retaining jurisdiction over the implementation of the Settlement Agreement.

**Statement of Issues**

Pursuant to N.D. Cal. Civil L.R. 7-4(a)(3), Plaintiffs provide the following statement of issues to be decided by the Court:

1.    Whether the Court should grant final approval of the proposed class action settlement as fair, adequate, and reasonable pursuant to Fed. R. Civ. P. 23.

**Statement of Grounds**

Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs seek final approval of the proposed class action settlement because the Settlement Agreement is fair, reasonable, adequate, reasonable, and satisfies the requirements under Rule 23(e), due process, and all applicable law, as set forth in Plaintiffs' memorandum of points and authorities concurrently filed herewith.

/ / /

/ / /

/ / /

/ / /

/ / /

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

This motion is based on this notice, the attached memorandum of points and authorities, concurrently filed Declaration of Katherine A. Bruce, Christopher D. Moon, Mike Xavier, Steven Prescott, and Mark Schey, and Exhibits 1 through 14 submitted in support thereof, all relevant pleadings and papers on file herein, and any other arguments and evidence that may be presented to the Court in connection herewith.

DATED: November 3, 2021                    **CLARKSON LAW FIRM, P.C.**

                                            _/s/ _Katherine A. Bruce_____
                                           Katherine A. Bruce, Esq.

                                           **MOON LAW APC**
                                           Christopher D. Moon, Esq.
                                           Kevin O. Moon, Esq.

                                           *Attorneys for Plaintiffs and Settlement Class Representatives Mike Xavier and Steven Prescott, and the Settlement Class*

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND..........................................2

    A.    Procedural History ........................................................................................2

    B.    The Settlement Class......................................................................................4

    C.    The Settlement Benefits .................................................................................4

    D.    The Release ....................................................................................................5

    E.    DSG Successfully Carried Out the Notice Plan.............................................6

    F.    The Settlement Class's Initial Reaction ........................................................7

III.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE............8

    A.    Numerosity......................................................................................................8

    B.    Commonality...................................................................................................8

    C.    Typicality........................................................................................................9

    D.    Fair & Adequate Representation.....................................................................9

    E.    Predominance................................................................................................10

    F.    Superiority.....................................................................................................11

IV.   NOTICE TO CLASS MEMBERS SATISFIED DUE PROCESS .......................12

V.    CAFA COMPLIANCE .......................................................................................13

VI.   THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT............14

    A.    Plaintiffs and Counsel Have Adequately and Fairly Represented the Settlement Class and Reached a Presumptively Fair and Reasonable Settlement Negotiated at Arm's-Length Settlement, Following a Robust Investigation and Discovery, and Supported by Experienced Plaintiffs' Counsel's Views ...........................................15

        1.    A Robust Investigation and Discovery Informed Settlement .......................15

        2.    The Settlement Agreement is Presumptively Fair Based on Well-Informed and Arm's-Length Settlement Negotiations .................................17

        3.    The Settlement Agreement Is Presumptively Reasonable Based on Experienced Counsel's Recommendations...................................................19

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

B.     The Monetary Value of the Settlement Class's Claims Supports the Settlement......19

C.     Settlement Avoids Continuing Litigation Risks and Exorbitant Costs.....................22

D.     The Settlement Class Has Positively Reacted to the Settlement ...............................23

VII.   CONCLUSION....................................................................................................................25

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Allen v. Bedolla*,
  787 F.3d 1218 (9th Cir. 2015) ..................................................................20

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).........................10

*Barcia v. Contain-A-Way, Inc.*,
  No. 07cv938–IEG–JMA,
  2009 WL 587844, 2009 U.S. Dist. LEXIS 1718 (S.D. Cal. Mar. 6, 2009) .................24

*Briseno v. ConAgra Foods, Inc.*,
  844 F.3d 1121 (9th Cir. 2017) ..................................................................21

*Broomfield v. Craft Brew All., Inc.*,
  No. 17-cv-01027-BLF,
  2020 WL 1972505, 2020 U.S. Dist. LEXIS 74801 (N.D. Cal. Feb. 5, 2020) .................24

*Carlotti v. Asus Comput. Int'l*,
  No. 18-cv-03369-DMR,
  2020 WL 3414653, 2020 U.S. Dist. LEXIS 108917 (N.D. Cal. Jun. 22, 2020).................24

*Carter v. Anderson Merchandisers, LP*,
  No. EDCV 08-0025-VAP (OPx), EDCV 09-0216-VAP (OPx),
  2010 WL 1946784, 2010 U.S. Dist. LEXIS 55581 (C.D. Cal. May 11, 2010) .................18

*Ching v. Siemens Indus. Inc.*,
  No. 11-cv-04838-MEJ,
  2014 WL 2926210, 2014 U.S. Dist. LEXIS 89002 (N.D. Cal. Jun. 27, 2014).................22

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) ..............................................22, 24

*Churchill Village, LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ............................................................ passim

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ...........................................................6, 14, 15

*Curtis-Bauer v. Morgan Stanley & Co.*,
  No. C 06-3903 TEH,
  2008 WL 4667090, 2008 U.S. Dist. LEXIS 85028 (N.D. Cal. Oct. 22, 2008) .................22

*Edwards v. Andrews*,
  846 F. App'x 538 (9th Cir. 2021) ...........................................................13

*Edwards v. Nat'l Milk Producers Fed'n*,
  No. 11-cv-04766-JSW,
  2017 WL 3623734, 2017 U.S. Dist. LEXIS 145214 (N.D. Cal. Jun. 26, 2017).................13

*Ehret v. Uber Technologies., Inc.*,
  148 F. Supp. 3d 884 (N.D. Cal. 2015) .....................................................10

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Eisen v. Carlisle and Jacquelin*,
  417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)................................12

*Elder v. Hilton Worldwide Holdings, Inc.*,
  No. 16-cv-00278-JST,
  2021 WL 4785936, 2021 U.S. Dist. LEXIS 204099 (N.D. Cal. Feb. 4, 2021) ..................15, 20

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980)................................19

*Fitzhenry-Russell v. The Coca-Cola Co.*,
  No. 5:17-cv-00603-EJD,
  2019 WL 11557486, 2019 U.S. Dist. LEXIS 232216 (N.D. Cal. Oct. 3, 2019) ..................21, 24

*Ford v. CEC Entm't Inc.*,
  No. 14cv677 JLS (JLB),
  2015 WL 11439033, 2015 U.S. Dist. LEXIS 191966 (S.D. Cal. Dec. 14, 2015) ..................12

*Free Range Content, Inc. v. Google, LLC*,
  No. 14-cv-02329-BLF,
  2019 WL 1299504, 2019 U.S. Dist. LEXIS 47380 (N.D. Cal. Mar. 21, 2019)................................13

*Fulford v. Logitech, Inc.*,
  No. 08-cv-02041 MMC,
  2010 WL 807448, 2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010) ..................22

*Gergetz v. Telenav, Inc.*,
  No. 16-cv-04261-BLF,
  2018 WL 4691169, 2018 U.S. Dist. LEXIS 167206 (N.D. Cal. Sept. 27, 2018) ..................13

*Gold v. Lumber Liquidators, Inc.*,
  323 F.R.D. 280 (N.D. Cal. 2017)................................9

*Hanlon v. Chrysler*,
  150 F.3d 1011 (9th Cir. 1998) ................................8, 14

*Harris v. Vector Mktg. Corp.*,
  No. C-08-5198 EMC,
  2011 WL 1627973, 2011 U.S. Dist. LEXIS 48878 (N.D. Cal. Apr. 29, 2011) ..................18, 20

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
  No. C 04-1511 CW,
  2007 WL 1689899, 2007 U.S. Dist. LEXIS 44459 (N.D. Cal. Jun. 11, 2007)................................11

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018)................................24

*In re Bluetooth Headset Prods Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ................................14

*In re Checking Account Overdraft Litig.*,
  307 F.R.D. 630 (S.D. Fla. 2015)................................11

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
TABLE OF AUTHORITIES

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

*In re Crazy Eddie Securities Litig.*,
   824 F. Supp. 320 (E.D.N.Y. 1993) ...................................................21

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ...............................................10, 12

*In re Immune Response Securities Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007)...........................................15

*In re Mego Fin. Corp. Securities Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................15

*In re Netflix Privacy Litig.*,
   No. 5:11-CV-00379 EJD,
   2013 WL 1120801, 2013 U.S. Dist. LEXIS 37286 (N.D. Cal. Mar. 18, 2013)...................22

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................19

*In re Pac. Enterprises Securities Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................19

*In re Tableware Antitrust Litig.*,
   484 F.Supp.2d 1078 (N.D. Cal. 2007) ...........................................20

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) ...............................................24

*Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMx),
   2019 WL 5173771, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019)...................21

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................20

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ...................................................20

*Mendoza v. Hyundai Motor Co., Ltd*,
   No. 15-cv-01685-BLF,
   2017 WL 342059, 2017 U.S. Dist. LEXIS 9129 (N.D. Cal. Jan. 23, 2017)...............12

