**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Katherine A. Bruce (SBN 288694)
*kbruce@clarksonlawfirm.com*
Kelsey J. Elling (SBN 337915)
*kelling@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiffs*

**MOON LAW APC**
Christopher D. Moon (SBN 246622)
*chris@moonlawapc.com*
Kevin O. Moon (SBN 246792)
*kevin@moonlawapc.com*
600 West Broadway, Suite 700
San Diego, California 92101
Tel: (619) 915-9432
Fax: (650) 618-0478

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

MIKE XAVIER and STEVEN PRESCOTT, individually and on behalf of all others similarly situated,

                    Plaintiffs,

v.

BAYER HEALTHCARE LLC, a Delaware limited liability company; BEIERSDORF, INC., a Delaware corporation,

                    Defendants.

Case No. 5:20-CV-00102-NC
Case Filed: 1/3/2020
FAC Filed: 5/15/2020
SAC Filed: 7/14/2021
*Assigned for all purposes to the Hon. Nathanael M. Cousins*

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**Hearing Information**
Hearing Date: December 15, 2021
Time: 1:00 p.m. (PST)
Courtroom: 5

**Video/Telephone Access[1]**
Webinar: https://cand-uscourts.zoomgov.com/j/1601632758?pwd=VmthNENlOWFSNGRFdEFJSzlVcVZ1QT09
Webinar ID: 160 163 2758
Password: 277082
Local telephone dial-in: 1-669-254-5252 or 1-646-828-7666

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

---

[1] Please check Magistrate Judge Nathanael Cousins' webpage for up-to-date video and telephone access information at https://www.cand.uscourts.gov/judges/cousins-nathanael-nc/.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that on **December 15, 2021, at 1:00 p.m. (PST)**, or as soon thereafter as the matter may be heard in Courtroom 5, before the Honorable Judge Nathanael M. Cousins, of the above-entitled Court, located at 280 South 1st Street, San Jose, California, Plaintiffs and Settlement Class Representatives Mike Xavier and Steven Prescott ("**Plaintiffs**" and/or "**Settlement Class Representatives**"), on behalf of themselves, the general public, and all others similarly situated, by and through their counsel Ryan J. Clarkson, Katherine A. Bruce, and Kelsey J. Elling of Clarkson Law Firm, P.C., and Christopher D. Moon and Kevin O. Moon of Moon Law APC ("**Class Counsel**"), in this matter against Defendants Bayer Healthcare LLC and Beiersdorf, Inc. ("**Defendants**") shall and hereby do move the Court for an order granting Plaintiffs' motion for attorneys' fees, expenses, and service awards, as follows: (a) an attorneys' fees award in the amount of **$675,000**, which is 30% of the common fund amount; (b) reasonably and necessarily incurred litigation expenses in the amount **$6,242.55** and (c) a reasonable service award of **$5,000 for each Plaintiff**, Mike Xavier and Steven Prescott, for a total amount of $10,000.

This motion is brought pursuant to the Court's preliminary approval order (Dkt. 107) and the amended settlement of the parties (Dkt. 99-11), and is based on the attached memorandum of points and authorities; concurrently filed declarations of Katherine A. Bruce, Christopher D. Moon, Mike Xavier, and Steven Prescott, exhibits, and proposed order; all other records, pleadings, and papers on file in this action; and such other evidence or argument as may be presented to the Court in connection herewith.

DATED: November 3, 2021

**CLARKSON LAW FIRM, P.C.**

*/s/ Katherine A. Bruce*
Katherine A. Bruce, Esq.

**MOON LAW APC**
Christopher D. Moon, Esq.
Kevin O. Moon, Esq.

*Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND.........................................3

      A.     Litigation and Settlement Summary ........................................................3

      B.     Class Counsel Expended Considerable Time and Resources ....................4

      C.     Class Counsel Achieved Substantial Benefits for the Settlement Class ...................6

III.  THE AGREED-UPON FEE REQUEST IS FAIR, REASONABLE, AND JUSTIFIED .......7

      A.     Courts in the Ninth Circuit Regularly Award Attorneys' Feed 30% *or More* of a Common Fund Settlement ........................................................................8

            1.     The Result Achieved Justify the Requested Award....................................10

            2.     The Risks Involved Justify the Requested Award .........................................11

            3.     The Complexity and Novelty of the Issues Support the Requested Award.............................................................................................12

            4.     The Skill Required, Quality of Work, and Arm's-Length Negotiations by Experienced Counsel Support the Requested Award ...................................13

            5.     The Contingent Nature of the Case Supports the Requested Award.............13

            6.     Lack of Objection by Class Members to Requested Fees Supports the Requested Award ......................................................................................14

      B.     The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee Award ................................................................................................14

            1.     Class Counsel's Hourly Rates Are Reasonable .........................................15

             2.     Class Counsel's Hours Expended are Reasonable........................................16

            3.     Class Counsel's Lodestar is Reasonable......................................................17

            4.     Enhancement of the Lodestar is Justified ....................................................17

IV.  REIMBURSEMENT OF THE LITIGATION EXPENSES IS WARRANTED..................18

V.   THE SERVICE AWARDS FOR THE NAMED PLAINTIFFS ARE WARRANTED........18

VI.  CONCLUSION.................................................................................................20

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

# TABLE OF AUTHORITIES

## Cases

*Aichele v. City of Los Angeles*,
No. CV 12-10863-DMG (FMMx),
2015 WL 5286028, 2015 U.S. Dist. LEXIS 120226 (C.D. Cal. Sep. 9, 2015) ........................10

*Armes v. Hot Pizzas, LLC*,
No. 2:14-CV-00525-KJM-CKD,
2017 U.S. Dist. LEXIS 89920 (D. Ariz. Jun. 9, 2017) ..............................................................10

*Barbosa v. Cargill Meat Solutions Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) .................................................................................................9

*Beaver v. Tarsadia Hotels*,
No. 11-cv-01842-GPC, KSC,
2017 WL 4310707, 2017 U.S. Dist. LEXIS 160214 (S.D. Cal. Sept. 28, 2017)........................10

*Boyd Emmons v. Quest Diagnostics Clinical Labs., Inc.*,
No. 1:13-cv-00474-DAD-BAM,
2017 WL 749018, 2017 U.S. Dist. LEXIS 27249 (E.D. Cal. Feb. 27, 2017).............................10

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008) .....................................................................................................15

*Comcast v. Behrend*,
569 U.S. 27, 133 S. Ct. 1426, 185 L. Ed. 2d 515 (2013)..............................................................6

*Deaver v. Compass Bank*,
No. 13-cv-00222-JSC,
2015 WL 8526982, 2015 U.S. Dist. LEXIS 166484 (N.D. Cal. Dec. 11, 2015).......................10

*Faigman v. AT&T Mobility LLC*,
No. C06-04622 MHP,
2011 WL 672648, 2011 U.S. Dist. LEXIS 15825 (N.D. Cal. Feb. 16, 2011) ...........................19

*Fischel v. Equitable Life Assurance Soc'y of the U.S.*,
307 F.3d 997 (9th Cir. 2002) .....................................................................................................14

*Figueroa v. Capital One, N.A.*,
No. 18cv692 JM(BGS),
2021 WL 211551, 2021 U.S. Dist. LEXIS 11962 (S.D. Cal. Jan. 21, 2021) ..............................9

*Fitzhenry-Russell v. The Coca-Cola Co.*,
No. 5:17-cv-00603-EJD,
2019 WL 11557486, 2019 U.S. Dist. LEXIS 232216 (N.D. Cal. Oct. 3, 2019) ...................8, 15

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. CV 08 1365 CW (EMC),
2010 WL 1687829, 2010 U.S. Dist. LEXIS 49477 (N.D. Cal. Apr. 22, 2010)...................14, 17

*Gergetz v. Telenav, Inc.*,
No. 16-cv-04261-BLF,
2018 WL 4691169, 2018 U.S. Dist. LEXIS 167206 (N.D. Cal. Sept. 27, 2018) ........................9

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD
TABLE OF AUTHORITIES

*Hanlon v. Chrysler*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................................8