*Mullins v. Premier Nutrition Corp.*,
   No. 13-cv-01271-RS,
   2016 WL 1535057, 2016 U.S. Dist. LEXIS 51139 (N.D. Cal. Apr. 15, 2016)...................12

*Nat'l Rural Telecommunications Cooperative v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)..................................18, 19, 20, 24, 25

*Nielson v. Sports Auth.*,
   No. C 11-4724-SBA,
   2013 WL 3957764, 2013 U.S. Dist. LEXIS 106018 (N.D. Cal. July 29, 2013)...................18

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
TABLE OF AUTHORITIES

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

*O'Connor v. Uber Techs., Inc.*,
  No. 13-cv-03826-EMC, 15-cv-00262-EMC,
  2019 WL 1437101, 2019 U.S. Dist. LEXIS 54608 (N.D. Cal. Mar. 29, 2019)..........................18

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ...............................................................................................14

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797, 105 S. Ct. 2965, 86 L.Ed.2d 628 (1985)........................................................12

*Pollard v. Remington Arms Co. LLC*,
  320 F.R.D. 198 (W.D. Mo. 2017) .........................................................................................24

*Powers v. Lycoming Engines*,
  245 F.R.D. 226 (E.D. Pa. 2007) ...........................................................................................11

*Rodriguez v. Hayes*,
  591 F.3d 1105 (9th Cir. 2010) ................................................................................................8

*Rodriguez v. West Publ'n Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..........................................................................................19, 22

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) .....................................................................................22, 24

*Schumacher v. Tyson Fresh Meats, Inc.*,
  221 F.R.D. 605 (D.S.D. 2004) ..............................................................................................11

*Shin v. Plantronics, Inc.*,
  No. 18-cv-05626-NC,
  2020 WL 1934893, 2020 U.S. Dist. LEXIS 19943 (N.D. Cal. Jan. 31, 2020)..........................14

*Spann v. J.C. Penney Corp.*,
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) ..................................................................................24

*Staton v. Boeing Co.*,
  323 F.R.D. 280 (9th Cir. 2003)................................................................................................9

*Stoetzner v. U.S. Steel Corp.*,
  897 F.2d 115 (3d Cir. 1990)..................................................................................................24

*Torres v. Mercer Canyons Inc.*,
  835 F.3d 1125 (9th Cir. 2016) .................................................................................................9

*Valdez v. Neil Jones Food Co.*,
  No. 1:13-cv-00519-SAB,
  2016 WL 424911, 2016 U.S. Dist. LEXIS 105839 (E.D. Cal. Aug. 10, 2016)..........................22

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................................................11

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, 131 S. Ct. 2451, 180 L. Ed. 2d 374 (2011) .....................................................6, 8

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
TABLE OF AUTHORITIES

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

**Federal Statutes**

28 U.S.C. § 1715 ...................................................................................................13

Fed. R. Civ. P. 23 ..................................................................................................8

**State Statutes**

Cal. Bus. & Prof. Code §§17200, *et seq* .............................................................10

Cal. Bus. & Prof. Code §§17500, *et seq* .............................................................10

Cal. Civ. Code §§1750, *et seq*. ..............................................................................2

Cal. Civ. Code §1542 .............................................................................................6

**Secondary Sources**

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) ..............................................................13

Fed. Trade Commission., *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019) ......................................................24

Manual for Complex Litig. § 21.62 (4th ed. 2004) ..............................................22

Rubenstein, Newberg on Class Actions § 11.24 (5th ed. 2012) ...................6, 18

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
TABLE OF AUTHORITIES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

This Court preliminarily approved Plaintiffs Mike Xavier and Steven Prescott's ("**Plaintiffs**") nationwide settlement with Defendants Bayer Healthcare LLC and Beiersdorf, Inc. ("**Defendants**") of this preliminarily certified settlement class action. Order, 7/29/2021 [Dkt. 107].[3] Specifically, the parties agreed to a $2.25 million common fund and valuable injunctive relief in exchange for a release of all claims underlying the operative complaint regarding the alleged false and misleading advertising and labeling of Coppertone sunscreen Products[4] as "Mineral-Based," despite the Products containing chemical active ingredients. The appointed Claim Administrator, Digital Settlement Group ("**DSG**"), executed the Court-approved Notice Plan, consistent with due process of law, and received an extremely favorable class reaction. *Id.*; Ag. at Ex. B [Notice Plan]; DSG Decl. ¶¶ 18-25. Although the claims, objection, and exclusion period is ongoing and currently set to conclude on November 17, 2021, the Settlement Class has submitted approximately 63,825 claims and ***not a single member has objected or opted out*** as of October 31, 2021. DSG Decl. ¶ 23; **Ex. 1** [Admin. Rept.]. Plaintiffs now respectfully request that this Court grant final approval of the Settlement Agreement as it represents a substantial recovery for the Settlement Class, is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e)(2), and fully complies with the Northern District of California's *Procedural Guidance for Class Action Settlements*.[5]

19

20

21

22

Plaintiffs and Defendants settled following months of vigorous arm's-length negotiations, including five settlement conferences before the Honorable Virginia K. DeMarchi, based on a robust and extensive investigation of the strengths and weaknesses of each party's position, and an evaluation informed by experienced counsel who find the settlement serves the best interests of the

23

24

25

26

27

28

[3] The Court preliminarily approved the settlement agreement submitted as Exhibit 1 to the Declaration of Katherine A. Bruce, filed on July 14, 2021 (Dkt. 99-11) (hereinafter "**Settlement Agreement**" and/or "**Ag.**"). Order, 7/29/2021 [Dkt. 107]. Unless otherwise expressly specified herein, all capitalized terms have the meaning set forth in the Settlement Agreement.

[4] The "**Products**" mean Coppertone sunscreen products that contain a "mineral-based" claim on the label in various sizes and forms, including: Coppertone Water Babies Pure & Simple, Coppertone Kids Tear Free, and Coppertone Sport Face.

[5] *See* United States District Court Northern District of California, *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018), available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/ (accessed 11/1/2021).

<div align="left">

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

</div>

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Settlement Class. Bruce Decl. ¶¶ 3, 4, 6, 8-12, 14. Under the Settlement Agreement, Defendants will pay $2.25 million into a common fund with no right to reversion (the "**Settlement Fund**"). Ag. at ¶ 2.40 [Settlement Fund]. Settlement Class Members who submit proof of purchase may receive a cash refund up to $2.50 per unit of Product, without limitation, and those without proof of purchase may receive $2.50 per unit for up to 4 units of Product. *Id.* at ¶ 3.4 [Claimant Recovery]. Defendant has also ceased the production of Products with "Mineral-Based" labels and agreed that, if the term is used on the Products between July 29, 2021 and December 31, 2023, and the Products contain chemical active ingredients, then Defendants must include a statement on the Products' packaging that states the Products contain other sunscreen active ingredients. *Id.* at ¶¶ 1.4 [Cessation]; 4.1 [Changed Practices]. Accordingly, Plaintiffs move this Court for final approval of the Settlement Agreement and entry of the proposed order and judgment concurrently filed herewith.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Procedural History

On January 3, 2020, Plaintiffs filed a nationwide class action complaint against Defendants, alleging Defendants falsely labeled the Products as "Mineral-Based" in violation of state consumer protections laws, breach of express warranty, and to Defendants' unjust enrichment. Dkt. 1. On May 1, 2020, Defendants filed a motion to transfer venue under 28 U.S.C. § 1404(a); a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2); a motion to dismiss under Rule 12(b)(6); and a motion to strike under Rule 12(f). Dkt. 25, 26. In response, on May 15, 2020, Plaintiffs filed a First Amended Complaint ("**FAC**") to add additional remedies available under California Consumers Legal Remedies Act, codified at Cal. Civ. Code 1750, *et seq.* ("**CLRA**"). Dkt. 28. On that same date, Plaintiffs also filed an opposition to Defendants' motions to transfer venue and dismiss for lack of personal jurisdiction (Dkt. 29), to which Defendants replied on May 22, 2020. Dkt 34. On May 29, 2020, Defendants again moved to dismiss or strike Plaintiffs' FAC under Federal Rules of Civil Procedure 12(b)(6) and 12(f). Dkt. 36. Plaintiffs opposed Defendants' motions on June 12, 2020 (Dkt. 43), and Defendants filed a reply on June 19, 2020 (Dkt. 44). On June 29, 2020, the Court denied Defendants' motions to dismiss for lack of personal jurisdiction and to transfer venue. Dkt. 46. After a hearing on July 22, 2020, the Court denied Defendants'

motion to dismiss or strike on July 31, 2020. Dkt. 50. On August 14, 2020, Defendants answered Plaintiffs' FAC. Dkt 51, 52. On August 20, 2020, the Court entered a Case Management Scheduling Order and referred this case to a settlement conference with Judge DeMarchi. Dkt. 54.