*Hazlin v. Botanical Labs., Inc.*,
  No. 13cv0618-KSC,
  2015 WL 11237634, 2015 U.S. Dist. LEXIS 189687 (S.D. Cal. May 20, 2015)........................9

*Hefler v. Pekoc*,
  802 F. App'x 285 (9th Cir. 2020) ....................................................................................16

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST,
  2018 WL 6619983, 2018 U.S. Dist. LEXIS 213045 (N.D. Cal. Dec. 18, 2018)........................16

*Hendricks v. Ference*,
  754 F. App'x 510 (9th Cir. 2018) ....................................................................................8

*Hendricks v. Starkist Co.*,
  No. 13-cv-00729-HSG,
  2016 WL 5462423, 2016 U.S. Dist. LEXIS 134872 (N.D. Cal. Sept. 29, 2016) ........................8

*Hensley v. Eckerhart*,
  461 U.S. 424, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).........................................................6, 15

*Hopkins v. Stryker Sales Corp.*,
  No. 11-CV-02786-LHK,
  2013 WL 496358, 2013 U.S. Dist. LEXIS 16939 (N.D. Cal. Feb. 6, 2013) ............................13

*Howerton v. Cargill, Inc.*,
  No. 13-00336 LEK-BMK, 13-00685 LEK-BMK, 14-00218-LEK-BMK,
  2014 WL 6976041, 2014 U.S. Dist. LEXIS 165967 (D. Haw. Dec. 8, 2014)............................9

*In re Animation Workers Antitrust Litig.*,
  No. 14-CV-4062-LHK,
  2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) ....................................................................16

*In re Bluetooth Headset Prods Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ....................................................................................8

*In re Equity Funding Corp. Securities Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) ....................................................................................12

*In re Heritage Bond Litig.*,
  No. CV 02-382 DT (RCx),
  2005 WL 1594403, 2005 U.S. Dist. LEXIS 13555 (C.D. Cal. Jun. 10, 2005)........................10

*In re Media Vision Tech. Securities Litig.*,
  913 F. Supp. 1362 (N.D. Cal. 1996) ....................................................................................18

*In re Mercury Interactive Corp.*,
  618 F.3d 988 (2019)....................................................................................7

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................................................14

*In re Pac. Enterprises Securities Litig.*,

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

47 F.3d 373 (9th Cir. 1995) .................................................................................................9

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
   295 F.R.D. 438 (C.D. Cal. 2014) .......................................................................................19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   No. 2672 CRB (JSC),
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ...................................................................16

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ...............................................................................13, 14, 17

*Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMx),
   2019 WL 5173771, 2019 U.S. Dist. LEXIS 180474 (C.D. Cal. Oct. 10, 2019).................10

*Kim v. Euromotors West/The Auto Gallery*,
   149 Cal.App.4th 170 (2007) .................................................................................................7

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC,
   2009 WL 24367, 2009 U.S. Dist. LEXIS 11149 (N.D. Cal. Feb. 2, 2009) ...................10, 12, 13

*Loomis v. Slenderstone Distribution, Inc.*,
   No. 19-cv-854-MMA (KSC),
   2021 WL 873340, 2021 U.S. Dist. LEXIS 44047 (S.D. Cal. Mar. 9, 2021) .........................9

*Marshall v. Northrop Grumman Corp.*,
   No. 16-CV-6794 AB (JCx),
   2020 WL 5668935, 2020 U.S. Dist. LEXIS 177056 (C.D. Cal. Sept. 18, 2020) ..............9, 10

*Maxin v. RHG & Co.*,
   No. 16CV2625 JLS (BLM),
   2017 WL 748143, 2017 U.S. Dist. LEXIS 27374 (S.D. Cal. Feb. 27, 2017).........................9

*Mayhew v. KAS Direct, LLC*,
   No. 16 CV 6981 (VB),
   2018 WL 3122059, 2018 U.S. Dist. LEXIS 106680 (S.D.N.Y. Jun. 26, 2018) ....................12

*Miller v. Ghirardelli Chocolate Co.*,
   No. 12-cv-04936-LB,
   2015 WL 758094, 2015 U.S. Dist. LEXIS 20725 (N.D. Cal. Feb. 20, 2015) ....................8, 11

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) ...........................................................................................9

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   No. CV 07-3072 AHM (FMMx),
   2009 WL 9100391, 2009 U.S. Dist. LEXIS 132269 (C.D. Cal. Jun. 24, 2009).....................9

*Nitsch v. DreamWorks Animation SKG Inc.*,
   No. 14-CV-04062-LHK,
   2017 WL 2423161, 2017 U.S. Dist. LEXIS 86124 (N.D. Cal. Jun. 5, 2017)......................16

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ..............................................................................................14

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

*Pointer v. Bank of Am., N.A.*,
No. 2:14-CV-00525-KJM-CKD,
2016 WL 7404759, 2016 U.S. Dist. LEXIS 176930 (E.D. Cal. Dec. 20, 2016) .......................10

*Pokorny v. Quixtar, Inc.*,
No. C 07-0201 SC,
2013 WL 3790896, 2013 U.S. Dist. LEXIS 100791 (N.D. Cal. Jul. 18, 2013)..........................11

*Romero v. Producers Dairy Foods, Inc.*,
No. 1:05cv0484 DLB,
2007 WL 3492841, 2007 U.S. Dist. LEXIS 86270 (E.D. Cal. Nov. 14, 2007)............................9

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................................8, 16

*Shin v. Plantronics, Inc.*,
No. 18-cv-05626-NC,
2020 WL 1934893, 2020 U.S. Dist. LEXIS 19943 (N.D. Cal. Jan. 31, 2020)...........................16

*Six Mexican Workers v. Arizona Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ...................................................................................10, 13

*Staton v. Boeing Co.*,
323 F.R.D. 280 (9th Cir. 2003)....................................................................................7, 18

*Steiner v. American Broad. Co., Inc.*,
247 Fed. Appx. 780 (9th Cir. 2007)..................................................................................17

*Tait v. BSH Home Appliances Corp.*,
No. SACV 10-0711-DOC (ANx),
2015 WL 4537463, 2015 U.S. Dist. LEXIS 98546 (C.D. Cal. Jul. 27, 2015)............................18

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995).............................................................................10, 18, 19

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ................................................................................. passim

*Weeks v. Google LLC*,
No. 5:18-cv-00801-NC,
2019 WL 8135563, 2019 U.S. Dist. LEXIS 215943 (N.D. Cal. Dec. 13. 2019)......................8, 9

**Federal Statutes**

Fed. R. Civ. P. 23 .................................................................................................6, 7

**State Statutes**

Cal. Civ. Code §§1750, *et seq.*...................................................................................3, 7

**<u>Secondary Sources</u>**

Manual for Complex Litigation, § 14.121(4th ed. 2004)..................................................10

Manual for Complex Litig. § 27.71 (4th ed. 2004)........................................................6

Rubenstein, Newberg on Class Actions § 14.6 (4th ed. 2007) .........................................9

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD
TABLE OF AUTHORITIES

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs and Settlement Class Representatives Mike Xavier and Steven Prescott ("**Class Representatives**" and/or "**Plaintiffs**"), by and through their counsel of record appointed as Settlement Class Counsel, Clarkson Law Firm, P.C. ("**Clarkson**") and Moon Law APC ("**Moon**") (collectively and individually referred to as "**Class Counsel**"), have achieved an excellent result for the Settlement Class, consisting of a nation of consumers who purchased Coppertone sunscreen Products during the Class Period (prior to September 17, 2021), which Plaintiffs allege were deceptively labeled as "Mineral-Based." *See* Exhibit 1 to the Declaration of Katherine A. Bruce in Support of Plaintiffs' Amended Motion for Preliminary Approval, 7/14/2021 [Dkt. 99-11] (hereinafter, "**Settlement Agreement**" and/or "**Ag.**"), at ¶¶ 2.7 (Class Period), 2.39 (Settlement Class).[2]

Following the filing of this litigation, Defendants Bayer Healthcare LLC and Beiersdorf, Inc. ("**Defendants**") have discontinued using the term "Mineral-Based" on the Products' labels. *See* Ag. at ¶ 1.4. Defendants have also agreed that if the term "Mineral-Based" is used on Coppertone sunscreen labels between the preliminary approval of this settlement on July 29, 2021 (Dkt. 107) and December 31, 2023, Defendants will include a statement on the packaging that states it contains other sunscreen active ingredients if the Products contain any non-mineral sunscreen active ingredients. *Id.* at ¶ 4.1.