On August 19, 2020, Plaintiffs served Defendants with substantial requests for documents and interrogatories. Bruce Decl. at ¶ 7. On August 21, 2020, Defendants similarly served Plaintiffs with requests for documents and interrogatories. *Id.* The Parties exchanged initial disclosures on September 4, 2020. *Id.* Then, on October 2, 2020, Defendants each served responses to Plaintiffs' discovery requests. *Id.* On October 2, 2020, Defendant Beiersdorf produced documents, which included comprehensive market research, trade strategy, and advertising designs, as well as formulation information, all of which informed Plaintiffs' case strategy and settlement position. *Id.* In addition, Defendants provided Plaintiffs with comprehensive Product sales data. *Id.* On October 5, 2020, Plaintiffs likewise served responses to Defendants' discovery requests. *Id.* Plaintiffs' counsel proceeded to evaluate Defendants' discovery, defenses, and the merits of Plaintiffs' claims, consulted with damages experts, conducted extensive research into comparison product labels, market pricing, and retail sales, and conducted a comprehensive analysis of Defendants' sales data to determine maximum case value assuming full liability, as well as reasonable settlement value in light of the risks of litigation and likely price premium attributable to the false mineral-based Product labels. *Id.*

Thereafter, the Parties participated in settlement conferences with Judge DeMarchi on three separate days over the course of three months before ultimately reaching the initial settlement. *See* Bruce Decl. at ¶ 9; Minute Entry, 9/25/2020 [Dkt. 65]; Minute Entry, 12/11/2020 [Dkt. 72]; Minute Entry, 12/14/2020 [Dkt. 73]. On March 17, 2021, Plaintiffs filed their motion for preliminary approval of the class action settlement (Dkt. 81), which this Court heard on April 21, 2021 (Minute Entry, 4/21/2021 [Dkt. 86]). On April 29, 2021, the Court denied Plaintiffs' motion for preliminary approval without prejudice, identifying specific concerns that the Parties subsequently remedied in the amended Settlement Agreement. Order, 4/29/2021 [Dkt. 87]; Order, 7/29/2021 [Dkt. 107]. To resolve those issues, the Parties returned to Judge DeMarchi for two additional settlement conferences to facilitate further arm's-length negotiations. Bruce Decl. ¶ 10. On July 14, 2021,

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Plaintiffs filed an amended motion for preliminary approval of the amended Settlement Agreement and, after a hearing on July 28, 2021, the Court granted the motion on July 29, 2021. PAM, 7/14/2021 [Dkt. 99]; Minute Entry, 7/29/2021 [Dkt. 105]; Order, 7/29/2021 [Dkt. 107]. In granting the motion, the Court found the terms of the Settlement Agreement preliminarily fair, reasonable, and adequate and the Notice Plan preliminarily consistent with due process of law. Order, 7/29/2021 [Dkt. 107].

### B.    The Settlement Class

Plaintiffs seek certification of the following Settlement Class for settlement purposes only:

> All retail consumers who purchased in the United States one or more Coppertone sunscreen products, for use and not for resale, on or before September 17, 2021, that included "mineral-based" on the label in various sizes and forms: Coppertone Water Babies Pure & Simple, Coppertone Kids Tear Free, and Coppertone Sport Face. The Settlement Class does not include wholesale, resale, and distribution buyers, and the other Excluded Persons.

*See* Order, 7/29/21 [Dkt. 107], at ¶ 7; Ag. at ¶¶ 2.13 [Excluded Persons], 2.23 [Notice Date], 2.33 [Products], 2.39 [Settlement Class]; DSG Decl. at ¶ 9 (notice initiated on September 17, 2021).

### C.    The Settlement Benefits

The Settlement Agreement provides significant monetary relief. Defendants will pay $2.25 million into a Settlement Fund, which shall be exhausted to pay, upon final approval by the Court: (1) valid Settlement Class Members' claims, (2) notice and claims administration costs, (3) attorneys' fees and costs, and (4) service awards to Plaintiffs. Ag. at ¶¶ 2.38 (Settlement Benefit), 2.40 (Settlement Fund). ***No money reverts to Defendants***. *Id.* Each Settlement Class Member who makes a claim may receive up to $2.50 per unit of Product for which they have proof of purchase, without limitation. *Id.* at ¶ 3.4. Settlement Class Members who cannot produce proof of purchase may receive up to $2.50 per unit of Product, for up to a maximum of four (4) units per household, which totals up to $10.00. *Id.* These amounts may be *pro rata* increased up to a maximum of nine (9) times each claim if the Settlement Fund is under-subscribed, or decreased if over-subscribed. *Id.* ¶ 3.13. Any remaining funds will be disbursed *cy pres* to the charitable organization, Look Good

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1    Feel Better.[6] *Id.* ¶ 3.13. Claims may be submitted either electronically through the Settlement

2    Website or by mail. *Id.* ¶ 3.2. The claims process includes reasonable measures to reduce the risk of

3    fraudulent claims. *Id.* ¶ 3.5. The Claim Form (available in English and Spanish) is a simple and

4    easy-to-read, two-page form. Ag. at Ex. A [Claim Form].[7] Claims will be paid by check or electronic

5    transfer, which is more convenient for claimants than the traditional check payments and reduces

6    related transaction costs.

7         The Settlement Agreement also provides valuable injunctive relief. Notably, Defendants

8    have discontinued use of the term "Mineral-Based" on the Products' labels. Ag. at ¶ 1.4. Defendants

9    have also agreed that, if the term "Mineral-Based" is used on the Products, between July 29, 2021

10   and December 31, 2023, and the Products contain chemical active ingredients, then Defendants will

11   include a statement on the Products' packaging that it contains other sunscreen active ingredients.

12   *Id.* at ¶ 4.1. This Court preliminarily approved the adequacy of the monetary and injunctive relief

13   to the Settlement Class. Order, 7/29/2021 [Dkt. 107].

14        **D.    The Release**

15        Under the Settlement Agreement, Settlement Class Members will Release Claims against

16   Released Parties as follows:

17        "**Released Claims**" means any and all rights, duties, obligations, claims, actions,
          causes of action, or liabilities, whether arising under local, state, or federal law, whether
18        by statute, regulation, contract, common law, or equity, whether known or unknown,
          suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or
19        contingent, liquidated or unliquidated that arise out of or relate to: (a) the allegations,
          claims, or contentions that were or could have been asserted in the Litigation regarding
20        the Products; (b) any advertising, labeling (including but not limited to packaging),
          marketing, claims, or representations of sunscreen active ingredients in the Products;

21

22   _____

     [6] Look Good Feel Better is a charitable organization that is dedicated to improving the quality of
23   life of people across the nation undergoing cancer treatment. *See*
     https://lookgoodfeelbetter.org/about/about-the-program/ (last visited Oct. 28, 2021). As evidenced
24   in the Parties and their counsel's respective declarations submitted in support of Plaintiffs' renewed
     motion for preliminary approval, the *cy pres* recipient was selected to serve the interests of the
25   Settlement Class to prevent cancer through sunscreens; not to serve any sort of conflicting interest
     of any party or their counsel. Bruce Decl., 7/14/2021 [Dkt. 99-2] at ¶ 5; Moon Decl., 7/14/2021
26   [Dkt. 99-3], at ¶¶ 3-7; Prescott Decl., 7/14/2021 [Dkt. 99-4]; Xavier Decl., 7/14/2021 [Dkt. 99-5];
     Scarborough Decl., 7/14/2021 [Dkt. 99-6]; Alonso Decl., 7/14/2021 [Dkt. 99-7]; Gonzalez-Ruiz
27   Decl., 7/14/2021 [Dkt. 99-8].
     [7] All that is required from Settlement Class Members is their name; contact information; chosen
28   method of payment (check, PayPal, Zelle, or Venmo); attestation that they purchased the claimed
     Products in the United States, within the requisite period of time, for purposes other than retail,
     based on the mineral-based claim; and indication of whether they will submit proof of purchase. *Id.*

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1    (c) all labels or packaging for the Coppertone sunscreen products that conform to the
terms of the Settlement. Section 2.35(c) is intended to apply only to Settlement Class

2    Members as of the date of Preliminary Approval and who do not exclude themselves
from the Settlement Class. For the avoidance of doubt: (i) the Released Claims in this

3    Section 2.35 are intended to reach the full scope of claims that may be released under
the identical factual predicate rule without exceeding or violating it; (ii) the Released

4    Claims do not include claims for personal injury allegedly arising out of use of the
Products.

5        "**Released Parties**" means Bayer HealthCare LLC and Beiersdorf, Inc. and each

6    and all of their predecessors and successors in interest to the Coppertone brand or the
Products, former, present and future direct and indirect subsidiaries, parents, and

7    affiliates involved in the development, manufacturing, distribution, marketing,
advertising, labeling and/or sale of the Products, and each and all of the aforementioned

8    entities' and individuals' former, present, and future officers, directors, shareholders,
partners, employees, agents, representatives, suppliers, resellers, retailers, wholesalers,

9    distributors, customers, insurers, assigns, servants, and attorneys.

10   Ag. at ¶¶ 2.35, 2.36.[8] Additionally, Plaintiffs, but not Settlement Class Members, have agreed to a

11   waiver of known and unknown claims under California Code of Civil Procedure, section 1542. *Id.*

12   at ¶ 8.2. This Court preliminarily approved the scope of the releases. Order, 7/29/2021 [Dkt. 107].