Defendants have also agreed to pay $2.25 million into a common fund, with no right to reversion, to reimburse the Settlement Class for past economic losses and which will be exhausted to pay: (1) valid class member claims; (2) notice and claims administration costs up to $530,000, plus postage; (3) service awards up to $5,000 for each Plaintiff (totaling $10,000), subject to Court approval; (4) attorneys' fees and costs up to 30% of the common fund ($675,000), plus costs and expenses, subject to Court approval; and (5) a *cy pres* award for any remaining funds to the charitable organization, Look Good Feel Better. *See* Ag. at ¶¶ 2.43, 3.4, 5.7, 6.1, 6.2. No money will

---

[2] All capitalized terms herein shall have the same meaning as set forth in the Settlement Agreement unless expressly stated otherwise.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

1   revert to Defendants. *Id*. at ¶ 4.2.7. Each class member who makes a claim may receive $2.50 per

2   unit of Product for which they have proof of purchase, without limitation. *See id.* at ¶ 3.4. Class

3   members who cannot produce proof of purchase may receive $2.50 per unit of Product, for up to a

4   maximum of four (4) units per household, which totals $10.00. *Id.* These amounts may be *pro rata*

5   increased up to a maximum of nine (9) times each claim if the Settlement Fund is under-subscribed,

6   or decreased if over-subscribed. *Id.* at ¶ 3.13.

7       Class Counsel achieved this result after investing considerable time and resources into

8   bringing this Litigation against highly experienced counsel, and deep-pocketed Defendants, who

9   hotly contested liability and damages. Prosecuting these consumer claims required the exercise of a

10  high degree of specialized skill, experience, and diligence, in the face significant litigation risks.

11  Class Counsel have dedicated themselves to this litigation since early 2020, incurring to date a

12  lodestar of $755,857.50 for 1,112.1 hours of billable professional time at a weighted average of

13  $598.50/hour for Clarkson and $850.00/hour for Moon Law, which is consistent with comparable

14  market billing rates, and without receiving any compensation for their time and effort in the interim.

15  Class Counsel have also incurred $6,242.55 in out-of-pocket litigation expenses, all of which,

16  without a victory, would go uncompensated. The fee sought represents 30% of the $2.25 million

17  common fund with an "inverse" or "negative multiplier" of 1.119 (i.e., the requested fee of

18  $675,000 multiplied by 1.119 equals the actual lodestar of $755,857.50, which is well within (if not

19  lower than) the range of fees previously approved for similar settlements. When compared to the

20  total monetary value of the settlement, including the avoidance of future economic losses, the

21  requested fee is significantly less than 30% of the common fund. Moreover, following notice of the

22  preliminarily approved settlement contemplating an award to Class Counsel of up to 30% of the

23  common fund, plus costs, ***no Settlement Class Members have objected to the award***.[3] In sum, the

24  fees and costs requested are reasonable in light of the outstanding settlement result and the risks

25  Class Counsel assumed by taking on a difficult case with no assurance of compensation.

26      Similarly, Settlement Class Representatives took on the risks of the litigation and expended

27

28  _____
    [3] While the deadline to file an objection is November 17, 2021, to date, more than 70,000,000 views
    of the Online Notices and nearly 64,000 claims have been filed, but not a single Settlement Class
    Member has objected. DSG Decl. at ¶ 21, 25.

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

1  significant time to prosecute claims on behalf of the Settlement Class. Courts routinely award

2  representatives for their service consistent with the $5,000 per Plaintiff award requested.

3  Accordingly, Class Counsel seeks an award of $6,242.55 for litigation costs incurred, $675,000 in

4  attorneys' fees (representing 30% of the common fund), and service awards of $5,000 per Plaintiff

5  (totaling $10,000).

6  ## II.   FACTUAL AND PROCEDURAL BACKGROUND

7  ### A.   Litigation and Settlement Summary

8  After considerable pre-suit investigation, including consultation with well-respected experts

9  in consumer behavior, statistical analyses, and damages, on January 3, 2020, Plaintiffs filed the class

10  action complaint, alleging violations of state consumer protections laws, breach of express warranty,

11  and unjust enrichment. Dkt. 1; Bruce Decl. ¶ 5. On May 1, 2020, Defendants filed a motion to

12  transfer venue under 28 U.S.C. § 1404(a); a motion to dismiss for lack of personal jurisdiction under

13  Rule 12(b)(2); a motion to dismiss under Rule 12(b)(6); and a motion to strike under Rule 12(f).

14  Dkts. 25, 26.

15  In response, on May 15, 2020, Plaintiffs filed a First Amended Complaint ("**FAC**") to add

16  additional remedies available under California Consumers Legal Remedies Act, codified at Cal.

17  Civ. Code 1750, *et seq.* ("CLRA"), in lieu of an opposition pursuant to Rule 15(a). Dkt. 28. On that

18  same date, Plaintiffs also filed an opposition to Defendants' motions to transfer venue and dismiss

19  for lack of personal jurisdiction (Dkt. 29), to which Defendants replied on May 22, 2020 (Dkt. 34).

20  On May 29, 2020, Defendants moved to dismiss or strike Plaintiffs' FAC under Rules 12(b)(6) and

21  12(f). Dkt. 36. Plaintiffs opposed Defendants' motion on June 12, 2020. Dkt. 43. Defendants filed

22  a reply on June 19, 2020. Dkt. 44. On June 29, 2020, the Court denied Defendants' motions to

23  dismiss for lack of personal jurisdiction and to transfer venue. Dkt. 46. After a hearing on July 22,

24  2020, the Court denied Defendants' motion to dismiss or strike on July 31, 2020. Dkt. 50. On August

25  14, 2020, Defendants answered Plaintiffs' FAC. Dkts. 51-52. On August 20, 2020, the Court entered

26  a Case Management Scheduling Order and referred this case to a settlement conference with Judge

27  Virginia K. DeMarchi. Dkt. 54.

28  Immediately after Defendants answered the FAC, on August 19, 2020, Plaintiffs served

Defendants with substantial requests for documents and interrogatories. *See* Bruce Decl. at ¶¶ 5, 7. On August 21, 2020, Defendants similarly served Plaintiffs with requests for documents and interrogatories. *Id.* The Parties exchanged initial disclosures on September 4, 2020. *Id.* Then, on October 2, 2020, Defendants each served responses to Plaintiffs' discovery requests. *Id.* On October 2, 2020, Defendant Beiersdorf produced documents, which included comprehensive market research, trade strategy, and advertising designs, as well as formulation information, all of which informed Plaintiffs' case strategy and settlement position. *Id.* In addition, Defendants provided Plaintiffs with comprehensive Product sales data. *Id.* On October 5, 2020, Plaintiffs likewise served responses to Defendants' discovery requests. *Id.* Plaintiffs' counsel proceeded to evaluate Defendants' discovery, defenses, and the merits of Plaintiffs' claims, consulted with damages experts, conducted extensive research into comparison product labels, market pricing, and retail sales, and conducted a comprehensive analysis of Defendants' sales data to determine maximum case value assuming full liability, as well as reasonable settlement value in light of the risks of litigation and likely price premium attributable to the false mineral-based label on the sunscreen products at issue. *Id.*

Thereafter, the parties participated in settlement conferences with Judge DeMarchi on three separate days over the course of three months before ultimately reaching a settlement in principle.[4] After the Court denied preliminary approval on April 29, 2021, the parties engaged in further negotiations over the course of two months and participated in two additional settlement conferences with Judge DeMarchi before finally reaching agreement on the terms reflected in the Settlement Agreement. Bruce Decl. at ¶¶ 10, 11.