13       **E.    DSG Successfully Carried Out the Notice Plan**

14           In compliance with the Settlement Agreement and the Court's Preliminary Approval Order,

15   DSG initiated the Notice Plan on September 17, 2021, and performed all duties to-date, including

16   *inter alia*: (1) publishing Online Notice and the Press Release; (2) establishing the Settlement

17   Website and operating the toll-free telephone number; (3) answering inquiries about the settlement

18   and receiving, processing, and maintaining records of all correspondence, including any and all

19   claims, objections, and requests for exclusion; and (4) providing weekly reporting to the Parties'

20

21   [8] The Settlement Agreement narrows Released Claims to the factual predicate underlying the
operative complaint, consistent with controlling authority in the Ninth Circuit. *See* Second Amended

22   Compl., 7/14/2021 [Dkt. 103]; *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A
settlement agreement may preclude a party from bringing a related claim in the future even though

23   the claim was not presented and might not have been presentable in the class action, but only where
the released claim is based on the identical factual predicate as that underlying the claims in the

24   settled class action." (quotations and citations omitted)). Further, the Released Parties are limited to
those that have participated in the conduct at issue in this action—namely, the "development,

25   manufacturing, distribution, marketing, advertising, labeling, and/or sale of the Products." Ag. at ¶
2.36; *see also Jones v. Singing River Health Services Foundation*, 865 F.3d 285, 302 (5th Cir. 2017)

26   ("[A] court may approve a class action settlement that releases non-parties if 'the claims against the
non-party being released were based on the same underlying factual predicate as the claims asserted

27   against the parties to the action being settled." (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96, 109 (2d Cir. 2005)); *accord In re Y & A Group Securities Litigation*, 38 F.3d 380, 383-

28   384 (8th Cir. 1994); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287-89 (9th Cir.
1992); Rubenstein, 6 Newberg on Class Actions § 18:20 (5th ed.).

1    counsel to facilitate their oversight. Order, 7/29/2021 [Dkt. 107]; DSG Decl. ¶ 15.

2        As this litigation involves Products that Defendants indirectly sold to the Settlement Class

3    through third-party retailers, direct notice was not reasonably practicable as Defendants did not

4    routinely maintain customer contact information. *Id.* at ¶ 10; Schey Supp. Decl., 7/14/2021 [Dkt.

5    99-10], at ¶ 4. DSG designed and implemented the best practicable, cost-efficient, and effective

6    Notice Plan that emulated Defendants' marketing of the Products to reach the Settlement Class,

7    including, targeted search-term advertising and Online Notices that drove individuals to the

8    Settlement Website, containing all relevant documents and information regarding this settlement,

9    and distribution of a Press Release that amplified the reach and frequency of the Online Notices'

10   display. *Id.* at ¶¶ 3, 6-7; Ag. at Ex. B [Notice Plan] at ¶¶ 14, 16, 17, 18; DSG Decl. ¶ 11. Specifically,

11   the Settlement Website provided information concerning the status of the litigation; contact

12   information for DSG; downloadable copies of the Court approved long- and short-form notices,

13   Settlement Agreement, and the preliminary approval motion, related papers, and order; Claim Form;

14   important dates; answers to frequently asked questions, and a Product list. *See*

15   https://www.mineralbasedsunscreensettlement.com/ (accessed 11/3/2021); DSG Decl. ¶ 11. This

16   motion, including all related papers, and the contemporaneously filed motion for attorneys' fees and

17   costs and incentive awards to Plaintiffs, will also be posted on the Settlement Website upon their

18   filing. DSG Decl. ¶ 11. Although the Claims Period has not yet concluded (scheduled to complete

19   on November 17, 2021), the Online Notices have received more than 71 million views as of October

20   31, 2021, surpassing the guaranteed 66 million impressions and minimum 70% reach of the Notice

21   Plan. DSG Supp. Decl., 7/14/2021 [Dkt. 99-10], at ¶¶ 3, 7; DSG Decl. ¶¶ 11, 21, 24.

22       **F.    The Settlement Class's Initial Reaction**

23       The deadline to submit claims, objections, and requests for exclusion is November 17, 2021.

24   Ag. at ¶ 2.4 [Claims]; Order, 7/29/2021 [Dkt. 107], at ¶ 13 [Exclusions], 16 [Objections]. Although

25   the Claim Period is nearly three-quarters complete, DSG has already received over 63,000 claims

26   as of October 31, 2021, and is on track to achieve the approximately 75,000 to 100,000 estimated

27   claims. DSG Decl. ¶¶ 24, 25. Additionally, ***neither Plaintiffs nor DSG have received any requests***

28   ***for exclusion and not a single Settlement Class Member has filed an objection as of October 31,***

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

*2021*. *Id.* ¶ 23; Bruce Decl. at ¶ 21. Thus, the Settlement Class has unanimously shown a positive reaction to the Settlement Agreement. *Id.* In addition, no later than December 1, 2021, Plaintiffs will file a list of any and all valid opt-outs DSG receives postmarked by November 17, 2021, and update the Court regarding the Settlement Class's reaction. DSG Decl. ¶ 25; Bruce Decl. at ¶ 21; Order, 7/29/2021 [Dkt. 107], at ¶ 14.

## III.  CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

This Court should definitively and finally certify the Settlement Class for settlement purposes only under Federal Rules of Civil Procedure 23(a) and (b)(3). Rule 23(a) permits class certification only if: (1) the class is sufficiently numerous; (2) there are common questions of law or fact; (3) the class representatives are typical of the class; and (4) the representatives and their counsel will fairly and adequately represent the class. Parties must also show that the class action is proper under Rule 23(b)(3), which permits class certification if "questions of law or fact common to class members predominate over any questions affecting only individual members" and the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

***A. Numerosity.*** For a class to be certified, its members must be so numerous that their joinder would be "impracticable." Fed. R. Civ. P. 23(a)(1). Here, there were tens or hundreds of thousands, if not millions, of Settlement Class Members throughout the United States, as more than ███ ███ products have been sold in the past five years. Bruce Decl. ¶ 22. Numerosity is satisfied.

***B. Commonality.*** To satisfy Rule 23(a)(2)'s commonality requirement, the claims "must depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Ninth Circuit "permissively" construes this requirement—it is satisfied with "shared legal issues" or "a common core of salient facts." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (quoting *Hanlon v. Chrysler*, 150 F.3d 1011, 1019 (9th Cir. 1998)). Here, all of the claims turn on common questions. For example, whether the Products' labeling is misleading and deceptive and therefore unlawful; whether Plaintiffs and the Settlement Class are entitled to equitable and/or injunctive relief; and whether Plaintiffs and the Settlement Class have sustained damages as a result of Defendants' unlawful conduct. *See* SAC, 7/14/2021 [Dkt. 103], at

¶ 51. Commonality is therefore satisfied.

**C. Typicality.** Plaintiffs' claims are typical under Rule 23(a)(3) "if they are reasonably coextensive with those of absent class members." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured in the same course of conduct.'" *Id*. (citation omitted). In this case, Plaintiffs and Settlement Class Members have the same claims arising from the same misleading Product labeling (i.e., all products state "Mineral-Based" on the labels), causing the same injuries (all consumers paid a premium for the false "Mineral-Based" attribute). *See* SAC, 7/14/2021 [Dkt. 103], at ¶ 52; Xavier Decl. ¶ 2; Prescott Decl. ¶ 2. As a result, typicality is satisfied. *See*, *e.g.*, *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288-89 (N.D. Cal. 2017).

**D. Fair & Adequate Representation.** The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). The test is easily met here. First, Plaintiffs and their counsel do not have any conflicts with Settlement Class Members and have vigorously prosecuted this case through their pre-litigation investigation, complex motion practice, fact discovery, settlement negotiations, and structuring of the proposed settlement. Bruce Decl. ¶ 22; Xavier Decl. ¶¶ 2-6, 8; Prescott Decl. ¶¶ 2-6, 8. Plaintiffs agreed to serve in a representative capacity, communicated frequently with their attorneys, responded to discovery requests, contributed to the preparation of the complaint, and actively participated in settlement negotiations. *Id*. ¶¶ 13, 22; Xavier Decl. ¶¶ 5, 8; Prescott Decl. ¶¶ 5, 8. Second, Plaintiffs' counsel are experienced consumer advocates and are well qualified to serve as Settlement Class Counsel. Bruce Decl. ¶¶ 14, 22, 34; **Ex. 2** [Clarkson Resume]; **Ex. 3** [Moon Resume]. They have vast experience successfully representing plaintiffs and classes in complex class-action litigation, specifically in consumer product mislabeling cases. *Id*. Plaintiffs' counsel have diligently prepared this matter for class certification and trial in accordance with the Court's schedule and presented this settlement to the Court in conformity with this District's

guidelines. Bruce Decl. ¶¶ 3-6, 22. Adequacy is thus satisfied.

**E. Predominance.** The predominance analysis "focuses on the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Ehret v. Uber Techs., Inc.*, 148 F.Supp.3d 884, 894-95 (N.D. Cal. 2015) (citation omitted). In the settlement context, predominance is satisfied when the claims arise out of the defendant's common conduct. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 559 (9th Cir. 2019).