**B.   Class Counsel Expended Considerable Time and Resources**

Since the initiation of this case, Class Counsel have spent over 1,112.1 hours and $6,242.55 in out-of-pocket expenses not only for the above listed activities, but also on an extensive investigation that included, but was not limited to:

(1)      Researching and analyzing relevant scientific studies and published research

---

[4] *See* Bruce Decl. at ¶ 9; Minute Entry, 9/28/2020, Dkt. 65 (9/25/2020 Settlement Conference); Minute Entry, 12/14/2020, Dkt. 72 (12/11/2020 Settlement Conference); Minute Entry, 12/15/2020, Dkt. 73 (12/14/2020 Settlement Conference).

ND Cal Case No. 5:20-CV-00102-NC                    -4-

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

regarding the benefits and costs of using mineral versus non-mineral or chemical active ingredients in sunscreens, including the attributes of both from an aesthetic standpoint and the toxicity and adverse impact chemical active ingredients have on humans, animals, and reefs, including corals and inhabiting marine life, to understand the materiality of "Mineral-Based" and similar advertising claims and their importance to consumers;

(2) Researching and analyzing the regulations, including the Code of Federal Regulations and various state regulations, regarding labeling and advertising personal care consumer goods, cosmetics, over the counter drugs, and sunscreens, including any reports or studies considered by the legislature or executive agency in promulgating those regulations;

(3) Researching and analyzing publications from or made available by the United States Federal Trade Commission ("**FTC**") and Federal Drug Administration ("**FDA**") regarding labeling and advertising recommendations, requirements, and prohibitions for personal care consumer goods, cosmetics, over the counter drugs, and sunscreens to evaluate mineral and natural claims and materials that informed said guidance;

(4) Researching and analyzing information from or made available by the FDA regarding the Generally Recognized as Safe ("**GRAS**") rating or lack thereof for sunscreen active ingredients and its development over time;

(5) Researching and analyzing any FTC enforcement actions or investigations into "Mineral-Based" or similar claims for personal care consumer goods, cosmetics, over the counter drugs, and sunscreens;

(6) Researching and analyzing relevant or related investigations and decisions of the Better Business Bureau's National Advertising Division ("**NAD**") and National Advertising Review Board ("**NARB**") to evaluate any industry standards for advertising and substantiating claims regarding personal care consumer goods, cosmetics, over the counter drugs, and sunscreens;

(7) Researching and analyzing prior litigation related to the Products and Defendants' other personal care, consumer goods, cosmetics, over the counter drugs, and sunscreens;

(8) Researching and analyzing market research, including consultation with experts, regarding consumers' perception, materiality, and monetary value of the "Mineral-Based" and similar claims to evaluate the reasonable consumers understanding and importance placed on such claims;

(9) Researching and analyzing Defendants' and major third-party retailer websites and social media profiles, periodically and including archived web pages, to evaluate all publicly available labels for Products, including prominent front label claims, related "Mineral-Based" claims, and back label ingredient disclosures, as well as Defendant's marketing strategy and the net impression of online consumers;

(10) Conducting extensive legal research to analyze the prospective merits and weaknesses of the case through class certification and trial, including each element of class certification, common defenses thereto regarding issues of commonality, predominance, and typicality, and the various states laws regarding the statute of limitations, elements of each cause of action, common affirmative defenses, and available remedies;

(11) Researching the industry practices regarding the research and development, sourcing and manufacture of raw materials, production of finished household consumer goods, labeling development, compliance checks, and production, marketing through third parties, data analytics for digital marketing campaigns, and related financial considerations for budgeting, auditing, and protecting profit margins;

(12) Researching and analyzing Defendants' secretary of state filings and Defendant Bayer Healthcare LLC's financial reporting to investors and the Securities Exchange Commission to evaluate Defendants' market sects, financial strategy, operations, and corporate structure

(13) Analyzing Defendants' Products' sales and related documents, and researching retail sales pricing for the Products, in consultation with experts in consumer behavior,

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

statistical analysis, and market research designed to isolate the premium consumers pay for falsely advertised common household goods, to determine the maximum value recoverable for economic losses to the Settlement Class;

(14) Researching and analyzing potential class-wide damages based on a review of price premiums attributed to similar false and deceptive advertising claims or similar products regarding household consumer goods;

(15) Researching and analyzing comparable products to identify sunscreens with and without a "Mineral-Based" or similar claims, with and without all mineral active ingredients, and understand the salient product attributes and its impact on pricing;

(16) Obtaining and evaluating Defendants' document production and responses to interrogatories and requests for documents, including key information and documents regarding Defendants' market research, market strategy, labels, sales, and formulation of the Products;

(17) Reviewing consumer protection advocacy group publications, analyses, and research, including for example the Environmental Working Group, concerning sunscreens and their ingredients;

(18) Interviewing and vetting potential class representatives and plaintiffs to not only analyze their adequacy and any potential conflicts of interests to evaluate their adequacy and fairness as a class representative, commitment to the putative class and ability to satisfy the duties of a class representative, but also to investigate consumer experiences with the Products, reasons for purchasing them, and understanding of the challenged marketing claims in this litigation; and

(19) Investigating, drafting, and engaging in pre-litigation activities to comply with pre-lawsuit notice requirements, including those imposed under the California Consumers Legal Remedies Act, codified at Civil Code, sections 1750, *et seq.* and various state laws surrounding breaches of warranty, as well take steps to ensure the preservation of evidence, including fleeting digital advertising campaigns, the content of dynamic websites, data analytics for such digital marketing, and various other documents and information relevant to this litigation.

Bruce Decl. at ¶ 3.

The benefits of the **$2.25 million dollar settlement** and elimination of future consumer fraud through changed practices are substantial, particularly given the risks of continued litigation for the class. Bruce Decl. at ¶¶ 15, 16, 19; *see also* Plaintiffs' Mot. for Final Approval, 11/3/2021, at p. 4. Defendants have heavily contested liability and the existence and extent of any economic losses, arguing that consumers do not interpret the "Mineral-Based" labels to mean that the Products contain only mineral active ingredients; the "Mineral-Based" claim was not material to consumers in deciding to buy the Products; consumers did not pay a premium for the "Mineral-Based" product attribute; and any such premium, assuming it exists, is *de minimus*. Bruce Decl. at ¶ 5. Defendants have also vigorously argued against class certification, including issues of typicality, jurisdiction, and Plaintiffs' standing to represent consumers across the nation with respect to their purchase of various Products; and issues concerning commonality and predominance related to reliable class-wide proof of a damages model consistent with Plaintiffs' liability theory under *Comcast v.*

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

1    *Behrend*, 569 U.S. 27 (2013).

2        Thus, Class Counsel invested significant resources in the face of substantial risks, justifying

3    the requested award of fees and costs incurred in prosecuting this action.

4    **C.    Class Counsel Achieved Substantial Benefits for the Settlement Class.**

5        The results obtained for the class are generally considered to be the most important factor in

6    determining the appropriate fee award in a common fund case. *See Hensley v. Eckerhart,* 461 U.S.

7    424, 435 (1983); *see also* Federal Judicial Center, *Manual for Complex Litigation*, § 27.71, p. 336

8    (4th Ed. 2004) (the "fundamental focus is on the result actually achieved for class members") (citing

9    Fed. R. Civ. P. 23(h) committee note). Standing alone, this factor supports Class Counsel's fee

10    request. As a result of Class Counsel's robust prosecution of this case and negotiation of the

11    settlement, Class Counsel secured important and substantial benefits for the settlement class.

12        First, settlement provides a superior recovery for the Settlement Class. Bruce Decl. ¶¶ 15,

13    16. Defendant will pay a total of $2.25 million into a non-reversionary common fund. *Id*. Subject to

14    court approval, the Settlement Fund will be used to pay valid Settlement Class Member claims,

15    discussed *infra*, notice and administration costs in an amount not to exceed $530,000 plus postage,

16    service awards to Plaintiffs ($10,000 total), reimbursement of litigation expenses $6,242.55 and an

17    award of reasonable attorneys' fees ($675,000). *Id*. ¶ 15; Ag. at ¶¶ 2.40, 3.4.