Common questions of fact abound, including, but not limited to, whether:

(1) Defendants' conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of the CLRA; (2) Defendants used deceptive representations in connection with the sale of the Products, represented the Products have characteristics they do not have, or advertised the Products with the intent not to sell them as advertised, in violation of the CLRA; (3) Defendants' labeling and advertising of the Products are untrue or misleading in violation of California's False Advertising Law, codified at Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("**FAL**"); (4) Defendants knew or by the exercise of reasonable care should have known their labeling and advertising was and is untrue or misleading in violation of the FAL; (5) Defendants' conduct is an unfair, fraudulent, or unlawful business practice within the meaning of California's Unfair Competition Law, codified at Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("**UCL**"); (6) Plaintiffs and the Class paid more money for the Products than they actually received, how much, and the proper measure of damages or restitution; (7) Defendants' conduct constitutes a breach of express warranty; (8) Plaintiffs and the Class are entitled to equitable and/or injunctive relief; (9) Plaintiffs and the Class have sustained damages as a result of Defendants' misconduct; and (10) Defendants were unjustly enriched by their unlawful conduct.

Likewise, common questions of law exist. Defendants sold the same Products nationwide with the allegedly deceptive labeling. SAC, 7/14/2021 [Dkt. 103], at ¶ 51. Just as is the case for all Californians, the claims of false advertising will present uniform issues of material fact for Class Members nationwide. Bruce Decl. ¶ 5. In light of the uniform alleged misconduct, the elements that need to be proven under the consumer protection laws of all States are substantively identical. *Id.* To the extent differences exist, they are immaterial and do not undermine certification for settlement purposes only, as the Court need not concern itself over the management of slight variances in the law. *See In re Hyundai & Kia*, 926 F.3d at 557 (ruling the trial manageability criteria of Rule 23(b)(3)(A) drops out of the analysis when "certifying a settlement class, where, by definition, there

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

will be no trial." ); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Indeed, courts agree that unjust enrichment across the States does not differ materially, so a nationwide class may be certified. *See*, *e.g.*, *In re Abbott Labs. Norvir Anti-Tr. Litig.*, No. C-04-1511 CW, 2007 WL 1689899, at *9 (N.D. Cal. Jun. 11, 2007) (certifying nationwide class, holding that the "variations among some States' unjust enrichment laws do not significantly alter the central issue or the manner of proof").[9] In distilling the various states' laws down to two common elements, one court explained:

> At the core of each state's law are two fundamental elements—***the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.*** The focus of the inquiry is the same in each state. Application of another variation of the cause of action than that subscribed to by a state will not frustrate or infringe upon that state's interests. In other words, regardless of which state's unjust enrichment elements are applied, the result is the same. Thus, there is no real conflict surrounding the elements of the cause of action.

*Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007) (emphasis added), *rev'd on other grounds*, 2009 WL 826842, 328 Fed. Appx. 121 (3d Cir. 2009). These two elements are the same for all Settlement Class Members, regardless of their state of residence, as all paid a premium for "Mineral-Based" Products—thus, all conferred a benefit on Defendants—but none received a true mineral-based Product, therefore rendering it inequitable for Defendants to retain the benefit. Thus, predominance is satisfied. SAC, 7/14/2021 [Dkt. 103], at ¶ 51.

**F. Superiority.** A class action is superior if it represents the only realistic method for its members to obtain relief. *See*, *e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir.

---

[9] *See also In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 647 (S.D. Fla. 2015) ("There is general agreement among courts that the "minor variations in the elements of unjust enrichment under the laws of the various states . . . are not material and do not create an actual conflict.") (quoting *Pa. Emp., Benefit Tr. Fund v. Zeneca, Inc.*, 710 F. Supp. 2d 458, 477 (D. Del. 2010)); *In re Mercedes–Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) ("While there are minor variations in the elements of unjust enrichment under the laws of the various states, those differences are not material and do not create an actual conflict."); *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D.S.D. 2004) ("In looking at claims for unjust enrichment, we must keep in mind that the very nature of such claims requires a focus on the gains of the defendants, not the losses of the plaintiffs. That is a universal thread throughout all common law causes of action for unjust enrichment.").

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

1996) (where "classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation"). Here, Settlement Class Members lack the incentive to bring their own cases against Defendants, given their minimal potential individual recovery in comparison to the exorbitant costs of establishing liability. Bruce Decl. at ¶ 22 (the average retail sales price, per Product, is between $7 and $10, which represents the absolute maximum conceivable actual damages per Product, which pales in comparison to the hundreds of thousands of dollars necessary to litigate this action through trial). Additionally, the Parties are unaware of any other such cases having been filed. *Id.* "Cases, such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution." *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016). Accordingly, superiority is satisfied and this Court should certify the Settlement Class for settlement purposes only.

## IV.    NOTICE TO CLASS MEMBERS SATISFIED DUE PROCESS

Under Federal Rule of Civil Procedure 23, due process requires that Settlement Class Members receive notice of the settlement and an opportunity to be heard and participate in the litigation. *See also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985); *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175-76 (1974). "A binding settlement must provide notice to the class in a reasonable manner." *In re Hyundai & Kia*, 926 F.3d at 567 (quotations omitted); *Mendoza v. Hyundai Motor Co., Ltd*, No. 15-cv-01685-BLF, 2017 WL 342059, at *5 (N.D. Cal. Jan. 23, 2017) ("The class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice."). Further, notice is satisfactory "if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Here, DSG executed the Court-approved Notice Plan. DSG Decl. at ¶¶ 17, 30; *see also Ford v. CEC Entm't Inc.*, No. 14cv677 JLS (JLB), 2015 WL 11439033, at *3 (S.D. Cal. Dec. 14, 2015) (holding notice satisfied when administrator complies with procedures preliminarily approved by the court). As described, *supra*, DSG implemented the best practicable notice in the absence of readily available contact information for the Settlement Class, which also emulated Defendants'

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

marketing strategy for the Products. DSG Decl. at ¶¶ 11, 15, 26, 30. DSG has established and maintained the Settlement Website containing all relevant information and documents concerning the settlement[10] in clear, concise, and easy-to-read language, and a toll-free number to answer frequently asked questions and direct callers to the Settlement Website; disseminated Online Notices; issued a press release through PR Newswire that amplified the reach and frequency of the Notice Plan; and responded to any inquiries on a reasonably prompt basis since September 17, 2021. *Id.* As a result, DSG has exceeded the guaranteed 66 million "impressions" or views of the Online Notices that drove traffic to the Settlement Website, as more than 71 million impressions were delivered as of October 31, 2021. *Id.*; **Ex. 1** [Admin. Rept.]. Thus, the Notice Plan has already surpassed the guaranteed minimum reach of notice to 70% of the Settlement Class with several weeks remaining until the end of the notice period on November 17, 2021. *Id.*; Order, 7/29/2021 [Dkt. 107]. A 70% reach is consistent with due process and the Federal Judicial Center's published Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide (2010). *See* https://www.fjc.gov/content/judges-class-action-notice-and-claims-process-checklist-and-plain-language-guide-0 (accessed 11/3/2021); *accord Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329-BLF, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional and comply with Rule 23." (brackets and quotations omitted)); *Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. Jun. 26, 2017), *aff'd sub nom. Edwards v. Andrews*, 846 F. App'x 538 (9th Cir. 2021) (same); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169, 2018 WL 4691169, at *4 (N.D. Cal. Sept. 27, 2018) (same).

## V.   CAFA COMPLIANCE

Within ten days of the filing of a proposed settlement, Defendants served a notice in substantial compliance with the Class Action Fairness Act of 2005, codified at 28 U.S.C. § 1715(b)

---

[10] Consistent with Rule 23(c)(2)(B), the Settlement Website explained (i) the nature of the action; (ii) the definition of the Settlement Class preliminarily certified for settlement purposes; (iii) the Settlement Class claims, issues, and any relevant defenses; (iv) that a Settlement Class Member may enter an appearance through an attorney if they desire; (v) that the Court will exclude from the Settlement Class those who timely submit a request for exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a judgment on the Settlement Class under Rule 23(c)(3). *See* DSG Decl. at ¶ 11, 29.

ND Cal Case No. 5:20-CV-00102-NC        -13-

("**CAFA**"), on all appropriate State or Federal officials on July 23, 2021. DSG Decl. at ¶ 16; **Ex. 4**

[CAFA Template Notice & Mailing List for 3/26/2021 and 7/23/2021].

## VI.    **THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT**

A strong judicial policy favors settlement of Federal Rule of Civil Procedure 23 class

actions, such as this litigation. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

1992); *Hanlon*, 150 F.3d at 1019. Rule 23(e) requires courts to approve a class action settlement

only after a hearing and upon finding it is "fair, reasonable, and adequate." *Officers for Justice v.*

*Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Under Rule

23(e)(2), courts consider:

> (A)    the class representatives and class counsel have adequately represented the
>         class;
> (B)    the proposal was negotiated at arm's length;
> (C)    the relief provided for the class is adequate, taking into account:
>        (i)    the costs, risks, and delay of trial and appeal;
>        (ii)   the effectiveness of any proposed method of distributing relief to the
>               class, including the method of processing class-member claims;
>        (iii)  the terms of any proposed award of attorneys' fees, including timing
>               of payment; and
>        (iv)   any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

To evaluate the Rule 23(e)(2) factors, courts in the Ninth Circuit specifically look to factors

delineated in *Churchill Village*, 361 F.3d at 575:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely
> duration of further litigation; (3) the risk of maintaining class action status
> throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
> completed and the stage of the proceedings; (6) the experience and view of counsel;
> (7) the presence of a government participant; and (8) the reaction of the class
> members of the proposed settlement.