18        Second, each class member who makes a valid claim may receive $2.50 per unit of Product

19    for which they have proof of purchase, without limitation. *See* Ag. at ¶ 3.4. Settlement Class

20    Members who cannot produce proof of purchase may receive $2.50 per unit of Product, for up to a

21    maximum of four (4) units per household, which totals $10.00. *Id.* These amounts may be *pro rata*

22    increased up to a maximum of nine (9) times each claim if the Settlement Fund is under-subscribed,

23    or decreased if over-subscribed. *Id.* ¶ 3.13. Any remaining funds will be disbursed *cy pres* to the

24    charitable organization, Look Good Feel Better. *Id.* ¶¶ 3.10, 3.13. No money will revert to

25    Defendant. *Id*. ¶ 3.13. Significantly, there have been nearly 64,000 claim submissions to date. DSG

26    Decl. ¶ 25.

27        Third, this settlement also provides the class with significant and valuable injunctive relief.

28    Defendants have discontinued using the term "Mineral-Based" on the Products' labels. *See* Ag. at ¶

ND Cal Case No. 5:20-CV-00102-NC                    -7-

1.4. Defendants have also agreed that if the term "Mineral-Based" is used on Coppertone sunscreen product labels between the preliminary approval of this settlement and December 31, 2023, and the products contain both mineral sunscreen active ingredients and other sunscreen active ingredients, then Defendants will include a statement on the product packaging that it contains other sunscreen active ingredients. *Id.* at ¶ 4.1. Defendants' agreement to honest and transparent labeling will avoid or mitigate any future economic losses suffered by consumers who may be deceived into believing they are purchasing sunscreens with only mineral active ingredients. Bruce Decl. ¶ 18

### III.   THE AGREED-UPON FEE REQUEST IS FAIR, REASONABLE, AND JUSTIFIED

Federal Rule of Civil Procedure 23 provides, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Pursuant to the terms of the settlement, Class Counsel may move the Court for an award of attorneys' fees not to exceed 30% of the common fund, plus litigation expenses. Ag. at ¶ 6.1. Here, Plaintiffs seek an award of $675,000, or 30% of the $2.25 million common fund.

Plaintiffs are entitled to attorneys' fees pursuant to the Consumers Legal Remedies Act ("CLRA"), California Civil Code, section 1750, *et seq*., which requires mandatory payment of attorneys' fees and costs to successful plaintiffs. The attorneys' fees provision of the CLRA, section 1780(e), states: "The court *shall* award court costs and attorney fees to a prevailing plaintiff in litigation filed pursuant to this section." Thus, an award of attorneys' fees is mandatory. *Kim v. Euromotors West/The Auto Gallery*, 149 Cal.App.4th 170, 177 (2007).

In common fund cases such as this one, courts within the Ninth Circuit have discretion to use one of two methods to determine whether the fee request is reasonable: (1) percentage-of-the-fund; or, (2) lodestar plus a risk multiplier. *Staton v. Boeing*, 327 F.3d 938, 967-68 (9th Cir. 2003); *see also In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

The request for attorneys' fees is reasonable based upon the extensive arm's-length negotiations—including *five* settlement conferences with Judge DeMarchi—which serve as independent confirmation of the fairness of the settlement, including attorneys' fees. *See* Bruce Decl. at ¶¶ 9, 10; *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998). The requested fees are also fully supported under the percentage-of-the-fund and lodestar approaches, which Class Counsel offer as an additional means of cross-checking the requested fees.

## A. Courts in the Ninth Circuit Regularly Award Attorneys' Fees 30% *or More* of a Common Fund Settlement

In similar pre-certification consumer-class-action settlements, such as here, courts in the Ninth Circuit routinely award attorneys' fees of 30% of the common fund. *See, e.g., Weeks v. Google LLC*, No. 5:18-cv-00801-NC, 2019 WL 8135563, at *4 (N.D. Cal. Dec. 13. 2019) (Cousins, J.) (awarding 30% fee as "consistent with Ninth Circuit's applicable law regarding percentage of the fund fee awards"); *Miller v. Ghirardelli Chocolate Co.*, No. 12-cv-04936-LB, 2015 WL 758094, at *1, 5 (N.D. Cal. Feb. 20, 2015) (awarding 30% of common fund in pre-certification mislabeled "Natural" food consumer class action, involving motions to dismiss and strike, motion to intervene, and discovery motions as reflected in docket report (Exhibit 4, filed 7/14/2021 [Dkt. 99-14])); *Fitzhenry-Russell v. Coca-Cola Co.*, No. 5:17-cv-00603-EJD, 2019 WL 11557486, at *1, 8-9 (N.D. Cal. Oct. 3, 2019) (awarding 30% of the monetary value of the settlement in pre-certification mislabeled "Natural" food consumer class action, involving motion to dismiss as reflected in docket report (Exhibit 5, filed 7/14/2021 [Dkt. 99-15])), and noting that "[m]any cases have found that between 30% and 50% of the common fund is an appropriate range when the settlement fund is less than ten million."); *Hendricks v. Starkist Co.*, No. 13-cv-00729-HSG, 2016 WL 5462423, at *5, 11-12 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018) (awarding 30% of common fund in pre-certification consumer class action concerning mislabeled and underfilled tuna cans); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 591-92, 601-02 (N.D. Cal. 2020) (awarding 30% of common fund in consumer class action concerning falsely advertised "non-GMO" food); *Gergetz v. Telenav, Inc.,* No. 16-cv-04261-BLF, 2018 WL 4691169, at *1, 7 (N.D. Cal. Sept. 27, 2018) (awarding 30% of common fund in pre-

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

certification consumer class action asserting violations of Telephone Consumer Protection Act (unsolicited text messages), involving motion to dismiss as reflected in docket report (Exhibit 6, filed 7/14/2021 [Dkt. 99-16]))); *Maxin v. RHG & Co.*, No. 26CV2625 JLS (BLM), 2017 WL 748143, at *1, 7 (S.D. Cal. Feb. 27, 2017) (preliminarily approving a 30% fee in pre-certification class action asserting falsely advertised "Made in USA" products, when preliminary approval filed within two weeks of filing complaint as reflected in docket report (Exhibit 7, filed 7/14/2021 [Dkt. 99-17]))); *Hazlin v. Botanical Labs., Inc.*, No. 13cv0618-KSC,2015 WL 11237634, at *1, 6-7 (S.D. Cal. May 20, 2015) (awarding 30% fee in pre-certification class action asserting false advertising of supplements' health benefits, involving a motion to dismiss as reflected in docket report (Exhibit 8, filed 7/14/2021 [Dkt. 99-18]))); *Howerton v. Cargill, Inc.*, No. 13-00336 LEK-BMK, 13-00685 LEK-BMK, 14-00218-LEK-BMK, 2014 WL 6976041, at *1, 6 (D. Haw. Dec. 8, 2014) (awarding 30% fee in pre-certification mislabeled "Natural" sweetener class action, involving a motion to stay and transfer as reflected in docket report (Exhibit 9, filed 7/14/2021 [Dkt. 99-19]))); *Loomis v. Slenderstone Distribution*, No. 19-cv-854-MMA (KSC), 2021 WL 873340, at *1, 10-11 (S.D. Cal. Mar. 9, 2021) (awarding 33.75% fee in pre-certification class action asserting fitness belts falsely advertised as a replacement for traditional exercise, involving motion to dismiss as reflected in docket report (Exhibit 10, filed 7/14/2021 [Dkt. 99-20]))).[5]

---

[5] In fact, courts regularly award attorneys' fees of **more than** 30% of the fund. *See, e.g.*, *In re Pac. Enterprises Securities Litig.*, 47 F.3d 373, 376 (9th Cir. 1995) (one-third fee of $12 million fund); *Morris v. Lifescan, Inc.*, 54 F.App'x 663, 664 (9th Cir. 2003) (one-third fee of $14.8 fund); *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCx), 2020 WL 5668935, *8-9 (C.D. Cal. Sept. 18, 2020) ("An attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions. 'Nationally, the average percentage of the fund award in class actions is approximately one-third.'") (quoting *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, No. CV 07-3072 AHM (FMMx), 2009 WL 9100391, at *4 (C.D. Cal. Jun. 24, 2009)); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05cv0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) ("fee awards in class actions average around one-third of the recovery") (quoting Rubenstein, 4 Newberg On Class Actions § 14.6 (4th ed. 2007)); *Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (cataloguing percentage awards between 30% and 33.3%); *Figueroa v. Capital One, N.A.*, No. 18cv692 JM(BGS), 2021 WL 211551, at *9 (S.D. Cal. Jan. 21, 2021) ("Although the court recognized the Ninth Circuit's 25 percent benchmark in common fund cases, it did not adopt this touchstone. Generally, 'California courts routinely award attorneys' fees of one-third of the common fund.'") (quoting *Beaver v. Tarsadia Hotels*, No. 11-cv-01842-GPC, KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017); *In re Heritage Bond Litig.*, No. CV 02-382 DT (RCx), 2005 WL 1594403, at *18, n.12 (C.D. Cal. Jun. 10, 2005) ("Indeed federal courts 'have consistently approved of attorney fee awards over the 25% benchmark[,]' specifically at a rate of "30% or higher[.]") (quoting *Knight v. Red Door Salons, Inc.*, No. 08-01520