*Id.*; *Shin v. Plantronics, Inc.*, No. 18-cv-05626-NC, 2020 WL 1934893, at *3 (N.D. Cal. Jan. 31,

2020) (Cousins, J.).[11] Additionally, courts must ensure that "the settlement is not the product of

---

[11] Rule 23(e)(2)(C)(iii) factors regarding attorneys' fees is more thoroughly evaluated in Plaintiffs'
concurrently filed motion for attorneys' fees and costs and incentive awards and those arguments
are summarily incorporated here by this reference to avoid unnecessary redundancies as any denial,
in whole or part, of attorneys' fees and costs or incentive awards will not foreclose final approval
of the Settlement Agreement. Ag. at ¶ 6.5. Similarly, Plaintiffs summarily identify the only
agreement at issue in this proposed settlement—the Settlement Agreement (Dkt. 99-11), which this
Court preliminarily approved on July 29, 2021 (Dkt. 107). Plaintiffs also summarily resolve the
seventh *Churchill* factor as neutral or favorable because no government organization is a party in
this case and, thus far, none has filed an objection despite having notice since July 23, 2021.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

collusion among the negotiating parties." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011). Each factor's relative degree of importance depends on the nature of the claims advanced, types of relief sought, and the unique facts and circumstances of the case. *Officers for Justice*, 688 F.2d at 625; *Shin*, 2020 WL 1934893, at *3. Final approval of a class action settlement rests within the sound discretion of the trial court. *Id.*; *Class Plaintiffs*, 955 F.2d at 1276.

### A. Plaintiffs and Counsel Have Adequately and Fairly Represented the Settlement Class and Reached a Presumptively Fair and Reasonable Settlement Negotiated at Arm's-Length Settlement, Following a Robust Investigation and Discovery, and Supported by Experienced Plaintiffs' Counsel's Views

Under Rule 23(e)(2)(A)-(B), courts consider whether "the class representatives and class counsel have adequately represented the class"—specifically, whether they have any conflicts with the class and will vigorously prosecute the action on behalf on its behalf. *See In re Mego Fin. Corp. Securities Litigation*, 213 F.3d 454, 462-63 (9th Cir. 2000). Courts also consider the overlapping fifth and sixth *Churchill* factors regarding the extent of discovery and views of experienced counsel. *Churchill Village*, 361 F.3d at 575. Plaintiffs and their counsel have fairly represented the Settlement Class and vigorously prosecuted this action, consistent with the Court's preliminary appointment of Plaintiffs and their counsel to represent the Settlement Class (Order, 7/29/2021 [Dkt. 107], at ¶ 9), and as evidenced by their robust investigation and discovery, zealous advocacy, lack of any indicia of collusion with Defendants or conflicts of interest with the Settlement Class and signs of collusion, and the views of experienced counsel. Not only do each of these factors weigh in favor of approval, but they give rise to a presumption that the settlement is fair and reasonable.

### 1. A Robust Investigation and Discovery Informed the Settlement

Courts evaluate whether counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Financial Corp.*, 213 F.3d at 459. "[I]n the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-cv-00278-JST, 2021 WL 4785936, at *7 (N.D. Cal. Feb. 4, 2021) (quoting *In re Mego Fin. Corp.*, 213 F.3d at 459; *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (approving settlement where informal discovery

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

gave parties clear view of strength and weaknesses of their cases).

Here, Plaintiffs have engaged in extensive formal and informal discovery, pursued written discovery and Defendants' documents, thoroughly investigated all asserted claims, and consulted with experts. Bruce Decl. ¶ 3. Indeed, Plaintiffs and their counsel have dedicated considerable, time, effort, and skill in this investigation and discovery, including, but not limited to:

(1)   Researching and analyzing relevant scientific studies and published research regarding the benefits and costs of using mineral versus non-mineral or chemical active ingredients in sunscreens, including the attributes of both from an aesthetic standpoint and the toxicity and adverse impact chemical active ingredients have on humans, animals, and reefs, including corals and inhabiting marine life, to understand the materiality of "Mineral-Based" and similar advertising claims and their importance to consumers;

(2)   Researching and analyzing the regulations, including the Code of Federal Regulations and various state regulations, regarding labeling and advertising personal care consumer goods, cosmetics, over the counter drugs, and sunscreens, including any reports or studies considered by the legislature or executive agency in promulgating those regulations;

(3)   Researching and analyzing publications from or made available by the United States Federal Trade Commission ("**FTC**") and Food and Drug Administration ("**FDA**") regarding labeling and advertising recommendations, requirements, and prohibitions for personal care consumer goods, cosmetics, over the counter drugs, and sunscreens to evaluate mineral and natural claims and materials that informed said guidance;

(4)   Researching and analyzing information from or made available by the FDA regarding the Generally Recognized as Safe ("**GRAS**") rating or lack thereof for sunscreen active ingredients and its development over time;

(5)   Researching and analyzing any FTC enforcement actions or investigations into "Mineral-Based" or similar claims for personal care consumer goods, cosmetics, over the counter drugs, and sunscreens;

(6)   Researching and analyzing relevant or related investigations and decisions of the Better Business Bureau's National Advertising Division ("**NAD**") and National Advertising Review Board ("**NARB**") to evaluate any industry standards for advertising and substantiating claims regarding personal care consumer goods, cosmetics, over the counter drugs, and sunscreens;

(7)   Researching and analyzing prior litigation related to the Products and Defendants' other personal care, consumer goods, cosmetics, over the counter drugs, and sunscreens;

(8)   Researching and analyzing market research, including consultation with experts, regarding consumers' perception, materiality, and monetary value of the "Mineral-Based" and similar claims to evaluate the reasonable consumers understanding and importance placed on such claims;

(9)   Researching and analyzing Defendants' and major third-party retailer websites and social media profiles, periodically and including archived web pages, to evaluate all publicly available labels for Products, including prominent front label claims, related "Mineral-Based" claims, and back label ingredient disclosures, as well as Defendant's marketing strategy and the net impression of online consumers;

(10)  Conducting extensive legal research to analyze the prospective merits and weaknesses of the case through class certification and trial, including each element of class certification, common defenses thereto regarding issues of commonality, predominance, and typicality, and the various states laws regarding the statute of limitations, elements of each cause of action, common affirmative defenses, and

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

available remedies;

(11) Researching the industry practices regarding the research and development, sourcing and manufacture of raw materials, production of finished household consumer goods, labeling development, compliance checks, and production, marketing through third parties, data analytics for digital marketing campaigns, and related financial considerations for budgeting, auditing, and protecting profit margins;

(12) Researching and analyzing Defendants' secretary of state filings and Defendant Bayer Healthcare LLC's financial reporting to investors and the Securities Exchange Commission to evaluate Defendants' market sects, financial strategy, operations, and corporate structure;

(13) Analyzing Defendants' Products' sales and related documents, and researching retail sales pricing for the Products, in consultation with experts in consumer behavior, statistical analysis, and market research designed to isolate the premium consumers pay for falsely advertised common household goods, to determine the maximum value recoverable for economic losses to the Settlement Class;

(14) Researching and analyzing potential class-wide damages based on a review of price premiums attributed to similar false and deceptive advertising claims or similar products regarding household consumer goods;

(15) Researching and analyzing comparable products to identify sunscreens with and without a "Mineral-Based" or similar claims, their active ingredients, and understand the salient product attributes and its impact on pricing; and

(16) Obtaining and evaluating Defendants' document production and responses to interrogatories and requests for documents, including key information and documents regarding Defendants' market research, market strategy, labels, sales, and formulation of the Products.

Bruce Decl. ¶ 3.

## 2. The Settlement Agreement is Presumptively Fair Based on Well-Informed and Arm's-Length Settlement Negotiations

Armed with this information, Plaintiffs and their counsel vigorously prosecuted this litigation and negotiated the Settlement Agreement based on a well-informed analysis of the strengths and weaknesses of the case, the likelihood of success at certifying this litigation as a class action and prevailing on the merits at trial, and the maximum and reasonable monetary value of this litigation. Bruce Decl. ¶¶ 3, 8-12. At the outset, Plaintiffs prevailed over Defendants, represented by well-respected and formidable counsel, who mounted a considerable challenge to the pleadings, venue, and this Court's jurisdiction. *Id.*; Order, 6/29/2020 [Dkt. 46] (denying motion to dismiss for lack of personal jurisdiction and to transfer venue); Order, 7/31/2020 [Dkt. 50] (denying motion to dismiss for failure to state a claim and strike nationwide class allegations).