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Importantly, in this case, Settlement Class Members were provided notice that Class Counsel would seek an award of attorneys' fees of up to 30% of the common fund and ***not a single class member has objected or opted out to date***. DSG Decl. ¶ 23. In addition, Class Counsel's request for attorneys' fees of 30% of the common fund is fully supported by factors considered by the Ninth Circuit including: (a) the results achieved; (b) the risk of litigation; (c) the skill required and the quality of work; and (d) the contingent nature of the fee. *See Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1048-49 (9th Cir. 2002).

### 1.    The Results Achieved Justify the Requested Award

The most important factor in granting a fee award is the degree of success counsel achieved for the class. *See Vizcaino,* 290 F.3d at 1048; *see also Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). To measure that success, "the factor given the greatest emphasis is the size of the fund created, because a common fund is itself the measure of success . . . [and] represents the benchmark from which a reasonable fee will be awarded." *Manual for Complex Litigation,* § 14.121 (quotations omitted).

Here, Class Counsel achieved the largest common-fund settlement, known to Plaintiffs' Counsel, in a case concerning sunscreen products mislabeled as "Mineral-Based": a non-reversionary $2.25 million Settlement Fund. Bruce Decl. ¶¶ 15, 17; Ag. at ¶ 2.40. The settlement amount is a significant percentage of Defendants' total sales, such that it will deter future deceptive labeling because this litigation likely has divorced Defendants from any profits for the sale of the

---

SC, 2009 WL 24367, at *17 (N.D. Cal. Feb. 2, 2009) ("nearly all common fund awards range around 30%")); *Boyd Emmons v. Quest Diagnostics Clinical Labs., Inc.*, No. 1:13-cv-00474-DAD-BAM, 2017 WL 749018, *6-8 (E.D. Cal. Feb. 27, 2017) (awarding one-third of common fund); *Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMx), 2019 WL 5173771, * 9-11 (C.D. Cal. Oct. 10, 2019) (awarding one-third of common fund); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, *10-14 (N.D. Cal. Dec. 11, 2015) (awarding 33% of common fund); *Marshall*, 2020 WL 5668935, at * 1 (cataloguing awards one-third of common fund); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 297 (N.D. Cal. 1995) ("the cases . . . in which high percentages such as 30-50 percent of the fund were awarded involved relatively smaller funds of less than $10 million"); *Pointer v. Bank of Am., N.A.*, No. 2:14-CV-00525-KJM-CKD, 2016 WL 7404759, at *14 (E.D. Cal. Dec. 20, 2016) ("in most common fund cases, the award exceeds [the 25%] benchmark"); *Armes v. Hot Pizzas, LLC*, No. 2:14-CV-00525-KJM-CKD, 2017 U.S. Dist. LEXIS 89920, at *18  (D. Ariz. Jun. 9, 2017) ("Courts in this Circuit routinely recognize that as the size of the common fund decreases, the percentage to which plaintiff's counsel is entitled increases, and common funds under $10 million often result in awards between 30-50 percent."); *Aichele v. City of L.A.*, No. CV 12-10863-DMG (FMMx), 2015 WL 5286028, at *5 (C.D. Cal. Sep. 9, 2015) ("in cases under $10 million, the awards more frequently will exceed the 25% benchmark, and indeed go above 30%").

Products. Bruce Decl. at ¶¶ 15, 17. Class Counsel have also achieved important injunctive relief for the Settlement Class. Defendants have not only discontinued using the term "Mineral-Based" on the Products' labels (Ag. at ¶ 1.4), but also agreed to use transparent and honest labeling in the future if they add "Mineral-Based" labels to Coppertone sunscreen products that contain non-mineral active ingredients (*id.* at ¶ 4.1).

Accordingly, the settlement's value is not limited to the $2.25 million settlement fund. That is because the value of the injunctive relief achieved may also be considered when determining the settlement's value, as well as the appropriate attorneys' fee. *See Pokorny v. Quixtar, Inc.*, No. C 07-0201 SC, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("The court may properly consider the value of injunctive relief obtained as a result of settlement in determining the appropriate fee."); *Miller*, 2015 WL 758094, at *5 ("When determining the value of a settlement, courts consider both the monetary and nonmonetary benefits that the settlement confers." (citing cases)). The discontinuance of the Products' deceptive "Mineral-Based" labels and promise of future transparent labeling, in turn, eliminates future consumers' overpayment—or payment of a price premium—for products deceptively labeled as "Mineral-Based." This savings to future consumers constitutes a considerable value, which further supports Class Counsel's requested fee award. *See Miller*, 2015 WL 758094, at *5 (considering value of injunctive relief in determining attorneys' fees in product mislabeling case). Accordingly, the settlement's value is necessarily more than the $2.25 million common fund, which makes Class Counsel's requested fee award that much more reasonable.

### 2.    The Risks Involved Justify the Requested Award

The next factor justifying an award of 30% of the common fund is the substantial degree of risk faced by Class Counsel. *See Vizcaino*, 290 F.3d at 1048. To achieve the results they accomplished for the Settlement Class, Class Counsel took on and overcame a series of very significant risks. Bruce Decl. ¶¶ 22, 35, 36. As described more fully below, this case was novel and without the benefit of well-established precedent informing the litigation and providing a roadmap to success. *Id.* Defendants are well-resourced, with many billions of dollars in revenue annually, and were represented by an experienced and reputable defense firm, which strongly and deftly contested liability. *Id*. ¶ 5, 36; *see In re Equity Funding Corp. Securities Litig.*, 438 F. Supp. 1303,

1337 (C.D. Cal. 1977) (the quality of opposing counsel is important in evaluating the quality of class counsel's work). Class Counsel's ability to prevail on motions to dismiss and obtain a lucrative settlement against formidable opposition confirms the quality of Class Counsel's representation. Because success was far from guaranteed, Class Counsel's willingness to take on the risk of nonpayment substantially benefited Plaintiffs and the Settlement Class. Accordingly, this factor favors the requested award.

### 3. The Complexity and Novelty of the Issues Support the Requested Award

The issues presented in this case were novel. Indeed, Class Counsel are aware of only one other case concerning misleading "Mineral-Based" sunscreen products (*Mayhew v. KAS Direct, LLC*, No. 16 CV 6981 (VB), 2018 WL 3122059, at *1 (S.D.N.Y. June 26, 2018)), but that out-of-circuit case involved numerous additional misrepresentations concerning a variety of different products. In short, Plaintiffs litigated this action without having the predictability provided by well-established precedent. *See Knight*, 2009 WL 248367, at *3 ("[Defendant] continues to deny[] liability for Plaintiffs' claims. No published California case directly analyzes the claim brought by Plaintiffs . . . . Given the risks associated with continued litigation, the Settlement Agreement, which offers an immediate and certain award for all of the Class Members, appears a much better option.").

In addition, this action concerned complex legal issues. For example, Defendants hotly contested whether Plaintiffs' claims were preempted by the Federal Food, Drug, and Cosmetic Act. *See* Dkt. 26 at 2. Further, in what Defendants described as "an issue of first impression," Defendants claimed the Food and Drug Administration had primary jurisdiction over Plaintiffs' specific claims. *Id.* Defendants also attacked Plaintiffs' allegations based on a host of additional grounds. *Id.* However, Plaintiffs were able to overcome every one of Defendants' attacks to the significant benefit of the Settlement Class. *See* Dkt. 50. In sum, the novelty and complexity of the factual and legal issues strongly militate in favor of the requested award.