Plaintiffs' research and investigation not only facilitated this success and demonstrated their adequacy, but it also served Plaintiffs well in negotiating a fair, adequate, and reasonable settlement. Bruce Decl. ¶¶ 3 8-12. Plaintiffs and Defendants engaged in three separate settlement conferences with Judge DeMarchi for the Northern District of California before reaching an agreement in

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

principle regarding the monetary recovery for the Settlement Class. Thereafter, the Parties vigorously negotiated the details of the settlement over the course of several months, including the Notice Plan and claims process, among other terms, in consultation with respected administrators. *Id.* Following the denial of Plaintiffs' first motion for preliminary approval, the parties returned to Judge DeMarchi to facilitate further negotiations regarding the terms of the Settlement Agreement over the course of multiple additional months. *Id.*; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP (OPx), EDCV 09-0216-VAP (OPx), 2010 WL 1946784, at *7 (C.D. Cal. May 11, 2010) ("The Court is…satisfied the Settlement Agreement is the product of arm's-length negotiation" because it was reached through "formal mediation sessions presided over by an experienced mediator[.]"); *see O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 WL 1437101, at *7 (N.D. Cal. Mar. 29, 2019) (arm's-length factor weighed in favor of preliminary approval where settlement was reached with the assistance of an experienced mediator); *Nielson v. The Sports Auth.*, No. C 11-4724-SBA, 2013 WL 3957764, at *5 (N.D. Cal. July 29, 2013) ("[T]he settlement resulted from non-collusive negotiations; i.e., a mediation before Mark Rudy, a respected employment attorney and mediator.").

At all times, Plaintiffs and their counsel engaged in arm's-length negotiations with Defendants and stridently protected the rights of Settlement Class Members. *Id.* Indeed, in hearing Plaintiffs' amended motion for preliminary approval of the Settlement Agreement, the Court considered whether any indicia of collusion exist. *Id.* As the record is void of any such signs or suggested conflicts of interest, and this Court granted preliminary approval, it is indisputable that Plaintiffs did not collude with Defendants in reaching the Settlement Agreement. *Id.* Thus, the Settlement Agreement is entitled to a presumption of fairness as Courts presume class settlements are fair when reached "following sufficient discovery and genuine arms-length negotiation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); Rubenstein, 4 Newberg on Class Actions at § 11.24 (5th ed.); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) ("An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining.").

/ / /

### 3. The Settlement Agreement Is Presumptively Reasonable Based on Experienced Counsel's Recommendations

Plaintiffs' counsel's investigation and experience further entitle the Settlement Agreement to a presumption of reasonableness. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techns., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). Deference to counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)); *see also*, *e.g.*, *Nat'l Rural Telecommunications Cooperative*, 221 F.R.D. at 528 (finding that experienced counsel's views regarding settlement are entitled to great weight); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) (same). Here, Plaintiffs' counsel share vast experience in consumer class actions, are well-versed in false advertising and warranty cases, just like this litigation, and strongly recommend this Court grant final approval of the Settlement Agreement based on their well-rounded and extensive investigation and valuation. Bruce Decl. ¶¶ 3, 8, 11, 12, 14, 34; **Ex. 2** [Clarkson Resume]; **Ex. 3** [Moon Resume].

### B. The Monetary Value of the Settlement Class's Claims Supports the Settlement

Under Rule 23(e)(2)(C)-(D), courts consider whether "the relief provided for the class is adequate," including "the effectiveness of any proposed method of distributing relief to the class," "the method of processing class-member claims," and whether "the proposal treats class members equitably relative to one another." These factors also overlap with the fourth *Churchill* factor regarding the amount offered under the settlement. As set forth below, the consideration in the form of $2.25 million dollars and the significant injunctive relief, not only treats Settlement Class Members fairly, but it also affords exceptional relief in comparison to the maximum case value.

Under the Settlement Agreement, Defendants must pay $2.25 million into the Settlement Fund and each purchaser who submits a valid claim may receive $2.50 per Product, without limitation for consumers who have proof they purchased more than four Products, which will be adjusted *pro rata* in the event of the Settlement Fund's over- or under-subscription. Ag. at ¶¶ 2.4, 3.4. The household cap of four Products without proof of purchase is based on customary purchasing

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

behaviors for similar household consumer products and aligns with the average repeat purchaser rate for the Products (of approximately ███ over the course of two or more years). Bruce Decl. ¶ 16. The claims have been—and will continue to be—processed through the experienced and Court-approved Claim Administrator, DSG, to facilitate submission of valid claims, detect and eliminate fraudulent claims, and maintain a complete accounting of the distribution of moneys from the Settlement Fund with the oversight of all counsel and this Court. Ag. at § III; Order, 7/29/2021 [Dkt. 107], at ¶ 9 (appointing DSG). Although incentive awards to Plaintiffs increase their recovery in comparison to the Settlement Class, as discussed more thoroughly in the contemporaneously filed motion for said awards, "the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable." *Harris*, 2011 WL 1627973, at *9. Indeed, the final approval and execution of the Settlement Agreement do not hinge on whether this Court grants or denies, in whole or in part, Plaintiffs' request for incentive awards. Ag. at ¶ 6.5. In this way, the Settlement Agreement does not "improperly grant[] preferential treatment to class representatives or segments of the class." *Elder*, 2021 WL 4785936 at * 6 (quoting *In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007)).

Courts "assess the consideration obtained by the class members in a class action settlement" (*Nat'l Rural Telecommunications Cooperative*, 221 F.R.D. at 527), including the value of injunctive relief. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015); *Lane v. Facebook, Inc.*, 696 F.3d 811, 825 (9th Cir. 2012)). "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Nat'l Rural Telecommunications Cooperative*, 221 F.R.D. at 527 (citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998)). Here, the Settlement Class's best-case recovery of all economic losses would be the price "premium" consumers paid for the alleged falsely advertised product attribute—its mineral-based composition. Bruce Decl. at ¶ 17. Defendants strongly dispute that any such price premium exists, and, therefore, any testimony of the parties' competing experts would diverge wildly. *Id.* at ¶ 19. An evaluation of the monetary component of the proposed settlement demonstrates its adequacy and reasonableness in two ways:

(1)    First, the average retail price for each Product falls within a range of approximately

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

$7.44 and $9.89 and the average retail price for the Products is approximately $8.88. Bruce Decl. ¶ 17. The $2.50 refund for Products that cost approximately $8.88 is equal to a 28.2% price premium, which is easily within the range of a reasonable estimated price premium based on Plaintiffs' counsel's investigation (*see supra*) and experience in having conjoint analyses conducted to determine the price premium for an every-day household good where the challenged advertising claim is not the primary purpose of the product (which, here, is sun protection and not mineral active ingredients). *Id.*

(2)    Second, the $2.25 million Settlement Fund represents nearly ▉% of Defendants' sales of approximately $▉▉▉▉▉, for approximately ▉▉▉▉▉ products, over the course of approximately 5 years. Bruce Decl. at ¶ 17. If one were to assume that a full refund of the purchase is the Settlement Class's best-case scenario (which far exceeds actual damages or restitution absent proof that the Products do not provide any sun protection—i.e., consumers received absolutely no benefit in exchange for their money), then one would conclude Defendants' total sales represent the maximum monetary value of the case. *Id.* Where a settlement achieves 10% of the maximum recoverable damages, it has been approved as "eminently fair and reasonable." *In re Crazy Eddie Securities Litigation*, 824 F. Supp. 320, 323-324 (E.D.N.Y. 1993); *see also, e.g.*, *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 WL 5173771, at *7 (C.D. Cal. Oct. 10, 2019).[12] Further, the monetary relief is especially beneficial in a contested proceeding like this one, where Class Settlement Members—who lack proof of purchase, which is likely the vast majority of them here—might receive nothing at all.[13]

In addition to the monetary relief, the changed practices will benefit the Settlement Class by ensuring transparency with the challenged "Mineral-Based" labeling claim. Bruce Decl. at ¶ 18. Defendants have removed "Mineral-Based" from the Products' labels and, under the terms of the Settlement Agreement, Defendants have agreed that if the term "Mineral-Based" is used on Coppertone sunscreen product labels that contain chemical active ingredients over more than 2 years (between July 29, 2021 and December 31, 2023), then the product packaging will state the product contains other sunscreen active ingredients. Ag. at ¶¶ 1.4, 4.1. The cessation of the mineral-based claim, and agreement to add labeling statements that ensure transparency, provide a significant benefit to consumers, regardless of whether they submit a claim or seek exclusion from the Settlement Class. Bruce Decl. at ¶¶ 15, 17, 18, 20.