### 4. The Skill Required, Quality of Work, and Arm's-Length Negotiations by Experienced Counsel Support the Requested Award

Class Counsel have demonstrated substantial skill, diligence, efficiency, and a high quality of work in achieving a common fund of $2.25 million and notable injunctive relief as part of the

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

1  settlement. *See Knight*, 2009 WL 248367, at *6 ("The sizeable recovery of $500,000 is some

2  testament to Plaintiffs' counsel's skill. This factor supports the [30%] requested fee."). Class

3  Counsel obtained this excellent result in face of vigorous opposition involving issues that were

4  strongly contested. Class Counsel were able to achieve the settlement due to considerable expertise

5  and experience in prosecuting and settling complex class actions. *See* Ex. 2 [Clarkson Resume]; Ex.

6  3 [Moon Resume]. The relief achieved under the Settlement Agreement simply would not have been

7  possible but for the commitment and skill of Class Counsel.

8       **5.**     **The Contingent Nature of the Case Supports the Requested Award**

9       The burdens borne by Class Counsel in taking on the litigation is another relevant factor that

10  justifies the requested award. *See Vizcaino*, 290 F.3d at 1050; *see also Six Mexican Workers,* 904

11  F.2d at 1311. Adding to the other risks discussed herein is the fact that Class Counsel undertook this

12  litigation on a contingency-fee basis, requiring them to shoulder not only the cost of attorney time,

13  but all the costs of nearly two years of litigation. Bruce Decl. ¶¶ 35, 36. Indeed, courts have long

14  recognized the public policy of rewarding attorneys for accepting representation on a contingency-

15  fee basis. *See In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1299 (9th Cir.

16  1994). Moreover, when counsel takes cases on a contingency-fee basis, the risk of non-payment

17  after years of litigation justifies a significant fee award. *See Hopkins v. Stryker Sales Corp.*, No. 11-

18  CV-02786-LHK, 2013 WL 496358, at *4-6 (N.D. Cal. Feb. 6, 2013) (in awarding fees of 30 percent

19  of the settlement, the court explained that "Class Counsel took a significant risk investing in this

20  case" because it "was conducted on an entirely contingent fee basis against a well-represented

21  Defendant" and because "[a]ll of the financial risk of litigation was therefore assumed by Class

22  Counsel, whose fee arrangement with Plaintiffs required Class Counsel to bear all the costs of

23  litigation[.]").

24       Class Counsel performed all of the described work on a pure contingency-fee basis, with no

25  guarantee that they would ever be paid for any of their work or be reimbursed for any of their out-

26  of-pocket costs. Bruce Decl. ¶ 34, 36. They turned down other potentially profitable matters in order

27  to take on this large-scale case, and devoted resources to it that could have been devoted to other

28  potentially income-generating matters. *Id*. ¶ 35. Class Counsel's willingness to undertake this

ND Cal Case No. 5:20-CV-00102-NC      -14-

complicated litigation and see it through to completion, notwithstanding the risk that they might never be paid at all, should be recognized and rewarded, in accordance with Ninth Circuit precedent. *See Vizcaino*, 290 F.3d at 1049.

### 6.  Lack of Objections by Class Members to Requested Fees Supports the Requested Award

Finally, the absence of objections from the class to the fees requested further demonstrates the reasonableness and fairness of the attorneys' fees request. *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW, 2010 WL 1687829, at *2 (N.D. Cal. Apr. 22, 2010) (noting "a single objection out of a sizeable class, after notice, further demonstrates the reasonableness and fairness of Class Counsels' request"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The Court received objections from only 3 out of 57,630 potential Class Members who received the notice. By any standard, the lack of objection of the Class Members favors approval of the Settlement."). To date, **no objections** to the settlement have been received based on the agreed upon 30% common fund fee (or otherwise), while nearly 64,000 Settlement Class Members have made claims. DSG Decl. at ¶ 23, 25. The Settlement Class's response has been overwhelmingly positive and, indeed, **no one has opted-out or objected to date**. *Id*. at ¶ 23. In summary, well-versed and experienced Class Counsel have achieved an excellent result for the Settlement Class by investing significant resources to take on significant risks to litigate complex issues, with no guarantee of remuneration, such that a 30% award is warranted and consistent with the numerous similar cases described *supra*.

### B.  The Lodestar Cross-Check Confirms the Reasonableness of the Requested Fee

It is well-settled in the Ninth Circuit that "[i]n a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *see also, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Washington Public Power Supply Sys. Securities Litig.*, 19 F.3d at 1295. While the court has discretion to use either method, "the primary basis of the fee award remains the percentage method." *Vizcaino*, 290 F.3d at 1050; *Fitzhenry-Russell*, 2019 WL 11557486, at *8 ("Where a settlement

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

involves a common fund, courts typically award attorneys' fees based on a percentage of the total settlement.").

Here, Class Counsel's unadjusted lodestar is $755,857.50. A **negative or inverse** multiplier of 1.119 would be required to bring Class Counsel's lodestar **down** to the 30% fee request (i.e., the requested fee at 30% of the common fund of $675,000.00 multiplied by 1.119 equals the actual lodestar for Settlement Class Counsel of $755,875.50).

### 1. Class Counsel's Hourly Rates Are Reasonable

Under the lodestar method, a reasonable hourly rate "is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). Ordinarily, reasonable hourly rates are based on each attorney's *current* hourly rates. *Vizcaino*, 290 F.3d at 1051. The relevant community is the location where the district court sits—here, the Northern District of California. *Camacho,* 523 F.3d at 979. Indeed, courts also consider billing rates in excess of prevailing market rates justified for contingency fee work. *Hensley*, 461 U.S. at 448-449, n. 8 (1983) (Brennan, J., concurring) ("Attorneys who take cases on contingency, thus deferring payment of their fees until the case has ended and taking upon themselves the risk that they will receive no payment at all, generally receive far more in winning cases than they would if they charged an hourly rate. The difference, however, reflects the time-value of money and the risk of nonrecovery usually borne by clients in cases where lawyers are paid an hourly rate. . . . If the rate used in calculating the fee does not already include some factor for risk or the time value of money, it ought to be enhanced by some percentage figure."). Class Counsel's hourly rates are summarized below:

**Moon Law APC**

| Timekeeper (Title, Year of Bar Admission) | Rate ($) |
|---|---|
| Christopher D. Moon, Managing Partner (2006) | 850 |
| Kevin O. Moon, Managing Partner (2006) | 850 |

**Clarkson Law Firm**

| Timekeeper (Title, Year of Bar Admission) | Rate ($) |
|---|---|
| Ryan J. Clarkson, Managing Partner (2005) | 875 |
| Katherine A. Bruce, Partner (2012) | 775 |
| Lauren E. Anderson, Associate (2019) | 450 |

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

| Kelsey J. Elling, Associate (2019) | 450 |
| Paralegal | 225 |

Class Counsels' billing rates are reasonable. *See*, *e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Plaintiffs' Counsel's rates range from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals. . . . For purposes of the lodestar cross-check, the Court finds that these rates are reasonable."); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable); *Schneider*, 336 F.R.D. at 601 (holding that the hourly rates of $830-$1275 for partners and $425-$694 for associates in a false advertising class action, while on the high end, are within the prevailing rates in this district for attorneys of comparable experience, skill, and reputation); *Nitsch v. DreamWorks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (holding that hourly rates ranging from $870-$1200 for partners; $275 to $750 for other attorneys; $290 or less for support staff were "reasonable in light of prevailing market rates in this district"); *In re Animation Workers Antitrust Litig.*, No. 14-CV-4062-LHK, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016) (holding that hourly rates of $845-$1200 for the lead attorneys; $275-$735 for all other attorneys; and $290 and less for paralegals and/or support staff was reasonable); *Shin v. Plantronics, Inc.*, No. 18-CV-05626-NC, 2020 WL 510348, at *1 (N.D. Cal. Jan. 31, 2020) (Cousins, J.) (holding that the hourly rates for the attorneys and staff, ranging from $125 for legal assistants to $850 for senior attorneys in a false advertising class action, were reasonable and reflected the Class Counsel's experience, and the rates fell well within the rate approved by other courts in the Northern District of California).