In sum, Plaintiffs' dual primary objectives in litigation have been achieved: (1) fair and

---

[12] *See also, e.g.*, *Fitzhenry-Russell v. The Coca-Cola Co.*, No. 5:17-cv-00603-EJD, 2019 WL 11557486, * 2, 4 (N.D. Cal. Oct. 3, 2019) (granting final approval for **$2.45 million common fund** for falsely advertised "Real Ginger" beverages based on a lower **6%** price premium [in comparison to this case], derived from conjoint and regression analyses, and far greater total gross sales of **$790 million** [in comparison to this case]); Mot. for Appr'l Settlmnt, May 9, 2019 [Dkt. 84], in *Fitzhenry-Russell v. The Coca-Cola Company*, No. 5:17-cv-00603-EJD (N.D. Cal.).
[13] *See, e.g.*, *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) (explaining that the post-trial claims process by which each consumers' affidavits would "force a liability determination" as to that consumer).

adequate monetary compensation to consumers misled into purchasing the Products based on the false "Mineral-Based" labels; and (2) a change in Defendants' marketing practices that will ensure honesty and transparency to all consumers. Bruce Decl. at ¶ 20. Setting aside the extraordinary value achieved through the injunctive relief component, the dollar value of the direct monetary relief totals approximately █% of Defendants' past and prospective sales. *Id.* Accordingly, these factors heavily weigh in favor of finding the consideration fair, adequate, and reasonable, and granting final approval of the Settlement Agreement.

## C. Settlement Avoids Continuing Litigation Risks and Exorbitant Costs

Under Rule 23(e)(2)(C)(i), courts consider whether "the relief provided for the class is adequate," by evaluating "the costs, risks, and delay of trial and appeal." This factor overwhelmingly overlaps with the first through third *Churchill* factors, which also contemplate the risk of maintaining class-action status. "Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 597 (N.D. Cal. 2020) (citing *Chun-Hoon v. McKee Foods Corp.*, 716 F.Supp.2d 848, 851 (N.D. Cal. 2010). "Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement." *Id.* (citing *Rodriguez*, 563 F.3d at 966). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.* (quoting *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. Jun. 27, 2014) (quotations omitted)). Indeed, the "uncertainty of ultimate success at trial . . . weighs in favor of settlement." *Valdez v. Neil Jones Food Co.*, No. 1:13-cv-00519-SAB, 2016 WL 424911, at *6 (E.D. Cal. Aug. 10, 2016).

Here, proceeding in this litigation in the absence of settlement poses significant risks, such as failing to certify the class, having summary judgment granted against Plaintiffs, or losing at trial. Bruce Decl. at ¶ 19. Courts find such considerations weigh heavily in favor of settlement.[14] Even

---

[14] *See, e.g.* Federal Judicial Center, Manual for Complex Litigation § 21.62, at 316 (4th ed. 2004); *Rodriguez,* 563 F.3d at 965; *Curtis-Bauer v. Morgan Stanley & Co.*, No. C 06-3903 TEH, 2008 WL 4667090 (N.D. Cal. Oct. 22, 2008); *see also In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion that a district court could decertify a class at any time is one that weighs in favor of settlement.") (citations omitted); *Fulford v. Logitech, Inc.*, No. 08-cv-02041 MMC, 2010 WL 807448, at *8 (N.D. Cal. Mar. 5, 2010)

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

assuming that Plaintiffs were to prevail on certification and successfully oppose the inevitable motion for summary judgment, they would face the risk of failing to establish liability at trial, particularly if there is any conflicting expert testimony. Bruce Decl. at ¶ 19. Not only would the parties' experts battle over consumer perceptions of the challenged labeling claims, but they would battle over whether consumers paid a premium for those attributes, including what, if any, dollar amount should be assigned to that premium. *Id.* In this "battle of experts," it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which expert's version would be accepted by the jury. *Id.* The experience of Plaintiffs' counsel has taught them that these considerations can make the ultimate outcome of a trial highly uncertain. *Id.* In addition, the expense to prosecute this case is substantial in light of the need for expert testimony from multiple disciplines, including economics, conjoint analysis, and marketing. *Id*. The costs associated with these experts, including expert investigation, analysis, surveys, reports and rebuttal reports, depositions, oppositions to any *Daubert* challenges, testimony, and any associated costs such as travel expenses, would quickly accumulate. *Id.* The accumulation of such costs could quickly lead to a scenario in which settlement might not be economically feasible for either party. *Id.* Finally, because trial would likely not occur until June 22, 2022 (*see* Case Management Scheduling Order, 8/20/2020, Dkt. 54) or later, any monetary and injunctive relief achieved as a result of trial would not occur for another one year or more. *See* Bruce Decl. at ¶ 12. In the meantime, Defendants could continue to deceptively label the Products with impunity to the financial detriment of Class Members and consumers. *Id.*; *see also Shin*, 2021 WL 1934893 (holding that the risk, expense, complexity, and likely duration of further litigation weighs in favor of approval because "[a]s with most consumer class actions, discovery and motion practice would be substantial, requiring months or years of further litigation"). Thus, these factors weigh heavily in favor of finding the Settlement Agreement fair, adequate, and reasonable and granting final approval.

### D.    The Settlement Class Has Positively Reacted to the Settlement

The final *Churchill* factor regarding the Settlement Class's reaction to the proposed

---

(settlement eliminates these risks by ensuring Class Members a recovery that is "certain and immediate, eliminating the risk that class members would be left without any recovery… at all.").

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

settlement confirms its adequacy, fairness, and reasonableness. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecommunications Cooperative*, 221 F.R.D. at 528-29; *accord Barcia v. Contain-A-Way, Inc.*, No. 07cv938–IEG–JMA, 2009 WL 587844, at *4 (S.D. Cal. Mar. 6, 2009) (granting final approval where 56 out of 2,385 class members (2.35%) opted out of the settlement and no members objected); *Chun-Hoon*, 716 F. Supp. 2d at 852 (finding the class's reaction "strongly supports settlement," when only 16 of 329 class members opted out (nearly 5%) and no objections were filed); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (finding the class's reaction "strongly favors settlement" despite 29 out 281 class members (10.3%) asserted objections).

Pursuant to the Court's preliminary approval order, DSG timely implemented the Court-approved Notice Plan. DSG Decl. at ¶¶ 15, 17. Although the period of 60 days for claims, objections, and opt-outs does not complete until November 17, 2021, the Settlement Class has unanimously reacted positively to the proposed settlement. *Id.*; Ag. at ¶ 2.4 [Claims]; Order, 7/29/2021 [Dkt. 107], at ¶¶ 13 [Exclusions], 16 [Objections]. Over 63,000 claims have been submitted as of October 31, 2021, which is consistent with DSG's estimated 75,000 to 100,000 total claims and claim rates that have received final approval. DSG Decl. at ¶ 25; DSG Supp. Decl. ISO Am. PAM, 7/14/2021 [Dkt. 99-9], at ¶ 9 (estimated claim rate). At the conclusion of the claim period, the total claims will likely exceed previously approved claim rates that commonly occur in similar settlements.[15] Indeed,

---

[15] Courts have granted final approval of consumer class action settlements involving a less than 1% to 4% claim rate. Fed. Trade Comm'n., *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns* (Sept. 2019) at p. 11 (**4% average claim rate for direct notice and combined** *direct and indirect notice plans* in consumer class actions); *see, e.g., Pollard v. Remington Arms Co., LLC*, 320 F.R.D. 198, 214 (W.D. Mo. 2017), *aff'd*, 896 F.3d 900 (8th Cir. 2018) (*0.29% claim rate for direct and indirect notice* in unfair and deceptive trade practice case involving firearms); *Schneider*, 336 F.R.D. 588 at 597 (*0.83% claim rate for indirect notice* in falsely advertised "non-GMO" food case); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (*1.8% claim rate for direct and indirect notice* in privacy/data breach case); *Broomfield v. Craft Brew All., Inc.*, No. 17-cv-01027-BLF, 2020 WL 1972505, at *6 (N.D. Cal. Feb. 5, 2020) (about *2% claim rate for direct and indirect notice* in falsely labeled beer case); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1255 (C.D. Cal. 2016) (*2.75% claim rate for direct and indirect notice* in falsely advertised clothing case); *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 468 (C.D. Cal. 2014) (approximately *3% claim rate for indirect notice* in FACTA case); *Fitzhenry-Russel*, 2019 WL 11557486, at *2 (*3.2% claim rate for indirect notice* in falsely advertised "Real" ginger in beverage

*not a single opt-out or objection has been received as of October 31, 2021*. DSG Decl. at ¶ 23; *see Nat'l Rural Telecommunications Cooperative*, 221 F.R.D. at 529 (holding that "[t]he absence of a single objection to the Proposed Settlement provides further final approval of the Proposed Settlement"). As such, the overwhelming positive response of Settlement Class Members strongly favors granting final approval of the Settlement Agreement as more than adequate, fair, and reasonable.

## VII.  **CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request this Court grant final approval and enter judgment against Defendants accordingly.

DATED: November 3, 2021

**CLARKSON LAW FIRM, P.C.**

*/s/ Katherine A. Bruce*
Katherine A. Bruce, Esq.

**MOON LAW APC**
Christopher D. Moon, Esq.
Kevin O. Moon, Esq.

*Attorneys for Plaintiffs and Settlement Class Representatives Mike Xavier and Steven Prescott, and the Settlement Class*

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265

---

case); *Carlotti v. Asus Comput. Int'l*, No. 18-cv-03369-DMR, 2020 WL 3414653, at *4 (N.D. Cal. Jun. 22, 2020) (*4.02% claim rate for direct and indirect notice* in falsely advertised laptop case).