### 2.    Class Counsel's Hours Expended are Reasonable

From this case's inception to the present, a period of nearly two years, without consideration of the prelitigation investigation that preceded its filing, Settlement Class Counsel recorded 1,122.1 hours litigating this matter. Bruce Decl. ¶¶ 23, 24, 25, 26. Class Counsel also delegated many tasks to lower-billing paralegals and associate attorneys where they possessed the skill to produce the

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

requisite quality of work. *Id*. ¶ 25. Because this was a contingency-fee case, Class Counsel had no incentive to spend unnecessary time on tasks. *Id*. ¶ 36. The hours Class Counsel spent investigating and litigating the case were limited to that reasonably necessary to succeed at class certification, on the merits at trial, in any subsequent appeals, and, ultimately, to achieve the exceptional settlement of Plaintiffs' and the Settlement Class's claims. Accordingly, the hours expended were reasonably and necessarily incurred. *Id*.

### 3. Class Counsel's Lodestar is Reasonable

Using the reasonable hourly rates and reasonable hours expended in the course of this litigation, Class Counsel's unadorned lodestar is $755,857.50. Bruce Decl. ¶ ¶ 23, 24, 25, 26 (summary chart of Class Counsel's timekeepers disaggregated by number of hours, rate, and total fees).

### 4. Enhancement of the Lodestar is Justified

Based on Class Counsel's unadorned lodestar, the 30% fee requested by Class Counsel reflects a ***negative*** multiplier of 1.119 (i.e., the requested fee of $675,000 (30% of the $2.25 million Settlement Fund) multiplied by 1.119 equals Class Counsel's lodestar of $755,857.50). It is well-settled that a ***positive*** multiplier is appropriate in common fund cases to reward attorneys for the risk assumed in taking and litigating the case. *See In re Wash. Public Power Supply Sys. Securities Litig.*, 19 F.3d at 1300; *Vizcaino*, 290 F.3d at 1051 ("This mirrors the established practice in the private legal market of rewarding attorneys for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases."); *Steiner v. American Broad. Co., Inc.*, 247 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming an attorney fee award representing a lodestar multiplier of 6.85 because it fell within the range of multipliers that courts have allowed); *Garner*, 2010 WL 1687829, at *2 ("Class Counsel effectively seek a multiplier of less than 2. This is well within the range of multipliers applied in common fund cases[.]"). However, here, an inverse or negative multiplier is required to adjust Class Counsel's lodestar from $755,857.50 to the requested fee of $675,000.00.

Indeed, the impressive monetary relief obtained for the Settlement Class, the risks involved in the litigation, the contingent nature of the fee, the novelty and complexity of the issues presented,

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

the absence of any objections to the requested fee amounts, and the experience of Class Counsel in litigating class actions, as described herein, would ordinarily justify a ***positive*** multiplier for cross-check purposes. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1299 ("[C]ourts have routinely enhanced the lodestar to reflect the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases."). Thus, the lodestar cross-check further demonstrates that Class Counsel is taking less than they typically earn, despite assuming the risks of litigation and foregoing receipt of payment for work performed over the course of two years. Accordingly, a lodestar cross check further supports the reasonableness of the requested 30% fee.

## IV.   REIMBURSEMENT OF LITIGATION EXPENSES IS WARRANTED

"Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit from the settlement." *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996). In the present case, the litigation expenses Class Counsel incurred were reasonably necessary to secure the resolution of this litigation. Bruce Decl. ¶¶ 23, 24, 25, 26. Class Counsel advanced all expenses without assurance that they would ever be repaid. *Id.* ¶ 36. The settlement permits Class Counsel to seek reimbursement of their litigation expenses and the Court-approved notice informed Settlement Class Members that Class Counsel would seek an award of costs. Ag. ¶ 6.1. Class Counsel is making a request for reimbursement of $6,242.55 in litigation costs. Bruce Decl. ¶ 28. These expenses are reflected in routinely maintained business records of Clarkson Law Firm, P.C. and Moon Law APC, and incurred to prosecute this litigation on behalf of the Settlement Class. *Id.* All expenses were carefully and reasonably expended, and they reflect market rates for various categories of expenses incurred. *Id.* The overwhelming majority of these expenses ($5,000) were incurred for work with consultants. *Id.* Expense items are billed separately and such charges are not duplicated in Class Counsel's billing rates. *Id.* Accordingly, full reimbursement of Class Counsel's litigation expenses is warranted. *See Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (ANx), 2015 WL 4537463, at *15 (C.D. Cal. Jul. 27, 2015).

/ / /

/ / /

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265

## V.   THE SERVICE AWARDS FOR THE NAMED PLAINTIFFS ARE WARRANTED

The settlement provides for a service award of $5,000 to each Plaintiff ($10,000 in total), subject to court approval. *See* Ag. at ¶ 6.2.  The awards are appropriate in light of the time and effort expended by each Plaintiff. *Staton,* 327 F.3d at 977. Courts routinely grant such awards, which are intended to advance public policy by encouraging individuals to come forward and take action to protect the rights of the class, as well as to compensate class representatives for their time, effort, and inconvenience. *Id.*; *see also Van Vranken*, 901 F. Supp. at 300. Relevant considerations include: (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. *See Van Vranken,* 901 F. Supp. 294 at 299.

Here, the involvement of named Plaintiffs Mike Xavier and Steven Prescott—in the midst of the COVID19 global pandemic—were critical to the prosecution of the case. Bruce Decl. ¶ 13. Plaintiffs participated in the pre-suit investigation phase, including conducting and overseeing Class Counsel's detailed research and investigation regarding the advertising and labeling of the Products, verifying their adequacy as class representatives, evaluating potential conflicts of interests, ensuring their claims are typical of the Class, and contributing to the drafting of the complaint. *See generally* Xavier Decl. ¶¶ 5, 8; Prescott Decl. ¶¶ 5, 8. They also regularly conferred with Class Counsel regarding case status and strategy, engaged in the discovery process, including conducting a reasonable and diligent investigation and search for documents and information, reviewed discovery responses, certified the accuracy and completeness of responses to interrogatories, and reviewed relevant pleadings and papers filed in this action. *Id.* Additionally, they actively engaged in the settlement process, including preparing for settlement negotiations, attending a full-day settlement conference, conferring with counsel regarding settlement offers and demands, and evaluating the proposed settlement to ensure it constitutes a fair, reasonable, and adequate settlement for the Settlement Class—all requiring time away from work and personal activities. *Id.* Plaintiffs were

fully informed of the benefits and risks before entering into the Amended Settlement Agreement. *Id.*

In sum, Plaintiffs' dedication and effort have conferred a significant benefit on tens of thousands of claimants and millions of consumers and prospective consumers across the United States, as well as the general public. In light of the relevant factors, a service award of $5,000 to each Plaintiff is appropriate and should be awarded. *See In re Toys R Us-Delaware, Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 472 (C.D. Cal. 2014) (approving $5,000 incentive award); *Faigman v. AT&T Mobility LLC*, No. C06-04622 MHP, 2011 WL 672648, *5 (N.D. Cal. Feb. 16, 2011) (noting that "[i]n [the Northern] [D]istrict, incentive payments of $5,000 are presumptively reasonable"). There is no evidence in the record which rebuts the presumptive reasonableness of the requested service award here.

## VI.   **CONCLUSION**

For the foregoing reasons, Class Counsel respectfully request that the Court grant Plaintiffs' motion for an award of attorneys' fees in the total amount of $675,000 (30% of the common fund), litigation expenses of $6,242.55 and service awards in the amount of $5,000 to each Plaintiff and Settlement Class Representative, Mike Xavier and Steven Prescott.

DATED: November 3, 2021                    **CLARKSON LAW FIRM, P.C.**

                                           */s/ Katherine A. Bruce*
                                           Katherine A. Bruce, Esq.

                                           **MOON LAW APC**
                                           Christopher D. Moon, Esq.
                                           Kevin O. Moon, Esq.

                                           *Attorneys for Plaintiffs*

Clarkson Law Firm, P.C.
22525 Pacific Coast Highway
Malibu, California 90265